**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re: Highland Capital Management, L.P.**

§

§  Case No. **19-34054-sgj11**

**The Dugaboy Investment Trust et al- Appellant**

§

vs.  §

**Highland Capital Management, L.P.**
**Et al-** Appellee

§            **3:25-cv-02072-S**

§

[4333]  **Memorandum of Opinion and Order Regarding Stay Requests (Addressing DE #4326 and 4308) entered on 7/21/25**

# Volume 15

# APPELLANT RECORD

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj** |
| | § | |
| **Reorganized Debtor.** | § | |
| | § | |

*INDEX*

## APPELLANT THE DUGABOY INVESTMENT TRUST'S STATEMENT OF ISSUES TO BE PRESENTED AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL FROM THE BANKRUPTCY COURT'S ORDER REGARDING STAY REQUESTS [ADDRESSING DE ## 4326 & 4308]

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant"), having filed a Notice of Appeal [Docket No. 4353] on August 4, 2025 in the above-captioned case from the Bankruptcy Court's July 21, 2025 *Memorandum Order and Opinion Regarding Stay Requests [Addressing DE ## 4326 & 4308]*[Docket No. 4333], hereby submits this *Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal*, and respectfully requests that the Clerk prepare and forward the items listed herein to the District Court for inclusion in the record in connection with this appeal.[1]

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

1. **Did the Bankruptcy Court err in faulting Dugaboy's Stay Request because Dugaboy did not make a "standard" request for a stay pending appeal pursuant to Federal Bankruptcy Rule 8007?**

2. **Did the Bankruptcy Court err in determining that the Bankruptcy Rule 9019 settlement proceeding was not "a proceeding involving a charitable trust"?**

3. **Did the Bankruptcy Court err in concluding there was insufficient evidence connecting Mark Patrick's involvement in this Court's Rule 9019 settlement proceedings to the allegations of wrongdoing against Patrick in the Cayman Islands proceeding?**

4. **Did the Bankruptcy Court err in failing to recognize that the new evidence of Mark Patrick's misconduct exposed in the Cayman Islands proceeding fatally undermines the 9019 settlement by establishing that Patrick lacked authority to enter into the settlement?**

5. **Did the Bankruptcy Court err in concluding that a stay was unnecessary because Dugaboy could still pursue remedies against Mark Patrick in the Cayman Islands proceeding?**

6. **Did the Bankruptcy Court err in failing to recuse itself under 28 U.S.C. § 455 due to the appearance of partiality created by the presiding judge's authorship of novels that bear striking factual and thematic similarities to the Highland Capital Management bankruptcy proceedings and portray hedge fund principals in an overtly negative**

---

[1] Because of its voluminous nature, Docket #4255 will be delivered to the Clerk on a flash drive which will arrive tomorrow.

light, thereby depriving Dugaboy of an impartial judge with respect to the stay motion?

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

*Vol. 1*

*000001*
1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4353] filed by Appellant;

*000023*
2. Bankruptcy Court's *Memorandum Opinion and Order Regarding Stay Requests [Addressing DE ## 4236 & 4308* [Docket No. 4333];

*000039*
3. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

4. Any opinion, findings of fact and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings: Transcript of hearing held June 25, 2025 before Judge Stacey C.G. Jernigan [Docket No. 4296] re: Motion for Entry of an Order Approving Settlement with HMIT Entities (4216) [Docket No. 4297]; and

5. Each of the additional documents and items designated below:

*Vol. 2*

*000569*

*000730*

*000734*

*Vol. 3*

*000771*
*Thru vol. 5*

*Vol 5*
*003493*

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 2/22/2021 | 1943 | Order confirming the fifth amended chapter 11 plan, as modified and granting related relief (RE: related document(s)1472 Chapter 11 plan filed by Debtor Highland Capital Management, L.P., 1808 Chapter 11 plan filed by Debtor Highland Capital Management, L.P.). Entered on 2/22/2021 (Okafor, M.) |
| 3/18/2021 | 2060 | Motion to recuse Judge Jernigan Filed by Interested Party James Dondero (Lang, Michael) |
| 3/18/2021 | 2061 | Brief in support filed by Interested Party James Dondero (RE: related document(s)2060 Motion to recuse Judge Jernigan). (Lang, Michael) |
| 3/18/2021 | 2062 | Support/supplemental document Appendix to Motion to Recuse filed by Interested Party James Dondero (RE: related document(s)2060 Motion to recuse Judge Jernigan). (Lang, Michael) |
| 3/23/2021 | 2083 | Order denying motion to recuse (related document #2060) Entered on 3/23/2021. (Okafor, M.) |

| | 4/6/2021 | 2169 | Amended notice of appeal filed by Interested Party James Dondero (RE: related document(s)2149 Notice of appeal). (Lang, Michael) |
|---|---|---|---|
| *Vol. 5* 003504 | | | |
| *003519* | 4/15/2022 | 2205 | Statement of issues on appeal, filed by Interested Party James Dondero (RE: related document(s)2083 Order on motion to recuse Judge). (Lang, Michael) |
| *003521* | 4/15/2021 | 2206 | Appellant designation of contents for inclusion in record on appeal filed by Interested Party James Dondero (RE: related document(s)2169 Amended notice of appeal). Appellee designation due by 04/29/2021. (Lang, Michael) |
| *003530* | 2/9/2022 | 3264 | DISTRICT COURT MEMORANDUM OPINION AND ORDER - The Recusal Order is not a final, appealable order, is not subject to the collateral order doctrine, and is not an appealable interlocutory order under § 1292 (a) and the Court is without jurisdiction over this appeal of the Bankruptcy Court's Recusal Order. The Court further denies Appellants leave to appeal the Recusal Order under § 1292 (b), denies Appellants' request to withdraw the reference of their motion to recuse, and denies Appellants' request to construe their appeal as a petition for writ of mandamus. Accordingly, the Court dismisses this appeal for lack of jurisdiction. (Ordered by Judge Ed Kinkeade on 2/9/2022). Civil Action number:3:21-cv-00879-K, DISMISSED for lack of jurisdiction (RE: related document(s)2083 Order on motion to recuse Judge). Entered on 2/9/2022 (Whitaker, Sheniqua) Modified on 2/25/2022 (Whitaker, Sheniqua). (Entered: 02/25/2022) |
| *Vol 6* 003544 | 7/20/2022 | 3406 | Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support Filed by Interested Party James Dondero (Attachments: #1 Appendix Appendix (Lang, Michael) Modified text on 7/21/2022 (Ecker, C.). |
| *003909* | 8/1/2022 | 3422 | Notice of hearing on Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support Filed by Interested Party James Dondero (Attachments: # 1 Appendix Appendix) (Lang, Michael) Modified text on 7/21/2022(Ecker, C.).). Hearing to be held on 8/31/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 3406, (Lang, Michael) |

| | 8/15/2022 | 3444 | Response opposed to (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) filed by Debtor Highland Capital Management, L.P.. (Attachments: #1 Exhibit A (Annable, Zachery) |
|---|---|---|---|
| | 8/15/2022 | 3445 | Exhibit List (Appendix in Support of Highland Capital Management, L.P.'s Objection to Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 USC 455 and Brief in Support) filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3444 Response). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Index 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 (Annable, Zachery) |
| | 8/15/2022 | 3446 | Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' |

Handwritten annotations:
- Vol 6
- 003912
- Vol. 7
- 003936 Thru End of Vol 14
- Vol 15
- 011840

4

| | | | |
|---|---|---|---|
| *Vol. 15* | | | Depositions) Filed by Debtor Highland Capital Management, L.P. (Annable, Zachery) |
| *011855* | 8/15/2022 | 3447 | Declaration re: (Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' Depositions) filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3446 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capi). (Annable, Zachery) |
| *011864* | 8/17/2022 | 3456 | Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3446 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' Depositions) Filed by Debtor Highland Capital Management, L.P., 3449 Motion to compel Lawyers' Depositions. Filed by Debtor Highland Capital Management, L.P. (Ecker, C.)). Hearing to be held on 8/31/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 3446 and for 3449, (Annable, Zachery) |
| *011869* | 8/22/2022 | 3463 | Reply to (related document(s): 3444 Response filed by Debtor Highland Capital Management, L.P.) filed by Interested Party James Dondero. (Lang, Michael) |
| *011874* | 8/24/2022 | 3466 | Amended Notice of hearing filed by Interested Party James Dondero (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support Filed by Interested Party James Dondero (Attachments: # 1 Appendix Appendix) (Lang, Michael) Modified text on 7/21/2022(Ecker, C.)., 3446 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' |

| | | | |
|---|---|---|---|
| *Vol 15* | | | Depositions) Filed by Debtor Highland Capital Management, L.P., 3449 Motion to compel Lawyers' Depositions. Filed by Debtor Highland Capital Management, L.P. (Ecker, C.), 3462 Order converting the August 31, 2022 at 9:30 AM Hearing on (A) The motion for final appealable order and supplement to motion to recuse and (B) related motions to strike and compel to a preliminary status/scheduling conference (RE: related document(s)3406 Motion for leave filed by Interested Party James Dondero, 3446 Motion to strike document filed by Debtor Highland Capital Management, L.P., 3449 Motion to compel filed by Debtor Highland Capital Management, L.P.). Entered on 8/19/2022 (Ecker, C.)). Status Conference to be held on 8/31/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga. (Lang, Michael) |
| *011877* | 8/26/2022 | 3470 | Amended motion for final appealable order and proposed supplement to the record filed by Interested Party James Dondero (RE: related document(s)3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support). (Attachments: #1 Appendix (Lang, Michael) MODIFIED text to match PDF on 9/1/2022 (Ecker, C.). |
| *012039* | 8/26/2022 | 3471 | Stipulation by James Dondero and Highland Capital Management, L.P.. filed by Interested Party James Dondero (RE: related document(s)3406 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capi, 3449 Motion to compel Lawyers' Depositions.). (Lang, Michael) |
| *No PDF Available* | 8/31/2022 | 3478 *N/A* | 3478 Hearing held on 8/31/2022. (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support, filed by Interested Party James Dondero.) (Appearances: M. Lang for Movants; J. Pomeranz for Reorganized Debtor. Nonevidentiary status conference. Based on discussions with counsel at status conference as to what actual relief is being sought, the motion (even as currently amended) will be denied as procedurally defective. This is without prejudice to movants filing a new motion pursuant to Rule 54 seeking the simple relief of having the last sentence of this courts 3/23/21 order deleted, or a new motion to recuse, if Movants have any desire to supplement the record. Court to issue order.) (Edmond, Michael) |
| *012047* | 9/1/2022 | 3479 | Order denying amended motion of James Dondero, Highland Capital Management Fund Advisors, L.P., Nexpoint Advisors, |

| | | | |
|---|---|---|---|
| *Vol. 15* | | | L.P. The Dugaboy Investment Trust Get Good Trust and, Nexpoint Real Estate Partners, LLC, F/K/A HCRE Partners, A Delaware Limited Liability Company for final appealable order and supplement to motion to recuse pursuant to 28 U.S.C. Section 455 (RE: related document(s)3470 Brief filed by Interested Party James Dondero). Entered on 9/1/2022 (Okafor, Marcey) |
| *012050* | 9/1/2022 | 3480 | Transcript regarding Hearing Held 08/31/2022 (27 pages) RE: Status Conference Re: Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 (#3406). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/30/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 3478 Hearing held on 8/31/2022. (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support, filed by Interested Party James Dondero.) (Appearances: M. Lang for Movants; J. Pomeranz for Reorganized Debtor. Nonevidentiary status conference. Based on discussions with counsel at status conference as to what actual relief is being sought, the motion (even as currently amended) will be denied as procedurally defective. This is without prejudice to movants filing a new motion pursuant to Rule 54 seeking the simple relief of having the last sentence of this courts 3/23/21 order deleted, or a new motion to recuse, if Movants have any desire to supplement the record. Court to issue order.)). Transcript to be made available to the public on 11/30/2022. (Rehling, Kathy) |
| *012077* *Vol. 16* | 9/27/2022 | 3541 | Motion to recuse Judge Stacey G. C. Jernigan Filed by Interested Party James Dondero (Lang, Michael) |
| *012079* | 9/72/2022 | 3542 | Brief in support filed by Interested Party James Dondero (RE: related document(s)3541 Motion to recuse Judge Stacey G. C. Jernigan). (Attachments: #1 Appendix (Lang, Michael) |
| *012357* | 10/14/2022 | 3567 | Agreed Scheduling Order on renewed motion to recuse (related document #3541) Entered on 10/14/2022. (Okafor, Marcey) |

7

| | | | |
|---|---|---|---|
| *Vol. 16*<br>*012361*<br>*Vol. 17*<br>*012363* | 10/17/2022 | 3570 | Motion to recuse Judge Stacey G. C. Jernigan - AMENDED Filed by Interested Party James Dondero (Lang, Michael) |
| | 10/17/2022 | 3571 | Brief in support filed by Interested Party James Dondero (RE: related document(s)3570 Motion to recuse Judge Stacey G. C. Jernigan - AMENDED). (Attachments: #1 Appendix (Lang, Michael) |
| *012641* | 10/31/2022 | 3595 | Response opposed to (related document(s): 3541 Motion to recuse Judge Stacey G. C. Jernigan filed by Interested Party James Dondero, 3570 Motion to recuse Judge Stacey G. C. Jernigan - AMENDED filed by Interested Party James Dondero) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| *Vol. 18*<br>*012697*<br>*Thru End of Vol. 21* | 10/31/2022 | 3596 | Support/supplemental document (Appendix in Support of Highland's Objection to Renewed Motion to Recuse Pursuant to 28 U.S.C. 455 and Brief in Support) filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3595 Response). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 (Annable, Zachery) |
| *Vol. 22*<br>*016732* | 3/3/2023 | 3673 | Brief in support filed by Interested Party James Dondero (RE: related document(s)3570 Motion to recuse Judge Stacey G. C. Jernigan - AMENDED). (Lang, Michael) |
| *016737* | 3/6/2023 | 3675 | Memorandum of Opinion and Order Denying Amended Renewed Motion to Recuse Pursuant to 28 U.S.C. Section 455 (RE: related document(s)3570 Motion to recuse Judge filed by Interested Party James Dondero). Entered on 3/6/2023 (Okafor, Marcey) |
| *016773* | 3/6/2023 | 3676 | Order Denying Amended Renewed Motion to Recuse Pursuant to U.S.C. Section 455 (related document #3570) Entered on 3/6/2023. (Okafor, Marcey) |
| *016809* | 5/19/2025 | 4216 | Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland |

*Vol. 22*

| | | | Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: #1 Exhibit A--Proposed Order (Annable, Zachery) |
|---|---|---|---|
| *016827* | 5/19/2025 | 4217 | Declaration re: (Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 (Annable, Zachery) |
| *016830* | 5/19/2025 | 4217-1 | Proposed Settlement Agreement |
| *016855* | 6/9/2025 | 4230 | Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
| *016863* | 6/20/2025 | 4251 | Exhibit List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| *016865* | 6/20/2025 | 4252 | Witness List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| *Vol. 23* *016867* *Thru end of Vol. 25* | 6/20/2025 | 4255 **(to be submitted to Clerk on flash drive)** | Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1, #2 Exhibit 2, #3 Exhibit 3, #4 Exhibit 4, #5 Exhibit 5, #6 Exhibit 6, #7 Exhibit 7, #8 Exhibit 8, #9 Exhibit 9, #10 Exhibit 10, #11 Exhibit 11, #12 Exhibit 12, #13 Exhibit 13, #14 Exhibit 14, #15 Exhibit 15, #16 |

| | | | |
|---|---|---|---|
| | | | Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Exhibit 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 , #87 Exhibit 87 , #88 Exhibit 88 , #89 Exhibit 89 , #90 Exhibit 90 , #91 Exhibit 91 , #92 Exhibit 92 , #93 Exhibit 93 , #94 Exhibit 94 , #95 Exhibit 95 , #96 Exhibit 96 , #97 Exhibit 97 , #98 Exhibit 98 , #99 Exhibit 99 , #100 Exhibit 100 , #101 Exhibit 101 , #102 Exhibit 102 , #103 Exhibit 103 , #104 Exhibit 104 , #105 Exhibit 105 , #106 Exhibit 106 , #107 Exhibit 107 , #108 Exhibit 108 , #109 Exhibit 109 , #110 Exhibit 110 , #111 Exhibit 111 , #112 Exhibit 112 , #113 Exhibit 113 , #114 Exhibit 114 , #115 Exhibit 115 , #116 Exhibit 116 , #117 Exhibit 117 , #118 Exhibit 118 , #119 Exhibit 119 , #120 Exhibit 120 , #121 Exhibit 121 , #122 Exhibit 122 , #123 Exhibit 123 (Annable, Zachery) |
| | 6/20/2025 | 4256 | Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis) |
| | 6/20/2025 | 4257 | Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent |

*Vol. 26*

*019524*

*019527*

| | | | |
|---|---|---|---|
| | | | Therewith)). (Attachments: #1 Exhibit 1 - Charitable DAF/CLO HoldCo Organization Chart, #2 Exhibit 2 - Rand Structure Chart, #3 Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs, #4 Exhibit 4 - Charitable Respondents Response and Disclosures (Okin, Matthew) |
| *Vol. 27*  *019847* | 6/23/2025 | 4271 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Professional Highland Litigation Sub-Trust (RE: related document(s)4253 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 66, #2 Exhibit 67 (Annable, Zachery) |
| *019871* | 6/23/2025 | 4272 | Amended Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4257 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 5, #2 Exhibit 66, #3 Exhibit 7 7,4 Exhibit 8 ,8, Exhibit 9 (Curry, David) |
| *019998* | 6/23/2025 | 4273 | Objection to (related document(s)): 4255 List (witness/exhibit/generic) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Ohlinger, Ali) |
| *Vol. 28*  *020013* | 6/23/2025 | 4277 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4255 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 124 , #2 Exhibit 125 (Annable, Zachery) |
| *020230* | 6/24/2025 | 4279 | Witness and Exhibit List with Respect to Hearing to be Held on June 25, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time)). (Attachments: #1 Exhibit 1 (Deitsch-Perez, Deborah) |
| *020241* | 6/24/2025 | 4280 | Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 126 (Annable, Zachery) |

| | | | |
|---|---|---|---|
| *Vol. 28*<br><br>*020266* | 6/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). (Entered: 06/27/2025) |
| *Vol. 29*<br><br>*020267* | 6/27/2025 | 4290 | Stipulation by Highland Claimant Trust, Highland Litigation Sub-Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4223 Objection). (Annable, Zachery) |
| *020271* | 6/27/2025 | 4291 | Stipulation withdrawing objection of The Dallas Foundation and Crown Global Life Insurance, LTD to Motion for Entry of an order pursuant to Bankruptcy Rule 9019 and 11 U.S.C. Section 363 approving settlement with the HMIT Entities and authorizing actions consistent therewith (RE: related document(s) 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust, 4282 Stipulation filed by Creditor Hunter Mountain Investment Trust. Entered on 6/27/2025 (Okafor, M.) |
| *020282* | 7/1/2025 | 4299 | Motion to withdraw document Consent Motion to Dismiss HMIT Remand Proceedings with Prejudice (related document(s) 3699 Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |
| *020289* | 7/1/2025 | 4300 | Motion to withdraw document Consent Motion to Dismiss Delaware Action Proceedings with Prejudice (related document(s) 4000 Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |

| | | | |
|---|---|---|---|
| *Vol. 29*<br><br>*020296* | 7/7/2025 | 4304 | Order withdrawing Emergency Motion for Leave to File Adversary Proceeding [Dkt. 3699] with prejudice (RE: related document(s)4299 Motion to withdraw document filed by Interested Party Hunter Mountain Trust, Creditor Hunter Mountain Investment Trust). IT IS THEREFORE ORDERED that the proceedings defined in the Dismissal Motion as: Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P., Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including Hunter Mountain Investment Trusts Emergency Motion for Leave to File Adversary Proceeding filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating thereto), are dismissed with prejudice. Entered on 7/7/2025 (Okafor, M.) |
| *020298* | 7/10/2025 | 4308 | Notice Letter from the Office of the Texas Attorney General Requesting a Stay filed by Interested Party State of Texas. (Stone, Johnathan) |
| *020300* | 7/14/2025 | 4311 | Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Lang, Michael) |
| *020309* | 7/16/2025 | 4323 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| *020311* | 7/17/2025 | 4326 | Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust. Objections due by 8/7/2025. (Lang, Michael) Modified text on 7/21/2025 (mdo). |
| *Vol. 30*<br><br>*020407* | 7/17/2025 | 4329 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01876-K. (RE: related document(s)4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related |

| | | | |
|---|---|---|---|
| | | | document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| *VoI. 31* | 7/21/2025 | 4333 | Memorandum of opinion (RE: related document(s)4308 Notice (generic) filed by Interested Party State of Texas, 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust). Entered on 7/21/2025 (Okafor, M.) |
| *020680* | 7/21/2025 | 4334 | Order denying stay requests (related document 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order and 4308 Notice). Entered on 7/21/2025. (Okafor, M.) Additional attachment(s) added on 7/21/2025 (Okafor, M.) |
| *020696* | 8/4/2025 | 4353 | Notice of appeal. Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). Appellant Designation due by 08/18/2025. (Attachments: #1 Exhibit A) (Harper, Geoffrey) |
| *020808* | 8/5/2025 | 4359 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-02072-S. (RE: related document(s)4353 Notice of appeal filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). (Almaraz, Jeanette) |
| *020830* | 8/15/2025 | 4372 | Motion to recuse Judge Filed by Interested Parties James Dondero, NexPoint Advisors, L.P., NexPoint Asset Management, L.P., NexPoint Real Estate Advisors, L.P., The Dugaboy Investment Trust, The Get Good Non Exempt Trust No 2 (Attachments: #1 Proposed Order (Harper, Geoffrey) |

*020837*

Dated: August 18, 2025

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ Geoffrey S. Harper

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

14

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

***Counsel for Appellant The Dugaboy Investment
Trust***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 18, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Reorganized Debtor. | ) |  |
|  | ) |  |

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO (A) STRIKE LETTERS ATTACHED TO APPENDIX IN SUPPORT OF THE DONDERO PARTIES' SUPPLEMENTAL RECUSAL MOTION [DOCKET NO. 3406], OR, (B) ALTERNATIVELY, TO COMPEL THE LAWYERS' DEPOSITIONS

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

011840

Highland Capital Management, L.P. ("Highland" or, as applicable, the "Debtor"), the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order, substantially in the form annexed as **Exhibit A** hereto, striking the Letters[2] attached to the *Appendix to James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company's Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support* [Docket No. 3406-1] (the "Appendix") filed by James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC (collectively, the "Dondero Parties") in support of their *Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* and *Brief in Support* [Docket No. 3406] (the "Supplemental Motion") or, alternatively, compelling the depositions of the authors of the Letters.

The Motion is made pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Rule 12"), made applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7012, and Rules 401, 402, 403, and 802 of the Federal Rules of Evidence ("Fed. R. Evid."). In support of the Motion, Highland respectfully represents as follows.

## PRELIMINARY STATEMENT

1.    The Letters included in the Dondero Parties' Appendix should be stricken from the appellate record because (i) they are irrelevant; (ii) they constitute inadmissible hearsay; and (iii)

---

[2] All capitalized terms used but not defined in these introductory paragraphs and the Preliminary Statement shall have the meanings ascribed to them below.

011841

their inclusion in the record would cause unfair prejudice to Highland and confuse the issues at hand—exactly as the Dondero Parties intend.[3]

  2.  As set forth below, the Dondero Parties include the Letters in their Appendix but make just one passing, frivolous argument based on them in support of their Supplemental Motion. That is not an accident.  The Dondero Parties' transparent goal is to slip the Letters into the record now so that they can cite to them later in their inevitable appeal to the District Court.  The Court should reject such gamesmanship.

  3.  The Letters are self-serving narratives written by two Lawyers who represent certain of the Dondero Parties.  The Letters are focused on alleged wrongdoing by the then-Debtor, Mr. Seery, and certain third parties and have little (if anything) to do with the Dondero Parties' latest effort to remove Judge Jernigan from Highland's Bankruptcy Case.  Accordingly, the Letters should be stricken as "immaterial" and "irrelevant" under applicable law.

  4.  Even if the Letters were relevant (and they are not), they are rank hearsay under the rules of evidence and are inadmissible as such.

  5.  Even if the Letters were relevant, admissible hearsay (and they are not), their probative value is greatly outweighed by the prejudice to Highland that would result from their inclusion in the record.  The Letters are "hit pieces" replete with material errors and grossly misleading and incomplete assertions.  While Highland does not believe it appropriate to rebut the errors and assertions in the context of adjudicating the Supplemental Motion, it nevertheless requested to take the Lawyers' depositions after the Dondero Parties refused to withdraw the Letters; not surprisingly, the Dondero Parties ignored the request.

---

[3] The demonstrably false Letters serve no apparent purpose other than as a coordinated attempt to damage the reputations of Highland, its managers and professionals, and others.  Highland and the parties ensnared in Mr. Dondero's relentless quest to "burn the house down," including the making of the irresponsible allegations set forth in the Letters, reserve all rights, including the right to address these matters in due course.

011842

6.      The Letters should be stricken because (i) they are irrelevant; (ii) they are hearsay;

and (iii) any probative value is greatly outweighed by the prejudice Highland will face by their

inclusion in the appellate record.  Alternatively, if the Court is considering including the Letters in

the record, Highland respectfully requests that the Court order the Lawyers to appear for deposition

so that their out-of-court statements can be tested before the Letters are actually admitted into

evidence, thereby mitigating the prejudice to Highland.[4]

## I.      RELEVANT BACKGROUND

### A.  The Dondero Parties File the Recusal Motion

7.      On March 18, 2021, the Dondero Parties filed their motion seeking to recuse this

Court pursuant to 28 U.S.C. § 455 [Docket Nos. 2060, 2061, 2062] (the "Recusal Motion").  The

Recusal Motion alleged, among other things, that (a) this Court was biased against Mr. Dondero

and the other Movants and (b) this Court's bias had been evident since before this case was

transferred to this Court in December 2019.  On March 22, 2021, this Court entered its order

denying the Recusal Motion [Docket No. 2083] (the "Recusal Order"), finding, among other

things, that the Dondero Parties failed to show bias and that the Recusal Motion was untimely.

### B.  The Appeal of the Recusal Order

8.      The Dondero Parties appealed the Recusal Order to the U.S. District Court for the

Northern District of Texas (the "District Court").  *See James Dondero, et al. v. Honorable Stacey

G.C. Jernigan, et al.*, Case No. 3:21-cv-00879-K (N.D. Tex.).  On June 10, 2021, the District Court

granted Highland's motion to intervene.  [D. Ct. Docket No. 10].[5]  After the parties submitted their

---

[4] As stated in *Highland's Objection to Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support* (the "Objection") being filed concurrently herewith, nothing in the Supplemental Motion, including the Letters, changes the fact that the Recusal Order is a non-appealable interlocutory order and thus not subject to appeal at this time.

[5] "D. Ct. Docket No." refers to the docket maintained by the District Court in *James Dondero, et al. v. Honorable Stacey G.C. Jernigan, et al.*, Case No. 3:21-cv-00879-K (N.D. Tex.).

4

appellate briefs, the District Court, *sua sponte*, issued an order on December 10, 2021 [D. Ct. Docket No. 28] (the "December Order") directing supplemental briefing on the District Court's jurisdiction. Accordingly, the parties subsequently filed supplemental briefing. [*See* D. Ct. Docket Nos. 29 and 31].

### C. The District Court Denies the Dondero Parties' Appeal of the Recusal Order

9. On February 9, 2022, the District Court entered its *Memorandum Opinion and Order* [D. Ct. Docket No. 39] (the "Binding February Order"). In the Binding February Order, the District Court denied the Dondero Parties' appeal on the ground that the Recusal Order was a non-appealable interlocutory order and that the District Court therefore lacked jurisdiction to hear the appeal.

### D. The Dondero Parties File the Supplemental Motion and Appendix

10. On July 20, 2022, the Dondero Parties filed the Supplemental Motion in this Court seeking to, *inter alia*, introduce new "evidence" into the appellate record to be reviewed by the District Court on appeal. *See* Supplemental Motion ¶ 8. This new "evidence" includes, in pertinent part, three letters (collectively, the "Letters") sent by two attorneys—Douglas Draper and Davor Rukavina (together, the "Lawyers")—who represent certain of the Dondero Parties to the Office of General Counsel, Executive Office for U.S. Trustee, in November 2021 and May 2022, respectively. *See* Appendix 2842-3044, Exhibits 35, 36, 37.

11. The Letters, totaling roughly 200 pages, baselessly allege a litany of wrongdoing by the Debtor, its Court-appointed CEO and CRO, James P. Seery, Jr. ("Mr. Seery"), and others. Tellingly, the Dondero Parties make nothing but a passing, frivolous reference to the Letters in a footnote to their Supplemental Motion.

### E.  The Parties Meet and Confer but Are Unable to Reach an Agreement; the Dondero Parties Subsequently Ignore Highland's Request for Depositions

12.     On July 26, 2022, Highland's counsel wrote to Michael Lang ("Mr. Lang"), the Dondero Parties' counsel, in connection with the recusal proceeding and demanded that the Dondero Parties withdraw the Letters from their Appendix on the grounds that the Letters are hearsay and contain substantial and material errors and omissions.  Morris Dec.[6] **Exhibit 1** at 4-5.

13.     Shortly thereafter, counsel conferred telephonically.  During the call, Highland's counsel explained that the Letters were hearsay and that Highland should not have the burden of rebutting and correcting a litany of errors and omissions on a recusal motion, but that if the Dondero Parties refused to withdraw the Letters, Highland would seek to depose the Lawyers.  In response, Mr. Lang explained that the Dondero Parties did not intend to offer the Letters to prove the truth of the matters asserted, but only to establish that the Letters were actually sent, purportedly (and ironically) in accordance with the Court's guidance.  To resolve the issue, Highland's counsel offered to stipulate that the Letters were sent if the Dondero Parties agreed to withdraw them from the evidentiary record.  Morris Dec. ¶ 3.

14.     After Mr. Lang rejected Highland's offer of a stipulation, Highland sought the depositions of the Lawyers, offering to take them on August 11 or 12 and limit each to four hours.  The Dondero Parties ignored Highland's request for the depositions.  Morris Dec. **Exhibit 1** at 1.

### II.     ARGUMENT

### A.  The Letters Are Irrelevant under Applicable Law

15.     The Letters are irrelevant to the Supplemental Motion and should be stricken from the record under Rule 12 and the Federal Rules of Evidence.

---

[6] Refers to the *Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion to Strike Letters Attached to Appendix in Support of Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support*, filed concurrently herewith.

011845

16.     The Dondero Parties seek to disqualify Judge Jernigan from overseeing Highland's Bankruptcy Case.  Under federal law, a judge shall be disqualified where her "impartiality might reasonably be questioned" or where there is "personal or bias or prejudice."  28 U.S.C. § 455(a), (b)(1).

17.     The Dondero Parties seek to introduce the Letters into evidence, purportedly in support of the Supplemental Motion.  While the Letters contain substantial, unsubstantiated allegations of wrongdoing on the part of the Debtor, Mr. Seery, and certain third parties, they are irrelevant to whether the Bankruptcy Court's own opinions or beliefs, comments, actions, or conduct constitute a deep-seated favoritism or antagonism that would make fair judgment impossible. *See Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003); *Liteky v. United States*, 510 U.S. 540, 555 (1994).

18.     Indeed, the Letters' irrelevance is reflected in the Dondero Parties' own pleading, which makes only a passing reference to the Letters in a footnote. *See* Supplemental Motion at 5-6, n.26 (the Dondero Parties implausibly contend that the "lack of transparency pervading the HCMLP bankruptcy proceedings" was evidenced by a snippet of colloquy at the February 3, 2021 confirmation hearing and "prompted" the Lawyers to write the Letters many months later).  The Dondero Parties make no other argument that the Letters are evidence of this Court's alleged bias.

19.     Rule 12 provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  The decision to grant a motion to strike is within the court's discretion. *S.E.C. v. Cuban*, 798 F. Supp. 2d 783, 787 (N.D. Tex. 2011).  The Letters should be stricken from the Appendix filed in support of the Supplemental Motion because they are immaterial and impertinent to the issues at hand. The Letters are advocacy pieces containing baseless allegations of wrongdoing by the Debtor, Mr.

Seery, and others and do not concern any fact of consequence in determining the Supplemental

Motion.  They are, therefore, irrelevant and inadmissible under Rule 12 and the Federal Rules of

Evidence.  *See* FED. R. EVID. 401, 402.

**B.  The Letters Constitute Inadmissible Hearsay under Fed. R. Evid. 802**

20.     Even if the Letters were relevant—and they are not—they should be stricken from

the record because they constitute inadmissible hearsay, an issue beyond any credible dispute.

21.     Under Federal Rule of Evidence 801(c)(1–2), hearsay is an out-of-court statement

offered to prove the truth of the matters asserted.  "Statement" means a person's oral or written

assertion, and "declarant" means the individual who made the statement. FED. R. EVID. 801(a),

(b)).

22.     Hearsay is inadmissible unless a statute or rule provides otherwise.  FED. R. EVID.

802.  The Letters plainly constitute inadmissible hearsay because they are the Lawyers' out-of-

court statements offered to prove the truth of the matters asserted therein and no statute or rule

provides otherwise.

23.     Any contention by the Dondero Parties that they are not offering the Letters to

prove the truth of the matters asserted should be rejected.  As discussed *supra*, the Dondero Parties

refused to withdraw the Letters in exchange for a simple stipulation stating that the Letters were

sent, the modest point Mr. Lang claimed he was trying to establish.[7]  Moreover, if the Letters are

not being offered for this truth of the matters in this proceeding, the Court should question whether

they were offered for the truth of the matters asserted when the Lawyers filed them with the Office

---

[7] If the Dondero Parties insist that they are not offering the Letters to prove the truth of the matters asserted therein, then they should explicitly identify the limited purpose of introducing the Letters into the record because they rejected Highland's offer to stipulate to the fact that the Letters were sent and caused the filing of this Motion.

of the United States Trustee, because seeking different treatment for the Letters depending on the audience reeks of gamesmanship.

24.     Given the frivolous argument advanced by the Dondero Parties in reliance on the Letters,[8] the Court should see the Dondero Parties' inclusion of the Letters for what it is:  an obvious attempt to have the District Court review inadmissible evidence—the Letters—as part of the appellate record.  The Letters have no place in the appellate record, and the Dondero Parties' attempt to include them is entirely improper.

## C. Any Probative Value of the Letters Is Outweighed by the Risk of Prejudice and Confusion

25.     Even if the Court finds the Letters are (a) relevant, and (b) admissible hearsay, the Letters should be stricken from the record under Federal Rule of Evidence 403 because their probative value is substantially outweighed by the danger of confusion and unfair prejudice.  *See* FED. R. EVID. 403 (providing that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

26.     There is a substantial risk of unfair prejudice if the Letters are included in the record.  The Letters are a one-sided, purposefully skewed, and factually inaccurate portrayal of certain events that Highland vigorously disputes.  Unless the Court is prepared to engage in a mini-trial over the substance and accuracy of the Letters, Highland will be substantially prejudiced by the inclusion in the record of counsel's arguments masquerading as facts.

---

[8] *See* Supplemental Motion at 5-6, n.26 (suggesting that the "lack of transparency pervading the HCMLP bankruptcy" was evident on February 3, 2021, and somehow "prompted" the Lawyers to send the Letters nine (9) and fifteen (15) months later, respectively).

011848

27.     There is a substantial risk of confusion if the Letters are included in the record.  The evidence in the Supplemental Motion should only address the Court's conduct.  Yet the Letters address alleged wrongdoing by the then-Debtor, Mr. Seery, and others.  The Court should limit the evidence to facts concerning its own conduct, not the conduct of others, so that there is no confusion about the relevant issues at hand.

### D. **Alternatively, the Lawyers Should Be Compelled to Testify in Order to Mitigate the Prejudice to Highland**

28.     If, for whatever reason, the Court is willing to consider admitting the Letters into the record, it should (a) reserve judgment for the time being, (b) order the Lawyers to appear for deposition so that their allegations in the Letters can be tested and the prejudice to Highland mitigated, and (c) accept the transcripts of the Lawyers' deposition into evidence if it decides to admit the Letters into evidence.

### CONCLUSION

29.     For the foregoing reasons, Highland respectfully requests that this Court (a) strike the Letters from the Dondero Parties' Appendix, or (b) alternatively, direct the Lawyers to appear for depositions concerning the substance of their Letters, and (c) grant Highland such other relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

DOCS_NY:46283.5 36027/003

011849

Dated: August 15, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:      jpomerantz@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com
            hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:46283.5 36027/003

011850

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that, between July 26 and August 5, 2022, Highland's counsel corresponded with the Dondero Parties' counsel regarding the relief requested in the foregoing Motion. Based on the email exchange between Highland's counsel and the Dondero Parties' counsel, the relief requested in the Motion is **OPPOSED** by the Dondero Parties.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

DOCS_NY:46283.5 36027/003

011851

# EXHIBIT A

011852

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

**ORDER GRANTING HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO (A)
STRIKE LETTERS ATTACHED TO APPENDIX IN SUPPORT OF THE DONDERO
PARTIES' SUPPLEMENTAL RECUSAL MOTION [DOCKET NO. 3406], OR, (B)
ALTERNATIVELY, TO COMPEL THE LAWYERS' DEPOSITIONS**

Having considered (a) *Highland Capital Management, L.P.'s  Motion to (a) Strike Letters
Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket
No. 3406], or, (b) Alternatively, to Compel the Lawyers' Depositions* [Docket No. ___] (the
"Motion")[2] filed by Highland Capital Management L.P. ("Highland"), the reorganized debtor in

---

[1]  The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

[2]  Capitalized terms not defined herein shall take on the meanings ascribed to them in the Motion.

011853

the above-captioned chapter 11 case (the "Bankruptcy Case"); (b) the *Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion to (a) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (b) Alternatively, to Compel the Lawyers' Depositions* [Docket No. __] (the "Morris Declaration"); (c) the exhibit attached to the Morris Declaration; and (d) all prior proceedings relating to this matter; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that Highland's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED THAT**:

1.   The Motion is **GRANTED** as set forth herein.

2.   The Letters are hereby **STRICKEN**, and the Dondero Parties are directed to refile their Appendix in support of the Supplemental Motion without the Letters.

3.   The Court shall retain exclusive jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

###End of Order###

2

011854

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |

## DECLARATION OF JOHN A. MORRIS IN SUPPORT OF HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO (A) STRIKE LETTERS ATTACHED TO APPENDIX IN SUPPORT OF THE DONDERO PARTIES' SUPPLEMENTAL RECUSAL MOTION [DOCKET NO. 3406], OR, (B) ALTERNATIVELY, TO COMPEL THE LAWYERS' DEPOSITIONS

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

I, John A. Morris, pursuant to 28 U.S.C. § 1746, under penalty of perjury, declare as follows:

1.      I am an attorney in the law firm of Pachulski, Stang, Ziehl & Jones LLP, counsel to Highland Capital Management, L.P. ("Highland"), the reorganized debtor in the above-captioned chapter 11 case (the "Bankruptcy Case").  I submit this Declaration in support of *Highland Capital Management, L.P.'s Motion to (a) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (b) Alternatively, to Compel the Lawyers' Depositions* (the "Motion").  I submit this Declaration based on my personal knowledge and review of the document listed below.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of email communications between myself, as counsel to Highland, and Michael Lang ("Mr. Lang"), as counsel to James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC (collectively, the "Dondero Parties"), sent between July 26, 2022 and August 5, 2022, in which I demanded that the Dondero Parties withdraw three letters (the "Letters") from the appendix [Docket No. 3406-1] (the "Appendix") filed by the Dondero Parties' in support of their *Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* and *Brief in Support* [Docket No. 3406] (the "Supplemental Motion") on the grounds that the Letters are hearsay and contain substantial and material errors and omissions.

3.      On or about August 3, 2022, Mr. Lang and I conferred telephonically.  During this call, I explained that the Letters were hearsay and that Highland should not have the burden of rebutting and correcting a litany of errors and omissions on a recusal motion, but that if the Dondero Parties refused to withdraw the Letters, Highland would seek to depose the authors of the

Letters (Douglas Draper and Davor Rukavina, together, the "Lawyers") who represent certain of

the Dondero Parties.  In response, Mr. Lang explained that the Dondero Parties did not intend to

offer the Letters to prove the truth of the matters asserted, but only to establish that the Letters

were actually sent, purportedly in accordance with the Court's guidance.  To resolve the issue, I

offered to stipulate that the Letters were sent if the Dondero Parties agreed to withdraw them from

the evidentiary record.

      4.      As shown on **Exhibit 1**, after Mr. Lang rejected Highland's offer of a stipulation,

Highland sought the depositions the Lawyers who represent certain of the Dondero Parties.

      5.      The Dondero Parties ignored Highland's request for the depositions.

Dated:  August 15, 2022.

                        */s/ John A. Morris*
                        John A. Morris

DOCS_NY:46283.5 36027/003

011857

# EXHIBIT 1

011858

**From:** John A. Morris
**Sent:** Friday, August 5, 2022 3:39 PM
**To:** Michael Lang <mlang@cwl.law>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Re: Highland: Demand for Removal of Letters from Appendix

Will you make Mr. Draper and Mr. Rukavina available for depositions next?

I am available 8/11 and 8/12.  Would agree to limit each to four hours.

Please let me know if that will resolve the dispute.

Thanks.

John

Sent from my iPhone

> On Aug 5, 2022, at 3:19 PM, Michael Lang <mlang@cwl.law> wrote:
>
>  John- I'm afraid we cannot agree. We do agree that we aren't offering the letters for the truth of what's in them. Obviously you need to do what you feel you need to do.
>
> I'll give you a call late next week to see if we can have some agreement on our objective to get this issue into a final, appealable order.
>
> Have a good weekend,
>
> Michael

 **Michael Lang**
Crawford, Wishnew & Lang PLLC
D: +1(214)-817-4503 | M: 214-235-3986 | mlang@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201


> On Aug 5, 2022, at 2:05 PM, John A. Morris <jmorris@pszjlaw.com> wrote:
>
> Michael,
>
> Following up.

1

011859

I need a final answer as to whether you will withdraw the attorney letters in exchange for a stipulation that proves the point that you said your client was interested in making: that they followed the court's advice and sent the letters.

If we don't have an agreement by COB, we'll prepare and file our motion to strike.

Have a good weekend.

John

Sent from my iPhone

On Jul 30, 2022, at 9:46 AM, Michael Lang <mlang@cwl.law> wrote:

Good. Thanks, John. I'll give you a call next week to discuss the letters/exhibits.

[photo]

Michael Lang
Crawford, Wishnew & Lang PLLC
D: +1(214)-817-4503<tel:D:%20+1(214)-817-4503> | M: 214-235-3986<tel:M:%20214-235-3986> | mlang@cwl.law<mailto:mlang@cwl.law>

www.cwl.law<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.cwl.law&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100343399&sdata=GTb1Iuvs4bXt44z4QgS%2FU%2Bas13OG%2BXhmsZ0MWpLzNtE%3D&reserved=0>

1700 Pacific Ave., Suite 2390 Dallas, Texas 75201<x-apple-data-detectors://0/5>

[https://dn3tzca2xtljm.cloudfront.net/social_icons/16px/facebook.png]<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.facebook.com%2FCWL.law%2F&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100343399&sdata=F2WNrkxsc8vsjd85dYZXuq0raDsma1LBA2gGQ0fKJlA%3D&reserved=0>

[https://dn3tzca2xtljm.cloudfront.net/social_icons/16px/linkedin.png]<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.linkedin.com%2Fcompany%2Fcwl.law%2F&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100343399&sdata=azgpmWsBJ9IS5DSIkAlJmZtYE48uBG3OI99ZdSufw98%3D&reserved=0>

[https://dn3tzca2xtljm.cloudfront.net/social_icons/16px/twitter.png]<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Ftwitter.com%2FCWL_law&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100

011860

343399&sdata=FlTshkHDPUH8Ghs%2BnUmwoPSvi25SRCgXuacCXCKVsYM
%3D&reserved=0>

On Jul 30, 2022, at 8:09 AM, John A. Morris <jmorris@pszjlaw.com> wrote:

Michael:

Confirming the schedule as follows:

8/3      Movants respond to "attorney letter" issue raised below
8/15     HCMLP files response to motion
8/22     Movants file reply
8/31     Argument (9:30 am Central Time – you will file notice on the docket)

Good?

John

John A. Morris
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com<mailto:jmorris@pszjlaw.com>
vCard<http://www.pszjlaw.com/vcard-91.vcf> |
Bio<http://www.pszjlaw.com/attorneys-john-morris.html> |
LinkedIn<https://www.linkedin.com/in/john-morris-a52417a>

[image001.jpg]
Los Angeles | San Francisco | Wilmington, DE | New York | Houston

From: Michael Lang [mailto:mlang@cwl.law]
Sent: Friday, July 29, 2022 12:45 PM
To: John A. Morris <jmorris@pszjlaw.com>
Subject: Re: Highland: Demand for Removal of Letters from Appendix

John - please call me Michael. I received your email, but have been tied up in 2
pre-trials this week, so I haven't had a chance to confer with my client. I'll get
back to you by Wednesday.
[photo]

3

011861

Michael Lang

Crawford, Wishnew & Lang PLLC

D: +1(214)-817-4503<tel:D:%20+1(214)-817-4503> | M: 214-235-3986<tel:M:%20214-235-3986> | mlang@cwl.law<mailto:mlang@cwl.law>

www.cwl.law<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.cwl.law&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100343399&sdata=GTb1Iuvs4bXt44z4QgS%2FU%2Bas13OG%2BXhmsZ0MWpLzNtE%3D&reserved=0>

1700 Pacific Ave., Suite 2390 Dallas, Texas 75201<x-apple-data-detectors://0/5>

[https://dn3tzca2xtljm.cloudfront.net/social_icons/16px/facebook.png]<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.facebook.com%2FCWL.law%2F&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100343399&sdata=F2WNrkxsc8vsjd85dYZXuq0raDsma1LBA2gGQ0fKJlA%3D&reserved=0>

[https://dn3tzca2xtljm.cloudfront.net/social_icons/16px/linkedin.png]<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.linkedin.com%2Fcompany%2Fcwl.law%2F&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100343399&sdata=azgpmWsBJ9IS5DSIkAlJmZtYE48uBG3OI99ZdSufw98%3D&reserved=0>

[https://dn3tzca2xtljm.cloudfront.net/social_icons/16px/twitter.png]<https://na01.safelinks.protection.outlook.com/?url=http%3A%2F%2Ftwitter.com%2FCWL_law&data=02%7C01%7Cmlang%40cwl.law%7C5d82810654de4e48b8bb08d672845a71%7C336d759ca38646f18a2810417aad6c24%7C0%7C0%7C636822310100343399&sdata=FlTshkHDPUH8Ghs%2BnUmwoPSvi25SRCgXuacCXCKVsYM%3D&reserved=0>

On Jul 26, 2022, at 12:44 PM, John A. Morris <jmorris@pszjlaw.com<mailto:jmorris@pszjlaw.com>> wrote:

Dear Mr. Lang:

As you know, we represent Highland Capital Management, L.P. ("HCMLP") and we write with respect to your clients' (together, the "Movants") recent motion for a final appealable order and supplement to their earlier-filed recusal motion (the

4

011862

"Motion").  Docket No. 3405.

The Movants included in their Appendix three letters (together, the "Letters")
from their lawyers (Douglas Draper and Davor Rukavina) that were sent to the
Office of General Counsel, Executive Office for U.S. Trustees.  See Exhibits 35,
36, and 37.

The Letters are rank hearsay (and contain substantial and material errors and
omissions) and have no place in the evidentiary record.  HCMLP demands that
the Movants immediately withdraw the Letters from their Appendix.  If the
Movants refuse to do so, HCMLP will promptly move to strike or, alternatively,
seek leave to depose Messrs. Draper and Rukavina.

Please let us know by the close of business on Friday, July 29, whether the
Movants will withdraw the Letters from their Appendix.

Regards,

John
John A. Morris
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com<mailto:jmorris@pszjlaw.com>
vCard<http://www.pszjlaw.com/vcard-91.vcf> |
Bio<http://www.pszjlaw.com/attorneys-john-morris.html> |
LinkedIn<https://www.linkedin.com/in/john-morris-a52417a>

[image001.jpg]
Los Angeles | San Francisco | Wilmington, DE | New York | Houston

011863

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for the Reorganized Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
|  | § |  |
| Reorganized Debtor. | § |  |

## <u>NOTICE OF HEARING</u>

**PLEASE TAKE NOTICE** that the following matters are scheduled for hearing on

**<u>Wednesday, August 31, 2022, at 9:30 a.m. (Central Time)</u>** (the "Hearing") in the above-captioned

bankruptcy case (the "Bankruptcy Case"):

> 1. *Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion*

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are 8357. The headquarters and service address for the Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

*[Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' Depositions* [Docket No. 3446] (the "Motion to Strike"); and

2. *Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' Depositions* [Docket No. 3449] (the "Motion to Compel", and together with the Motion to Strike, the "Motions").

The Hearing on the Motions will be a hybrid hearing, meaning that parties may appear in person OR via WebEx videoconference before The Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge.

Parties wishing to appear in person at the Hearing may do so at the United States Bankruptcy Court for the Northern District of Texas (Dallas Division), Earle Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom No. 1, Dallas, Texas 75242-1496.

For those parties wishing to appear via WebEx, the WebEx video participation/attendance link for the Hearing is: https://us-courts.webex.com/meet/jerniga. A copy of the WebEx Hearing Instructions for the Hearing is attached hereto as **Exhibit A**; alternatively, the WebEx Hearing Instructions for the Hearing may be obtained from Judge Jernigan's hearing/calendar site at: https://www.txnb.uscourts.gov/judges-info/hearing-dates/judge-jernigans-hearing-dates.

Any response (each, a "Response") to the relief requested in the Motions shall be filed with the Clerk of the Court on or before **Thursday, August 25, 2022, at 5:00 p.m. (Central Time)** (the "Response Deadline").

The Reorganized Debtor may file a reply (each, a "Reply") to any Response. Any Reply shall be filed with the Clerk of the Court on or before **Monday, August 29, 2022, at 5:00 p.m. (Central Time)** (the "Reply Deadline").

*[Remainder of Page Intentionally Left Blank]*

011865

Dated: August 17, 2022.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Reorganized Debtor*

011866

# EXHIBIT A

011867

**WebEx Hearing Instructions**

## Judge Stacey G. Jernigan

Pursuant to General Order 2020-14 issued by the Court on May 20, 2020, all hearings before Judge Stacey G. Jernigan are currently being conducted by WebEx videoconference unless ordered otherwise.

**For WebEx Video Participation/Attendance**:

Link:    https://us-courts.webex.com/meet/jerniga

**For WebEx Telephonic Only Participation/Attendance**:

Dial-In: 1.650.479.3207
Meeting ID: 479 393 582

**Participation/Attendance Requirements:**

- Counsel and other parties in interest who plan to actively participate in the hearing are encouraged to attend the hearing in the WebEx video mode using the WebEx video link above.  Counsel and other parties in interest who not be seeking to introduce any evidence at the hearing and who wish to attend the hearing in a telephonic only mode may attend the hearing in the WebEx telephonic only mode using the WebEx dial-in and meeting ID above.

- Attendees should join the WebEx hearing at least 10 minutes prior to the hearing start time.  Please be advised that a hearing may already be in progress.  During hearings, participants are required to keep their lines on mute at all times that they are not addressing the Court or otherwise actively participating in the hearing.  **The Court reserves the right to disconnect or place on permanent mute any attendee that causes any disruption to the proceedings**.  For general information and tips with respect to WebEx participation and attendance, please see Clerk's Notice 20-04: https://www.txnb.uscourts.gov/sites/txnb/files/hearings/Webex%20Information%20and%20Tips_0.pdf

- **Witnesses are required to attend the hearing in the WebEx video mode and live testimony will only be accepted from witnesses who have the WebEx video function activated**.  Telephonic testimony without accompanying video will not be accepted by the Court.

- All WebEx hearing attendees are required to comply with Judge Jernigan's Telephonic and Videoconference Hearing Policy (included within Judge Jernigan's Judge-Specific Guidelines):  https://www.txnb.uscourts.gov/content/judge-stacey-g-c-jernigan

**Exhibit Requirements**:

- Any party intending to introduce documentary evidence at the hearing must file an exhibit list in the case with a true and correct copy of each designated exhibit filed as a separate, individual attachment thereto so that the Court and all participants have ready access to all designated exhibits.

- If the number of pages of such exhibits exceeds 100, then such party must also deliver two (2) sets of such exhibits in exhibit binders to the Court by no later than twenty-four (24) hours in advance of the hearing.

**Notice of Hearing Content and Filing Requirements:**

IMPORTANT: For all hearings that will be conducted by WebEx only:

- The Notice of Hearing filed in the case and served on parties in interest must: (1) provide notice that the hearing will be conducted by WebEx videoconference only, (2) provide notice of the above WebEx video participation/attendance link, and (3) attach a copy of these WebEx Hearing Instructions or provide notice that they may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/judge-jernigans-hearing-dates.

- When electronically filing the Notice of Hearing via CM/ECF select "at https://us-courts.webex.com/meet/jerniga" as the location of the hearing (note: this option appears immediately after the first set of Wichita Falls locations).  Do not select Judge Jernigan's Dallas courtroom as the location for the hearing.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., THE DUGABOY INVESTMENT TRUST, THE GET GOOD TRUST, and NEXPOINT REAL ESTATE PARTNERS, LLC, F/K/A HCRE PARTNERS, LLC, A DELAWARE LIMITED LIABILITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR REPLY IN SUPPORT OF MOTION FOR FINAL APPEALABLE ORDER AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR FINAL
APPEALABLE ORDER AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT
TO 28 U.S.C. § 455**

Defendants James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint

Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate

Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware limited liability company (collectively,

"Movants") file this Reply ("Reply") in Support of Their Motion for Final Appealable Order and

Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 (the "Motion and Supplement") and, in support thereof, would respectfully show the Court as follows:

On August 15, 2022, Highland Capital Management, L.P. ("Highland") filed an objection to the Motion and Supplement (the "Objection").

**First**, contrary to the Highland's stated belief, Movants are not asking this Court to "dictate" to the District Court or to "declare" the order appealable. As stated in the Motion and Supplement, on appeal, the District Court raised an issue with certain "reservation language" in the Court's order on Movants' Original Motion to Recuse (the "Original Recusal Order").

As a result, the request in the Motion and Supplement was simply for this Court to: (1) remove the "reservation language" in the Original Recusal Order; and (2) enter a final order on the Motion to Recuse. In response to the District Court raising questions regarding the finality of this Court's order due to the "reservation language," Movants requested the District Court to consider the appeal a petition for writ of mandamus. The District Court "refuse[d] to construe [Movants'] appeal as a petition for writ of mandamus" but did not rule on the merits of a mandamus. Movants seek this Court's clarification to that this Court has, in fact, made its final determination regarding the recusal issues so that there is no argument against other avenues for appeal, such as mandamus.[1]

**Second**, Movants' Supplement to the Original Recusal Motion is not procedurally improper, and Movants were not required to expressly invoke FRCP 54(b) in order to request this Court consider the information and evidence presented in the Supplement while amending its Original Recusal Order to remove the "reservation language." In fact, neither Rule 54 itself nor *Austin v. Kroger Tex., L.P.* require a movant to expressly state that a motion is being filed "under

---

[1] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997)

Rule 54" or cite the rule in the briefing. Instead, Rule 54 gives this Court discretion to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[2]

Here, Movants did not ask this Court to reconsider the Original Recusal Order. Instead, Movants filed supplemental examples supporting the merits of their position and Movants requested the Court, "after considering the Original Recusal Motion and this Supplement thereto, enter a final, appealable order on this issue." Notably, Movants do not believe or expect that the Court will reach a different decision on the merits of the recusal issue. However, to the extent necessary, Movants seek to have this Court reconsider the Motion in light of any supplemental material and amend the order to make it final, pursuant to FRCP 54.

*Third*, Movants disagree that the evidence in the Supplement is irrelevant to recusal merely because it includes court rulings and statements on the record. As thoroughly briefed in the Original Recusal Motion, such evidence can support a finding of bias, prejudice and lack of impartiality. Although judicial rulings and comments standing alone *rarely* will suffice to disqualify a judge,[3] and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, *ordinarily* do not support a bias or partiality challenge," remarks *will* require disqualification "if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."[4]

Here, all but one of the 10 exhibits Movants seek to include are dated after Movants filed the Motion to Recuse and the Original Recusal Order. Movants are merely supplementing the

---

[2] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing FED. R. CIV. P. 54(b)), abrogated on other grounds, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc).
[3] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997) (citing *Litecky v. U.S.*, 510 U.S. 540 (1994)) (emphasis added).
[4] *Id.* (quoting *Litecky*, 510 U.S. at 555) (emphasis added).

record to support Movants' position that this Court holds a high degree of favoritism or antagonism as to make fair judgment impossible.

**Fourth**, the Supplement is not untimely. While the Court has overseen the bankruptcy and entered orders since the District Court's ruling in February 2022, there is no prejudice for any purported delay. If on appeal, it is found that this Court should have recused itself, any orders entered after this Court ruled on the Original Recusal Motion (March 23, 2021) should be vacated.[5] As a result, whether orders have been entered between the time the Original Recusal Order was entered and the Supplement was filed (or even thereafter) is irrelevant.

**Finally**, immediate review of this Court's determination of the recusal matters is the most efficient and economical way to put this issue to bed. The sooner this issue is reviewed on appeal and ruled upon, the better it is for all parties involved. As a result, Movants respectfully request the Court, after considering the Original Recusal Motion and the Supplement thereto, enter a final order on this issue.

Dated: August 22, 2022                    Respectfully submitted,

                                          **CRAWFORD, WISHNEW & LANG PLLC**

                                          */s/ Michael J. Lang*
                                          Michael J. Lang
                                          Texas State Bar No. 24036944
                                          mlang@cwl.law
                                          1700 Pacific Ave, Suite 2390
                                          Dallas, Texas 75201
                                          Telephone: (214) 817-4500

                                          *Attorneys for Movants James Dondero, The*
                                          *Dugaboy Investment Trust, and Get Good*
                                          *Trust; Highland Capital Management Fund*
                                          *Advisors, L.P., NexPoint Advisors, L.P, and*

---

[5] *Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1028 (5th Cir. 1998).

011872

*NexPoint Real Estate Partners, LLC, f/k/a*
*HCRE Partners, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on August 22, 2022, a true and correct copy of the above

and foregoing document was served on all parties and counsel set to receive notice by the Court's

ECF system.

/s/ *Michael J. Lang*
Michael J. Lang

CRAWFORD, WISHNEW & LANG PLLC
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Movants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | |

### AMENDED NOTICE OF HEARING ON: (A) THE "MOTION FOR FINAL APPEALABLE ORDER AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455" [DE #3406]; AND (B) RELATED MOTIONS TO STRIKE AND COMPEL [DE ## 3446 & 3449]

PLEASE TAKE NOTICE that, pursuant to the Court's August 19, 2022 Order Converting the August 31, 2022 @ 9:30 A.M. Hearing [DE #3462], the Court will hold a **preliminary status conference/scheduling conference** on the *Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* [DE #3406] (the "Motion for Final Order and Supplement") and *Highland's Objection to Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* [DE #3444] (the "Objection") on **Wednesday, August 31, 2022 at 9:30 a.m. (Central Time)** (the "Hearing").

The Hearing ***will be via WebEx videoconference*** before the Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge. The WebEx video participation/attendance link for the Hearing is: https://us-courts.webex.com/meet/jerniga.

1

011874

A copy of the WebEx Hearing Instructions for the Hearing is attached hereto as Exhibit A; alternatively, the WebEx Hearing Instructions for the Hearing may be obtained from Judge Jernigan's hearing/calendar site at: https://www.txnb.uscourts.gov/judges-info/hearingdates/judgejernigans-hearing-dates.

Dated: August 24, 2022.                    Respectfully submitted,

                                           **CRAWFORD, WISHNEW & LANG PLLC**

                                           */s/ Michael J. Lang*
                                           Michael J. Lang
                                           Texas State Bar No. 24036944
                                           mlang@cwl.law
                                           1700 Pacific Ave, Suite 2390
                                           Dallas, Texas 75201
                                           Telephone: (214) 817-4500

                                           ***Counsel for Movants***


## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 24, 2022, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

                                           */s/ Michael J. Lang*
                                           Michael J. Lang

011875

**WebEx Hearing Instructions**
**Judge Stacey G. Jernigan**

Pursuant to General Order 2020-14 issued by the Court on May 20, 2020, all hearings before Judge Stacey G. Jernigan are currently being conducted by WebEx videoconference unless ordered otherwise.

**For WebEx Video Participation/Attendance**:

Link:   https://us-courts.webex.com/meet/jerniga

**For WebEx Telephonic Only Participation/Attendance**:

Dial-In: 1.650.479.3207
Meeting ID: 479 393 582

**Participation/Attendance Requirements:**

- Counsel and other parties in interest who plan to actively participate in the hearing are encouraged to attend the hearing in the WebEx video mode using the WebEx video link above. Counsel and other parties in interest who will not be seeking to introduce any evidence at the hearing and who wish to attend the hearing in a telephonic only mode may attend the hearing in the WebEx telephonic only mode using the WebEx dial-in and meeting ID above.

- Attendees should join the WebEx hearing at least 10 minutes prior to the hearing start time. Please be advised that a hearing may already be in progress. During hearings, participants are required to keep their lines on mute at all times that they are not addressing the Court or otherwise actively participating in the hearing. **The Court reserves the right to disconnect or place on permanent mute any attendee that causes any disruption to the proceedings**. For general information and tips with respect to WebEx participation and attendance, please see Clerk's Notice 20-04: https://www.txnb.uscourts.gov/sites/txnb/files/hearings/Webex%20Information%20and%20Tips_0.pdf

- **Witnesses are required to attend the hearing in the WebEx video mode and live testimony will only be accepted from witnesses who have the WebEx video function activated**. Telephonic testimony without accompanying video will not be accepted by the Court.

- All WebEx hearing attendees are required to comply with Judge Jernigan's Telephonic and Videoconference Hearing Policy (included within Judge Jernigan's Judge-Specific Guidelines): https://www.txnb.uscourts.gov/content/judge-stacey-g-c-jernigan

**Exhibit Requirements**:

- Any party intending to introduce documentary evidence at the hearing must file an exhibit list in the case with a true and correct copy of each designated exhibit filed as a separate, individual attachment thereto so that the Court and all participants have ready access to all designated exhibits.

- If the number of pages of such exhibits exceeds 100, then such party must also deliver two (2) sets of such exhibits in exhibit binders to the Court by no later than twenty-four (24) hours in advance of the hearing.

**Notice of Hearing Content and Filing Requirements:**

IMPORTANT: For all hearings that will be conducted by WebEx only:

- The Notice of Hearing filed in the case and served on parties in interest must: (1) provide notice that the hearing will be conducted by WebEx videoconference only, (2) provide notice of the above WebEx video participation/attendance link, and (3) attach a copy of these WebEx Hearing Instructions or provide notice that they may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/judge-jernigans-hearing-dates.

- When electronically filing the Notice of Hearing via CM/ECF select "at https://us-courts.webex.com/meet/jerniga as the location of the hearing (note: this option appears immediately after the first set of Wichita Falls locations). Do not select Judge Jernigan's Dallas courtroom as the location for the hearing.

CRAWFORD, WISHNEW & LANG PLLC
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Movants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | |

**JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, and NEXPOINT REAL ESTATE PARTNERS, LLC, F/K/A HCRE PARTNERS, LLC, A DELAWARE LIMITED LIABILITY COMPANY'S AMENDED MOTION FOR FINAL APPEALABLE ORDER AND SUPPLEMENT TO MOTION TO <u>RECUSE PURSUANT TO 28 U.S.C. § 455 AND BRIEF IN SUPPORT</u>**

Pursuant to 28 U.S.C. § 455 and FEDERAL RULE OF BANKRUPTCY PROCEDURE 5004, Defendants James Dondero ("<u>Mr. Dondero</u>"), Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware limited liability company (collectively the "<u>Affected Parties</u>") (Mr. Dondero and the Affected Parties are collectively referred to herein as "<u>Movants</u>") file this *Amended Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* and *Brief in Support* and, in support thereof, would respectfully show the Court as follows:

011877

1.      Movants previously sought to recuse the Presiding Judge (hereinafter, the "Court") in this bankruptcy proceeding (the "Bankruptcy") (the "Original Recusal Motion").[1]

2.      As detailed in the Original Recusal Motion, 28 U.S.C. § 455 requires a judge to be recused if the judge "has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding," or when the court's "impartiality might reasonably be questioned."[2] This is true, even where the judge does not actually have personal bias or prejudice.[3] The provisions of section 455 afford separate, overlapping grounds for recusal.[4]

3.      "[Recusal] claims are fact-driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by a comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue."[5] The test for recusal is not whether the judge believes he or she is capable of impartiality or whether the judge possesses actual bias (or knows of grounds requiring recusal).[6] Instead, the test is whether the "'average person on the street who knows all the relevant facts of a case'" **might reasonably question** the judge's impartiality.[7] As Congress recognized when enacting section 455, litigants "ought not have to face a judge where there is a

---

[1] The Original Recusal Motion and Brief in Support (*see* Bankr. Dkt. No. 2060-2061), along with all allegations and arguments set forth therein, as well as all evidence referenced therein and attached thereto via Movants' Appendix (*see* Bankr. Dkt. No. 2062), are incorporated by reference into this Supplement as if fully set forth herein and attached hereto. References to **Exs. 1-30** and App'x. 0001-2719 refer to the exhibits included in the Appendix to the Original Recusal Motion.

[2] 28 U.S.C. § 455(a)-(b)(1).

[3] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850 (2001); *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).

[4] *Andrade*, 338 F.3d at 454.

[5] Bankr. Dkt. No. 2083 at 6.

[6] *See Burke v. Regolado*, 935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted); *Liljeberg*, 486 U.S. at 805.

[7] *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996).

011878

reasonable question of impartiality."[8] At its core, this statutory provision was "designed to promote public confidence in the impartiality of the judicial process."[9]

4.       Importantly, litigants are entitled to a full and fair opportunity to make their case in an impartial forum—regardless of their history with that forum.[10] "Fundamental to the judiciary is the public's confidence in the impartiality of [its] judges and the proceedings over which they preside."[11] Thus, "justice must satisfy the appearance of justice."[12] For this reason, the Fifth Circuit has held that "[i]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal."[13] Although "[t]he judge can himself decide whether the claim asserted is within § 455, if it is, then a disinterested judge must decide what the facts are."[14]

5.       Notably, while "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," the Supreme Court has held that predispositions developed during the course of a trial can suffice to demonstrate the requisite bias or prejudice if the opinions "***reveal such a high degree of favoritism or antagonism as to make fair judgment impossible***."[15]

6.       Here, the Court denied the Original Recusal Motion (the "<u>Original Recusal Order</u>"). On appeal of the Original Recusal Order to the Northern District of Texas, Judge Kinkeade dismissed the appeal, holding that the Original Recusal Order was non-final and non-appealable.[16] In doing

---

[8] H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 6351, 6355.

[9] *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (quoting H.R. Rep. No. 1453); *Liljeberg*, 486 U.S. at 859-60.

[10] *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021) (citing *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)).

[11] *Id.*

[12] *Id.* (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

[13] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997).

[14] *In re Parson*, No. 15-30080-BJH, 2018 WL 1452295, at *4 (Bankr. N.D. Tex. Mar. 22, 2018) (citing *In Levitt v. University of Texas*, 847 F.2d 221, 226 (5th Cir. 1988)).

[15] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted) (emphasis added).

[16] *See* **Ex. 34** (App'x. 2829-2842), Dkt. No. 39 in Cause No. 3:21-cv-00879-K, the Memorandum Opinion and Order,

so, Judge Kinkeade pointed to language in the Court's Original Recusal Order in which the Court expressly "reserve[d] the right to amend or supplement" its ruling.[17] Consequently, Movants have never had their arguments for recusal substantively considered by any appellate court.

7.      Obtaining final appellate review of the Original Recusal Motion and Original Recusal Order is important, not only because this Court continues to preside over the underlying Bankruptcy proceedings, but also because there is a new, significant proceeding (that is in its nascent stages), where it is imperative for Movants to get fair and unbiased treatment.  In particular, since the Court's Original Recusal Order, Marc S. Kirschner, as Trustee for the Litigation Sub-Trust ("Mr. Kirschner"), has filed a voluminous adversary proceeding against Mr. Dondero and several of the Movants, in which Mr. Kirschner seeks hundreds of millions of dollars of damages (the "Kirschner Litigation").[18]  And the Court's appearance of bias has not dissipated in the wake of the Original Recusal Motion or Original Recusal Order.

8.      Therefore, to preserve their record for appeal and to ensure that all potential grounds for recusal may be considered by an appellate court, Movants hereby supplement the Original Recusal Motion with the following additional examples of actions taken and statements made by the Court (several of which occurred following the filing of the Original Recusal Motion) to further support the relief requested in the Original Recusal Motion:

- On June 10, 2021, after Movants moved to withdraw the reference, the Court *sua sponte* recommended that Debtor file fraudulent transfer claims, suggesting that those might affect the reference from being withdrawn.[19]

---

a true and correct courtesy copy of which is included in the Appendix to this Supplement.

[17] *Id.* at 2 (App'x. 2830); *see also* Bankr. Dkt. No. 2083 at 10-11.

[18] Many of the defendants in the Kirschner Litigation moved to withdraw the reference for the adversary proceeding. This Court issued a Report and Recommendation in which it agreed the reference should be withdrawn for trial but recommended that the Court retain the case for all pre-trial purposes. The moving defendants have objected to the Court's Report and Recommendation, and those objections remain pending before the District Court.

[19] **Ex. 31** (App'x. 2720-2810), June 10, 2021 Hearing Transcript, at 81:5-16 (App'x. 2804) and 83:1-12 (App'x. 2802), a true and correct copy of which is included in the Appendix to this Supplement.

011880

- The Court refused to grant The Dugaboy Investment Trust's motion to compel Debtor to file the "periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or debtor . . . in which the estate holds a substantial or controlling interest" as required by Fed. R. Bankr. P. 2015.3(a).[20] The Court raised concerns that the statutorily required information might be used to "cobble together a new adversary alleging mismanagement" against Debtor[21] and did not grant the motion because, among other things, it would be unduly burdensome.[22]

- The Court entered a *sua sponte* order questioning Movants' standing to object to various settlements and actions involved in the handling of the Estate.[23] The Court ordered any party it perceives to be related to Mr. Dondero (in some instances, despite evidence that no such relationship exists) to disclose: (1) its ownership structure, (2) Mr. Dondero's ownership interest, (3) its managers, officers, and directors, and (4) the basis for the entity's assertion of its status as a creditor with standing.[24]

- The Court ruled that Highland Capital Management, L.P. ("HCMLP") was not required to comply with 11 U.S.C. § 363, even when the transaction at issue involved the sale of a subsidiary. Concurrently, the Court denied Mr. Dondero's request for notice of major, outside-the-ordinary course sales of assets by HCMLP.[25]

- The Court failed to require any reporting by HCMLP or its management during the course of the Bankruptcy, effectively obfuscating the public's ability to ascertain the value of the Estate and fatally undermining public accountability.[26]

- The Court enjoined non-parties from communicating with Mr. Dondero. When the non-parties' counsel later objected to this order as improper, the Court enjoined Mr. Dondero from communicating with non-parties in direct violation of his First

---

[20] *Id*. at 49:12-14 (App'x. 2768).

[21] *Id*. at 46:11-13 (App'x. 2765).

[22] *Id*. at 49:12-51:3 (App'x. 2768-2770).

[23] *See* **Ex. 33** (App'x. 2816-2828), the June 17, 2021 Order, at p. 1 (App'x. 2816), a true and correct copy of which is included in the Appendix to this Supplement ("This Order is issued by the court *sua sponte* pursuant to Section 105 of the Bankruptcy Code and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties who ask for relief in the above referenced case. More specifically, the Order is directed at clarifying the party-in-interest status or standing of numerous parties who are regularly filing pleadings in the above-referenced 20-month-old Chapter 11 bankruptcy case."); *see also* **Ex. 38** (App'x. 3045-3049), January 14, 2021 Hearing Transcript at 22:24-24:12 (App'x. 3046-3048), a true and correct copy of which is included in the Appendix to this Supplement.

[24] **Ex. 31** (App'x. 2720-2810), June 10, 2021 Hearing Transcript and **Ex. 33** (App'x. 2816-2828), the June 17, 2021 Order at 12-13 (App'x. 2827-2828).

[25] **Ex. 32** (App'x. 2811-2815), Dec. 10, 2020 Hearing Transcript at 36:1-37:21 (App'x. 2813-2814) and 57:1-15 (App'x. 2815), a true and correct copy of which is included in the Appendix to this Supplement.

[26] **Ex. 26** (App'x. 2441-2697), Feb. 3, 2021 Hearing Transcript at 49:5-24 (App'x. 2489); *see also* Bankr. Dkt. No. 2812.

011881

Amendment rights.[27]

- The Court held Mr. Dondero in contempt for actions taken in the Bankruptcy by CLO Holdco, while at the same time acknowledging that Mr. Dondero is not an agent of CLO Holdco.[28] The Court justified its order by generically commenting that Mr. Dondero "sparked the fire."[29] Despite the fact that the invoices submitted by HCMLP's counsel show that it only incurred $38,796.50 in connection with the civil contempt motion, the Court ordered the DAF, CLO Holdco, Sbaiti & Co. (including Mazin Sbaiti and Jonathan Bridges individually), Mark Patrick, and Mr. Dondero to pay *$239,655* to HCMLP as a result of their contempt.[30] Worse still, the Court tacked on an additional monetary sanction of $100,000 to be paid by any individual or entity that chose to appeal the Court's sanction order.[31]

- The Court approved a liquidating plan of reorganization even though: (1) the actual evidence demonstrates that HCMLP is and always has been solvent; (2) the only reason for HCMLP's bankruptcy filing was to restructure a single judgment debt; and (3) Mr. Dondero made multiple offers in the Bankruptcy to settle the Estate by paying *100% to creditors*.

- The Court ordered that Mr. Dondero and his sister Nancy Dondero (but no other party) attend all hearings in the Bankruptcy, regardless of whether their presence is needed or if they are taking a position on the matter at issue in the hearing.[32]

- The Court ordered that a gatekeeping injunction would apply even to cases over which the Court does not have jurisdiction and over which the Court would not preside, based on the Court's conclusion that Mr. Dondero is a "vexatious litigant" (and despite its earlier decision not to make such a finding).[33]

- The Court has continually—and incorrectly—insisted that various entities represented by independent counsel are "controlled by" by Mr. Dondero, going so far as to discourage these entities from separately participating in the litigation and suggesting that they should prove to the Court that they require their own counsel.[34]

---

[27] **Ex. 8** (App'x. 0785-0989), Jan. 8, 2021 Hearing Transcript, *e.g.*, at 164:3-195:12 (App'x. 0948-0979).

[28] Bankr. Dkt. 2660 at 20 n.71.

[29] *Id*. at 21.

[30] *See id.* at 28-30.

[31] *Id.* at 30.

[32] **Ex. 39** (App'x. 3050-3054), May 20, 2021 Hearing Transcript at 20:19-21:14 (App'x. 3051-3052), a true and correct copy of which is included in the Appendix to this Supplement.

[33] **Ex. 41** (App'x. 3068-3070), June 25, 2021 Hearing Transcript at 109 (App'x. 3069), a true and correct copy of which is included in the Appendix to this Supplement.

[34] **Ex. 40** (App'x. 3055-3067), May 10, 2021 Hearing Transcript at 44:12-54:10 (App'x. 3056-3067), a true and correct copy of which is a included in the Appendix to this Supplement ("As you all know, there are *so many law firms, so*

011882

- When Mr. Dondero moved to compel Debtor's deposition testimony, the Court deemed that there was an ulterior motive of "antagonism" behind Mr. Dondero's request.[35] The statement illustrates how the Court views routine litigation steps by Mr. Dondero, like discovery motions, not as a normal part of defending an adversary proceeding, but rather, as a nefarious "antagonistic move."

- In its latest ruling from the bench, in response to allegations in a separate Texas state-court lawsuit by Mr. Ellington (HCMLP's former General Counsel and a co-defendant with Mr. Dondero in the Kirscher Litigation), in which Mr. Ellington alleges that he and his family had been repeatedly stalked by former HCMLP employee Pat Daugherty, the Court took an unsubstantiated position that stalking statutes do not protect men: "Now, I have read the lawsuit and I have read that Mr. Ellington accuses Mr. Daugherty of driving by his father's house, driving by his sister's house, driving by his office, 143 sightings, he's taking pictures.  If – I don't even know what to say except this is embarrassing.  One grown man accusing another grown man of stalking.  Okay?  A statute, by the way, that was designed to protect, you know, ex-wives, girlfriends, battered women, from abusive men.  You know, gender doesn't matter, but wow.  It's just – I don't know what to say except people should be embarrassed, so that's what I'm going to say."[36] The statutes invoked in that lawsuit do not contain any exclusion based on gender and protect men who are being stalked as equally as women.

9.     As set forth in the Original Recusal Motion, "a fair trial in a fair tribunal is a basic requirement of due process."[37] The Court's negative opinions of Mr. Dondero reveal a high

---

*many lawyers involved* now that are basically singing the same tune at a lot of these hearings as far as objections, me too, me too, me too .... *But I do very much have the impression, Mr. Dondero, that all roads lead back to you* .... And I am leaning towards requiring information to be filed of who owns what, who are the stakeholders. That'll help me understand, is it necessary to have this entity filing a separate objection or motion from this other entity or not? .... Well, *if you don't figure out a way to rein it in, then I'm just going to have to get that list of who are the stakeholders in these entities*, under oath, because I don't understand it. *I don't understand why we need these many lawyers filing position papers*."); Adv. Dkt. No. 151 at 5 ("The causes of action all arise from pre-confirmation conduct allegedly perpetrated by Highland's founder James Dondero and individuals and entities affiliated with him, which purportedly resulted in hundreds of millions of dollars in damages to Highland. *It appears that all of the Defendants are owned, controlled, or related to Mr. Dondero, although some of the Defendants dispute this characterization*.").

[35] **Ex. 39** (App'x. 3050-3054), May 20, 2021 Hearing Transcript at 34:3-9 (App'x. 3053) ("I mean I want to stress that this comes against a backdrop of — well, it seems like some antagonism, to say the least, on the part of Mr. Dondero where Mr. Seery's concerned. *It seems like it's always a fight with Mr. Seery*. And you say, well, we didn't handpick him as the 30(b)(6) witness, but, you know, the motion to compel names him by name. It just — *it feels like another antagonistic move*.") (emphasis added).

[36] **Ex. 42** (App'x. 3071-3073), Mar. 1, 2022 Hearing Transcript at 83:12-23 (App'x. 3072), a true and correct copy of which is included in the Appendix to this Supplement.

[37] *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 877 (2009) (internal quotation marks and citation omitted); *see also Johnson v. Mississippi*, 403 U.S. 212, 216 (1971) (per curiam) ("Trial before 'an unbiased judge' is essential to due process.") (quoting *Bloom v. Illinois*, 391 U.S. 194, 205 (1968)); *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021) (citing *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)).

011883

degree of antagonism, which makes it nearly impossible for Mr. Dondero and the Affected Parties to fully defend themselves and assert their rights in this forum, including against claims filed against Mr. Dondero and several of the Movants in the Kirschner Litigation. At a minimum, that is the perception that has been created.[38]

10.     The Movants thus file this *Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* and *Brief in Support*. In doing so, Movants respectfully request the Court, after considering the Original Recusal Motion and this Supplement thereto, enter a final, appealable order on this issue.

Dated: August 26, 2022                      Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

*/s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

***Counsel for Movants***

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that, on August 26, 2022, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

*/s/ Michael J. Lang*
Michael J. Lang

---

[38] *Liteky*, 510 U.S. at 551; *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996).

011884

CRAWFORD, WISHNEW & LANG PLLC
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Movants*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-34054-sgj-11 |
| | ) | |
| Highland Capital Management, L.P., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

# AMENDED APPENDIX TO MOTION FOR FINAL APPEALABLE ORDER AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455 AND BRIEF IN SUPPORT [DKT. 3406]

James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware limited liability company (collectively, "Movants") file this Amended Appendix in support of their *Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455* and *Brief in Support*:

| Exhibit No. | Description | Appendix Nos. |
|---|---|---|
| **31** | June 10, 2021 Hearing Transcript | APP'X. 2720-2810 |
| **32** | December 10, 2020 Hearing Transcript | APP'X. 2811-2815 |
| **33** | June 17, 2021 Order | APP'X. 2816-2828 |
| **34** | February 9, 2022 Memorandum Opinion and Order by Judge Kinkeade | APP'X. 2829-2842 |

APPENDIX TO MOVANTS' MOTION FOR FINAL APPEALABLE ORDER
AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT TO
28 U.S.C. § 455 AND BRIEF IN SUPPORT                                    PAGE 1

011885

| 35 | Withdrawn | APP'X. 2843-2924 |
|----|-----------|------------------|
| 36 | Withdrawn | APP'X. 2925-3013 |
| 37 | Withdrawn | APP'X. 3014-3044 |
| 38 | January 14, 2021 Hearing Transcript | APP'X. 3045-3049 |
| 39 | May 20, 2021 Hearing Transcript | APP'X. 3050-3054 |
| 40 | May 10, 2021 Hearing Transcript | APP'X. 3055-3067 |
| 41 | June 25, 2021 Hearing Transcript | APP'X. 3068-3070 |
| 42 | March 1, 2022 Hearing Transcript | APP'X. 3071-3073 |

Dated: August 26, 2022

Respectfully submitted,

CRAWFORD, WISHNEW & LANG PLLC

By: /s/ Michael J. Lang
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

**Counsel for Movants**

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 26, 2022, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

/s/ Michael J. Lang
Michael J. Lang

**APPENDIX TO MOVANTS' MOTION FOR FINAL APPEALABLE ORDER
AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT TO
28 U.S.C. § 455 AND BRIEF IN SUPPORT**                                    **PAGE 2**

011886

Case 19-34054-sgj11 Doc 3470-1 Filed 08/26/22 Entered 08/26/22 17:11:52 Desc
Case 3:25-cv-02072-S Document Appendix Filed 08/06/25 Page 65 of 256 PageID 12784
Case 3:21-cv-00879-K Document 17 Filed 06/28/21 Page 3 of 106 PageID 9581

# EXHIBIT 31

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | ) | **Case No. 19-34054-sgj-11** |
| | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL | ) | Dallas, Texas |
| MANAGEMENT, L.P., | ) | Thursday, June 10, 2021 |
| | ) | 9:30 a.m. Docket |
| Debtor. | ) | |
| | ) | MOTION TO COMPEL COMPLIANCE |
| | ) | WITH BANKRUPTCY RULE 2015.3 |
| | ) | FILED BY GET GOOD TRUST AND |
| | ) | THE DUGABOY INVESTMENT TRUST |
| | ) | (2256) |
| | ) | |
| HIGHLAND CAPITAL | ) | **Adversary Proceeding 21-3006-sgj** |
| MANAGEMENT, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S MOTION FOR LEAVE |
| | ) | TO FILE AMENDED ANSWER AND |
| v. | ) | BRIEF IN SUPPORT [15] |
| | ) | |
| HIGHLAND CAPITAL | ) | |
| MANAGEMENT SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| HIGHLAND CAPITAL | ) | **Adversary Proceeding 21-3007-sgj** |
| MANAGEMENT, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S MOTION FOR LEAVE |
| TO | ) | TO AMEND ANSWER TO PLAINTIFF'S |
| v. | ) | COMPLAINT [16] |
| | ) | |
| HCRE PARTNERS, LLC | ) | |
| N/K/A NEXPOINT REAL | ) | |
| ESTATE PARTNERS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

011887

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 6-15   Filed 04/07/25   Page 66 of 256   PageID 12785
Appendix   Page 406 of 554
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 4 of 106   PageID 9582

```
 1   WEBEX APPEARANCES:

 2   For the Get Good Trust     Douglas S. Draper
     and Dugaboy Investment     HELLER, DRAPER & HORN, LLC
 3   Trust:                     650 Poydras Street, Suite 2500
                                New Orleans, LA  70130
 4                              (504) 299-3300

 5   For the Debtor:            Jeffrey Nathan Pomerantz
                                PACHULSKI STANG ZIEHL & JONES, LLP
 6                              10100 Santa Monica Blvd.,
                                  13th Floor
 7                              Los Angeles, CA  90067-4003
                                (310) 277-6910

 8
     For the Debtor:            John A. Morris
 9                              PACHULSKI STANG ZIEHL & JONES, LLP
                                780 Third Avenue, 34th Floor
10                              New York, NY  10017-2024
                                (212) 561-7700

11
     For the Official Committee Matthew A. Clemente
12   of Unsecured Creditors:    SIDLEY AUSTIN, LLP
                                One South Dearborn Street
13                              Chicago, IL  60603
                                (312) 853-7539

14
     For James Dondero:         Clay M. Taylor
15                              BONDS ELLIS EPPICH SCHAFER
                                  JONES, LLP
16                              420 Throckmorton Street,
                                  Suite 1000
17                              Fort Worth, TX  76102
                                (817) 405-6900

18
     For the NexPoint           Lauren K. Drawhorn
19   Parties:                   WICK PHILLIPS
                                3131 McKinney Avenue, Suite 100
20                              Dallas, TX  75204
                                (214) 692-6200

21
     Recorded by:               Michael F. Edmond, Sr.
22                              UNITED STATES BANKRUPTCY COURT
                                1100 Commerce Street, 12th Floor
23                              Dallas, TX  75242
                                (214) 753-2062

24

25
```

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 55    Filed 05/06/25    Page 67 of 256    PageID 12786
Appendix    Page 506 of 554
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 5 of 106    PageID 9583

3

1    Transcribed by:                    Kathy Rehling
                                        311 Paradise Cove
2                                       Shady Shores, TX  76208
                                        (972) 786-3063
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Proceedings recorded by electronic sound recording;
      transcript produced by transcription service.

25

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Appendix   Filed 06/06/25   Page 68 of 256   PageID 12787
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 6 of 106   PageID 9584

4

1            DALLAS, TEXAS - JUNE 10, 2021 - 9:44 A.M.

2            THE COURT:  All right.  Let me change my stacks here.

3   I will now hear what was Matter No. 1 on the docket, Highland

4   Capital, Case No. 19-34054.  We have a motion from the Dugaboy

5   and Get Good Trusts seeking compliance with Bankruptcy Rule

6   2015.3.

7       Who do we have appearing for the trusts this morning?

8            MR. DRAPER:  Douglas Draper, Your Honor.

9            THE COURT:  All right.  And for the Debtor this

10  morning?

11           MR. POMERANTZ:  Good morning, Your Honor.  Jeffrey

12  Pomerantz; Pachulski Stang Ziehl & Jones; on behalf of the

13  Debtor.

14           THE COURT:  All right.  Do we have any other parties

15  wishing to make an appearances?  These are the only parties

16  who filed pleadings, but I'll go ahead and ask if anyone wants

17  to appear for any reason.

18           MR. CLEMENTE:  Good morning, Your Honor.  It's Matt

19  Clemente at Sidley on behalf of the Committee.  I'm here.

20           THE COURT:  All right.  Thank you, Mr. Clemente.

21      All right.  Mr. Draper, how did you want to proceed?

22           MR. DRAPER:  I'd just -- I think the issue is

23  primarily a legal issue, Your Honor.

24           THE COURT:  Uh-huh.

25           MR. DRAPER:  So we've filed with the Court our

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix Filed 07/06/25    Page 69 of 256    PageID 12788
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 7 of 106    PageID 9585

5

1    response to the Debtor's opposition, I have some comments I'd

2    I like to make, and just leave it at that.  I think -- as I

3    said, I believe the issue is purely a legal issue --

4              THE COURT:  Uh-huh.  Okay.

5              MR. DRAPER:  -- and can go from that.

6              THE COURT:  All right.

7              MR. DRAPER:  All right.  We are here -- thank you,

8    Your Honor.  Can I start?

9              THE COURT:  Yes, you may.

10             MR. DRAPER:  Thank you.  We're here before the Court

11   today on what should be a rather routine matter.  All I'm

12   asking the Court to do is to require the Debtor to do what it

13   should have done when the case was filed and is required

14   pursuant to Bankruptcy Rule 2015.3.

15       2015.3 uses the term "shall" and requires the Debtor to

16   file an official form -- and this is important, because I'm

17   going to come back to the official form -- with respect to the

18   value, operations, and profitability of each entity in which

19   the Debtor has a substantial or controlling interest.

20       The reports, the Rule says, shall be filed seven days

21   before the first meeting of creditors and every six months

22   thereafter.

23       Under 2015.3(d), I recognize a court may, after notice and

24   a hearing, modify the reporting requirement.  No request has

25   been made by counsel for the Debtor, who I will stipulate

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 08/06/25   Page 70 of 256   PageID 12789
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 8 of 106   PageID 9586

6

1   knows the Rules, are experienced, and understand that the rule

2   existed the day they came into the case.  And quite frankly,

3   what we have now is, from what I can see, an intentional

4   decision not to file the report.

5       As the Court knows, this matter was brought before this

6   Court in February, when the confirmation hearing was held.

7   And if the Court will recall, Mr. Seery's comment was (a) it

8   slipped through the cracks; and (b) he implied that it would

9   be done.  That was February.  I had hoped, and I think

10  everybody had hoped, that Mr. Seery, Highland, and Debtor's

11  counsel would be so embarrassed by the fact that they didn't

12  file [sic] the rule that they would have either (a) filed

13  [sic] the rule; or (b) sought -- sought a waiver of the rule.

14  They did neither.

15      Now, let's -- let's go through the 2015.3(d).  There are

16  two items that are not exclusive, and so I recognize it.  The

17  first is that they can't do it, and second is with respect to

18  the information is publicly available.  If you look at the

19  cases that the Debtor has cited in support of their position

20  that courts have waived compliance with the rule, you'll note

21  that three of the four cases deal with first day motions when

22  in fact they ask for extensions of time to file their

23  schedule, Statement of Financial Affairs, and other things.

24  These are normal first day motions.  I understand the

25  extension in that case.  And quite frankly, those extensions

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 09/06/24   Page 71 of 256   PageID 12790
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 9 of 106   PageID 9587

7

1  are -- fall into the "I can't do it."

2      The only excuse the Debtor has offered, other than their

3  response to date, was, oh, I forgot, or it slipped through the

4  cracks.  That is not a legitimate excuse.  It never has been

5  and never will be, and should not be countenanced by the

6  Court.

7      And so let's start with the after-the-fact excuses offered

8  by the Debtor.  The first is the bad guy defense -- *i.e.*,

9  Dugaboy is a Dondero entity; they're asking for this

10  information for nefarious purposes.  That has to -- that

11  should be completely disregarded by the Court.  This is a

12  systematic issue that neither you nor I nor the Debtor's

13  counsel put in the Code or put in the Rules.  It is a

14  requirement, it's systematic, and we, as counsel and people

15  acting on behalf of the estate and sort of people who oversee

16  the system, should insist that this be filed.  The bad guy

17  defense is not an excuse.  And quite frankly, this is

18  information that is required.

19      So what I'm asking for today is not gamesmanship.  I don't

20  think it is ever gamesmanship when you ask for the compliance

21  with a rule that says shall.  Again, it's systematic, and we

22  are here -- and I don't know why -- either the U.S. Trustee

23  was asleep at the switch or anybody else was asleep at the

24  switch -- that this matter hadn't been brought to the Court's

25  attention.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 10/06/25   Page 72 of 256   PageID 12791
Appendix Page 1005554
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 10 of 106   PageID 9588

8

1      So the word "shall" is not strained in any fashion.  It's

2   not limited in any fashion.  The word "shall" is absolute.

3      So, again, had -- was there some secret deal between the

4   Trustee -- U.S. Trustee and the Debtor?  I don't know.  That

5   may have been.  But quite frankly, --

6           THE COURT:  A secret deal?

7           MR. DRAPER:  -- the Code, in 2015 --

8           THE COURT:  Did you just use the term "a secret

9   deal"?

10          MR. DRAPER:  Well, some --

11          THE COURT:  What --

12          MR. DRAPER:  I'm not using the term.  What I --

13          THE COURT:  That's highly charged, that --

14   =      MR. DRAPER:  No, --

15          THE COURT:  -- choice of words.

16          MR. DRAPER:  What I mean, what I really mean is

17   sometimes we go to the U.S. Trustee and say, look, can we have

18   an extension?  Can we have -- can we do this a little bit

19   later?  And the U.S. Trustee, in fairness to them, basically

20   says, okay, you can do this or that.  I don't know if that

21   occurred in this case.  But quite frankly, what we have are 20

22   months of noncompliance.  And so I don't know if they said,

23   look, --

24          THE COURT:  Okay.

25          MR. DRAPER:  -- you don't have to file it now.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 01/06/25   Page 73 of 256   PageID 12792
Appendix   Page 100 of 254
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 11 of 106   PageID 9589

9

1          THE COURT:  So you meant an informal deal, not secret

2   deal?

3          MR. DRAPER:  Yes.

4          THE COURT:  A secret deal, that sounds like something

5   nefarious.  Okay?  So, --

6          MR. DRAPER:  No, it is not intended in that -- it's

7   --

8          THE COURT:  Okay.

9          MR. DRAPER:  Judge, it's not intended in that

10  fashion.

11         THE COURT:  Okay.

12         MR. DRAPER:  This goes to my issue that it's

13  systematic.  It's a systematic compliance.

14      And let's also go the fact that the Bankruptcy Code

15  requires complete and open disclosure.  It does not matter who

16  or why compliance is requested.

17      The next objection is I waited too long.  And they offer

18  an excuse, Judge, we're going to go effective.  Let's look at

19  what the Code requires -- the rule requires.  It says it shall

20  be filed, it has to be filed at certain points, through the

21  effective date of a plan.  It doesn't say after the effective

22  date of a plan is filed or after the effective date of a -- of

23  a plan occurs, your compliance is not required.

24      And I'll point out something where you ruled against me,

25  and we've contrasted that in our motion -- in our opposition.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 01/26/21   Page 74 of 256   PageID 12793
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 12 of 106   PageID 9590

10

1    If you look at the examiner statute, which I know the Court

2    has looked at and completely disagreed with my reading of it,

3    it basically says after confirmation you don't have to do it.

4    This statute doesn't say that.  This statute says you have to

5    file these through the effective date of a plan.

6        And so, you know, that "You waited too long" is really not

7    a legitimate excuse.

8        The next issue is -- and --

9            THE COURT:  Well, on that point, --

10           MR. DRAPER:  And let's look at the cases.

11           THE COURT:  On that point, can I just ask, what is

12   the utility?  I mean, let's say we're one -- okay.  Let's say

13   we're one month away from the effective date.  Let's say we're

14   three months away from the effective date.  What is the

15   utility at this point?  There's a confirmed plan.  Now,

16   granted, it's on appeal.  But, you know, what -- what would

17   you --

18           MR. DRAPER:  Well, --

19           THE COURT:  What would you do with this information

20   at this point?  We have a confirmed plan.

21           MR. DRAPER:  Well, there are two responses to that.

22   First of all, the rule says you have to file it through the

23   effective date of a plan.  Somebody in rulemaking authority

24   made that determination.  And so it's not for you or I to

25   question.  That's the rule.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 01/30/25   Page 75 of 256   PageID 12794
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 13 of 106   PageID 9591

11

1        The second is the utility may be for further actions in

2   the case that occur after the effective date.  We just don't

3   know.

4        And so the rule is designed to require things to be filed

5   --

6                 THE COURT:  Wait.  What did that last statement mean,

7   --

8                 MR. DRAPER:  -- through the effective date.

9                 THE COURT:  -- for actions that might occur after the

10  effective date?

11                MR. DRAPER:  It may be --

12                THE COURT:  What does that mean?

13                MR. DRAPER:  After the effective date of a plan.

14  There may be some -- some matter that comes up before the

15  Court.  And I'll give you the best example --

16                THE COURT:  Well, --

17                MR. DRAPER:  -- of all of them.

18                THE COURT:  Okay.

19                MR. DRAPER:  If you look -- if you look at the form,

20  all right, and what I'd ask the Court to look at is -- I think

21  it's Exhibit E that's required on the form.  And what Exhibit

22  E requires is disclosure of information where one of the

23  subsidiaries has either paid or has decided -- has incurred a

24  liability to somebody who would have an administrative expense

25  against the Debtor.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/06/25   Page 76 of 256   PageID 12795
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 14 of 106   PageID 9592

12

1     The utility of that post-effective date is important,

2   because post-effective date you'll be dealing with fee

3   applications and other things.  So the rule envisions

4   disclosure --

5          THE COURT:  Okay, I -- say that again for me slowly.

6   How --

7          MR. DRAPER:  Okay.

8          THE COURT:  How could there be an administrative

9   expense --

10          MR. DRAPER:  If you'll --

11          THE COURT:  -- claim against the estate in your

12   scenario, again?

13          MR. DRAPER:  Well, my scenario, if you look at

14   Exhibit E that's required in the form, --

15          THE COURT:  Do I have that, Nate?

16          MR. DRAPER:  -- it basically requires a disclosure.

17          THE COURT:  Okay.  I don't know if I have it in my

18   stack of paper.  I --

19          MR. DRAPER:  Well, let me read it to -- I can read it

20   to you, Your Honor.  It's easy.  Let me pull it up.

21     Exhibit E, "Describe any payment by the controlled

22   nondebtor entity of any claim, administrative expense, or

23   professional fee that have been paid or could be asserted

24   against the Debtor or the incurrence of any obligation to make

25   such payments, together with the reason for the entity's

011898

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/06/25   Page 77 of 256   PageID 12796
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 15 of 106   PageID 9593

13

1    payment thereof or the incurrence of any obligation with

2    respect thereof."

3        That is clearly a post-effective date issue that the Court

4    should be concerned about, all parties should be concerned

5    about, and so if that occurred, then everybody needs to know

6    about it.

7        So E envisions something that is absolutely after the

8    effective date that will be -- has a utility after the

9    effective date.

10       Let's look at B.  Again, something that may have something

11   to do with after the effective date.  That deals with tax-

12   sharing agreements and tax-sharing attributes.

13       So -- and then C, which also has something to do with

14   after the effective date and how things sort out through the

15   liquidation, is described claims between controlled debtor,

16   controlled nondebtor entity and any other controlled nondebtor

17   entity.

18       So there needs to be a disclosure of due-to's and due-

19   from's between the entities.  This is -- this is not secret

20   stuff.  This is stuff that transcends the effective date of a

21   plan.

22       And so when I focused on the rule, what I think the Court

23   really needs to look at for the utility of this is exactly

24   what the -- is required by a 2015.3 disclosure.

25       Does that answer the Court's question?

011899

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/02/25   Page 78 of 256   PageID 12797
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 16 of 106   PageID 9594

14

1           THE COURT:  Yes.

2           MR. DRAPER:  Now, my favorite excuse that's been

3   offered is really what I'll call the secret sauce dispute --

4   excuse, or the former lawyers for the Debtor.  Again, let's

5   break this down and let's look at the form.

6       What the form requires is there's nothing the Debtor's

7   former lawyers did or who were working for Mr. Dondero.  If

8   you look at Exhibit A that's required, is contains the most

9   readily-available balance sheet.  That's not a legal issue.

10  Statement of income or loss.  That's -- that's just an

11  accounting concept.  Statement of cash flows.  That's also an

12  accounting concept.  And statement of changes in shareholders

13  or partners equity for the period covered by the entire

14  report.

15      B again has nothing to do with the lawyers, is describe

16  the controlled nondebtor business entity's business

17  operations.

18      So the information that's here is purely accounting

19  information and it is not secret.

20      Let's, again, let's focus on A, which -- which I think

21  just deals with financial information.  The first one is

22  balance sheet.  All right.  They've argued that this tells

23  what the value -- what we think the value of an asset is.

24  That's not true.  A balance sheet may have a fair market

25  value.  A balance sheet may have a book value.  I don't know

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 01/06/21   Page 79 of 256   PageID 12798
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 17 of 106   PageID 9595

15

1    what they have here.  But quite frankly, if you or I sell my

2    house, our house, we go to our agent and we say, hey, look,

3    agent, you know, this is my listing price.  That's my opinion

4    as to value.  It may not be somebody else's opinion as to

5    value.  And quite frankly, when somebody asks or wants to buy

6    an asset, what they come to, don't they ask, hey, what do you

7    want for it?

8         You know, book value does not equal value.  And I know the

9    Court has held -- has had before it many clients or many

10    debtors, and I've represented a lot of debtors, who think a

11    Bic pen that they have is not worth ten cents but is worth a

12    gazillion dollars.

13         So that issue doesn't go to any secret information.  The

14    statement of income doesn't go to secret information.

15    Statement of cash flows does not.  And changes in shareholders

16    does not.  There's no secret information.  The only person who

17    this may be kept away from, possibly, and that -- that, I

18    don't think applies, is a competitor who may want to look at

19    these.  And a court can fashion that relief and say, okay,

20    let's put this under seal.  If somebody signs a

21    confidentiality agreement, they can have access to this.

22         But this is purely accounting information.  It's nothing

23    more.

24         And the reference to trade secrets that the Debtor

25    attempts to make is just not true.  This is not a trade

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 01/86/2554   Page 80 of 256   PageID 12799
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 18 of 106   PageID 9596

16

 1   secret.  There's no confidential research or development or

 2   commercial information that's being disclosed.  And 9018 that

 3   they cite is truly an evidentiary rule.  We're not -- this --

 4   this requirement does not go to customers.  It does not go to

 5   pricing.  It does not go to business processes.  It just goes

 6   to financial information.

 7        So the global argument that they're making is undercut

 8   significantly by the -- by what is required under the rule.

 9   I'm just asking for mere compliance with the rule, nothing

10   more.

11        And so, you know, what -- I still don't understand what

12   the issue is, why it hadn't been done.  And quite frankly,

13   again, this is systematic.  It has nothing to do with who is

14   requesting it, what is requesting it.  It should have been

15   done.  It should have been done probably by the U.S. Trustee.

16   You know, somebody -- you know, and quite frankly, I've been

17   in this case since December.  It was raised in February.  You

18   know, I don't understand why, from February to the time I

19   filed this motion, they didn't come in and either (a) file the

20   reports, which on their face appear to be benign; or (b) ask

21   for some reason other than, oops, I forgot.

22        And so I'd ask the Court to require compliance.  I don't

23   think the information here falls into any category of for

24   cause.  They can do it.  This -- and the cases -- any case

25   they cite does not support their proposition that it shouldn't

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 6-15   Filed 09/06/25   Page 81 of 256   PageID 12800
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 19 of 106   PageID 9597

17

 1   be done.

 2       Does the Court have any questions for me?

 3           THE COURT:  Well, I do.  My brain just constantly

 4   goes to standing.  And remind me again, the trusts you

 5   represent have each filed proofs of claim, correct?

 6           MR. DRAPER:  Yes.  And they're objected to, --

 7           THE COURT:  They are objected to.

 8           MR. DRAPER:  -- just so the Court's aware.

 9           THE COURT:  Okay.  Remind me again what the substance

10   of the claim is about.

11           MR. DRAPER:  The substance of the claim is I have a

12   -- I have a $17 million debt owed to me by Highland Select.

13   And it is our position that this Debtor is also liable for the

14   Highland Select debts through its general partner status,

15   through its comingling of things, and how these assets fit

16   together, between Highland Select, which is a hundred percent

17   owned by the -- ultimately owned by this Debtor.  So I'd --

18   again, the standing issue --

19           THE COURT:  And the debt is --

20           MR. DRAPER:  And I am also an equity holder.

21           THE COURT:  And the debt is pursuant to a note?

22           MR. DRAPER:  It's pursuant to a loan agreement

23   between my client and Highland Select.

24           THE COURT:  All right.  And was an administrative

25   expense filed by your client?

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 5-15   Filed 02/06/25   Page 82 of 256   PageID 12801
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 20 of 106   PageID 9598

18

1       MR. DRAPER:  Not by my client.  No.  And I'm also an

2   equity holder in the Debtor that, when the plan goes

3   effective, I ultimately have, at best, a residual interest

4   when the Star Trek Enterprise returns.

5       THE COURT:  Okay.  And what is that residual

6   interest?  Remind me again.  Isn't it less than one percent --

7       MR. DRAPER:  After the --

8       THE COURT:  -- of a subordinated --

9       MR. DRAPER:  After all the class --

10      THE COURT:  Go ahead.

11      MR. DRAPER:  Right.  Well, after all the classes are

12  paid in full plus a hundred cents on the dollar -- get a

13  hundred cents on the dollar plus some interest factor, and the

14  -- there's another party who has an equity interest that's

15  ahead of me get paid, I get some -- some money.

16      Again, I have a residual interest.  It's very tangential.

17  And I'll be very frank to the Court and honest, I think

18  ultimately I will receive nothing under that residual

19  interest.

20      However, my -- the standing is not really an issue here.

21  Honestly, this is a systematic issue.  I've tried to make that

22  clear for the Court.  It's something that should be employed,

23  and who is asking for it is irrelevant.  The Code requires --

24  the Rules require it.  There is no excuse that they've given

25  that should absolve them of that.  And whatever excuse they've

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S    Document 16-15    Filed 01/06/25    Page 83 of 256    PageID 12802
Appendix    Page 206 of 554
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 21 of 106   PageID 9599

19

1    given basically falls in -- falls in the face of what the rule

2    -- the official form requires.

3        I'm not asking for a variance of the official form.  I'm

4    asking that this Court not allow a "Oops, I forgot" or "It

5    slipped through the cracks" excuse.

6            THE COURT:  All right.  And who is the current

7    trustee of these trusts now?

8            MR. DRAPER:  My trusts?  Nancy Dondero is the trustee

9    of the Dugaboy Trust, and I think Grant Scott is the trustee

10   of the Get Good Trust.

11           THE COURT:  Okay.  I'm asking because we heard

12   earlier this week that Grant Scott has resigned from certain

13   roles.

14       All right.  Mr. Pomerantz, do you have evidence, --

15           MR. POMERANTZ:  Yes, Your Honor.

16           THE COURT:  -- or argument only?

17           MR. POMERANTZ:  Argument only, Your Honor.

18           THE COURT:  Okay.

19           MR. POMERANTZ:  As with -- as with many of the other

20   motions that have been filed with this -- in this case and has

21   burdened the Court's docket over the last several months, I

22   really can't help to wonder why we are here.

23       Eighteen months after the case was filed, after plan

24   confirmation, and with the effective date that's set to occur

25   soon, Dugaboy and Get Good, the family trusts, ask the Court

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15-6   Filed 02/26/25   Page 84 of 256   PageID 12803
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 22 of 106   PageID 9600

20

1   to compel the Debtor's compliance with 2015.3.  It reminds me

2   of the motion that Mr. Draper mentioned that he filed on the

3   eve of confirmation, the eve of confirmation, fourteen months

4   after the case had been filed, seeking an examiner.  And the

5   Court denied that motion without a hearing.

6        Now they're back again with, as Your Honor mentioned and

7   I'll get to in a little bit, with the same tangential

8   connection to the bankruptcy case and the same tenuous

9   standing that the Court has alluded to on several occasions,

10  including just a couple minutes ago.

11       It's clear that the motion, which is not supported by any

12  other creditor in the case and is actually opposed by the

13  Official Unsecured Creditors' Committee, is not about

14  financial transparency, as Mr. Draper would like Your Honor to

15  believe, but it's filed as a further litigation tactic to gain

16  access to information that Mr. Dondero would not be able to

17  obtain through discovery, who has tried to obtain through

18  other means, and that the Debtor believes will be used for

19  improper purposes.

20       One of the Movants, Dugaboy, is actually the holder of two

21  claims against the Debtor.  I guess Mr. Draper forgot about

22  his administrative claim, which really goes to the validity of

23  it.  One is the claim against the Select Fund, a subsidiary of

24  the Debtor, for which Mr. Draper says they should be liable,

25  including under an alter ego theory.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 03/06/2554   Page 85 of 256   PageID 12804
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 23 of 106   PageID 9601

21

1      Yes, Your Honor heard me right.  Dugaboy is saying that

2   the Debtor is an alter ego with a nondebtor entity.  One would

3   think that, given the recent disclosures and commencement of

4   litigation -- and I'm talking about the UBS litigation -- that

5   Mr. Dondero would be the last one to raise alter ego.  In any

6   event, that claim is disputed.

7      The second claim is an administrative claim that Mr.

8   Draper filed on account of their 1.71 percent interest in

9   Multistrat, saying they were damaged by decisions Mr. Seery

10   made by selling certain life insurance policies in the spring

11   of 2020.

12      There is a theme here, Your Honor:  Claims that Mr. Seery

13   made decisions that harmed -- in this case -- Dugaboy's 1.71

14   percent interest.

15      The claim has no merit.  The Debtor will contest it.  But

16   even if it was allowed, the claim would be paid a hundred

17   cents on the dollar under the plan.  And accordingly, the

18   information under 2015.3 is not relevant.

19      Get Good filed a claim which alleges they may have a claim

20   from its limited partnership interest in the Debtor.  But for

21   the record, Get Good is not a limited partner of the Debtor.

22      So, how did we get here, Your Honor?  The Dondero entities

23   sandbagged the Debtor by raising the issue for the first time

24   during the confirmation trial.  Not in their briefs, not in

25   communications to the Debtor in advance of the confirmation,

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 04/06/25   Page 86 of 256   PageID 12805
Appendix   Page 246 of 554
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 24 of 106   PageID 9602

22

1   but while the Debtor had its witness on the stand.

2        And why did they do it that way?  Because they wanted to

3   be able to argue, and they did argue to Your Honor, that the

4   Court couldn't confirm the plan because the Debtor did not

5   comply with Rule 2015.3, was in violation of 1129(a)(2), and

6   the Court could not confirm the plan.

7        Of course, the Court rejected that argument.  And when the

8   Debtor entity -- when the Dondero entities raised it as a

9   reason for Your Honor to enter a stay pending appeal, Your

10  Honor commented that that claim bordered on frivolous.  And of

11  course, that issue has been raised to the Fifth Circuit as one

12  of the reasons to overturn Your Honor's confirmation order.

13       And why are the Dondero entities persisting now in their

14  effort to obtain disclosure?  It's because they're desperate

15  to obtain financial information about the Debtor because they

16  want to become involved in the Debtor's future asset

17  dispositions at the nondebtor affiliates and they want to get

18  information.

19       As Your Honor will recall, Mr. Dondero filed a motion in

20  January asking for this Court to require the Debtor to bring

21  affiliated -- affiliated entity asset sales to the Court.  The

22  Debtor opposed the motion, and before the hearing it was

23  withdrawn.

24       Your Honor has heard testimony from Mr. Seery throughout

25  the case that Mr. Dondero previously interfered with the

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 04/06/2554   Page 87 of 256   PageID 12806
Appendix   Page 256 of 554
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 25 of 106   PageID 9603

23

1    Debtor's asset sales and that -- and on that basis, the Debtor

2    was not comfortable including Mr. Dondero in sale processes.

3    And I'm not talking about the AVYA and the SKY stock from the

4    CLO funds, but rather certain transactions regarding SSP and

5    OmniMax which were subject to a motion made by, I believe, the

6    Funds or the Advisors -- I get them confused sometimes --

7    accusing the Debtor of mismanaging the CLOs.  And if Your

8    Honor recalls, Your Honor denied that motion based upon a

9    directed verdict.

10        So, having been rebuffed by the Debtor in its attempts to

11   obtain financial information that they're not entitled to, the

12   trusts have one last effort.  Press 2015.3 arguments, because,

13   of course, they're very interested in the integrity of the

14   process, in the institution, in the following of the

15   Bankruptcy Code.  That is exactly what their motivation is.

16        But there's yet another reason, Your Honor, the Debtor

17   believes Mr. Dondero, through the trusts, is pursuing this

18   motion.  As Your Honor is aware, the Debtor recently

19   discovered some extremely troubling information regarding a

20   massive fraud involving a previous --

21        (Audio cuts out.)

22            THE COURT:  Uh-oh.

23            THE CLERK:  He froze up.

24        (Pause.)

25            THE COURT:  All right.  Mr. Pomerantz, you're frozen.

011909

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/06/25   Page 88 of 256   PageID 12807
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 26 of 106   PageID 9604

24

 1    Is everybody frozen, or is it just him?

 2              MR. POMERANTZ:  There'll be some judicial estoppel.

 3              THE COURT:  Okay.  Mr. Pomerantz?

 4              MR. POMERANTZ:  Yes.

 5              THE COURT:  You were frozen for about one minute.  So

 6    I am sorry, --

 7              MR. POMERANTZ:  Uh-huh.

 8              THE COURT:  -- you're going to need to repeat the

 9    past minute for me.

10              MR. POMERANTZ:  Just to check if you were listening,

11    Your Honor, what was the last thing you remember me saying?

12              THE COURT:  I was listening.

13              MR. POMERANTZ:  Okay.  So I will -- did you hear me

14    talk about Mr. Seery's testimony throughout the case?

15              THE COURT:  No.  No.

16              MR. POMERANTZ:  Okay.  I'll go back a paragraph

17    before.  Okay.  Okay.

18         And why are the Debtor -- why are the Dondero entities

19    persisting now in their effort to obtain disclosure?  It's

20    because the Dondero entities are desperate to try to obtain

21    financial information, information they would not otherwise be

22    entitled to under discovery rules, because they want to become

23    involved, he wants to become involved in the Debtor's asset

24    dispositions in the future regarding affiliated nondebtor

25    entities.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 07/06/25   Page 89 of 256   PageID 12808
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 27 of 106   PageID 9605

25

1      If Your Honor will recall, Mr. Dondero made a motion in

2  January seeking an order from this Court requiring the Debtor

3  to bring to this Court asset sales from nondebtor affiliates.

4  The Debtor opposed the motion, and before the hearing on the

5  motion it was withdrawn.

6      Your Honor has heard testimony from Mr. Seery throughout

7  the case that Mr. Dondero previously interfered or tried to

8  interfere with the Debtor's asset sales, and on that basis the

9  Debtor was not comfortable inviting Mr. Dondero into its asset

10  sale processes.

11      And I'm not talking about the AVYA and SKY stock from the

12  CLOs, but rather certain transactions regarding SSP and

13  OmniMax, which were closed for fair value, which were subject

14  of a motion that the Advisors or the Funds -- and I often get

15  them confused -- that they made, accusing the Debtor of

16  mismanaging the CLOs.  And I'm sure Your Honor recalls.  Your

17  Honor denied that motion on a directed verdict basis.

18      So, having been rebuffed in their attempts to try to get

19  the information that they weren't entitled to, they're now

20  proceeding under 2015.3.  And, of course, Mr. Draper say he is

21  a protector of the process, the integrity of the system

22  demands it.  It has nothing to do with Mr. Dondero's

23  interests, of course, because Mr. Draper is just there to make

24  sure everything runs on time and everything is done according

25  to the law, notwithstanding the fact that the U.S. Trustee

011911

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 08/28/25   Page 90 of 256   PageID 12809
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 28 of 106   PageID 9606

1  hasn't brought this motion, notwithstanding the fact that the

2  Unsecured Creditors' [Committee] supports our position, and

3  notwithstanding the fact that not one creditor, not one

4  unaffiliated creditor, has asked this Court for that

5  information and relief.

6      There's yet another reason, Your Honor, the Debtor

7  believes that the trusts are pursuing this motion.  As Your

8  Honor is aware, the Debtor recently discovered some extremely

9  troubling information regarding a massive fraud involving a

10 previously-unknown entity called Sentinel Reinsurance.  And

11 that information is the subject of an adversary proceeding

12 filed by UBS, which Your Honor heard substantial information

13 about both in connection with hearings on that motion practice

14 and also at the UBS 9019 motion.

15     The Debtor believes that the 2015.3 motion is a veiled or

16 pretty transparent effort of Dondero trying to find out what

17 the Debtor knows and what the Debtor doesn't know and trying

18 to get the Debtor to go on record with information that later

19 in litigation they will use as a judicial estoppel.

20     Your Honor, that's not an appropriate predicate for the

21 motion.  Mr. Draper will deny that that's the reason, of

22 course, but I leave it for Your Honor to look at the

23 circumstances and make your own conclusions.

24     As the Court has mentioned many times, context matters,

25 and the Court should take this context into account in looking

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 09/02/55   Page 91 of 256   PageID 12810
Appendix   Page 290 of 554
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 29 of 106   PageID 9607

27

1    at the motion and the requested relief.

2         In our opposition, we argue that the Court should either

3    waive the 2015.3 compliance, given the anticipated effective

4    date, or continue the hearing to September 1 for a further

5    status conference if the effective date doesn't occur.

6         The burden on the estate if it was required to comply with

7    2015.3 is significant, and this goes to the issue Your Honor

8    mentioned, that, really, what's the point at this stage of the

9    case?  There are more than 150 entities that arguably meet the

10   definition of substantial or controlling interest for which

11   the Debtor would be required to file reports under 2015.3.  As

12   the Court knows, the Debtor is down to 12 staff, 13 if you

13   include Mr. Seery.  And if those employees working with the

14   Debtor's financial advisors were required to devote the

15   necessary time and effort to prepare the reports, the time and

16   the cost it would take would be substantial.  The Debtor just

17   doesn't have the bandwidth to comply.

18        More importantly, Your Honor, as we mention in our

19   opposition, Mr. Seery and the board are extremely concerned

20   with the quality of information it has received from the

21   Debtor's employees who have since been terminated by the

22   Debtor and now most of them are working for Mr. Dondero and

23   his related entities in one form or another.  It's not just

24   the lawyers, as Mr. Draper says.  It's the financial advisors,

25   who, in other contexts, and you'll hear a little later, are

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 03/06/25   Page 92 of 256   PageID 12811
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 30 of 106   PageID 9608

28

1   coming up with new information, new defenses on notes, et

2   cetera.  The Debtor has no confidence that the information in

3   its records is accurate from a financial perspective or from a

4   legal perspective.

5        As I mentioned, the Court is aware of the Sentinel cover-

6   up.  And uncovering just the facts regarding Sentinel was a

7   very difficult process and required the Debtor to essentially

8   conduct discovery against itself.  It just couldn't rely on

9   its information.  So conducting the diligence that would be

10  required to provide accurate information for 150 entities,

11  intercompany claims, administrative claims, back and forth,

12  due-to's, due-from's, tax issues, all the stuff required by

13  the forms would be an extremely arduous task.  It would take

14  millions of dollars of forensic accounting.  And it wouldn't

15  -- and for what purpose?  There is no purpose.

16       In addition, Your Honor, to waiving filing the reports,

17  2015.3 also allows the Court to modify the reports requirement

18  for cause when the debtor is not able, in making a good faith

19  effort, to comply with the requirements.  Your Honor, in this

20  case, cause is clearly established under 2015.3.

21       Dugaboy spends a lot of time in their reply attacking the

22  cases that the Debtor cites in its opposition.  While the

23  facts in those cases are different from the case here, they

24  all share something in common which is the key point:  All of

25  the cases involve a waiver of the 2015.3 requirement for plans

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 06/06/25   Appendix   Page 93 of 256   PageID 12812
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 31 of 106   PageID 9609

29

1    that will be confirmed or will soon become effective.

2        Mr. Draper doesn't contest that this Court has the power

3    to waive.  He says, well, those requests were made in the

4    first 30 days of the case or in the initial part of the case.

5    But they all granted relief where the effective date -- where

6    either the confirmation date occurred and they were waiting

7    for the effective date, or the confirmation case was -- was

8    pending.

9        And Your Honor, we would ask the Court to treat the

10   Debtor's opposition as a motion to waive the requirement under

11   2015.3.  We could file a separate motion after this hearing.

12   It would be a waste of time.  But we would ask Your Honor,

13   treat our opposition as a motion.

14       Dugaboy spends the rest of its time, in the papers and its

15   argument that Mr. Draper made, challenging several arguments,

16   other arguments the Debtor makes in its opposition.  First,

17   they argue that there is no deadline for seeking compliance

18   and that the insinuation that we made that this is

19   gamesmanship is off base.  I'll acknowledge, Your Honor,

20   2015.3 does not contain a deadline for a party seeking

21   compliance.  But as I said before, context matters.  And given

22   how this motion has come to be before your court, I will leave

23   it for Your Honor to determine which party is the true one

24   playing games here.

25       Second, Dugaboy argues that there's nothing confidential

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 03/26/25   Page 94 of 256   PageID 12813
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 32 of 106   PageID 9610

30

1    in any of the information required to be filed in the 2015.3

2    reports and that the disclosure of information will facilitate

3    interest in the assets and maximization of the Debtor's

4    assets.  Twenty months into this case, Your Honor, no party

5    other than Mr. Dondero or his related entities has complained

6    to the Court that the Debtor is not being transparent or

7    forthcoming.

8        And there's good reason for that.  Even during the early

9    stages of this case, when the Debtor and the Committee had

10   their differences, the Debtor was entirely forthcoming with

11   information about its assets, nondebtor affiliates, and

12   strategy for maximizing assets of the Debtor and its

13   affiliated entities.  That collaborative effort continues

14   today, and I suspect is one of the reasons that the Committee

15   has joined in the Debtor's opposition here.

16       Similarly, the Debtor's nondebtor affiliates have

17   transacted business with third parties postpetition.  The

18   Debtor has provided information to those parties as

19   appropriate, subject to nondisclosure agreement, and several

20   successful processes have been run that have maximized value.

21       And just to make clear, Your Honor, we do not believe that

22   Mr. Dondero or his related entities signed a nondisclosure

23   agreement that they would comply with the obligations.  So we

24   have no interest and no desire, unless ordered by the Court,

25   either in this context or another context, to provide Mr.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 6-15   Filed 08/06/25   Page 95 of 256   PageID 12814
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 33 of 106   PageID 9611

31

1   Dondero or his related entities with information that the

2   Debtor believes would prejudice its ability to monetize

3   assets.

4        The alleged transparency that Mr. Draper and the trusts

5   seek is not borne out of a desire to open the playing field

6   and make it level and put financial information in the public

7   domain for the good of the case.  It's about getting access to

8   information that the Debtor, in the exercise of its business

9   judgment -- should not be disclosed.

10       Lastly, Mr. Draper again, during oral argument, harped on

11  Mr. Seery's testimony that the reason the reports were not

12  filed is that they fell through the cracks.  It's misleading.

13  He also stated that Mr. Seery said they would file the

14  reports.  I've looked at the testimony.  That's not what he

15  said.  But he did say at confirmation that it slipped through

16  the cracks.  No doubt.  That's in the transcript.

17       And yes, the Debtor stands behind the fact that, in the

18  months leading to the confirmation hearing, neither Mr. Seery

19  nor the Debtor's professionals even thought about 2015.3.

20       But Your Honor, it's what has happened since that

21  justifies the Debtor's request for a waiver.  The plan is soon

22  to become effective.  As I said, the Debtor is down to 12

23  employees, who could not possibly prepare this information

24  without substantial time and effort.  Their effort and their

25  time should be focused on monetizing assets that will put

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 04/30/25   Page 96 of 256   PageID 12815
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 34 of 106   PageID 9612

32

1    money in creditors' pockets, hopefully sooner than later.

2        And on top of that, given the massive fraud that

3    management has uncovered, and continues to uncover information

4    to this day, Your Honor, on matters separate from the Sentinel

5    matter -- every week, we are finding out new information that

6    has not been made public that causes us real concern, and at

7    the appropriate time that information will be brought before

8    the Court -- the Debtors simply can't rely on that

9    information.  And to be required to go through the effort to

10   put that information out in the public record so Mr. Dondero

11   can later say that the Debtor was judicially estopped, or use

12   that information for an ulterior purpose or a litigation

13   strategy, just does not make sense.

14       Based upon the foregoing, Your Honor, we would ask that

15   the Court deny the motion and grant the Debtor a waiver of the

16   2015.3 requirements.

17       Does Your Honor have any questions?

18          THE COURT:  I do not think so.  Well, I just -- am I

19   correct in remembering the Debtor had somewhere around 75

20   employees at the beginning of this case?  And I didn't know it

21   was down to 12.  I knew it was down very low.  But that's what

22   we're talking about?

23          MR. POMERANTZ:  Yeah, that -- that sounds about

24   right, Your Honor.

25          THE COURT:  Okay.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 05/06/25   Page 97 of 256   PageID 12816
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 35 of 106   PageID 9613

1          MR. POMERANTZ:  And I should mention, you know, I was

2     there at the beginning.  I was there before the board.  The

3     first couple months of the case, it was extremely difficult to

4     get the Debtor's employees focused on trying to get the

5     information for the 2015.3.  They did not want that

6     information disclosed.  And it's sort of a -- sort of a little

7     ironic that now they're here asking for disclosure.

8          But, look, we're not going to walk away from the fact

9     that, yeah, it slipped through the cracks.  After the board

10    took over, Your Honor has heard many times what they did, the

11    efforts they went to.  If the U.S. Trustee had approached us,

12    if Mr. Dondero had approached us early on, we would have

13    figured out a way to address that and deal with that.  The

14    fact of the matter, it wasn't.  The fact of the matter, it was

15    brought up as a litigation tactic on confirmation, to defeat

16    confirmation of the plan.  And as I mentioned, for the

17    reasons, it's being used as a tactic now as well.

18          THE COURT:  All right.  Thank you.

19          MR. DRAPER:  Your Honor, I -- can I -- can I make a

20    few comments?

21          THE COURT:  No, not --

22          MR. DRAPER:  I'll be short.

23          THE COURT:  Not yet.  Mr. Clemente, --

24          MR. DRAPER:  Okay.

25          THE COURT:  -- I neglected to mention when I was

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 06/06/25   Page 98 of 256   PageID 12817
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 36 of 106   PageID 9614

34

1   taking appearances, you filed a joinder on behalf of the

2   Committee with regard to --

3           MR. CLEMENTE:  That's correct, Your Honor.

4           THE COURT:  So I need to hear from you next, and then

5   I'll circle back to Mr. Draper.

6           MR. CLEMENTE:  That's correct, Your Honor.  And just

7   for the record, Matt Clemente from Sidley Austin.

8           THE COURT:  I should say, a joinder in the

9   opposition.  That was a confusing statement I just made.

10          MR. CLEMENTE:  Yeah, that's correct, Your Honor.

11          THE COURT:  Uh-huh.

12          MR. CLEMENTE:  And so I will be very brief, because

13  Mr. Pomerantz was obviously very thorough.  But just to echo

14  what he said, you know, the Committee is comfortable with the

15  information that it has received.  And as Your Honor knows, we

16  haven't been and won't be shy about coming to the Court if we

17  felt that that was not the case.

18      You know, we obviously had our issues early on in the

19  case, including with respect to getting information from the

20  Debtor.  But, again, the Committee, you know, has been

21  comfortable with the information that it's received from the

22  Debtor.

23      Therefore, at this point, Your Honor, from the Committee's

24  perspective, there doesn't seem to be any bona fide purpose to

25  making the Debtor go through the cost and the expensive effort

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 07/07/25   Page 99 of 256   PageID 12818
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 37 of 106   PageID 9615

35

1   that Mr. Pomerantz said would be required to create the Rule

2   2015.3 reports.  And, again, I -- without casting aspersions,

3   it would suggest, based on previous activity, that there's

4   really only a nefarious purpose for what is being pressed

5   before Your Honor today.

6        So, Your Honor, again, we support the Debtor's position.

7   I absolutely agree with Mr. Pomerantz's arguments.  We would

8   request that Your Honor, you know, enter the relief that the

9   Debtor is requesting today.

10             THE COURT:  All right.  And Mr. Clemente, I just --

11             MR. CLEMENTE:  Yes?

12             THE COURT:  I just want to seal in my brain the

13   context that I think applies here.  The January 2020 corporate

14   governance settlement order.  In there, we all know there were

15   lots of protocols about lots of things, but one of them or a

16   set of the protocols dealt with transfers of assets in these

17   nondebtor subs or entities controlled by the Debtor.  And, of

18   course, Mr. Pomerantz alluded to this, but I'm just going to

19   make sure I'm crystal clear on what I remember.  You know, the

20   whole -- well, it was a protocol that the Committee would have

21   to be consulted on transfers of assets of those nondebtor

22   subs, those nondebtor controlled entities, and, you know,

23   there was a discussion that 363 doesn't apply, of course, to

24   nondebtor assets, and you could really argue all day, even if

25   it did apply, about whether these are ordinary course or non-

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 08/06/25.154   Page 100 of 256   PageID 12819
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 38 of 106   PageID 9616

36

1   ordinary course because of the business Highland is in.  But

2   the Debtor negotiated with you and your clients:  We're going

3   to have full transparency to let you all get notice of

4   transfers of assets of these subs, and you could even object

5   and bring a motion.  I mean, you can file some sort of

6   pleading, even though we were not so sure 363 under any

7   stretch might apply.

8       Am I correctly restating the context that -- you know, Mr.

9   Pomerantz alluded to it, but I just want to make sure I'm

10  clear and the record is clear.

11          MR. CLEMENTE:  Your Honor, you are -- you are

12  absolutely correct.  There's a very complex set of protocols

13  that we painstakingly negotiated with the Debtor that had

14  different categories depending upon the asset --

15          THE COURT:  Uh-huh.

16          MR. CLEMENTE:  -- and the Debtor's ownership and its

17  relationship with respect to the nondebtor entities or the

18  related parties.  That required the Debtor to come to the

19  Committee in certain sets of circumstances and explain a

20  potential transaction and get the input from the Committee,

21  and either the Committee could consent to the transaction, or

22  if the Committee did not consent to the transaction, the

23  Debtor could seek relief from the Court.

24      Your Honor will remember that, in fact, one of the

25  hearings we had with respect to the monies that were placed in

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 03/06/25 54   Page 101 of 256   PageID 12820
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 39 of 106   PageID 9617

37

 1    the Court registry arose out of the protocols.  So the

 2    protocols worked from that perspective in requiring the Debtor

 3    to come to the Committee, allow the Committee to make an

 4    evaluation, and then the Debtor would make a decision from the

 5    perspective of how it wished to proceed.

 6        So, Your Honor is absolutely correct.  That was all part

 7    of the governance settlement that was negotiated back in

 8    January.  And from the Committee's perspective, again, it

 9    hasn't always been lemon water and rose petals, but we believe

10    that those protocols worked, and worked to provide the

11    Committee with information so it could appropriately evaluate

12    what the Debtor was doing.

13            THE COURT:  All right.  So I'm correct, you would

14    say, in thinking there was a lot of transparency built in?  It

15    didn't always work smoothly in the beginning, and as we know,

16    there were document production requests, many of them from the

17    Committee.  That all came to a head last July, with more

18    protocols put in place.  But lots of transparency was

19    negotiated by the Committee with regard to all of these

20    controlled entities and subs?

21            MR. CLEMENTE:  That was a critical, Your Honor, that

22    was a critical component of the governance settlement.

23            THE COURT:  Okay.

24            MR. CLEMENTE:  Because that was obviously the impetus

25    for us wanting that governance settlement, so we could get

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/02/25   Page 102 of 256   PageID 12821
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 40 of 106   PageID 9618

38

```
 1   that transparency.

 2       So, to answer your question, Your Honor, yes, the

 3   protocols served that function of providing the Committee with

 4   information on transactions that the Debtor was proposing to

 5   enter into.

 6           THE COURT:  Okay.  And of course, there was a waiver

 7   of the privilege -- I don't know if that's the word; I guess

 8   that is the right word -- with regard to possible estate

 9   causes of action.  Maybe I'm getting into something unrelated.

10   Maybe I'm not.  But that was part of the protocol, too, right,

11   the Debtor would waive its --

12           MR. CLEMENTE:  That's correct, Your Honor.

13           THE COURT:  -- privilege with regard to --

14           MR. MORRIS:  Your Honor, I apologize for

15   interrupting.  This is John Morris from Pachulski Stang.  I

16   just want to recharacterize that a bit.

17           THE COURT:  Okay.

18           MR. MORRIS:  It's not a waiver of the privilege.  We

19   agreed to share the privilege --

20           THE COURT:  Share the privilege.  Okay.

21           MR. MORRIS:  -- with the Debtor.  The Debtor --

22           MR. CLEMENTE:  I --

23           MR. MORRIS:  I'm sorry to -- sorry to correct you,

24   but it's a --

25           THE COURT:  Well, no, --
```

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 04/08/25.54   Page 103 of 256   PageID 12822
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 41 of 106   PageID 9619

```
 1            MR. MORRIS:  -- very important point.

 2            THE COURT:  -- that's why I hesitated on that word.

 3   I wasn't sure if that was the word, the concept.

 4            MR. MORRIS:  There's no waiver.

 5            THE COURT:  Okay.  Okay.  I'm not always --

 6            MR. CLEMENTE:  That is -- and that is correct, Your

 7   Honor.

 8            THE COURT:  Okay.

 9            MR. CLEMENTE:  Mr. Morris is correct.  As are you.

10            THE COURT:  Okay.  So I'm asking you, is all of this

11   protocol that was in place, I mean, is it reasonable for me to

12   think maybe that's the reason you all never pressed the 2015.3

13   issue, because you were getting a full look, as best you could

14   tell, and more?  You were getting more information, perhaps,

15   than these reports would have provided, even.  Is that fair

16   for me to think?

17            MR. CLEMENTE:  It is fair for you to think that, Your

18   Honor.  We viewed the protocols as our mechanism to get the

19   information that was necessary for the Committee to evaluate

20   the transactions that the Debtor wanted to engage in.  And so

21   we were looking to the protocols, and in fact, I think the

22   protocols were very broad in certain respects, and we were not

23   thinking about the Rule 2015 reports, nor would we have said

24   that that would have been a substitute for negotiating those

25   protocols and implementing them.
```

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/26/25   Page 104 of 256   PageID 12823
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 42 of 106   PageID 9620

40

1          THE COURT:  Uh-huh.

2          MR. CLEMENTE:  So that's how the Committee was

3    looking at it, Your Honor.

4          THE COURT:  Okay.  All right.  Well, okay.  Mr.

5    Draper, I'm going to come back to you.  You get the last word

6    on that.

7          MR. DRAPER:  Thank you.  First of all, the answer is

8    yes, there are extensive protocols between the Debtor and the

9    Committee.  I one hundred percent agree with you.  And the

10   other point I'd make with that is this information is a

11   scaled-down version of what they're giving the Committee on a

12   regular basis.  So the argument that it would take hundreds of

13   man hours and millions of dollars to do that is absolutely not

14   true.  This information, in large measure, even vaster

15   portions of it have already been given to the Committee.

16   Number one.

17       Number two, we as lawyers are literalists --

18          THE COURT:  But I presume not in this format.  I

19   presume not in the format of filling out the form A through E

20   exhibits.  I mean, maybe it's an email.

21          MR. DRAPER:  Well, --

22          THE COURT:  Maybe it's a phone call.

23          MR. DRAPER:  -- it's not in a form -- no, there is --

24   there is -- they both have financial advisors who I'm sure

25   you're going to see whopping fee applications from who have

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix Filed 04/06/25.154    Page 105 of 256    PageID 12824
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 43 of 106    PageID 9621

41

1   pored through all of this.  My bet, and I'd bet big dollars on

2   this, is that financial -- balance sheets are given to them on

3   a regular basis, statements of financial information for

4   subsidiaries and changes in cash flow are given to them.

5   Otherwise, there's no way the Creditors' Committee could

6   monitor what's going on and what's happening.

7       So, really, this is -- this is not a phone call thing.

8   There is real financial data that's being given that is

9   available and can be given on a scaled-down basis.

10      My real point of this is we as lawyers are literalists

11  until it suits our purposes not to be literalists.  There is

12  no exception in 2015.3 for information being given to a

13  creditors' committee.  In fact, when you look at 2015.3, it

14  basically figures there is information going to a creditors'

15  committee.  This is for the others who don't have access to

16  that information.

17      And the interesting part of that is, as the Court's aware,

18  the Bankruptcy Code was amended that if I had gone to the

19  Creditors' Committee and made a request as a creditor, I

20  probably have a right to get even more information than 2015.3

21  allows me to get.

22      Next, which is the giant smokescreen.  We're basically

23  dealing now with the gee, Mr. Dondero's a bad guy; gee, they

24  want this information because they want to uncover what we

25  know.  That's just not true with respect to these reports.  If

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/60/25 154   Page 106 of 256   PageID 12825
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 44 of 106   PageID 9622

42

1   you look at what the reports do, the reports start from the

2   day that the case was filed and ask for changes in financial

3   condition from the day the case was filed going forward.  It

4   is all postpetition in its effect.  And to the extent they've

5   uncovered things that are incorrect in the Debtor's schedules,

6   the truth is the amendment of the schedules is warranted.

7   2015.3 does not deal with prepetition activity in any way,

8   shape, or form.  They are balance sheets that ask for -- or

9   changes in financial condition that go from the filing of the

10  case, or seven days before, and require reports every six

11  months.

12      So this giant smokescreen that there's a massive fraud,

13  there's all this other stuff that's been uncovered, is just

14  not true.  It is an attempt to cover up or give an excuse that

15  is unwarranted with respect to why they haven't done the

16  2015.3.

17      Next point.  There is no secret stuff that's being done.

18  There's no valuation that we're asking for.  2015.3 asks for

19  balance sheet information.  So, in fact, if they own ten

20  pieces of property, 2015.3 would bind them together in a

21  balance sheet and say, this is the total real estate that we

22  have.  If an entity has 15 entities under its umbrella, it

23  would have a balance sheet entry.  Assets and liabilities.

24  It's not broken down.  The assets are probably at book value

25  or some sort of mark to market.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 04/05/25154 Page 107 of 256   PageID 12826
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 45 of 106   PageID 9623

43

1      But honestly, this is -- there is no way that this

2  information gives anybody any benefit in terms of any bidding.

3      And the other point that's problematic is anybody who

4  wants to buy these assets would walk in and say, look, I want

5  a data room, let me look at this.  If what Mr. Pomerantz is

6  saying, which I don't understand, is that we're not going to

7  let a Dondero entity buy an asset, notwithstanding the fact

8  that they may pay more for the asset than somebody else would,

9  I think that's -- I have a huge problem with that.  We're here

10 for monetization of assets.  We're here to maximize the value.

11 And if, in fact, somebody walks in that may be a tangentially-

12 related Dondero entity and is willing to pay more, they should

13 be thrilled with that fact, not jettison it or disregard it.

14 That is -- their job is to maximize value, not minimize value

15 through a controlled sale process.

16     Again, I'm looking at the Code section.  I'm looking at

17 2015.3.  It basically says what it says.  It's designed to

18 give basic financial information.  It has nothing to do and

19 offers no disclosures of anything Mr. Pomerantz has thrown up

20 before the Court or that Mr. Dondero or any of his entities or

21 people are alleged to have done.

22     And the last is, if in fact there's financial information

23 that's incorrect in any of these entities, I question what the

24 Debtor's financial advisors have been doing for the last

25 months.  Honestly, they should be poring over these books.  If

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix   Filed 04/05/25 Page 108 of 256    PageID 12827
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 46 of 106    PageID 9624

44

1   they find a problem, they should correct 'em and address them.

2   And so there's no basis under the Code.  We've -- what's been

3   given to you and what their argument is is an excuse for not

4   doing something they should have done.  It can't be couched as

5   to who's asking.  It is systematic in nature.  And what's been

6   thrown up before the Court in Mr. Pomerantz's arguments are

7   just not true when you look at what the form requires.

8           THE COURT:  You know, I can't remember ever being in

9   a contested matter involving this rule.  And I was kind of

10  pondering before coming out here, I wonder why that is.  And,

11  you know, I'm thinking the vast majority of our complex

12  Chapter 11s that involve many, many, many entities, they all

13  file.  Okay?  You know, they're kind of a different animal, if

14  you will, from Highland.

15      You know, we know how it normally works.  You've got maybe

16  the mothership, holding company, and many, many subs, and

17  you've got asset-based lending, right, where, you know, maybe

18  the majority of the entities in the big corporate complex are

19  liable, so you just put them all in.  Okay?

20      We don't have -- I have not experienced a lot of Chapter

21  11s where you have basically just the mothership and then you

22  keep subs and lots of affiliates out.  Okay?  So I'm thinking

23  that's one reason.

24      Another thing, I can't remember how old this rule is.

25  Does anyone -- can anyone educate me?  How long has this rule

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/05/25 1:54   Page 109 of 256   PageID 12828
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 47 of 106   PageID 9625

45

1    been around?

2          MR. DRAPER:  Your Honor, this is Douglas.  I think it

3    came in after Lehman Brothers.  And it came --

4          THE COURT:  Uh-huh.

5          MR. DRAPER:  It was put in to deal with off-balance

6    sheet items.

7          THE COURT:  Uh-huh.

8          MR. POMERANTZ:  2008, Your Honor.

9          THE COURT:  2008?

10         MR. DRAPER:  Which is exactly right.  It --

11         THE COURT:  Okay.

12         MR. DRAPER:  Yep.

13         THE COURT:  Okay.  So that, that's another reason.

14   Because I was thinking like *Enron* days.  You know, that's a

15   big giant, a gazillion entities, and, of course, a whole huge

16   slew of them were all put in.

17        So, there's not a lot of case law.  And you know, maybe

18   there are other situations where a judge ruled on this issue

19   but without issuing an opinion.  So, anyway, that's neither

20   here nor there.

21        Mr. Draper, you've urged me to focus on the literal

22   wording of the rule.  It's "shall" language.  You've talked

23   about essentially the integrity of the system as being the

24   reason for the rule.  You've told me not to accept the

25   Debtor's "bad guy" defense, you know, as an excuse.  This is

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/08/25 54   Page 110 of 256   PageID 12829
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 48 of 106   PageID 9626

46

 1   just Dondero, you know, wanting the information, and therefore

 2   I should discount the motivations here.

 3       But let me tell you something that is nagging very, very

 4   much at me, and I'll hear whatever response you want to give

 5   to this.  I just had an all-day hearing a couple of days ago,

 6   and this involved the Charitable DAF entities and a contempt

 7   motion the Debtor filed because those entities went into the

 8   U.S. District Court upstairs in April and filed a lawsuit that

 9   was all about Mr. Seery's alleged mismanagement with regard to

10   HarbourVest.

11       So what I'm really worried about is the idea that your

12   client wants this information to cobble together a new

13   adversary alleging mismanagement.  How can I not be worried

14   about that?

15           MR. DRAPER:  It's real simple.  Because the

16   information that's here doesn't go to management decisions.

17   The information that's requested here has balance sheet items.

18   It has to do with changes in cash flow.  It is not something

19   that you can cobble together a claim, because it doesn't deal

20   with discrete transactions.  It deals with only transactions

21   between affiliated entities.  It only deals with disclosure of

22   administrative expenses that are incurred by a subsidiary for

23   which the Debtor is liable.  It only deals with changes in

24   condition on a go-forward basis and a balance sheet.  It

25   doesn't say, gee, we have to disclose that, with respect to

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 04/30/25154   Page 111 of 256   PageID 12830
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 49 of 106   PageID 9627

47

1   HarbourVest or with respect to the MGM stock or whatever,

2   we're doing A, B, or C.  It doesn't go there.

3       That's why I asked the Court in my opening, look at the

4   form.  Because the form is what I'm asking for adherence to.

5   I'm not asking the form to be varied.  I'm just asking the

6   form to be approved -- to be addressed.  And the form

7   controls.  It is not something you can cobble together a

8   complaint with.

9            THE COURT:  Well, you left out when I asked, you

10  know, did your client have an administrative expense claim in

11  this case, and Mr. Pomerantz corrected the record on that.

12  Your client, while it's not a lawsuit in another court, has

13  filed an administrative expense that there was mismanagement

14  of a nondebtor sub or nondebtor controlled entity, --

15           MR. DRAPER:  That -- that's --

16           THE COURT:  -- Multistrat.

17           MR. DRAPER:  No, that's not -- if -- if I understand

18  the claim -- again, I didn't file it, and I forgot, that's an

19  oops on me as opposed to an oops on Mr. Seery for not filing,

20  and I apologize for the Court for that.  But if I understand

21  that claim, is when he acquired whatever he acquired, he

22  should have offered it to the other -- to the other members of

23  the -- that group.  Again, I'm not -- that's not -- I'm a

24  bankruptcy lawyer, as the Court's well aware.  This other

25  stuff is beyond me.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 05/05/25   Page 112 of 256   PageID 12831
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 50 of 106   PageID 9628

48

```
1        But the truth is, my understanding of the claim, it goes

2   to who should have benefited by the transaction and whether

3   the Debtor got CLO interests or got cash for it is irrelevant

4   and that it should have been offered.  That's what I

5   understand the claim.

6            THE COURT:  Okay.  So the same sort of theory --

7            MR. DRAPER:  So, the claim --

8            THE COURT:  -- as HarbourVest?  The same sort of

9   theory as HarbourVest?

10           MR. DRAPER:  No.  No.  Well, no, I'm just saying,

11  that's -- that's what -- again, you're asking me for something

12  that's outside my expertise.

13           THE COURT:  Okay.

14           MR. DRAPER:  Yes, we may have filed a claim.

15           THE COURT:  Who filed a proof of claim?

16           MR. DRAPER:  And the point I'm making --

17           THE COURT:  Who filed the proof of claim?

18           MR. DRAPER:  What?  I did not -- I have not filed the

19  proof of claims that were asserted by Dugaboy.

20           THE COURT:  I mean, --

21           MR. DRAPER:  I think that was --

22           THE COURT:  -- request for administrative expense.

23  Who filed this?  You say you don't -- you didn't file it.

24           MR. DRAPER:  I did -- I don't think I did.

25           MR. POMERANTZ:  Your Honor, to clarify, it was filed
```

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S    Document Appendix    Filed 05/05/25   Page 113 of 256    PageID 12832
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 51 of 106   PageID 9629

49

1   as a proof of claim, but it related to postpetition actions.

2   And, again, I don't have it before me.  This has been raised

3   --

4             MR. DRAPER:  I --

5             MR. POMERANTZ:  -- several times in the confirmation

6   hearing when Mr. Draper was there, so I guess he must have

7   just forgotten about it.  But I don't know who actually filed

8   it.  But it is -- it is -- it is a proof of claim that is on

9   the record.

10            MR. DRAPER:  Mr. Pomerantz, God forbid that I should

11  forget something.  I'm sure you never have.

12            THE COURT:  Okay.  Well, here's what I'm going to do.

13  I'm not going to grant the relief being sought today, but I

14  will continue the hearing to a date in early September.  And

15  Mr. Draper, you can coordinate with my courtroom deputy, Traci

16  Ellison, with regard to a setting in early September.

17     I can assure you it's not going to be until after Labor

18  Day.  I think Labor Day falls on the 6th, maybe, and I plan to

19  be far away the first few days of September, far away from

20  this country.

21     But here are a few things I want to say.  First, I care

22  about transparency, and I tend to strictly construe a rule

23  like this.  I think, you know, it should be very clear for

24  anyone who's appeared before me that I really like -- I say

25  open kimono.  I probably shouldn't use that expression, but I

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 05/26/25 54 Page 114 of 256   PageID 12833
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 52 of 106   PageID 9630

50

1    use that expression a lot.  You know, when you're in Chapter

2    11, the world changes and you have to be very transparent.

3        But while I generally feel that way, we have -- as I also

4    always say, facts matter, contexts matter -- and here we are

5    twenty months into a case and we're post-confirmation.  This

6    motion was filed post-confirmation.  So I acknowledge that the

7    Rule 2015.3(b) has the requirement of filing reports as to

8    these nondebtor controlled entities until the effective date

9    of a plan.  We're so -- we're presumably so very close to the

10   effective date that I think I should exercise my discretion

11   under Subsection (d) of this rule to, after notice and a

12   hearing, vary the reporting requirements for cause.  I think

13   there's cause, and that cause is I think we're oh so close to

14   the effective date.  That's number one.  Number two, we're

15   down to 12 staff members.  And I've heard that 150 entities

16   may be implicated, and I don't think that is a necessary and

17   reasonable use of staff members at this extremely late

18   juncture of the case.

19       And my third reason for cause under Subsection (d) of this

20   rule is we have had an active, a very active Creditors'

21   Committee in this case with sophisticated members and

22   sophisticated professionals who negotiated getting more

23   information, I think more useful information than this rule

24   even contemplates with the various form blanks.

25       Now, obviously, I'm continuing this to September because,

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 05/30/25   Page 115 of 256   PageID 12834
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 53 of 106   PageID 9631

51

1   if we don't have an effective date by early September, well,

2   context matters, maybe that causes me to view this in a whole

3   different light.  But that is the ruling of the Court.

4       You know, I just want to say on behalf of the U.S.

5   Trustee, I don't know if anyone's listening in, but it was an

6   unfortunate use of words earlier, I think, saying, you know,

7   secret deal with them.  And I use unfortunate words all the

8   time.  I'm not being critical.  But I just want to defend

9   their honor here.  Oh my goodness, they --

10          (Phone ringing.)

11          THE COURT:  -- exercise integrity in every case I see

12  to the utmost degree, and I suspect they were satisfied that

13  the Committee was getting so much access to the Debtor, with

14  the sharing of the privilege and the protocols, that it just

15  didn't seem necessary in the facts and circumstances of this

16  case to require strict compliance with 2015.3.

17      So I'm going to ask Mr. Pomerantz to upload a form of

18  order reflective of my ruling.  And, again, if --

19      Whose phone is ringing?  Is there something going on with

20  our equipment?

21          THE CLERK:  No.

22          THE COURT:  I don't know where that phone ringing is

23  coming from.

24          THE CLERK:  I can hear it.

25          THE COURT:  Okay.  So, you'll get a day from Ms.

Case 19-34054-sgj11  Doc 3470-1  Filed 08/26/22  Entered 08/26/22 17:11:52  Desc
Case 3:25-cv-02072-S  Document Appendix  Filed 05/06/25.54  Page 116 of 256  PageID 12835
Case 3:21-cv-00879-K  Document 17  Filed 06/28/21  Page 54 of 106  PageID 9632

52

1   Ellison in -- after labor day, and we'll see where we are.

2   This will be a moot matter as far as I'm concerned if we've

3   had an effective date at that point.

4       (Continued phone ringing.)

5           MR. POMERANTZ:  Your Honor, one clarification I would

6   ask to have.  I don't think -- I think Your Honor intends that

7   to be a status conference, so to save the Debtor from, you

8   know, spending time in doing a pleading, and Mr. Draper as

9   well, and Your Honor from reading them, I would say that there

10  should be no pleadings filed in advance.  We will appear

11  before Your Honor with a status conference.  And to the extent

12  Your Honor determines there's further briefings or further

13  issues that need to be decided, you could decide at that

14  point.  But no further briefing.

15          THE COURT:  Okay.  I think that is a fair request.

16      (Ringing stops.)

17          THE COURT:  And so that -- that is the way we'll set

18  this up.  Status conference.  No further pleading.

19          MR. DRAPER:  Your Honor?

20          THE COURT:  All right?  Mr. Draper?

21          MR. DRAPER:  Can I make a request, Your Honor?  Can I

22  change -- can I make a comment about the Court's ruling?

23  Because I want to be transparent about this.  And I think the

24  Court's ruling, I would request that you shapeshift it a

25  little bit.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 05/05/25   Page 117 of 256   PageID 12836
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 55 of 106   PageID 9633

53

1      If, in fact, you're going to take the position that if the

2   plan goes effective, this issue -- this -- this motion is moot

3   and will be denied, I think, quite frankly, why don't we enter

4   that order now, rather than waiting.  Because that at least

5   gives me the ability to address the issue.

6      I don't think the rule has a waiver of it on the effective

7   date.  Let's -- let's get the issue before the -- before

8   everybody.  Because, again, as I said, if in fact your

9   position is that if it goes effective I'm going to deny the

10  relief and claim it's -- and assert it's moot in a ruling, I'm

11  fine, let's get the ruling now.  Because -- because my

12  position is that that waiver -- there is no basis for that

13  waiver due to time.  The rule requires being filed through a

14  point.

15     And, look, again, that way I'm not wasting the Court's

16  time.  We're not rearguing it.  If we're not having new

17  pleadings, let's get it over with.

18         MR. POMERANTZ:  Your Honor, I would reject that.

19  It's pretty transparent what Mr. Draper wants.  He wants

20  another appeal --

21         THE COURT:  Uh-huh.

22         MR. POMERANTZ:  -- because he wants to go to another

23  court, and he's unhappy that Your Honor has essentially given

24  an interlocutory order that he will be stuck with.

25     So we have, I think, close to a dozen appeals.  We're

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S    Document Appendix Filed 05/06/25-54   Page 118 of 256    PageID 12837
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 56 of 106   PageID 9634

54

1   spending millions of dollars.  And I find -- I find Mr.

2   Draper's request, quite honestly, offensive, that it would

3   require us to -- a lot more time and money on an issue we

4   shouldn't.  So, I would ask Your Honor to reject Mr. Draper's

5   request.

6           THE COURT:  All right.  I do --

7           MR. DRAPER:  And again, my --

8           THE COURT:  -- reject it.  That's exactly where my

9   brain went, Mr. Draper.  This is an order continuing your

10   motion.  Okay?  And we'll have a status conference in early

11   September on your motion.

12       And you know, again, I'm just letting you know my view it

13   will be moot if the effective date has occurred, and then

14   we'll get some sort of order to that effect issued at that

15   time.  And then I guess you'll have your final order that you

16   can appeal if you want at that point.

17       The last thing I'm going to say is this.  Mr. Draper, as

18   I'm sure you remember, at some point many weeks back -- I

19   think it was in January, actually -- I ordered that Mr.

20   Dondero should be on the WebEx, or if we're live in the court

21   for a hearing, live in the court, any time there's a hearing

22   where he, his lawyers, have taken a position, filed an

23   objection or filed the motion himself.  If he and his lawyers

24   are requesting relief or --

25           MR. DONDERO:  I'm here.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 05/06/25   Page 119 of 256   PageID 12838
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 57 of 106   PageID 9635

55

1          THE COURT:  -- objecting to relief, that he has to be

2     in the courtroom.

3        I am now going to make the same requirement with regard to

4     the trusts.  Any time the trusts file a pleading seeking

5     relief, object to a pleading seeking relief, file any kind of

6     position paper, I'm going to require a trust representative to

7     be in court.

8        Now, I don't know if that's the trustee, Nancy Dondero.  I

9     don't know if that's Mr. Dondero's wife, a sister, who that

10    is.  But it'll either be her or whoever the trustee is or Mr.

11    Dondero as beneficiary.  But it has gotten to that point.

12    Okay?  And --

13          MR. DRAPER:  Your Honor?

14          THE COURT:  And it's not -- it's not personal.  I

15    have said this before.  I've done this in many cases.  If we

16    have a party who feels so invested in what's going on that

17    they're waging litigation, litigation, litigation, at some

18    point very often I will make this order.  Like, okay, we're

19    all spending a lot of time on what you want, so you need to

20    show you're invested in it and be here with the rest of us.

21    And, you know, potentially we're going to want testimony in

22    certain contexts.  Okay?

23        So I don't know who that human being is for the trusts,

24    but I'm now to the point where I'm making that same order that

25    I did with regard to Mr. Dondero personally.  All right?

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 05/08/25 Page 120 of 256   PageID 12839
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 58 of 106   PageID 9636

56

1              MR. POMERANTZ:  Your Honor?

2              THE COURT:  Yes?

3              MR. POMERANTZ:  Your Honor, just to clarify, that's

4    Mr. Dondero and the trustee.

5         And I would also ask Your Honor, I know Mr. Dondero will

6    say that he was on, and that's what Mr. Taylor is going to

7    say, he was on audio.  I think, in order to have them actively

8    participating, they should be on the video the entire hearing.

9    Because if they're just on the phone on mute, Your Honor is

10   not able to really tell if they are really listening.  So I

11   would ask Your Honor to clarify to both Mr. Draper and Mr.

12   Taylor that, for both the trustee and Mr. Dondero, they should

13   be on video.

14             THE COURT:  All right.

15             MR. DRAPER:  Your Honor, Mr. Dondero is on.  You can

16   see him down in the lower screen.

17             THE COURT:  All right.  Just so you know, I mean, the

18   screen I'm looking at is not quite the same screen you're

19   looking at.  We have this Polycom.  And I show that there are,

20   you know, thirty-something people, but I only see the people

21   who have most recently talked.  Okay?  So, I see you, Mr.

22   Draper.  I see Mr. Pomerantz.  I see Mr. Clemente.  A few

23   minutes ago, I saw Mr. Morris.  But, you know, we've set it up

24   where I'm not overwhelmed with blocks; I'm just seeing the

25   people when they speak.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 05/06/25   Page 121 of 256   PageID 12840
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 59 of 106   PageID 9637

57

 1          MR. POMERANTZ:  Your Honor, and those were the only

 2   four people whose videos were on during the entire hearing.

 3          THE COURT:  Oh, okay.

 4          MR. POMERANTZ:  So I hope Mr. Draper is not going to

 5   say that Mr. Dondero was on video, because he was not.

 6          THE COURT:  Okay.

 7          MR. DRAPER:  No, you can see -- Mr. Pomerantz, what I

 8   said is you can see him on the screen here.  You can see that

 9   he has dialed in.  I don't see him jumping up and down or his

10   person.

11          THE COURT:  Oh, okay.

12          MR. DRAPER:  But it is clear that somebody dialed in

13   on his behalf.

14          MR. POMERANTZ:  Well, --

15          MR. DRAPER:  Or he dialed in.  He is -- he is

16   present.

17          MR. POMERANTZ:  Exactly.  That's my point, Your

18   Honor, that someone may have dialed in on his behalf.  And I

19   think Mr. Dondero, for them to have active, meaningful

20   participation, because I think that's what Your Honor is

21   getting at, that they should be here, engaged.  And if we were

22   in court like we were the other day, Mr. Dondero would have

23   had to sit in Your Honor's courtroom.  And if he is going to

24   take up the time of Your Honor and all the parties, he and the

25   trustee should be really engaged, which you cannot be if

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/05/25   Page 122 of 256   PageID 12841
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 60 of 106   PageID 9638

58

1   you're only on the phone.

2          THE COURT:  Okay.  All right.  Well, --

3          MR. DRAPER:  Your Honor?

4          THE COURT:  Go ahead, Mr. Draper.

5          MR. DRAPER:  Mr. Dondero just talked a few moments

6   ago, so Mr. Pomerantz heard him.  This is -- this is truly

7   unwarranted.  He's appeared, he's here, and he's made a

8   comment to the Court.  So, again, we are invested.  He was

9   present at this hearing.  He heard the hearing.  And so, you

10  know, I just don't know where this is coming from.  I

11  understand he missed a hearing before, but he is here for this

12  one.

13         THE COURT:  Okay.  Well, I'm not going to get bogged

14  down in this issue.  I am going to issue an order, though,

15  that is going to be reflective of what I said, and we'll just

16  -- we'll make sure we have him check in or whoever the

17  representative is of the trusts in future hearings and turn

18  the video on and we'll make sure.

19      Again, this is -- I used the word frustrated the other

20  day.  I'm very frustrated.  This is just -- this is -- it's

21  out of control.  Okay?  I ordered mediation earlier in this

22  case.  I believed that an earnest effort was put in.  But if

23  we're not going to have settlement of issues, you know, I'll

24  address these issues, but everyone who files a pleading,

25  whether it's Mr. Dondero personally or the trusts, the family

011944
APP. 277

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 06/06/25 54   Page 123 of 256   PageID 12842
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 61 of 106   PageID 9639

59

1    trusts, and, of course, we're going to get -- I'm going to go

2    the same direction, actually, with all these other entities.

3    You know, it's -- I've gotten to where I had my law clerk the

4    other day prepare me basically what was like a program from a

5    sports event, you know, who represents which entities, because

6    it's gotten overwhelming.  And --

7            MR. POMERANTZ:  Your --

8            THE COURT:  And I mentioned the other day, I'm very

9    close to requiring some sort of disclosures about the

10   ownership of each of these entities, because I -- you know,

11   the standing is just so tenuous, so tenuous with regard to

12   certain of these entities.  And I've erred on the side of

13   being conservative and, you know, okay, we maybe have

14   prudential standing, constitutional standing, even if it's

15   kind of hard finding statutory standing under the Bankruptcy

16   Code.  But it's gotten to the point where it's just costing

17   too much time and expense for me to not press some of these

18   issues and hold people accountable.

19      So, Mr. Pomerantz, were you about to say something?  I

20   know that we had talked at another hearing about the Court

21   maybe requiring some sort of disclosures for me to really

22   understand party in interest status maybe better than I do.

23           MR. POMERANTZ:  That, Your Honor, was where I was

24   going to go before Your Honor made the comment.  Your Honor

25   made that comment a few weeks ago.  I think, since then, quite

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/06/25   Page 124 of 256   PageID 12843
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 62 of 106   PageID 9640

60

1  honestly, nothing really has changed.  And I think it would be

2  helpful -- it would be helpful for the Debtor, and more

3  importantly, I think it would be helpful to the Court to have

4  a list that you can refer to every time we are in a hearing of

5  every entity that has appeared that Mr. Dondero has a

6  relationship with, who the lawyers are, what the claims they

7  filed, what the status of the claims they filed, and maybe

8  even what litigation they are in pending with the Debtor.

9      We're happy with -- part of it we could prepare.  But I

10  would think Your Honor should order that from Mr. Dondero's

11  related entities, because it might cut through a lot of it,

12  and give Your Honor the information Your Honor needs and the

13  context and perspective as you're hearing a lot of these

14  motions.

15          THE COURT:  All right.  Well, is there anything else

16  before we move on to the other matter?  I'm about to close the

17  loop on this by saying I am --

18          MR. TAYLOR:  Your Honor?  Your Honor?

19          THE COURT:  Who is that speaking?

20          MR. TAYLOR:  This is Clay -- this is Clay Taylor,

21  Your Honor, --

22          THE COURT:  All right.

23          MR. TAYLOR:  -- representing Jim Dondero

24  individually.

25          THE COURT:  Okay.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/06/25   Page 125 of 256   PageID 12844
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 63 of 106   PageID 9641

61

1          MR. TAYLOR:  And I just wanted to be heard.  I've

2     just listened in, even though Mr. Dondero was not the movant,

3     because sometimes issues like this do come up where his name

4     is thrown about.

5          First of all, Jim Dondero was indeed, as Mr. Draper said,

6     was indeed present.  He did indeed try to speak.  I kind of

7     overrode him.  And because, you know, he needs to speak

8     through his lawyer most of the time and shouldn't address the

9     Court directly.  But I wanted to let you know that Mr. Dondero

10    was indeed on the line, was actively listening, and was

11    participating.

12         As far as additional disclosures, it would be, I would

13    just note, somewhat ironic if the Court denies the motion for

14    what appears to be mandatory disclosures under Rule 2015.3 but

15    then imposes additional disclosure requirements on somebody --

16    on another party, without any rule stating that there is such

17    disclosures.  It just -- it strikes me as ironic, and I would

18    like Your Honor to consider that, at least, as Your Honor

19    says, context matters.

20         You know, that's the context in which this arises.  And we

21    would just ask Your Honor to reflect upon that before she

22    imposes additional duties upon my client.

23         But there is -- and the Debtor has asked for the response

24    to be taken as a motion for leave to not comply with a rule,

25    but yet Mr. Seery is not here.  The UCC regularly

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix  Filed 06/06/25154  Page 126 of 256    PageID 12845
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 64 of 106    PageID 9642

62

1    participates.  Its members are not here.  And so I just, to

2    the extent Your Honor is going to impose duties upon certain

3    parties, then what's good for the goose is good for the

4    gander, Your Honor.

5              THE COURT:  All right.

6              MR. POMERANTZ:  Your Honor, I would point out that

7    Mr. --

8              THE COURT:  I respect your argument.  I always

9    respect your arguments, Mr. Taylor.

10       By the way, you aren't wearing a jacket.  You know, next

11   time you need to wear a jacket.  And forgive me if I seem

12   nagging, but I'm letting you all know, if you all are soon

13   going to be having lots of litigation in the District Court, I

14   promise you the district judges are way more formal than me

15   and sticklers for every rule.  You'll also be doing everything

16   live in the courtroom, too.  I'm just letting you know that.

17       But while I respect your argument, apples and oranges.  I

18   mean, the 2015.3 rule, not only is it not -- not -- I wouldn't

19   say mandatory, since the Court has discretion for cause to

20   waive the requirement.  But it's a very onerous set of forms

21   that would have to be filled out for 150 entities by 12 staff

22   members.  I don't really consider that the same as the

23   disclosure that I'm now going to require.

24       But my law clerk and I will -- we'll craft a form of order

25   that will be specific as far as what I'm going to require.

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix    Filed 05/02/25    Page 127 of 256    PageID 12846
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 65 of 106    PageID 9643

63

1      And, again, I think it's way beyond the point of this

2  being necessary.  And just so -- again, I'm wanting to explain

3  this thoroughly.  You know, standing -- for the nonlawyers; I

4  don't know how many nonlawyers are on the phone, WebEx -- it's

5  a subject matter jurisdiction thing.  Okay?  And, you know, if

6  there's a dispute and someone involved in a dispute

7  technically doesn't have standing, that means the Court didn't

8  have subject matter jurisdiction to be adjudicating it.  Okay?

9  That's first year law school concept.

10      And it's been mentioned we have lots and lots of appeals,

11  and I can promise you, if you've never been through the

12  appellate process, that's the very first thing they'll look at

13  -- you know, District Court, Fifth Circuit, any Court of

14  Appeals -- because they have an overwhelming docket.  And if

15  there's a reason to push out this appeal before then because

16  of lack of subject matter jurisdiction, which would include

17  lack of standing, of course they are going to quickly get it

18  off their plates because they have other things to get to,

19  like criminal matters that are, you know, their top priority

20  because of the Constitution.

21      So this has been an evolving thing with me.  At some

22  point, I feel like the Courts of Appeals that are involved

23  with all of these appeals, they might be really, really

24  zeroing in on the standing of parties more than perhaps even I

25  have.  So I want to do my job and I want it clear on the

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/05/25   Page 128 of 256   PageID 12847
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 66 of 106   PageID 9644

64

 1   record, this is why this person has standing or doesn't have

 2   standing.  Okay?  I just feel like we've gotten to that point.

 3   And so we'll issue an order in that regard, and it will, I

 4   promise you, be crystal clear.

 5        Anything else?

 6            MR. POMERANTZ:  Your Honor, one last point.  Mr.

 7   Taylor insinuated that the board is not present here, which is

 8   incorrect.  A member or two members or three members of the

 9   board have been present at every hearing before Your Honor.

10   And that's without an order requiring them to do so, because

11   they are -- they are interested, they are engaged.  Mr. Dubel

12   is on the phone.  He has been on the phone.  I think this may

13   have been only the second hearing that Mr. Seery has missed,

14   felt it wasn't necessary to take him away from his running the

15   company.  So the Debtor has been, through its board members,

16   fully engaged, and I just wanted Your Honor to know that, that

17   we would never have a hearing before Your Honor without at

18   least one member of the independent board listening in and

19   participating as necessary.

20            THE COURT:  All right.  Thank you.

21        All right.  Well, let's move on to the other contested

22   matters, or adversary proceeding matters, I should say.  And

23   they're Adversary 21-3006 and 21-3007.  We have Motions for

24   Leave to Amend Answers.  And do we have Ms. Drawhorn appearing

25   for that motion or those motions?

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S    Document Appendix   Filed 07/02/25   Page 129 of 256    PageID 12848
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 67 of 106   PageID 9645

65

1           MS. DRAWHORN:  Yes, Your Honor.  Lauren Drawhorn with

2    Wick Phillips on behalf of Highland Capital Management

3    Services, Inc. and NexPoint Real Estate Partners, LLP,

4    formerly known as HCRE Partners, LLC.

5           THE COURT:  All right.  And who will be making the

6    argument for the Debtor on this one?

7           MR. MORRIS:  John Morris, Your Honor; Pachulski Stang

8    Ziehl & Jones; for the Debtor.

9           THE COURT:  All right.  Are there any other

10   appearances on this?

11       Okay.  Ms. Drawhorn?

12          MS. DRAWHORN:  Yes, Your Honor.  We are -- so, my

13   clients are seeking leave to amend the answer to add two

14   affirmative defenses.  As you know, under Rule 15(a), there is

15   a bias towards granting leave, and leave should be freely

16   granted unless there's a substantial reason to deny it.

17       The main factors that are considered in determining

18   whether there is a substantial reason to deny a motion for

19   leave to amend are prejudice, bad faith, and futility.

20       Here, there is no prejudice to the Plaintiff.  Under the

21   case law, if the -- as long as a proposed amendment is not

22   presented on the eve of trial, continuing deadlines or

23   reopening discovery does not constitute sufficient prejudice

24   to deny leave.

25       Here, discovery does not close until July 5th for Highland

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix  Filed 08/06/25 154  Page 130 of 256    PageID 12849
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 68 of 106    PageID 9646

66

1   Capital Management Services, and it does not close until July

2   26th for NexPoint Real Estate Partners.

3       The Plaintiff has not -- neither party has taken any

4   depositions in this case.  And we are open and willing to

5   extend the discovery deadlines if necessary.  We think that

6   discovery can be extended as necessary without extending any

7   dispositive motion deadline or the docket call which are set

8   in August.  Dispositive motions are August 16th for Highland

9   Capital Management and September 6th for NexPoint Real Estate

10  Partners, with docket call in those cases being October and

11  November.

12      So there's significant time.  If the -- if the party just

13  wants to conduct additional written discovery, I think that

14  that -- they would be easily be able to do that.

15      We're also open to continuing all the deadlines in this

16  case, and practically speaking, those -- the deadlines may be

17  continued depending on what happens with the pending motion to

18  withdraw the reference and the motion to stay.

19      So we don't think -- we don't see any reason why our

20  amended additional affirmative defenses will result in any

21  prejudice to the Plaintiff, and don't see that as a reason --

22  a substantial reason to deny the motion for leave.

23      There is no bad faith here.  The motion for leave was

24  filed two months after our original answer.  Again, this is

25  not a situation where we're trying to add a new defense on the

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 09/05/25   Page 131 of 256   PageID 12850
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 69 of 106   PageID 9647

67

1    eve of trial.  We're not even waiting until after discovery is

2    closed to try and add this new defense.  And it's not after

3    one of our prior defenses failed.  Instead, we've been

4    conducting additional investigations, preparing for written

5    discovery.  And as set forth in more detail in the Sauter

6    declaration that was filed yesterday, we discovered these

7    additional defenses through that additional investigation.

8         So there's certainly no bad faith here in adding these two

9    defenses.  We are just trying to make sure that we can prove

10   up our defenses and prove up our case on the merits, as we

11   need to.

12        And then the last factor, the new affirmative defenses

13   we're seeking to add, they're not futile.  I cited some cases

14   in the pleadings.  There are some judges in the Northern

15   District of Texas that refrain from even evaluating futility

16   at this stage, at a motion for leave to amend stage,

17   preferring to address those on a motion for summary judgment

18   situation.  But even when it is considered, futility looks

19   more at is there a statute of limitations that prevents the

20   claim from being successful, or does the court lack subject

21   matter on its face, based on this defense?  And that's not the

22   case here.

23        The Debtor -- the Plaintiff tries to argue on the merits

24   of our affirmative defenses, and a motion for leave to amend

25   is not a basis for that.  This isn't a motion for summary

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 07/06/25 154 Page 132 of 256   PageID 12851
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 70 of 106   PageID 9648

68

1   judgment.  This is just -- just a motion for leave to add

2   these defense, and they can certainly address the merits later

3   on in the case.

4       So we think we provided sufficient notice in our proposed

5   amendment.  I mean, our proposed amended answer.  To the

6   extent we need to add any specifics, we are certainly open to.

7   We've noted them in our reply.  The ambiguity is -- is to the

8   notes as a whole.  We noted the Highland Capital Management,

9   there's two notes that are signed by Frank Waterhouse without

10  indication of corporate capacity, which creates some

11  ambiguity.  The notes reference other related agreements,

12  which create some ambiguity.  So we think there's sufficient

13  pleading of these new defenses to support leave to amend and

14  address those on the merits.

15      And then the condition subsequent defenses, while we --

16  the schedules and the SOFAs, the notes related to that

17  reference that some loans between parties and related -- to

18  affiliates and related entities may not be enforceable, we

19  think that supports our position and this defense here, now

20  that we've furthered our investigation and heard about this

21  additional subsequent agreement that supports the condition

22  subsequent.

23      And the opposition, the Plaintiff's opposition notes that

24  there has been some discovery on this defense.  It's similar

25  to one that's asserted in a related note adversary.  And

011954

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix Filed 07/06/25 Page 133 of 256    PageID 12852
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 71 of 106    PageID 9649

69

1   while, again, they try to assert the merits and the

2   credibility of certain testimony, that's -- that's a decision,

3   credibility of a witness is a decision for a fact finder and

4   not for this stage of the proceedings and not for a motion for

5   leave to amend.

6       So we don't believe there's a substantial reason to deny

7   leave.  Again, under Rule 15, leave should be granted freely.

8   And so we would request that the Court grant our motion for

9   leave to amend so that we can have our amended answer and

10  affirmative defenses in this case.

11          THE COURT:  All right.  Well, Mr. Morris, you know,

12  the law is not too much in your favor on this one.  So what do

13  you have to say?

14          MR. MORRIS:  I have to say a few things first, Your

15  Honor.  The notes are one of the most significant assets of

16  the estate.  As the Court will recall at the confirmation

17  hearing, Mr. Dondero and all of his affiliated entities

18  objected to confirmation on the ground -- challenging, among

19  other things, both the liquidation analysis as well as the

20  projections on feasibility going forward.

21      One of the assumptions in those projections and in the

22  liquidation analysis was indeed the collection of these notes

23  in 2021.  They all sat on their hands, attacked the

24  projections, attacked the liquidation analysis, but never on

25  the grounds that the notes wouldn't be collectable in 2001

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix   Filed 07/28/25 154   Page 134 of 256    PageID 12853
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 72 of 106    PageID 9650

70

1    [sic], never informing the Court that there was some agreement

2    by which collection would be called into question, never ever

3    disclosing to anybody that the plan might not be feasible or

4    the liquidation analysis might not be accurate because these

5    notes were uncollectable.

6        So what happened after that, Your Honor?  We commenced

7    these actions.  Actually, before the hearing.  We actually

8    commenced these actions before the confirmation hearing, when

9    they sat silently on this.

10       And Mr. Dondero's first answer, because this is all very

11   important because they say that they're -- they're

12   piggybacking on Mr. Dondero.  Mr. Dondero's first answer to

13   the complaint said, I don't have to pay because there is an

14   agreement by which the Debtor said they would not collect.

15   It's in the record.  It's attached to my declaration.  And

16   that was it.  Full stop.  I don't have to pay because the

17   Debtor agreed that I would not have to collect.

18       So we served a request for admission.  Admit that you

19   didn't pay taxes.  He realized, okay, that defense doesn't

20   work, so he changes it completely and he amends his answer.

21   Now the amended answer says, I don't -- the Debtor agreed that

22   I wouldn't have to pay based on conditions subsequent.

23       And we said, what are those conditions subsequent?  Please

24   tell us in an interrogatory response.  And under oath, Mr.

25   Dondero said, I don't have to pay if the Debtor sells their

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 07/09/25   Page 135 of 256   PageID 12854
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 73 of 106   PageID 9651

71

 1   assets in the future.  At a favorable price, I think it says.

 2   Again, this is in the record.  And we asked him under oath,

 3   who made that agreement on behalf of the Debtor?  And he said,

 4   I did.

 5       And Your Honor will recall that we had a hearing on that

 6   very defense, on the motion to compel, where they said Mr.

 7   Seery has to come in and testify to the defense that Mr.

 8   Dondero made this agreement with himself.  And then the

 9   following week, on a Tuesday, we had the hearing on the motion

10   to withdraw the reference, and Your Honor said finish

11   discovery, because we told you discovery was going to be

12   concluded on Friday with Mr. Dondero's deposition.  You know

13   what they did, Your Honor?  The night before the hearing, they

14   amended Mr. Dondero's interrogatory.  Again, these are sworn

15   statements.  They amended it again to say he didn't enter the

16   agreement on behalf of the Debtor; Nancy Dondero, his sister,

17   did.

18       And then I took his deposition.  And we're going to get to

19   that in a moment, because I'm going to put it up on the screen

20   so you can see these answers, Your Honor.  And I say this by

21   way of background because it goes to both good faith -- or,

22   actually, bad faith -- as well as the lack of a bona fide

23   affirmative defense here.

24       This is -- there are five notes litigation.  One against

25   Mr. Dondero.  So that's package number one.  And they're

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 07/06/25 154   Page 136 of 256   PageID 12855
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 74 of 106   PageID 9652

72

 1   represented by the Stinson firm, who is signing all of these

 2   things.  The Stinson firm is out there claiming that in good

 3   faith each of these -- each of these amendments, each of these

 4   amendments to the interrogatories, are in good faith.  They're

 5   not in good faith, Your Honor.  They're just not.

 6        And the Bonds firm.

 7        Then bucket two is what we have here today.  That's HCRE

 8   and Highland Capital Management Services.  They're represented

 9   by Ms. Drawhorn.  I think the Stinson firm has now also

10   entered an appearance in those two adversary proceedings.

11        And the other two are against the two Advisors.  More

12   entities controlled by Dondero.  And Mr. Rukavina, I believe,

13   last night filed his motion to amend to add these same

14   defenses.

15        Okay?  Is this good faith?  I don't think this is good

16   faith.

17        Let's look at Mr. Dondero's testimony so that the Court

18   has an understanding of what we're talking about here.  I

19   think I have Ms. Canty on the phone, and I'd ask her to go to

20   Page 178.  3.  Just going to read (garbled) so you can see.

21   This was Mr. Dondero's testimony the day after telling me that

22   he amended his interrogatory -- sworn interrogatory answer to

23   say that he didn't enter the agreement on behalf of the Debtor

24   but Ms. -- but Ms. Dondero, his sister, did.

25        Question.  Are we -- 178, please.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 07/560125-1 54   Page 137 of 256   PageID 12856
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 75 of 106   PageID 9653

73

1          MS. DRAWHORN:  Your Honor, I would --

2          MR. MORRIS:  Question.  Please --

3          MS. DRAWHORN:  This is not testimony in this

4     adversary and I was not -- my clients were not present at this

5     deposition that Mr. Morris is referring to, so I --

6          MR. MORRIS:  Your Honor, with all due respect, she's

7     interrupting me, and I would ask her to allow me to finish my

8     presentation and then she can make whatever comments she

9     wants.  Because -- because --

10         MS. DRAWHORN:  Well, I'm objecting to this testimony

11    --

12         THE COURT:  Okay.

13         MS. DRAWHORN:  -- coming into evidence.

14         THE COURT:  Okay.  So your objection is -- if you

15    could just articulate your objection for the record, please,

16    Ms. Drawhorn.

17         MS. DRAWHORN:  I would object to this -- this

18    deposition is not in this proceeding, this adversary

19    proceeding, either of these two the adversary proceedings, and

20    my client was not present at this deposition, so I would

21    object to it as hearsay.

22         THE COURT:  Response?

23         MR. MORRIS:  Your Honor, if I may, I think this --

24    this points to just one of the fundamental problems that we

25    have here.  As we pointed out in our objection, the Debtor, as

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix Filed 07/05/25 54  Page 138 of 256    PageID 12857
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 76 of 106    PageID 9654

74

1    we sit here right now, still has no notice of the facts and

2    circumstances surrounding this alleged agreement.  We still

3    don't know who entered into the agreement on behalf of the

4    Debtor.  We don't know what the terms of the agreement were.

5    We don't know when the agreement was entered into.  We don't

6    -- right?

7        If they're going to assert that there's an agreement --

8    and they seem to be piggybacking on this conversation between

9    Mr. Dondero and his sister.  If there's a different one, they

10   need to say that right now.  They need to put their cards on

11   the table and they need to inform the Debtor who entered the

12   agreement on behalf of the Debtor pursuant to which the Debtor

13   agreed to waive millions and millions of dollars without

14   telling anybody.

15         THE COURT:  Okay.  I overrule the objection.  We can

16   go through the transcript.

17         MR. MORRIS:  So, I'm just going to use part of it,

18   Your Honor.  But on Lines 3 to 7:

19       "Q   Did  anybody  else  participate  --  did  anybody

20       participate in any of the conversations other than you

21       and your sister?

22       "A   I don't believe  it was  necessary.   It didn't

23       include anybody else."

24       Go down to Line 19, please.

25       "Q   Was the agreement subject to any negotiation?  Did

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix    Filed 07/00/25 154    Page 139 of 256    PageID 12858
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 77 of 106    PageID 9655

75

 1    she make any kind of -- any counterproposal of any

 2    kind?

 3    "A   No."

 4    Page 179, Line 2.

 5    "Q   Do you know if she sought any independent advice

 6    before entering into the agreement that you have

 7    described?

 8    "A   I don't know."

 9    Line 23, please.

10    "Q   Do you know if there were any resolutions that

11    were adopted by Highland to reflect the agreement

12    that's referred to in the -- in the answer?

13    "A   Resolutions that -- no.  Not that I'm aware of."

14    Page 180, Line 5.

15    "Q   Did you give Nancy a copy of the promissory notes

16    that were a subject of the agreement?

17    "A   No."

18    Continue.

19    "Q   Did she ask to see any documents before entering

20    into the agreement that's referred to?

21    "A   I don't remember."

22    Page 181, Line 19.

23    "Q   Under the agreement that you reached with Nancy

24    that's referred to in Paragraph 40, was it your

25    understanding that Highland surrendered its right to

011961

APP 2794

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 07/06/25 Page 140 of 256   PageID 12859
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 78 of 106   PageID 9656

76

1       make a demand for payment of unpaid principal and

2       interest under the notes?

3       "A   Essentially, I think so."

4       Page 219.  I'll just summarize 219, Your Honor.  Mr.

5  Dondero has no recollection of telling Mr. Waterhouse, the

6  chief financial officer, or any other employee of Highland

7  that he'd entered into this agreement with his sister pursuant

8  to which the Debtor agreed to not collect almost $10 million

9  of principal and interest.

10      Now let's -- let's go -- I think it's really -- because it

11 took me an awfully long time to get there.  On Page 214 at

12 Lines 16 through 24.  This is what the agreement was, because

13 this is -- this is -- this is his third try to describe the

14 agreement.  Right?  The first time -- it's just his third try,

15 and this is what the agreement is, Your Honor.

16      "Q   Did you and Nancy agree in January or February

17      2019 that if Highland sold either MGM or Cornerstone or

18      Trussway for an amount that was equal to at least one

19      dollar more than cost, that Highland would forgive your

20      obligations under the three notes?

21      "A   I believe that is correct."

22      That's -- that's the agreement.  It took him three times

23 to get there, but look at -- look at that.  He and his sister

24 did that.

25      And I do want to point out, Your Honor, that in their

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix    Filed 07/30/25    Page 141 of 256    PageID 12860
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 79 of 106    PageID 9657

77

1    opposition that they filed last night, the Defendants claim

2    that Ms. Dondero was authorized because she was -- she was the

3    trustee of Dugaboy and Dugaboy holds the majority of the

4    limited partnership interests in the Debtor and therefore she

5    had the authority to enter into the agreement on behalf of the

6    Debtor.

7        There is that flippant -- there is just that unsupported

8    statement out there.  Section 4.2(b) of the limited

9    partnership agreement says, and I quote, "No limited partner

10   shall take part in the control of the partnership's business,

11   transact any business in the partnership's name, or have the

12   power to sign documents for or otherwise bind the partnership,

13   other than as specifically set forth in the agreement."

14       So I look forward to hearing what basis there was to

15   submit a document to this Court that Nancy Dondero had the

16   authority to bind the Debtor in an agreement with her brother

17   pursuant to which tens of millions of dollars was apparently

18   forgiven.

19       Can we go to Page 238?  This is the last piece, Your

20   Honor.  The Debtor's outside auditors were

21   PricewaterhouseCoopers.  There's management representation

22   letters signed by both Mr. Dondero and Mr. Waterhouse

23   attesting that they had given their auditors all of the

24   information necessary to conduct the audit.  We will get to

25   that in due course, but these are very important questions

011963

APP 2706

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix Filed 08/06/25 4    Page 142 of 256    PageID 12861
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 80 of 106    PageID 9658

78

1   right here.

2        What page are we on?  Is it 238?  Okay.  So, Line 16, I

3   believe.

4        "Q   You knew at the time -- you knew at the time the

5        audited  financials  were  finalized  that  Highland  was

6        carrying on its balance sheet notes and other amounts

7        due from affiliates?

8        "A   Yep."

9        And if we could just keep going, Your Honor, you will see:

10       "Q   Did    you    personally    tell    anybody    at

11       PricewaterhouseCoopers    in    connection    with    the

12       preparation  of  the  audited  financial  statements  for

13       2018 that you and your sister had entered into the

14       agreement with your sister Nancy in January or February

15       of 2019?

16       "A   Not that I recall."

17       There's a lot more here, Your Honor.  I'm really just

18  touching the surface.  I am going to take Nancy's deposition

19  later this month.  But there is -- this is wrong.  This is

20  just all so wrong.  For three different reasons.  At least.

21  This is not a viable defense and will never be a viable

22  defense.

23       The audited financial statements carry these loans as

24  assets on the books, without qualification, and they were

25  subject to Mr. Dondero and Mr. Waterhouse's representations.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 00/00/25 54 Page 143 of 256   PageID 12862
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 81 of 106   PageID 9659

79

1      There is partial performance.  These entities that we're

2   talking about today, they made payments on these notes.  How

3   do you make payments on the notes and then come to this Court

4   and say the notes are ambiguous?  How do you -- how do you

5   make payments on the notes and come to this Court and tell

6   this Court, I just learned that there was an agreement by

7   which I don't have to pay, subject to conditions precedent in

8   the future.

9      Mr. Sauter submits a declaration in support of this

10   motion.  He has no personal knowledge.  He states in Paragraph

11   14 that his review of the Defendants' books and records did

12   not reveal any background facts regarding the notes.  Mr.

13   Dondero is the maker on all of the notes except for two of

14   them.  Mr. Dondero owns and controls the Defendants.  Mr.

15   Dondero was not employed or otherwise affiliated with the

16   Debtor after these actions were commenced.  Mr. Sauter takes

17   Mr. Seery to task for telling the Debtor's employees not to

18   take actions that were adverse, and he uses that as his excuse

19   for not knowing these facts.  He is the general counsel.  He

20   was served with a complaint that alleged that his clients were

21   liable for millions and millions of dollars.  His boss is

22   James Dondero.  He had unfettered access to James Dondero.

23   Mr. Dondero is the one who signed the notes, except for two of

24   them.  There is absolutely no excuse for not doing the

25   diligence to find out from Mr. Dondero that this defense

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 08/26/21 54   Page 144 of 256   PageID 12863
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 82 of 106   PageID 9660

80

1    existed.

2        And you know why it didn't happen?  Because the defense is

3    not real.  It is completely fabricated.  It continues to

4    change and evolve every single time I -- every single time I

5    talk about these note cases, it's a new defense, it's a

6    different defense, the contours change, somebody else is

7    involved.  This is an abuse of process, Your Honor.  It is bad

8    faith.  It just really is.  And somebody's got to start to

9    take responsibility and say, I won't do this.  I won't do

10   this.

11       Somebody's got to stand up and say that, because, I'm

12   telling you, it's not enough, Your Honor, that the Debtor is

13   going to collect all of its fees under the notes at the end of

14   this process.  It's not enough,  because we're now giving an

15   interest-free loan.  These are -- these are notes that are

16   part of the Debtor's plan that nobody objected to, that nobody

17   suggested were the subject of some condition subsequent.

18       This is not your normal, you know, gee, I'd like leave to

19   amend the complaint.  They're simply following what Mr.

20   Dondero did.  And I would really ask the Court to press the

21   Defendants to identify specifically who made the agreement on

22   behalf of the Debtors, when was the agreement made, is there

23   any document that they know of today that reflects this

24   agreement, and what were the terms of the agreement?  Is it

25   really that he would sell -- if he sells MGM for a dollar over

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 03/04/25   Page 145 of 256   PageID 12864
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 83 of 106   PageID 9661

81

1   cost, $70 million of notes get forgiven?  How is that

2   possible?  How is that possible?  It doesn't pass the good

3   faith test.  The Court should deny the motion.

4       Thank you, Your Honor.

5           THE COURT:  Mr. Morris, in all of your listing of

6   allegedly problematic things, one trail my brain was going

7   down is this:  Is this adversary going to morph even further

8   to add fraudulent transfer allegations?  I mean, if notes --

9           MR. MORRIS:  Here's the --

10           THE COURT:  -- were forgiven or agreements were made

11   --

12           MR. MORRIS:  Yeah, I --

13           THE COURT:  -- that they would be forgiven if, you

14   know, assets are sold at a dollar more than cost, is the

15   Debtor going to say, well, okay, if this is an agreement,

16   there was a fraudulent transfer?

17           MR. MORRIS:  Your Honor, that is an excellent

18   question, one which I was discussing with my partners just

19   this morning.  You know, we have to -- we're balancing a

20   number of things on our side, including the delay that that

21   might entail; including, you know, what happens if we go down

22   that path.  You know, the benefit of suing under the notes, of

23   course, is that he's contractually obligated to pay all of our

24   fees.

25       And so we're balancing all of those things as these -- as

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 09/06/25   Page 146 of 256   PageID 12865
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 84 of 106   PageID 9662

82

1    these defenses metastasize.  But it's something that we're

2    considering, and we reserve the right to do exactly that, as

3    these defenses continue to get -- and it would be fraudulent

4    transfer, it would be breach of fiduciary duty against Nancy

5    Dondero, it would be breach of fiduciary duty against Jim

6    Dondero.  I'm sure that there are other claims, Your Honor.

7    But if they want to -- if I'm forced to go down that path, I'm

8    certainly going to use every tool that I have available to

9    recover these amounts from the -- for the Debtor and their

10   creditors.  This is just an abuse of process.

11        How do you -- how does one enter into agreements of this

12   type without telling your CFO, without telling your auditors,

13   without putting it in writing?  And I asked Mr. Dondero, what

14   benefit did the Debtor get from all of this?  And you know

15   what his answer was, Your Honor?  Because it's really -- it's

16   appalling.  It was going to give him heightened focus on

17   getting the job done because of this agreement that he entered

18   into with his sister, Nancy, acting on behalf of the Debtor,

19   with no information, with no documents, with no notes, with no

20   advice, with no corporate resolutions.  The Debtor was going

21   to get Mr. Dondero's heightened focus to sell MGM, Trussway,

22   or Cornerstone for one dollar above cost.

23        I think the fraudulent transfer claim is probably a pretty

24   solid one.  But why do we have to do this?  Why do we have to

25   do this?

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/05/25 5/54   Page 147 of 256   PageID 12866
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 85 of 106   PageID 9663

83

1          THE COURT:  Well, one of the reasons I'm asking is I

2     would not set the motion to withdraw the reference status

3     conference on an expedited basis, which I was asked to do a

4     few days ago in these two adversary proceedings, and I can't

5     remember when I've set it, but now I'm even worried, if I

6     grant this motion, is it going to be premature to have that

7     status conference in a month or so, whenever I've set it,

8     because if I grant this motion I'm wondering, am I going to

9     have your motion to amend to add fraudulent transfer claims?

10    It's -- you know, I want to give as complete a package to the

11    District Court as I can whenever I have that motion to

12    withdraw the reference.

13         All right.  Ms. Drawhorn, back to you.  As I said --

14         MS. DRAWHORN:  Yes.

15         THE COURT:  -- before inviting Mr. Morris to make his

16    argument, I know the law is very much on your clients' favor

17    as far as the law construing Rule 15(a).  But my goodness, I'm

18    wondering if your client needs -- your client needs to be

19    careful what they're asking for here, after what I've just

20    heard.

21         Anyway, what -- you get the last word on this.

22         MS. DRAWHORN:  Yes.  Thank you, Your Honor.  My

23    response is that Mr. Morris's argument was all on the merits

24    of the defenses, and certainly he is free to argue on the

25    merits, but that's not a determination for today and that's

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 06/06/25154   Page 148 of 256   PageID 12867
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 86 of 106   PageID 9664

84

 1   not a determination for the motion for leave to amend.  That's

 2   a determination for if he files a dispositive motion.

 3       Like I said, we are still in the discovery phase.  Mr.

 4   Morris mentioned at least three parties that will be -- likely

 5   be deposed and potentially give us the additional information

 6   that he's asking for to support this defense.  He mentioned

 7   PricewaterhouseCoopers; Nancy Dondero, who he's already got

 8   scheduled in a different adversary; Frank Waterhouse.

 9       So it's too early, as you know, to look at the merits.

10   That's not -- that's not what's the focus of a motion for

11   leave to amend.

12       As to the -- the what amendment, what agreement, what are

13   the conditions subsequent, I believe we provided sufficient

14   information in our reply.  And if the Court would like us to

15   update our proposed amended answer, if the Court is inclined

16   to grant our motion, we can certainly do that.  But I think

17   the Plaintiff seems to be well aware of what the defenses are,

18   especially after his argument today on why he thinks it's not

19   a valid defense.

20       And then, on the due diligence, we did -- we did do due

21   diligence.  That's why we're seeking to amend the answer,

22   obviously, and add these claims.

23       If the Court -- if the Plaintiff wants to file a motion to

24   amend later, then we can address those amendments then.

25       But I think, on the Rule 15 standard, we have met our

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/05/25   Page 149 of 256   PageID 12868
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 87 of 106   PageID 9665

85

1   burden and there's no substantial reason to deny the motion to

2   amend to add these defenses.

3           THE COURT:  All right.  By the way, have your

4   clients, have they filed proofs of claim?  And I'm asking for

5   a different reason than maybe I was asking earlier.  NexPoint

6   Real Estate Partners?

7           MS. DRAWHORN:  They're -- NexPoint Real Estate

8   Partners, LLC, formerly known as HCRE Partners, does have a

9   proof of claim on file.  It's unrelated to the notes.  And it

10  is subject to a contested matter that's pending -- that's a

11  separate matter that's before the Court being addressed.

12      And then HCMS initially filed a proof of claim that was

13  objected to in the Debtor's first omnibus objection and then

14  was disallowed.  There was no response to that omnibus

15  objection, so there's no longer a proof of claim for Highland

16  Capital Management Services.

17          THE COURT:  Okay.  Again, I'm just thinking ahead to

18  this report and recommendation I'm eventually going to have to

19  make on the motions to withdraw the reference.  And as I

20  alluded to, if this morphs to the point of including

21  fraudulent transfer claims, that certainly --

22          MS. DRAWHORN:  And Your Honor, one --

23          THE COURT:  It's going to affect the report and

24  recommendation.  And, you know, proofs of claim affect that,

25  too.  So, --

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 08/26/21-54   Page 150 of 256   PageID 12869
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 88 of 106   PageID 9666

86

1          MS. DRAWHORN:  Uh-huh.  Yes.  And I understand that,

2     Your Honor.  And the issue, I think, with you -- we need to

3     have this motion resolved, because it -- unless the Court is

4     going to continue discovery or stay.  You know, one of the

5     reasons why we had initially requested the expedited hearing

6     was because of the discovery is continued -- continuing to --

7     discovery deadlines are continuing to move.  And obviously

8     whatever the Court decides on this motion for leave to amend

9     will determine what the scope of that discovery is.

10         Similarly, if the Debtor decides to amend, that could

11    change the scope of discovery as well.

12         So we are open to continuing deadlines, and I think, you

13    know, might end up filing a motion to continue.  I haven't

14    conferred with Mr. Morris yet.  I suspect he's opposed, based

15    on our prior conversations.  But that's something that might

16    be helpful, especially if the Court is concerned on how it

17    will affect the motion to withdraw the reference, to -- maybe

18    we continue some of these upcoming deadlines, and that might

19    appease, you know, solve some of your concerns.

20         THE COURT:  All right.  Well, Rule 15(a), of course,

21    is the governing rule here, and the case law is abundant that

22    courts "should freely give leave when justice so requires."

23    And the law is also abundantly clear that the rule "evinces a

24    bias in favor of granting leave to amend."  And again and

25    again, cases say that leave should be granted unless there's

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 5-154    Page 151 of 256    PageID 12870
Appendix    Filed 08/05/25
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 89 of 106    PageID 9667

87

1    substantial reason to deny leave, and courts may consider

2    factors such as delay or prejudice to the non-movant, bad

3    faith or dilatory motives on the part of the movant, repeated

4    failure to cure deficiencies, or futility of the amendment.

5        While the Debtor has presented arguments that there might

6    be bad faith here on the part of the Movants and there might

7    be futility in allowing the amendments because of various

8    strong arguments and defenses the Debtor believes it has to

9    this issue of agreements with regard to the notes that

10   allegedly provide affirmative defenses, the Court believes the

11   rule requires me to allow leave to amend the answer.

12       Now, a couple of things.  I am going to require, though,

13   that the amended answer be more specific than has been

14   suggested.  I am going to agree that if new affirmative

15   defenses are made that there was this agreement to forgive

16   when certain conditions happened, then there does need to be

17   identification of who the human beings were that were involved

18   in making the agreement, the date of any agreement or

19   agreements, and disclose what documents substantiate the

20   agreement or reflect the agreement.  All right?  So if that

21   could --

22           MR. MORRIS:  Your Honor?

23           THE COURT:  Yes?

24           MR. MORRIS:  John Morris.  I apologize for

25   interrupting, but just a fourth thing is what is the

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 09/05/25 54   Page 152 of 256   PageID 12871
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 90 of 106   PageID 9668

88

 1    agreement?  I mean, what is the agreement?

 2            THE COURT:  Well, okay.  That's fair enough.  What is

 3    the agreement?  I guess --

 4            MR. MORRIS:  And -- and --

 5            THE COURT:  -- that needs to be spelled out.  I mean,

 6    I guess I was assuming that that would be spelled out in --

 7    but maybe it's not.  So we'll go ahead and add that.

 8        As far as extension of the discovery, Ms. Drawhorn has

 9    offered that.  I think it would be reasonable if the Debtor or

10    Plaintiff wants that.  Do you want an extension of discovery?

11            MR. MORRIS:  What I really want, Your Honor, is a

12    direction for them to serve this amended answer within 24 or

13    48 hours and grant leave to the Debtor to promptly file

14    written discovery.  We've got Nancy Dondero -- if it turns out

15    -- and maybe Ms. Drawhorn can just answer the question right

16    now.  Who entered the agreement on behalf of the Debtor?

17    Because I'm already taking Nancy Dondero's deposition on the

18    28th.  And it seems to me, if they would just answer the

19    question of whether Ms. Dondero is the person who did that, I

20    could just add a notice of deposition and take the deposition

21    on that date, too, and it would be, really, more efficient for

22    everybody.

23            THE COURT:  Ms. Drawhorn, who was the human being?

24            MS. DRAWHORN:  Yes.  It was -- yes, Nancy Dondero

25    entered into the -- the subsequent agreement.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix Filed 09/16/25 Page 153 of 256   PageID 12872
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 91 of 106   PageID 9669

89

1          MR. MORRIS:  Okay.  Super.

2          THE COURT:  All right.  You said you've already --

3          MR. MORRIS:  So, --

4          THE COURT:  -- got a depo scheduled of her?

5          MS. DRAWHORN:  Well, what's the date --

6          MR. MORRIS:  I do --

7          MS. DRAWHORN:  -- Mr. Morris?

8          MR. MORRIS:  I believe it's the 28th.  Your co-

9     counsel can confirm, but I think it's the 28th.

10       And I'll just get another deposition notice for that one,

11    and we'll figure out a time to take Mr. Sauter's deposition,

12    too.

13       But I don't think that there is a need, frankly, for --

14    having been told by Mr. Dondero that there's no documents

15    related to this, having the Court just ordered the Defendants

16    to disclose the identity of any documents that relate to this

17    agreement, I don't think we need to extend the discovery

18    deadline at all.  I can take Ms. Dondero's deposition, I can

19    take Mr. Dondero's deposition, and I can take Mr. Sauter's

20    deposition in due course over the next four weeks.

21          THE COURT:  All right.  Well, Ms. Drawhorn, we'll say

22    that this amended answer needs to be filed by midnight Friday

23    night, 11:59.  That gives you a day and a half to get it done.

24    All right.  If you could please --

25          MS. DRAWHORN:  Yes, Your Honor.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 09/26/25   Page 154 of 256   PageID 12873
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 92 of 106   PageID 9670

90

1        THE COURT:  Please upload an order, Ms. Drawhorn,

2   granting your motion with these specific requirements that

3   I've orally worked in.

4      I think clients need to be careful what they ask for.  I'm

5   very concerned.  And I know it was just argument and I'll hear

6   evidence, but of all of the things that I guess -- well, I'm

7   concerned about a lot of things, but do we have audited

8   financial statements that didn't disclose these agreements

9   with regard to --

10       MR. MORRIS:  Yes, Your Honor.

11       THE COURT:  I mean, that's -- I'm just -- you know,

12  there's a lot to be concerned about on that point alone, I

13  would think.  But, all right.  If there's nothing further, we

14  are adjourned.  Thank you.

15       THE CLERK:  All rise.

16     (Proceedings concluded at 11:58 a.m.)

17                    --oOo--

18

19                  CERTIFICATE

20     I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the
21  above-entitled matter.

22   **/s/ Kathy Rehling**                        **06/12/2021**

23  _____     _____

24  Kathy Rehling, CETD-444                       Date
    Certified Electronic Court Transcriber

25

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 09/06/25.54   Page 155 of 256   PageID 12874
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 93 of 106   PageID 9671

91

INDEX

1

PROCEEDINGS                                                                    4

2

WITNESSES

3

-none-

4

EXHIBITS

5

-none-

6

RULINGS

7

19-34054-sgj

8

Motion to Compel Compliance with Bankruptcy Rule 2015.3   49/54
filed by Get Good Trust, The Dugaboy Investment Trust

9

(2256)

10

21-3006-sgj

11

Motion for Leave to File Amended Answer and Brief in      86
Support filed by Defendant Highland Capital Management
Services, Inc. (15)

12

13

21-3007-sgj

14

Motion for Leave to Amend Answer to Plaintiff's           86
Complaint filed by Defendant HCRE Partners, LLC (n/k/a
NexPoint Real Estate Partners, LLC) (16)

15

16

END OF PROCEEDINGS                                         90

17

INDEX                                                     91

18

19

20

21

22

23

24

25

EXHIBIT 32

```
                 IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF TEXAS
                             DALLAS DIVISION
```

| | | |
|---|---|---|
| In Re: | ) | **Case No. 19-34054-sgj-11** |
| | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL | ) | Dallas, Texas |
| MANAGEMENT, L.P., | ) | December 10, 2020 |
| | ) | 9:30 a.m. Docket |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| HIGHLAND CAPITAL | ) | **Adversary Proceeding 20-3190-sgj** |
| MANAGEMENT, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | - MOTION FOR PRELIMINARY |
| | ) | INJUNCTION |
| v. | ) | - MOTION FOR TEMPORARY |
| | ) | RESTRAINING ORDER |
| JAMES D. DONDERO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

```
                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                   UNITED STATES BANKRUPTCY JUDGE.
```

WEBEX/TELEPHONIC APPEARANCES:

For the Plaintiff:         Jeffrey N. Pomerantz
                           PACHULSKI STANG ZIEHL & JONES, LLP
                           10100 Santa Monica Blvd.,
                             13th Floor
                           Los Angeles, CA  90067-4003
                           (310) 277-6910

For the Plaintiff:         John A. Morris
                           PACHULSKI STANG ZIEHL & JONES, LLP
                           780 Third Avenue, 34th Floor
                           New York, NY  10017-2024
                           (212) 561-7700

For the Official Committee  Matthew A. Clemente
of Unsecured Creditors:     SIDLEY AUSTIN, LLP
                            One South Dearborn
                            Chicago, IL  60603
                            (312) 853-7539

35

 1   the protocols have been followed.

 2       As Your Honor knows, when we've had an issue under the

 3   protocols, I remember several months ago when we argued about

 4   certain distributions being made, the Committee certainly was

 5   not shy about bringing it to Your Honor's attention.

 6       So we have been very vigilant and very diligent in holding

 7   the Debtor accountable under the protocols.  And we believe

 8   that -- although, again, when we've had an issue, we've come

 9   to Your Honor.  We believe that the protocols have worked as

10   they were intended to and as they were designed, Your Honor.

11       So I can assure you that the Committee has been very

12   vigilant and the Committee will continue to be very vigilant.

13   These issues were all raised in the context of negotiating the

14   protocols.  That was before Your Honor.  Mr. Dondero was

15   involved with that.  It was very difficult negotiations, Your

16   Honor.

17       But this does seem like somebody now trying to renegotiate

18   what it was that the parties agreed to and Your Honor approved

19   early on in this case.

20       So, Your Honor, rest assured, the Committee has been very

21   vigilant and will continue to be very vigilant.

22           THE COURT:  All right.  And I guess the last thing

23   I'll say on that point is, while of course we always want

24   transparency --

25       (Interruption.)

1           THE COURT:  While we, of course, always want

2  transparency and notice and opportunity to object, I mean,

3  these are not your typical run-of-the-mill assets.  They're

4  not a parcel of real property or a building somewhere or

5  inventory somewhere or intellectual property.  I mean, these

6  are -- you know, again, we have a unique business here.  And I

7  think that was very much recognized in the process of

8  negotiating the protocols, that this is not the type of

9  business where you do a 363 motion on 21 days' notice any time

10  you feel like, oh, today's a great day to trade this or that

11  in whatever fund.

12     Well, we will go forward on this motion, because Mr.

13  Dondero is entitled to his day in court to make his argument,

14  put on his evidence, and try to convince me that this is not

15  just trying to renegotiate something Mr. Dondero agreed to 11

16  months ago on the eve of confirmation.  But I want to make

17  sure -- oh, we're getting --

18     (Echoing.)

19     (Clerk advises Court.)

20        THE COURT:  Okay.  You're on mute.  You're on mute,

21  Mr. Lynn.

22        MR. LYNN:  Your Honor, may I explain briefly?  This

23  is very distressing.  Mr. Morris says that it is the ordinary

24  course of this Debtor's business to sell a subsidiary.  This

25  is not the ordinary course of the Debtor's business.  There is

1   nothing in the protocols that says that the independent board

2   and just the creditors on the Creditors' Committee may make

3   decisions concerning major sales.  We will present evidence to

4   that effect when it occurs, and we believe strongly -- and I

5   want to state, Your Honor, I didn't participate in

6   negotiations of those protocols.  I wasn't involved.  And I've

7   looked at them.  There's nothing that says that this can occur

8   without going to a hearing.  And there is nothing in the

9   protocols that defines ordinary course of business to involve

10  this.

11      This motion was not filed because Mr. Dondero wanted to

12  get in the way.  It was filed because I thought it was the

13  right thing to do because I thought that this was contrary to

14  the way bankruptcy and Chapter 11 should work.  And it was

15  reasoned by me, with Mr. Dondero's consent.  And I very, very

16  much am upset to hear things people say that he's trying to

17  get in the way with this.  He is not.  He's asking for

18  something that is very, very, very reasonable.  If they have

19  nothing to hide, and I hope they don't and don't believe they

20  do, but if the Debtor has nothing to hide, what is wrong with

21  notice and a chance for hearing?

22          MR. POMERANTZ:  Your Honor, this is Jeff Pomerantz.

23  If I briefly may be heard.

24          THE COURT:  Go ahead.

25          MR. POMERANTZ:  I actually did negotiate the

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15-6   Filed 08/06/25   Page 160 of 256   PageID 12879

57

 1    Court next Wednesday, he needs to testify.  And if NexPoint,

 2    through whoever their decision-maker is, is wanting to urge a

 3    position to the Court, they need a human being to testify.

 4    And I'll hear Seery and I'll hear Dondero and I'll hear

 5    whoever that person is, and that's what's going to matter, you

 6    know, most to me.  Yeah, we have some legal issues, certainly,

 7    but I like to hear business people explain things, no offense

 8    to the lawyers.  But it's always very helpful to hear the

 9    business people in addition to the lawyers.  All right.  So,

10    Mr. Morris, you're going to upload that TRO for me.

11            MR. MORRIS:  Yes, Your Honor.

12            THE COURT:  Mr. Wright, you can upload your order

13    setting your motion for hearing next Wednesday at 1:30.  And I

14    think we have our game plan for now.  Anything else?  All

15    right.  We're adjourned.

16            THE CLERK:  All rise.

17        (Proceedings concluded at 11:33 a.m.)

18                          --oOo--

19

20                       CERTIFICATE

21      I certify that the foregoing is a correct transcript to
      the best of my ability from the electronic sound recording of
22    the proceedings in the above-entitled matter.

23    **/s/ Kathy Rehling**                        **12/11/2020**

24    _____        _____
      Kathy Rehling, CETD-444                        Date
25    Certified Electronic Court Transcriber

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S      Document Append ix   Filed 09/06/25154   Page 161 of 256      PageID 12880
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 94 of 106    PageID 9672

Case 19-34054-sgj11 Doc 2460 Filed 06/18/21    Entered 06/18/21 09:09:15    Page 1 of 13



# EXHIBIT 33

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 17, 2021**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| _____ | § | |
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| _____ | § | |

## <u>ORDER REQUIRING DISCLOSURES</u>

**I.        Introduction.**

This Order is issued by the court *sua sponte* pursuant to Section 105 of the Bankruptcy Code

and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties

who ask for relief in the above-referenced case. More specifically, the Order is directed at clarifying

the party-in-interest status or standing of numerous parties who are regularly filing pleadings in the

above-referenced 20-month-old Chapter 11 bankruptcy case. The court has determined that there is

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 1-6   Filed 01/06/25   Page 162 of 256   PageID 12881
Appendix   Page 106 of 154
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 95 of 106   PageID 9673
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21   Entered 06/18/21 09:09:15   Page 2 of 13

a need to: (a) fully understand whether such parties (defined below) have statutory or constitutional standing with regard to recurring matters on which they frequently file lengthy and contentious pleadings and, if so, (b) ascertain whether their interests are sufficiently aligned such that the parties might be required to file joint pleadings hence forth, rather than each file pleadings that are similar in content. The court has commented many times that certain active parties (*i.e.,* Mr. James Dondero and numerous non-debtor entities that he controls—hereinafter the "Non-Debtor Dondero-Related Entities") seem to have tenuous standing.   Mr. Dondero is, of course, the Debtor's co-founder, former President, Chief Executive Officer ("CEO"), and indirect beneficial equity owner.[2]   Since standing is a subject matter jurisdiction concern, the court has determined that it is in the interests of judicial economy to gain some clarity with regard to the standing of the various Non-Debtor Dondero-Related Entities.  It is also in the interests of judicial economy, the interests of other parties in this case, and in the interest of reducing administrative expenses of this estate that there be consolidation of pleadings, wherever possible, of the Non-Debtor Dondero-Related Entities.

---

[2] In addition to being the former CEO, Mr. Dondero represents that he is a "creditor, indirect equity security holder, and party in interest" in the Debtor's bankruptcy.  This court has stated on various occasions that this assertion is ostensibly true, but somewhat tenuous. Mr. Dondero filed five proofs of claim in the Debtor's bankruptcy case.  Two of those proofs of claim were withdrawn with prejudice on November 23, 2020 [DE # 1460].  The other three are unliquidated, contingent claims, each of which stated that Mr. Dondero would "update his claim in the next ninety days."  Ninety days has long-since passed since those proofs of claim were filed and Mr. Dondero has not updated those claims to this court's knowledge. With regard to Mr. Dondero's assertion that he is an "indirect equity security holder," the details have been represented to the court many times to be as follows (undisputed): Mr. Dondero holds no direct equity interest in the Debtor.  Mr. Dondero instead owns 100% of Strand Advisors, Inc. ("Strand"), the Debtor's general partner. Strand, however, holds only 0.25% of the total limited partnership interests in the Debtor through its ownership of Class A limited partnership interests.  The Class A limited partnership interests are junior in priority of distribution to the Debtor's Class B and Class C limited partnership interests.  The Class A interests are also junior to all other claims filed against the Debtor.  Finally, Mr. Dondero's recovery on his indirect equity interest is junior to any claims against Strand itself.  Consequently, before Mr. Dondero can recover on his indirect equity interest, the Debtor's estate must be solvent, priority distributions to Class B and Class C creditors must be satisfied, and all claims against Strand must be paid.

011984
APP 2817

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 16    Filed 01/06/25    Page 163 of 256    PageID 12882
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 96 of 106    PageID 9674
Case 19-34054-sgj11    Doc 2460    Filed 06/18/21    Entered 06/18/21 09:09:15    Page 3 of 13

## II.    Background: The Chapter 11 Case.[3]

On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Highland is a registered investment advisor that is in the business of buying, selling, and managing assets on behalf of its managed investment vehicles.  It manages billions of dollars of assets—to be clear, the assets are spread out in numerous, separate fund vehicles. While the Debtor has continued to operate and manage its business as a debtor-in-possession, the role of Mr. Dondero *vis-à-vis* the Debtor was significantly limited early in the bankruptcy case and ultimately terminated. The Debtor's current CEO is an individual selected by the creditors named James P. Seery.

Specifically, early in the case, the Official Unsecured Creditors Committee ("UCC") and the U.S. Trustee ("UST") desired to have a Chapter 11 Trustee appointed—absent some major change in corporate governance[4]—due to conflicts of interest and the alleged self-serving, improper acts of Mr. Dondero and possibly other officers (for example, allegedly engaging, for years, in fraudulent schemes to put Highland's assets out of the reach of creditors).  Under this pressure, the Debtor negotiated a term sheet and settlement with the UCC (the "January 2020 Corporate Governance Settlement"), which was executed by Mr. Dondero and approved by a court order on January 9, 2020 (the "January 2020 Corporate Governance Order").[5] The settlement and term sheet contemplated a complete overhaul of the corporate governance structure of the Debtor.  Mr. Dondero resigned from his role as an officer and director of the Debtor and of its general partner. Three new independent directors (the "Independent Board") were appointed to govern the Debtor's

---

[3] For a more detailed factual description of some of the disputed issues in this case, see the Memorandum of Opinion and Order Granting in Part Plaintiff's Motion to Hold James Dondero in Civil Contempt of Court for Alleged Violation of TRO, entered June 7, 2021, DE # 190, in AP # 20-3190.

[4] The UST was steadfast in wanting a Trustee.

[5] *See* DE ## 281 & 339.

011985    APP 1818

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 16x    Filed 01/03/25154Page 164 of 256    PageID 12883
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 97 of 106    PageID 9675
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21    Entered 06/18/21 09:09:15    Page 4 of 13

general partner Strand Advisors, Inc.—which, in turn, managed the Debtor. All of the new Independent Board members were selected by the UCC and are very experienced within either the industry in which the Debtor operates, restructuring, or both (Retired Bankruptcy Judge Russell Nelms, John Dubel, and James P. Seery). As noted above, one of the Independent Board members, James P. Seery ("Mr. Seery"), was ultimately appointed as the Debtor's new CEO and CRO.[6] As for Mr. Dondero, while not originally contemplated as part of the January 2020 Corporate Governance Settlement, the Debtor proposed at the hearing on the January 2020 Corporate Governance Settlement that Mr. Dondero remain on as an unpaid employee of the Debtor and also continue to serve as and retain the title of a portfolio manager for certain separate **non-Debtor** investment vehicles/entities whose funds are managed by the Debtor. The court approved this arrangement when the UCC ultimately did not oppose it. Mr. Dondero's authority with the Debtor was subject to oversight by the Independent Board, and Mr. Seery was given authority to oversee the day-to-day management of the Debtor, including the purchase and sale of assets held by the Debtor and its subsidiaries, as well as the purchase and sale of assets that the Debtor manages for various separate non-Debtor investment vehicles/entities. Significant to the court and the UCC was a provision in the order, at paragraph 9, stating that "Mr. Dondero shall not cause any Related Entity to terminate any agreements with the Debtor."

To be sure, this was a complex arrangement. Apparently, there were well-meaning professionals in the case that thought that having the founder and "face" behind the Highland brand still involved with the business might be value-enhancing for the Debtor and its creditors (even though Mr. Dondero was perceived as not being the type of fiduciary needed to steer the ship through bankruptcy). For sake of clarity, it should be understood that there are at least hundreds of

---

[6] "CRO" means Chief Restructuring Officer. *See* DE # 854, entered July 16, 2020.

011986
APP 2819

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 01/08/25   Page 165 of 256   PageID 12884
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 98 of 106   PageID 9676
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21   Entered 06/18/21 09:09:15   Page 5 of 13

entities—the lawyers have sometimes said 2,000 entities—within the Highland byzantine organizational structure (sometimes referred to as the "Highland complex"), most of which are ***not*** subsidiaries of the Debtor, nor otherwise owned by Highland. And only Highland itself is in bankruptcy. However, these entities are very much intertwined with Highland—in that they have shared services agreements, sub-advisory agreements, payroll reimbursement agreements, or perhaps, in some cases, less formal arrangements with Highland. Through these agreements Highland (***through its own employees***) has historically provided resources such as fund managers, legal and accounting services, IT support, office space, and other overhead. Many of these non-Debtor entities appear to be under the *de facto* control of Mr. Dondero—as he is the president and portfolio manager for many or most of them—although Mr. Dondero and certain of these entities stress that these entities have board members with independent decision making power and are not the mere "puppets" of Mr. Dondero. This court has never been provided a complete organizational chart that shows ownership and affiliations of all 2,000 Non-Debtor Dondero-Related Entities, but the court has, on occasion, been shown information about some of them and is aware that a great many of them were formed in non-U.S. jurisdictions, such as the Cayman Islands.

Eventually, the Debtor's new Independent Board and management concluded that it was untenable for Mr. Dondero to continue to be employed by the Debtor in any capacity. Various events occurred that led to the termination of his employment with the Debtor. For one thing, Mr. Dondero prominently opposed certain actions taken by the Debtor through its CEO and Independent Board including: (a) objecting to a significant settlement that the Debtor had reached in court-ordered mediation[7] with creditors Acis Capital Management and Josh and Jennifer Terry (the "Acis

---

[7] The court appointed Retired Bankruptcy Judge Allan Gropper, S.D.N.Y., and Attorney Sylvia Mayer, Houston, Texas (both with the American Arbitration Association), to be co-mediators over multiple disputes in the Bankruptcy Case, including the Acis dispute. The co-mediators, among other things, attempted to mediate disputes/issues with Mr. Dondero.

011987   APP. 2829

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 01/06/25   Page 166 of 256   PageID 12885
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 99 of 106   PageID 9677
Case 19-34054-sgj11   Doc 2460   Filed 06/18/21   Entered 06/18/21 09:09:15   Page 6 of 13

Settlement")—which settlement helped pave the way toward a consensual Chapter 11 plan, and (b) pursuing, through one of his family trusts (the Dugaboy Investment Trust), a proof of claim alleging that the Debtor (including Mr. Seery) had mismanaged one of the Debtor's subsidiaries, Highland Multi Strategy Credit Fund, L.P. ("MSCF") with respect to the sale of certain of its assets during the bankruptcy case (in May of 2020).[8] The Debtor's Independent Board and management considered these two actions to create a conflict of interest— if Mr. Dondero was going to litigate significant issues against the Debtor in court, that was his right, but he could not continue to work for the Debtor (among other things, having access to its computers and office space) while litigating these issues with the Debtor in court.

But the termination of his employment was not the end of the friction between the Debtor and Mr. Dondero.  In fact, literally a week after his termination, litigation posturing and disputes began erupting between Mr. Dondero and certain Non-Debtor Dondero-Related Entities, on the one hand, and the Debtor on the other.

At the present time, 11 adversary proceedings have been filed related to this bankruptcy case involving Non-Debtor Dondero-Related Entities.  Additionally, Non-Debtor Dondero-Related entities have filed 11 appeals of bankruptcy court orders. Non-Debtor Dondero-Related entities have begun filing lawsuits relating to the bankruptcy case in other *fora* that are the subject of contempt motions.

III.    **The Non-Debtor Dondero-Related Entities**.

The following are the Non-Debtor Dondero-Related Entities encompassed by this Order and their known counsel[9]:

---

[8] *See, e.g.,* Proof of Claim No. 177 and DE # 1154.
[9] There are three other entities that the court is not including in this Order at this time, since, although they have appeared in the past, they are no longer active in the case because of either resolving issues with the Debtor or other reasons: (a) Highland CLO Funding Ltd. (previously represented by the law firm of King and Spaulding); (b) Hunter

APP 2621
011988

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 01/06/25   Page 167 of 256   PageID 12886
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 100 of 106   PageID 9678
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21   Entered 06/18/21 09:09:15   Page 7 of 13

A.   *James D. Dondero*

Mr. Dondero has had three law firms representing him in the bankruptcy proceedings:  Bonds Ellis Eppich Schafer Jones LLP; Stinson L.L.P.; and Crawford Wishnew Lang.

As earlier mentioned, Mr. Dondero has three pending proofs of claim that are unliquidated, contingent claims. Each of these claims state that Mr. Dondero would "update his claim in the next ninety days."  Ninety days has long-since passed since those proofs of claim were filed and Mr. Dondero has not updated those claims to this court's knowledge. While this court is unclear what the alleged amount of Mr. Dondero's three unliquidated, contingent proofs of claim might be, the court takes judicial notice that the Debtor has filed an adversary proceeding (Adv. Proc. # 21-3003) alleging that Mr. Dondero is liable to three bankruptcy estate on three demand notes, on which the total amount due and owing is $9,004,013.07. Mr. Dondero has also been sued along with CLO Holdco, Grant Scott, Charitable DAF Holdco, Charitable DAF Fund, Highland Dallas Foundation, and the Get Good Trust for alleged fraudulent transfers in Adv. Proc. # 20-3195.

As far as equity interests in the Debtor, the Debtor is a Delaware limited partnership. The general partner is named Strand Advisors, Inc. ("Strand"). Mr. Dondero owns 100% of Strand Advisors, Inc. ("Strand"), the Debtor's general partner, but gave up control of Strand pursuant to a court-approved corporate governance agreement reached in this case in January 2020, to which Mr. Dondero agreed. As of the Petition Date, the Debtor's limited partnership interests were held: (a) 99.5% by an entity called Hunter Mountain Investment Trust; (b) 0.1866% by The Dugaboy Investment Trust (Mr. Dondero's family trust—described below), (c) 0.0627% by the retired co-founder of the Debtor, Mark Okada, personally and through family trusts, and (d) 0.25% by Strand. These limited partnership interests were in three classes (Class A, Class B, and Class C).  The

---

Mountain Trust (previously represented by Sullivan Hazeltine Allinson and Rochelle McCullough); and (c) NexBank (previously represented by Alston & Bird).

APP 0820
011989

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 15 x    Filed 01/06/25154 Page 168 of 256    PageID 12887
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 101 of 106    PageID 9679
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21    Entered 06/18/21 09:09:15    Page 8 of 13

Class A interests were held by The Dugaboy Investment Trust, Mark Okada, and Strand. The Class B and C interests were held by Hunter Mountain Investment Trust and Hunter Mountain. The significance of this is that the Class A limited partnership interests are junior in priority of distribution to the Debtor's Class B and Class C limited partnership interests. The Class A interests are also junior to all other claims filed against the Debtor. And, of course, Mr. Dondero's recovery on his equity interest in Strand is junior to any claims against Strand itself. Consequently, before Mr. Dondero can recover on his indirect equity interest, the Debtor's estate must be solvent, priority distributions to Class B and Class C creditors must be satisfied, and all claims against Strand must be paid.

B. *The Dugaboy Investment Trust ("Dugaboy") and Get Good Nonexempt Trust ("Get Good")*

The Dugaboy and Get Good Trusts are represented by the law firm Heller Draper & Horn.

Mr. Dondero is the beneficiary of Dugaboy and the settlor of Get Good (and family members are the beneficiaries). It has been represented in pleadings that Get Good is a trust established under the laws of the State of Texas. It has been represented in pleadings that Dugaboy is a trust established under the laws of the State of Delaware. At least as of the Petition Date, an individual named Grant Scott (a long-time friend of Mr. Dondero's, who is a patent lawyer and resides in Colorado) is the trustee of both. Mr. Dondero's sister may also be a trustee of Dugaboy.

As mentioned above, Dugaboy owns a 0.1866% of the Class A junior limited partnership interest in the Debtor.

Get Good has filed a proof of claim in this Bankruptcy Proceeding (submitted by Grant Scott). Dugaboy has filed several proofs of claim in this Bankruptcy Proceeding (all were submitted by Grant Scott). The court is not aware of the nature or amount of these claims, except the court has been apprised that: (a) one Dugaboy proof of claim alleges that Highland is obligated on a debt

011990    APP 2623

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 15    Filed 07/06/25    Page 169 of 256    PageID 12888
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 102 of 106    PageID 9680
Case 19-34054-sgj11    Doc 2460    Filed 06/18/21    Entered 06/18/21 09:09:15    Page 9 of 13

owed to Dugaboy by an entity known as Highland Select, allegedly because Highland is Highland Select's general partner and might also be its alter ego; and (b) another proof of claim asserts postpetition mismanagement by the Debtor of assets of one or more Debtor subsidiaries. While the court knows nothing about the Get Good proof of claim, it does know that the Get Good Trust (along with others, including Grant Scott) has been sued for alleged fraudulent transfers in an adversary proceeding in this case (Adv. Proc. # 20-3195)—which may affect the allowability of its proof of claim.

C. *Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NPA") (sometimes collectively referred to as the "Advisors")*

These entities have been represented by the K&L Gates law firm at times and currently are represented by the law firm of Munsch Hardt Kopf & Harr. The entities are registered investment advisors that previously had shared services agreements with the Debtor.

It has been represented that Mr. Dondero directly or indirectly owns and/or effectively controls each of the Advisors. He is the President of each of them.

It is the court's understanding that both of these entities withdrew their original proofs of claim. However, the Advisors filed an application for an administrative expense claim on January 24, 2021, relating to services the Advisors allege the Debtor did not perform under a shared services agreement. The Debtor has since filed an objection to the claim and the matter is set for trial on September 28, 2021. Further, the Debtor has filed an adversary proceeding (Adv. Pro. # 21-3004) alleging that HCMFA owes the Debtor an aggregate of $7,687,653.07 pursuant to two promissory notes and the Debtor has filed an adversary proceeding (Adv. Pro. # 21-3005) alleging that NPA owes the Debtor $23,071,195.03 pursuant to a promissory note.

APP. 2624
011991

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 01/08/25   Page 170 of 256   PageID 12889
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 103 of 106   PageID 9681
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21   Entered 06/18/21 09:09:15   Page 10 of 13

D. *Highland Funds I and its series Highland Healthcare Opportunities Fund, Highland/iBoxx Senior Loan ETF, Highland Opportunistic Credit Fund, and Highland Merger Arbitrage Fund, Highland Funds II and its series Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Fixed Income Fund, and Highland Total Return Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, and NexPoint Real Estate Strategies Fund*

These entities are represented by the K&L Gates law firm. They are apparently each managed by the Advisors and these funds are specifically managed by Mr. Dondero as portfolio manager.

The court has no idea who owns these companies (assuming they should be regarded as separate companies). The court does not know which, if any of them, have filed proofs of claims.

E. *Charitable DAF Holdco, Ltd. ("DAF Holdco"), Charitable DAF Fund, LP ("DAF"), Highland Dallas Foundation, Inc., ("Highland Dallas Foundation")*

These entities are represented by the law firms of Kelly Hart Pitre and Sbaiti & Company PLCC.

It has been represented to the court that the DAF is managed by DAF Holdco, which is the managing member of the DAF. It has further been represented to the court that DAF Holdco is owned by three different purported charitable foundations: Highland Dallas Foundation, Inc., Highland Santa Barbara Foundation, Inc., and Highland Kansas City Foundation, Inc. (collectively, the "Highland Foundations"). DAF Holdco is an exempted company incorporated in the Cayman Islands. Grant Scott has apparently, until recently, served as its managing member. The DAF is an exempted company incorporated in the Cayman Islands. Highland Dallas Foundation is a Delaware nonprofit, nonstock corporation.

Mr. Dondero is the president and one of the three directors of each of the Highland Foundations. Apparently, Grant Scott was recently replaced by a former Highland employee named Mark Patrick (who is now an employee of Skyview Group, an entity created by former Highland employees). Although the Debtor is the non-discretionary investment advisor to the

011992
APP 2625

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 15    Filed 01/08/25    Page 171 of 256    PageID 12890
Case 3:21-cv-00879-K    Document 17    Filed 06/28/21    Page 104 of 106    PageID 9682
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21    Entered 06/18/21 09:09:15    Page 11 of 13

DAF, the Debtor does not have the right or ability to control or direct the DAF or CLO Holdco. Instead, the DAF takes and considers investment and payment advice from the Debtor, but ultimate decisions are in the control of Mr. Patrick, presumably at Mr. Dondero's direction.

The court is not aware whether these entities have filed proofs of claim. However, they, along with Messrs. Dondero and Scott, CLO Holdco and the Get Good have been sued for fraudulent transfers in Adv. Proc. # 20-3195.

F. *CLO Holdco, Ltd.*

This entity was previously represented by the law firm of Kane Russell Coleman & Logan and more recently is represented by the law firm of Sbaiti & Company PLLC.

CLO Holdco is a wholly owned and controlled subsidiary of the DAF. CLO Holdco is an exempted company incorporated in the Cayman Islands. CLO Holdco has filed two proofs of claim in this Bankruptcy Proceeding. Both proofs of claim were submitted by Grant Scott in his capacity as Director of CLO Holdco.

CLO Holdco, along with Messrs. Dondero and Scott, DAF Holdco, DAF Fund, Highland Dallas Foundation, and the Get Good have been sued for fraudulent transfers in Adv. Proc. # 20-3195.

G. *NexPoint Real Estate Finance Inc., NexPoint Real Estate Capital, LLC, NexPoint Residential Trust, Inc., NexPoint Hospitality Trust, NexPoint Real Estate Partners, LLC, NexPoint Multifamily Capital Trust, Inc., VineBrook Homes, Trust, Inc., NexPoint Real Estate Advisors, L.P., NexPoint Real Estate Advisors II, L.P., NexPoint Real Estate Advisors III, L.P., NexPoint Real Estate Advisors IV, L.P., NexPoint Real Estate Advisors V, L.P., NexPoint Real Estate Advisors VI, L.P., NexPoint Real Estate Advisors VII, L.P., NexPoint Real Estate Advisors VIII, L.P., and any funds advised by any of the foregoing and any of their subsidiaries (sometimes collectively referred to as "NPRE")*

These entities are represented by the law firm of Wick Phillips Gould & Martin, LLP.

The entity known as HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) is alleged to owe the Debtor over $11 million pursuant to five promissory notes (as asserted in Adv.

APP 2626
011993

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 06/06/25154   Page 172 of 256   PageID 12891
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 105 of 106   PageID 9683
Case 19-34054-sgj11  Doc 2460  Filed 06/18/21   Entered 06/18/21 09:09:15   Page 12 of 13

Pro. # 21-3007). The court understands this same entity has filed a proof of claim relating to its alleged interest in "SE Multifamily Holdings, LLC," which has been objected to and has not been resolved.

The court has no idea who owns or manages these companies or what exact function they play in the Highland complex of companies. The court does not know anything about the substance of the proof of claims.

### H. *Highland Capital Management Services, Inc.*

This entity appears to be represented by both Wick Phillips Gould & Martin, LLP (which also represents NPRE) and Stinson L.L.P. (which also sometimes represents Mr. Dondero personally).

This entity earlier filed two proofs of claim that were objected to and disallowed. Also, this entity is alleged to owe the Debtor approximately $7.7 million pursuant to five different promissory notes (as asserted in Adv. Pro. # 21-3006). The court has no idea who owns or manages this company or what exact function it plays in the Highland complex of companies.

### IV.    Disclosure Requirement

Accordingly, in furtherance of this court's desire to be more clear about the standing of various of these entities, and to assess whether their interests may be sufficiently aligned, in some circumstances, so as to require joint pleadings (rather than have a proliferation of similar pleadings) it is hereby **ORDERED** that:

Within 21 days of the entry of this Order, the Non-Debtor Dondero-Related Entities named in this Order shall file a Notice in this case disclosing thereon: (a) who owns the entity (showing percentages);[10] (b) whether Mr. Dondero or his family trusts have either a direct or indirect

---

[10] With regard to any minor children who may be beneficiaries of trusts, actual names should not be used (Child 1, Child 2, *etc.* would be sufficient).

011994   APP 2627

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 15    Filed 01/06/25    Page 173 of 256    PageID 12892
Case 3:21-cv-00879-K   Document 17   Filed 06/28/21   Page 106 of 106   PageID 9684
Case 19-34054-sgj11 Doc 2460 Filed 06/18/21   Entered 06/18/21 09:09:15   Page 13 of 13

ownership interest in the entity and, if so, what percentage of ultimate ownership; (c) who are the

officers, directors, managers and/or trustees of the Non-Debtor Dondero-Related Entity; and (d)

whether the entity is a creditor of the Debtor (explaining in reasonable detail the amount and

substance of its claims).

### ### End of Order ###

011995
APP. 2828

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S    Document Appendix   Filed 03/05154  Page 174 of 256    PageID 12893
EXHIBIT 34
Case 3:21-cv-00879-K   Document 39   Filed 02/09/22   Page 1 of 14   PageID 12647

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In Re: HIGHLAND CAPITAL | § | |
| MANAGEMENT, L.P., | § | |
| Debtor | § | |
| _____ | § | |
| | § | |
| JAMES DONDERO, *et al.*, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-0879-K |
| | § | |
| HON. STACEY G. C. JERNIGAN, | § | |
| | § | |
| Appellee. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Appellants James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners, LLC. f/k/a HCRE Partners, LLC's (collectively "Appellants") appeal the Bankruptcy Court's Order Denying [Appellants'] Motion to Recuse Pursuant to 28 U.S.C. § 455 which was entered March 23, 2021. *See generally* Am. Notice of Appeal (Doc. No. 1-1); Appellants' Br. (Doc. No. 16). Because the Court lacks jurisdiction over this appeal, the Court hereby **dismisses** this appeal.

ORDER – PAGE 1

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 16    Filed 01/08/25    Page 175 of 256    PageID 12894
Appendix    Page 108 of 154
Case 3:21-cv-00879-K    Document 39    Filed 02/09/22    Page 2 of 14    PageID 12648

### I.    Relevant Background

Appellants filed a Motion to Recuse under § 455 with the Bankruptcy Court, asking United States Bankruptcy Judge Stacey G. C. Jernigan (the "Bankruptcy Judge") to recuse herself from presiding over the bankruptcy proceeding of Debtor Highland Capital Management, L.P.  In an 11-page Order Denying Motion to Recuse Pursuant to 28 U.S.C. § 455 ("Recusal Order"), the Bankruptcy Judge denied the Motion while also reserving the right to supplement or amend the ruling.  *See* Am. Notice of Appeal (Doc. No. 1-1) at 5-15.  The Bankruptcy Court entered the Recusal Order on March 23, 2021.  *See id.*; Appellants' Br. (Doc. No. 16).  On April 18, 2021, the Clerk of the Bankruptcy Court transmitted the Notice of Appeal filed by Appellants on April 6, 2021.  *See generally* Doc. No. 1.  It is the Recusal Order that forms the basis of this appeal.  *See id.*  Appellants designated the Bankruptcy Judge as "Appellee".  *See id.*

Before appellate briefing began, Debtor Highland Capital Management, L.P. moved the Court for leave to intervene in this appeal.  *See* Mot. to Intervene (Doc. No. 2).  Debtor Highland Capital Management, L.P. argued that it is the real party-in-interest, not the Bankruptcy Judge.  Mot. to Intervene at 3.  After the Motion to Intervene was fully briefed and ripe, the Court granted the Motion and allowed Debtor Highland Capital Management, L.P. ("Debtor/Intervenor") to file a responsive brief as accorded to an appellee under the bankruptcy rules.  *See generally* Order (Doc. No. 10).

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 16    Filed 04/04/25    Page 176 of 256    PageID 12895
Case 3:21-cv-00879-K    Document 39    Filed 02/09/22    Page 3 of 14    PageID 12649

Appellants then filed their Appellants' Brief identifying and arguing two issues on appeal:  (1) whether the Bankruptcy Court abused its discretion in denying Appellants' Motion to Recuse Pursuant to 28 U.S.C. § 455 as untimely; and (2) whether the Bankruptcy Court abused its discretion in denying Appellants' Motion to Recuse Pursuant to 28 U.S.C. § 455 on the merits.  Appellants' Br. at 1.  Intervenor/Debtor filed an Appellee's Brief in response (Doc. No. 20), and Appellants filed their Reply Brief (Doc. No. 23).  The Bankruptcy Record on Appeal does not reflect that a final judgment has been entered by the Bankruptcy Court in this matter.

Upon an initial review of the appellate briefing, the Court *sua sponte* questioned its jurisdiction over this appeal.  *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.").  The Court issued an Order (Doc. No. 28) directing the parties to file briefs, respectively, addressing this Court's jurisdiction over an appeal of the Bankruptcy Judge's order denying a motion to recuse when final judgment has not yet been entered.  The parties timely filed their respective jurisdictional briefs, and the Court has carefully considered the arguments, the applicable and binding law, and relevant portions of the record.  The Court turns now to this threshold jurisdictional issue.

ORDER – PAGE 3

Case 19-34054-sgj11 Doc 3470-1 Filed 08/26/22 Entered 08/26/22 17:11:52 Desc
Case 3:25-cv-02072-S Document 15 Filed 01/06/25 Page 177 of 256 PageID 12896
Appendix Page 106 of 154
Case 3:21-cv-00879-K Document 39 Filed 02/09/22 Page 4 of 14 PageID 12650

## II.    Applicable Law

Section 455 of Chapter 28 of the United States Code provides, in relevant part, that:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
>     (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings.

28 U.S.C. § 455(a) & (b)(1). Bankruptcy Rule 5004(a) provides that "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case." FED. R. BANKR. P. 5004(a).

District courts have jurisdiction over appeals from the following entered by a bankruptcy judge:

> (1) from final judgments, orders, and decrees;
> (2) from interlocutory orders and decrees under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
> (3) with leave of the court , from other interlocutory orders and decrees.

28 U.S.C. § 158(a).

ORDER – PAGE 4

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 01/06/25   Page 178 of 256   PageID 12897
Appendix   Page 106 of 154
Case 3:21-cv-00879-K   Document 39   Filed 02/09/22   Page 5 of 14   PageID 12651

### III.   Analysis

#### A.   Recusal Order is an Interlocutory Order and Not Immediately Appealable as a Matter of Right

It is well-established law in the Fifth Circuit that a court's order denying a recusal motion is not a final order, is not an appealable interlocutory order, and is not an appealable collateral order, therefore it is reviewable on appeal only from final judgment. *Willis v. Kroger*, 263 F.3d 163, 163 (5th Cir. 2001); *United States v. Henthorn*, 68 F.3d 465, 465 (5th Cir. 1995); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1164 n.3 (5th Cir. 1982); *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 960 (5th Cir. 1980); *Martin v. Driskell*, 2021 WL 4784756, at *1 (5th Cir. July 12, 2021); *In re Gordon*, 2019 WL 11816606, at *1 (5th Cir. Apr. 10, 2019); *Stancu v. Hyatt Corp./Hyatt Regency Dallas*, Civ. Action No. 3:18-CV-1737-E-BN, 2020 WL 853859, at *2 (N.D. Tex. Jan. 30, 2020), *adopted by* 2020 WL 833645 (Feb. 20, 2020)(Brown, J.); *Prather v. Dudley*, Civ. Action No. 9:06cv100, 2006 WL 3317124, at *2 (E.D. Tex. Oct. 18, 2006); *Hardy v. Fed. Express Corp.*, No. Civ.A 97-1620, 1998 WL 104686, at *1 (E.D. La. Mar. 6, 1998).   Moreover, both the Fifth Circuit and district courts in this Circuit have applied this very clear, decades-old law in appeals taken from a bankruptcy court's order denying a motion to recuse. *In re Dorsey*, 489 F. App'x 763, 764 (5th Cir. 2012); *In re Schweitzer*, Civ. Action No. 07-4036, 2007 WL

APP. 2623
012000

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document Appendix   Filed 01/06/25   Page 179 of 256   PageID 12898
Case 3:21-cv-00879-K   Document 39   Filed 02/09/22   Page 6 of 14   PageID 12652

2965045, at *1 (E.D. La. Oct. 9, 2007); *In re Moerbe*, No. 03-57260-LMC/04-5043-

LMC/SA-04-CA-801-FB, 2005 WL 3337634, at *3 (W.D. Tex. Sept. 1, 2005).

 In this case, the Bankruptcy Record on Appeal does not establish that a final

judgment has been entered.  The law in the Fifth Circuit specifies that a court's order

on a motion to disqualify the judge "is not an appealable final order" and "a party 'must

await final judgment to appeal [a] judge's refusal to recuse.'"  *In re Dorsey*, 489 F. App'x

at 764 (holding court was without jurisdiction to review bankruptcy court's decision

on motion to recuse because, although final judgment had been entered, the appeal of

it had not yet been resolved).  Appellants attempt to get around this law by arguing

that the courts have considered the "finality" of an order on a motion to recuse only

under 28 U.S.C. § 1291 (which applies to jurisdiction of courts of appeals over appeals

from final orders of district courts) and not § 158(a) (which applies to jurisdiction of

district court over appeals from bankruptcy court orders).  Appellants contend this is

crucial because the bankruptcy appellate statute, § 158(a), applies here and that statute

contemplates the more liberal and flexible "finality" standard accorded to bankruptcy

courts, rather than the finality standard under § 1291 pertaining to district court

orders.  Resp. Br. (Doc. No. 31) at 2-7.

 The Court rejects Appellants' suggestion that the Court should or even can

construe this Recusal Order under a different "finality" standard mere because the

ORDER – PAGE 6

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 116    Filed 01/08/25    Page 180 of 256    PageID 12899
Case 3:21-cv-00879-K    Document 39    Filed 02/09/22    Page 7 of 14    PageID 12653

Bankruptcy Court entered it.  There is nothing in the Court's own research, nor anything provided by Appellants, to suggest that the Court should ignore this binding precedent and apply a more liberal and flexible "finality" standard to this appeal of the Recusal Order merely because it is an order of the Bankruptcy Court.  Indeed, courts in this Circuit have not hesitated in applying this well-settled law to an appeal of a bankruptcy court order on a motion to recuse.  *See, e.g., In re Schweitzer*, 2007 WL 2965045, at *1 (court found jurisdiction lacking over appeal from bankruptcy court's order denying motion to recuse because "the law is quite clear that an order denying a motion to disqualify a judge is an interlocutory order from which no appeal lies prior to final judgment in the case."); *In re Moerbe*, 2005 WL 3337634, at *3 ("Because an order denying a motion to recuse or disqualify a judge is interlocutory, not final, and is not immediately appealable, it would seem to follow that the [the bankruptcy court's] order in this case granting recusal but denying its permanency is likewise interlocutory.").  The Court finds no justification for straying from the well-settled law in the Fifth Circuit and finds that the Bankruptcy Court's Recusal Order is not a final appealable order.

The Court also finds that the Recusal Order is not subject to the collateral order doctrine and it is not an interlocutory order that is not immediately appealable. Appellants ask the Court to treat the Recusal Order as subject to the collateral order

ORDER – PAGE 7

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 15   Filed 01/08/25   Page 181 of 256   PageID 12900
Appendix   Filed 01/08/25
Case 3:21-cv-00879-K   Document 39   Filed 02/09/22   Page 8 of 14   PageID 12654

doctrine. The Court rejects this request as there is no legal basis for doing so. Appellants again ignore very clear Fifth Circuit law that a court order denying a recusal motion is not an appealable collateral order. *Willis*, 263 F.3d at 163 (citing *Nobby Lobby*, 970 F.2d at 85-86 & n.3); *Henthorn*, 68 F.3d at 465; *Chitimacha Tribe of La.*, 690 F.2d at 1164 n.3; *In re Corrugated Container Antitrust Litig.*, 614 F.2d at 960; *In re Dorsey*, 489 F. App'x at 764; *Martin*, 2021 WL 4784756, at *1; *In re Gordon*, 2019 WL 11816606, at *1. There is no justification to stray from this well-settled law. Moreover, the Recusal Order is not an appealable interlocutory order under § 1292(a). *Nobby Lobby*, 970 F.2d at 85-86 & n.3; *In re Dorsey*, 489 F. App'x at 764.

For these reasons, the Court finds, as it must, that the Recusal Order is an interlocutory order from which no appeal lies prior to the Bankruptcy Court entering a final judgment. *See Willis*, 263 F.3d at 163; *Nobby Lobby*, 970 F.2d at 85-86 & n.3; *In re Corrugated Container Antitrust Litig.*, 614 F.2d at 960. Therefore, the Court lacks jurisdiction over this appeal.

### B.   Leave to Bring an Interlocutory Appeal

Appellants' last hope for their appeal is securing leave of this Court to bring an interlocutory appeal of the Recusal Order. 28 U.S.C. § 158(a)(3) (district courts may hear appeals "with leave of the court, from other interlocutory orders" of the bankruptcy court). Appellants were required to file a motion for leave to appeal

ORDER – PAGE 8

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 15    Filed 01/26/2154 Page 182 of 256    PageID 12901
Appendix    Page 120/05
Case 3:21-cv-00879-K    Document 39    Filed 02/09/22    Page 9 of 14    PageID 12655

contemporaneously with their notice of appeal. FED. R. BANKR. P. 8004(a).  The

motion for leave to appeal must also include certain contents.  *Id.* 8004(b).  Despite

these unambiguous requirements of the Bankruptcy Rules, Appellants did not comply

with them.  Their failure, however, does not foreclose the appeal entirely because

Bankruptcy Rule 8004(d) permits the Court to "treat the notice of appeal as a motion

for leave and either grant it or deny it."  FED. R. BANKR. P. 8004(c).  In their

jurisdictional brief, Appellants ask the Court to treat their Notice of Appeal as a motion

for leave to appeal should the Court find the Recusal Order is an interlocutory order.

Appellants' Resp. (Doc. No. 29) at 8.  The Court turns now to this analysis.

Section 158(a)(3) does not articulate the standard a district court must use in

deciding whether to grant leave in its discretion, but "[c]ourts in the Fifth Circuit . . .

have applied 28 U.S.C. § 1292(b), the standard governing interlocutory appeals

generally."  *In re Hallwood Energy, L.P.*, Civ. Action No. 3:12-CV-1902-G, 2013 WL

524418, at *2 (N.D. Tex. Feb. 11, 2013)(Fish, SJ) (citing *In re Ichinose*, 946 F.2d 1169,

1177 (5th Cir. 1991); *Panda Energy Int'l, Inc. v. Factory Mut. Ins.*, 2011 WL 610016, at

*3 (N.D. Tex. Feb. 14, 2011)(Kinkeade, J.)); *accord Rivas v. Weisbart*, 2019 WL

5579726, at *2 (E.D. Tex. Oct. 28, 2019); *Celadon Trucking Servs., Inc. v. Moser*, 2019

WL 4226854, at *2 (E.D. Tex. Sept. 4, 2019).  There are three elements of the

§ 1292(b) standard: "(1) a controlling issue of law must be involved; (2) the question

ORDER – PAGE 9

APP 2637

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S      Document 15    Filed 01/26/25   Page 183 of 256      PageID 12902
Appendix   Page 126 of 154
Case 3:21-cv-00879-K   Document 39   Filed 02/09/22   Page 10 of 14   PageID 12656

must be one where there is substantial ground for difference of opinion; and (3) an

immediate appeal must materially advance the ultimate termination of the litigation."

*In re Ichinose*, 946 F.2d at 1177.  An appeal of an interlocutory order is appropriate only

where all three elements are satisfied.  *See In re Genter*, Civ. Action No. 3:19-CV-1951-

E, 2020 WL 3129637, at *2 (N.D. Tex. June 12, 2020)(Brown, J.) (citing *Arparicio v.

Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981)).  "The Fifth Circuit disfavors

interlocutory appeals and leave to appeal is sparingly granted." *Id.* (internal citations

omitted); *In re Hallwood Energy*, 2013 WL 524418, at *2 ("[I]nterlocutory appeals are

'sparingly granted' and reserved for 'exceptional' cases.") (internal citations omitted).

The decision whether to grant an interlocutory appeal is firmly within the district

court's discretion.  *Panda Energy Int'l*, 2011 WL 610016, at *3.

     In this case, there is no controlling question of law with substantial grounds for

disagreement for which resolution would materially advance the end of the bankruptcy

litigation.  It is well-settled that a recusal motion under § 455 is left to the sound

discretion of the judge.  *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157,

1166 (5th Cir. 1982); *see In re Pendergraft*, 745 F. App'x 517, 520 (5th Cir. 2018) (citing

*Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999)).  "[C]ontrolling issue of law is

one that has 'the potential for substantially accelerating the disposition of the litigation'

and does not concern 'matters that are entrusted to the discretion of the bankruptcy

ORDER – PAGE 10

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S   Document 16   Filed 10/23/25   Page 184 of 256   PageID 12903
Appendix   Page 023 of 154
Case 3:21-cv-00879-K   Document 39   Filed 02/09/22   Page 11 of 14   PageID 12657

court.'"  *In re Moerbe*, 2005 WL 3337634, at *4 (W.D. Tex. Sept. 1, 2005) (quoting *In re Aquatic Dev. Group, Inc.*, 196 B.R. 666, 669 (S.D.N.Y. 1996)).  The Recusal Order was an exercise of the Bankruptcy Judge's discretion, so there is no controlling issue of law presented.  *Cf. In re Tullius*, 2011 WL 5006673, at *3 (W.D. Tex. Oct. 20, 2011).  Appellants also cannot satisfy the second factor because the Court cannot find there exists substantial ground for difference of opinion as to the Recusal Motion.

> [C]ourts have found substantial ground for difference of opinion where a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not yet spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Ryan v. Flowserve Corp.*, 444 F.Supp.2d 718, 723-24 (N.D. Tex. 2006)(Boyle, J.) (internal citation omitted).  The Recusal Order does not fall within any of those categories.  Simply because Appellants believe the Bankruptcy Court ruled incorrectly does not demonstrate substantial ground for disagreement.  *Id.* at 724.  Finally, the third element eludes Appellants as well.  An interlocutory appeal of the Recusal Order will in no way materially advance the ultimate end to this bankruptcy matter.

The Fifth Circuit strongly disfavors interlocutory appeals and, accordingly, they are rarely granted and reserved for "exceptional cases". *See, e.g., In re Genter*, 2020 WL 3129637, at *2.  Appellants failed to satisfy any of the three § 1292(b) criteria.  *Id.*

ORDER – PAGE 11

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document Appendix    Filed 01/28/05154    Page 185 of 256    PageID 12904
Case 3:21-cv-00879-K    Document 39    Filed 02/09/22    Page 12 of 14    PageID 12658

Therefore, in its discretion, the Court **denies** Appellants leave to take an interlocutory appeal of the Bankruptcy Court's Recusal Order.

Finally, the Court turns to the remaining arguments Appellants assert. First, the Court declines to *sua sponte* withdraw the reference of Appellants' motion for the bankruptcy judge to recuse herself. The case Appellants cite in support of this suggestion is inapposite here. In the unpublished Fifth Circuit opinion, *Maddox v. Cockrell*, 2003 U.S. App. LEXIS 28958 (5th Cir. 2003), the appellant sought leave to appeal the dismissal of his 28 U.S.C. § 2254 petition. *See generally Maddox v. Cockrell*, 2003 U.S. App. LEXIS 28958. The magistrate judge recommended dismissal the § 2254 petition and the district judge adopted the recommendation and dismissed the petition. *See id.* at *1-2. The Fifth Circuit did not address the merits of the dismissal, but, instead, *sua sponte* vacated the district court's final judgment and remanded with instructions to assign the case to a different district judge. *Id.* at *2. The Fifth Circuit's reasoning—the district judge was the spouse of the magistrate judge and the *pro se* prisoner likely did not know nor could he have reasonably known this. *Id.* Unlike the unusual and exceptional facts in *Maddox*, the Court does not find this appeal to justify *sua sponte* withdrawing the reference of and ruling on Appellants' motion to recuse.

The Court also finds no justification for treating Appellants' notice of appeal as a petition for writ of mandamus, which Appellants also request. A question of recusal

ORDER – PAGE 12

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S      Document 15x  Filed 01/26/154  Page 186 of 256      PageID 12905
Case 3:21-cv-00879-K   Document 39   Filed 02/09/22   Page 13 of 14   PageID 12659

is reviewable on a petition for writ of mandamus. *United States v. Gregory*, 656 F.2d 1132, 1136 (5th Cir. 1981); *In re Placid Oil Co.*, 802 F.2d 783, 786 (5th Cir. 1986); *In re Cameron Int'l Corp.*, 393 F. App'x 133, 134-35 (5th Cir. 2010). "However, the writ will not lie in the absence of exceptional circumstances, and the party seeking the writ has the burden of proving a clear and indisputable right to it." *In re Placid Oil Co.*, 802 F.2d at 786 (citing *Gregory*, 656 F.2d at 1136); *accord In re Cameron Int'l Corp.*, 393 F. App'x at 134-35. Appellants fail to make the required showing. The Court refuses to construe Appellants' appeal as a petition for writ of mandamus.

### C.    Conclusion

The well-established precedent in the Fifth Circuit is that no jurisdiction lies over an appeal of a motion to recuse until final judgment has been entered. Appellants make arguments about potential inefficiency and wasted resources if they must wait to appeal the Recusal Order until the final judgment has been entered. But these arguments are not novel. The Court is certain those same arguments have been advanced in other courts considering this same issue and those courts have rejected them, as this Court does here. Appellants would have this Court carve out an exception to the well-settled law for them without any justifiable basis other than because they think the Bankruptcy Judge was wrong. Appellants must await final judgment, or other

ORDER – PAGE 13

APP. 2841

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 15    Appendix    Filed 01/25/25    Page 187 of 256    PageID 12906
Case 3:21-cv-00879-K    Document 39    Filed 02/09/22    Page 14 of 14    PageID 12660

final resolution, of their bankruptcy proceeding in order to appeal the Recusal Order. This Court has no jurisdiction to hear this appeal.

### IV.    Conclusion

The Recusal Order is not a final, appealable order, is not subject to the collateral order doctrine, and is not an appealable interlocutory order under § 1292(a) and the Court is **without jurisdiction** over this appeal of the Bankruptcy Court's Recusal Order.  The Court further **denies** Appellants leave to appeal the Recusal Order under § 1292(b), **denies** Appellants' request to withdraw the reference of their motion to recuse, and **denies** Appellants' request to construe their appeal as a petition for writ of mandamus.  Accordingly, the Court **dismisses** this appeal for lack of jurisdiction.

**SO ORDERED.**

Signed February 9th, 2022.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

ORDER – PAGE 14

APP 2842

EXHIBIT 58

```
                    IN THE UNITED STATES BANKRUPTCY COURT
 1                   FOR THE NORTHERN DISTRICT OF TEXAS
                              DALLAS DIVISION
 2
                                   )   Case No. 19-34054-sgj-11
 3   In Re:                        )   Chapter 11
                                   )
 4   HIGHLAND CAPITAL              )   Dallas, Texas
     MANAGEMENT, L.P.,             )   Thursday, January 14, 2021
 5                                 )   9:30 a.m. Docket
                                   )
 6            Debtor.              )
                                   )   - MOTION TO PREPAY LOAN
 7                                 )     [1590]
                                   )   - MOTION TO COMPROMISE
 8                                 )     CONTROVERSY [1625]
                                   )   - MOTION TO ALLOW CLAIMS OF
 9   _____)     HARBOURVEST [1207]

10                        TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
11                 UNITED STATES BANKRUPTCY JUDGE.

12   WEBEX APPEARANCES:

13   For the Debtor:           Jeffrey Nathan Pomerantz
                               PACHULSKI STANG ZIEHL & JONES, LLP
14                             10100 Santa Monica Blvd.,
                                13th Floor
15                             Los Angeles, CA  90067-4003
                               (310) 277-6910
16
     For the Debtor:           John A. Morris
17                             Gregory V. Demo
                               PACHULSKI STANG ZIEHL & JONES, LLP
18                             780 Third Avenue, 34th Floor
                               New York, NY  10017-2024
19                             (212) 561-7700

20   For the Official Committee Matthew A. Clemente
     of Unsecured Creditors:   SIDLEY AUSTIN, LLP
21                             One South Dearborn Street
                               Chicago, IL  60603
22                             (312) 853-7539

23   For CLO Holdco, Ltd.:     John J. Kane
                               KANE RUSSELL COLEMAN LOGAN, P.C.
24                             901 Main Street, Suite 5200
                               Dallas, TX  75202
25                             (214) 777-4261
```

22

1    purchase or sale of a security.  And, again, I would ask the

2    Court to listen carefully to this because that's what it

3    appears to be and that's what the evidence is going to show to

4    the Court.

5          THE COURT:  All right.  Mr. Draper, let me clarify

6    something I'm not sure if I heard you say or not.  Were you

7    saying that the Court still needs to drill down on the issue

8    of whether the Debtor can acquire HarbourVest's interest in

9    HCLOF?

10          MR. DRAPER:  No.

11          THE COURT:  Okay.  I was confused whether you were

12   saying I needed to take an independent look at that, now that

13   the objection has been withdrawn of Holdco.  You are not

14   pressing that issue?

15          MR. DRAPER:  No, I am not.  Basically, I think it's

16   the fairness of the settlement.  I think the transferability

17   of the interest is separate and apart from the fairness of the

18   settlement itself.  I think the fairness -- the

19   transferability was a contractual issue between two parties

20   that the Court does not have to drill down on.

21          THE COURT:  All right.  I have another question for

22   you.  I want to clarify your client's standing.  Tell me --

23   I'm looking through a chart I printed out a while back.  I

24   guess Dugaboy Investment Trust filed a couple of proofs of

25   claim; is that right?

23

1          MR. DRAPER:  Yes.

2          THE COURT:  Okay.  What --

3          MR. DRAPER:  And objections are pending.

4          THE COURT:  Pardon?

5          MR. DRAPER:  Objections to those claims are pending

6     before the Court, Your Honor, --

7          THE COURT:  Okay.

8          MR. DRAPER:  -- and have not been litigated.

9          THE COURT:  And what about Get Good Trust?

10         MR. DRAPER:  Get Good Trust has a proof of claim also

11    that objections are pending to.  Pending.

12         THE COURT:  Okay.  I don't want to get too

13    sidetracked here, but I know standing was -- was mentioned as

14    a legal argument today.  What is the basis for those proofs of

15    claim?

16         MR. DRAPER:  The first one is, with respect to the

17    proof of claim for Dugaboy, there is an investment that

18    Dugaboy made that was then funneled, we believe, up to the

19    Debtor.  And the -- the loan that exists, we believe is a

20    Debtor loan, as opposed to a loan to the entity that we made

21    the loans to.

22      And, again, it's a matter that the Court is going to hear.

23    The claim may or may not be allowed.  It has not been

24    disallowed yet.

25      The second part to the Dugaboy ownership is we own an

Case 19-34054-sgj11   Doc 3470-1   Filed 08/26/22   Entered 08/26/22 17:11:52   Desc
Case 3:25-cv-02072-S    Document 16    Filed 01/26/25    Page 191 of 256    PageID 12910
Appendix    Page 10 of 154

24

```
 1    interest in the Debtor.  And so we are, in fact, a party in
 2    interest.
 3              THE COURT:  Okay.
 4              MR. DRAPER:  It may be a small interest, but it is an
 5    interest.
 6              THE COURT:  It has a limited partnership interest in
 7    the Debtor?
 8              MR. DRAPER:  Yes.
 9              THE COURT:  Is that correct?
10              MR. DRAPER:  Yes.
11              THE COURT:  Okay.  Well, I'll move forward.  Thank
12    you.
13        Does that cover -- any other opening statements?  I think
14    that covered everyone who was -- who filed some sort of
15    pleading today.  No.
16              MR. WILSON:  Your Honor, John Wilson on behalf of --
17              THE COURT:  I'm sorry.  I'm sorry.
18              MR. WILSON:  -- Mr. Dondero.
19              THE COURT:  I missed Mr. Dondero's counsel.  I knew
20    we had visited at some point this morning.  I just got
21    confused there.  Go ahead, Mr. Wilson.
22              MR. WILSON:  No problem, Your Honor.  I was just
23    going to say that we will reserve our comments until after the
24    conclusion of the testimony.
25              THE COURT:  All right.  Very well.
```

171

1          MR. BONDS:  Thank you, Your Honor.

2      (Proceedings concluded at 2:04 p.m.)

3                          --oOo--

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                     CERTIFICATE

21      I certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the
22   above-entitled matter.

23   **/s/ Kathy Rehling**                    **01/16/2021**

24   _____      _____

25   Kathy Rehling, CETD-444                      Date
Certified Electronic Court Transcriber

012014

EXHIBIT 78

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF TEXAS

BEFORE THE HONORABLE STACEY G. JERNIGAN, JUDGE

In Re:                            ) Case No. 19-34054-sgj11
                                  )
HIGHLAND CAPITAL MANAGEMENT, L.P., )
                                  )
            Debtor.               )
_____)
                                  )
OFFICIAL COMMITTEE OF UNSECURED   ) Adv. Proc. No. 20-03195-sgj
CREDITORS,                        )
                                  ) PLAINTIFF'S MOTION for
            Plaintiff,            ) CONTINUANCE
                                  )
        v.                        )
                                  )
CLO HOLDCO, LTD., et al.,         )
                                  )
            Defendants.           )
_____)
                                  )
HIGHLAND CAPITAL MANAGEMENT, L.P., ) Adv. Proc. No. 21-03003-sgj
                                  )
            Plaintiff,            )
                                  ) DEFENDANT DONDERO'S MOTION
        v.                        ) to COMPEL DISCOVERY, the
                                  ) TESTIMONY of JAMES P.
JAMES DONDERO,                    ) SEERY, JR.
                                  )
            Defendant.            ) May 20, 2021
_____) Dallas, Texas (Via WebEx)

Appearances in 21-03003:

For Plaintiff Highland    John A. Morris
Capital Management,       Pachulski Stang Ziehl & Jones LLP
                          10100 Santa Monica Boulevard, 13th Floor
                          Los Angeles, California  90067

For Defendant-Movant      Michael P. Aigen
James Dondero:            Stinson, L.L.P.
                          3102 Oak Lawn Avenue, Suite 777
                          Dallas, Texas  75219

                          Bryan C. Assink
                          Bonds Ellis Eppich Schafer Jones LLP
                          420 Throckmorton Street, Suite 1000
                          Forth Worth, Texas  76102

        Appearances continued on next page.

```
1    it just maybe fell through the cracks, and I apologize, Your

2    Honor.

3              THE COURT:  All right.

4              MR. ASSINK:  You know, we — Your Honor, —

5              THE COURT:  Well, I'm going to say a couple of things.

6    You know this could have been raised Tuesday, when we were here

7    on the adversary proceeding, in which the preliminary injunction

8    was issued, okay, it would have been — it would have been wise,

9    it would have been very wise to raise the issue.

10             Second, it screams irony, if nothing else, that at a

11   time when I have under advisement a motion to hold Mr. Dondero

12   in contempt of Court that there would be a trip-up, the

13   second-recent trip-up, by the way, where he didn't appear at a

14   hearing.  There was a time a few weeks ago, two or three weeks

15   ago, can't remember what hearing it was then, but he wasn't

16   here.

17             Okay.  The —

18             MR. ASSINK:  Well, Your Honor, I just want to say —

19             THE COURT:  — the third thing I'm going to say — the

20   third thing I'm going to say is I guess I'll issue an order in

21   the main case now, you know, a one- or two-sentence order in the

22   main case saying repeating the sentence that was in the

23   preliminary injunction, that he's going to show up at every

24   hearing.  I never said only at substantive hearings.  The only

25   thing I hesitated on at all, because I've done this in other
```

APP. 2051
012016

*Adversary 21-3003, Motion to Compel Discovery*                21

1    cases, is sometimes I'll say any hearing at which, you know, the

2    person is taking a position, okay, an opposition, an objection,

3    you know, even if you file a pleading taking a neutral stand, if

4    he's going to file a pleading that requires the Court and all

5    the lawyers' attention to some extent, he's going to need to be

6    in court.  So that's something I thought about doing, but then I

7    was reminded, that I said, no, he's just going to be at all

8    hearings in the future.

9           And procedural, substantive, I never made that

10   distinction and I never would because — because it's taking up

11   time, it's taking up time of the Court, lawyers, parties.  And

12   if he is going to use the offices of this Court or, you know,

13   take up the time of any lawyers, then he needs to be a part of

14   it, okay?

15           MR. ASSINK:  Your Honor, yes, I —

16           THE COURT:  So I thought I made that very clear the

17   last time he didn't show up, but I think —

18           MR. ASSINK:  Your Honor, I apologize.  You know that's

19   certainly not our intention here.  We've been rushing around.  I

20   think this is more — this is more on — on me and just the fast

21   pace with everything.  We would intend that he would be here at

22   all hearings.  We're not trying to make any exception.  We're

23   not trying to say that the preliminary injunction got rid of his

24   obligation to be before, Your Honor.  You know, we weren't clear

25   exactly what the directive was for these kinds of hearings, or

*The Court's Ruling on the Motion to Compel*                    34

 1   based in.  And, again, no one would have better information

 2   about his own compensation than Mr. Dondero himself.

 3          I mean I want to stress that this comes against a

 4   backdrop of — well, it seems like some antagonism, to say the

 5   least, on the part of Mr. Dondero where Mr. Seery's concerned.

 6   It seems like it's always a fight with Mr. Seery.  And you say,

 7   well, we didn't handpick him as the 30(b)(6) witness, but, you

 8   know, the motion to compel names him by name.  It just — it

 9   feels like another antagonistic move.

10          You've got him for a deposition next Monday on 13 or

11   so different topics.  I think it is appropriate to draw the line

12   on these six or so topics that again just don't seem relevant or

13   proportional to the needs of the case.

14          All right.  So, Mr. Morris, would you please upload

15   just a simple order reflecting the Court's ruling?

16          MR. MORRIS:  I would be happy to, Your Honor.

17          THE COURT:  Okay.  Actually I'm going to ask Mr. Aigen

18   to do it.  I'm sorry.  I need to be thinking about attorney's

19   fees and who should bear the costs of what.

20          So, Mr. Aigen, would you please electronically submit

21   an order?

22          MR. AIGEN:  Yes.

23          THE COURT:  All right.  Thank you.

24          All right.  Well, if there's nothing else on this

25   particular adversary, let me just double check.  Any

State of California            )
                               )        SS.
County of San Joaquin          )


          I, Susan Palmer, certify that the foregoing is a true
and correct transcript, to the best of my ability, of the above
pages, of the digital recording provided to me by the United
States Bankruptcy Court, Northern District of Texas, Office of
the Clerk, of the proceedings taken on the date and time
previously stated in the above matter.

          I further certify that I am not a party to nor in any
way interested in the outcome of this matter.

          I am a Certified Electronic Reporter and Transcriber
by the American Association of Electronic Reporters and
Transcribers, Certificate Nos. CER-124 and CET-124.  Palmer
Reporting Services is approved by the Administrative Office of
the United States Courts to officially prepare transcripts for
the U.S. District and Bankruptcy Courts.


                                   Susan Palmer
                                   Palmer Reporting Services

                                   Dated May 22, 2021

# EXHIBIT 40

```
                    IN THE UNITED STATES BANKRUPTCY COURT
1                    FOR THE NORTHERN DISTRICT OF TEXAS
                              DALLAS DIVISION
2
                                    )    Case No. 19-34054-sgj-11
3    In Re:                         )    Chapter 11
                                    )
4    HIGHLAND CAPITAL               )    Dallas, Texas
     MANAGEMENT, L.P.,              )    Monday, May 10, 2021
5                                   )    1:30 p.m. Docket
                                    )
6            Debtor.                )
     ───────────────────────       )
                                    )
7    HIGHLAND CAPITAL               )    Adversary Proceeding 20-3190-sgj
     MANAGEMENT, L.P.,              )
8                                   )
                                    )
9            Plaintiff,             )    - TRIAL DOCKET CALL
                                    )    - DEFENDANT'S EMERGENCY MOTION
10   v.                             )      TO STAY PROCEEDINGS PENDING
                                    )      RESOLUTION OF DEFENDANT'S
11   JAMES D. DONDERO,              )      PETITION FOR WRIT OF
                                    )      MANDAMUS [154]
12           Defendant.            )
     ───────────────────────       )
13
                          TRANSCRIPT OF PROCEEDINGS
14              BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                      UNITED STATES BANKRUPTCY JUDGE.
15
     WEBEX APPEARANCES:
16
     For the Plaintiff:          John A. Morris
17                               PACHULSKI STANG ZIEHL & JONES, LLP
                                 780 Third Avenue, 34th Floor
18                               New York, NY  10017-2024
                                 (212) 561-7700
19
     For the Plaintiff:          Jeffrey Nathan Pomerantz
20                               PACHULSKI STANG ZIEHL & JONES, LLP
                                 10100 Santa Monica Blvd.,
21                                 13th Floor
                                 Los Angeles, CA  90067-4003
22                               (310) 277-6910

23

24

25
```

44

 1      Can everyone hear me okay?  I don't know if we're having

 2  connectivity issues.  Can everyone hear me?

 3          MR. MORRIS:  Yes, Your Honor.

 4          THE COURT:  Can you hear me, Mr. Wilson?

 5          MR. MORRIS:  Yes, Your Honor.

 6          MR. WILSON:  Yes, Your Honor.

 7          THE COURT:  Okay.  I have been pondering something

 8  the past few days.  And I haven't figured out how I want to

 9  address it, but maybe Mr. Dondero's counsel and counsel from

10  some of the Dondero-controlled entities, maybe they can listen

11  to what I'm about to say and figure out a solution.

12      As you all know, there are so many law firms, so many

13  lawyers involved now that are basically singing the same tune

14  at a lot of these hearings as far as objections, me too, me

15  too, me too.  And so just quickly eyeballing what we have, we

16  obviously have Mr. Dondero represented by Bonds Ellis.  There

17  is another firm that represents Mr. Dondero that filed a

18  motion asking that I recuse myself.  I can't remember the name

19  of that firm, but I think they appealed my denial of that

20  motion.  So, I can't remember who that was.  Then we have the

21  various affiliates.  We have -- well, I'll just start

22  chronologically.  Highland CLO Funding, Ltd. has historically

23  been represented by King & Spalding.  I don't know if that's

24  -- I know there were some changes there with the ownership of

25  that entity, so maybe they're gone.  But then we have NexPoint

45

1   Advisors and Highland Capital Management Fund Advisors.  We

2   call them the Advisors and then the Funds.  Originally, they

3   were all represented by K&L Gates, but now they've divvied it

4   up and Munsch Hardt is representing, I guess, the Advisors,

5   and the Funds are represented by K&L Gates.  CLO Holdco, Ltd.,

6   it was Kane Russell Coleman & Logan representing them, but I

7   now think I'm seeing Kane Russell is representing Grant Scott

8   and -- individually.  I'm not sure if Kane Russell is still

9   representing CLO Holdco.  We have Dugaboy and Get Good Trusts

10  represented by Doug Draper, Heller Draper.  We have now Louis

11  Phillips representing the Charitable DAFs, Highland Dallas

12  Foundation.  We have NexPoint Real Estate Partners represented

13  by Wick Phillips, although there's the motion to disqualify

14  them.  And then I guess I'll just throw in we've had Baker &

15  McKenzie and Ross & Smith representing certain groups of

16  employees, but now I guess those proofs of claim have been

17  bought by Dondero entities and so I'm not sure who's

18  representing who there.

19      I'm not even sure I got everyone just now, but here's what

20  I'm getting at.  You talk about judicial efficiency and

21  judicial economy and economy of the partners.  We can't go on

22  efficiently with 12 law firms or whatever I just named filing

23  the very same type of motion or objection.  You know, I almost

24  -- if we were in different circumstances, I'd say we need to

25  have an ad hoc committee of these Dondero-controlled

46

 1   affiliates, something like that.

 2       But I've been thinking about this for a few days because I

 3   see, like in one adversary, I think we now have three motions

 4   to withdraw the reference.  And I haven't studied them all,

 5   but I'm pretty sure they're going to tell me the exact same

 6   thing.  And again, I'm just doing some predictions that the

 7   UBS settlement, I wouldn't be surprised if I get eight or ten

 8   or twelve objections that say the very same thing.

 9       We're going to have to work something out.  Okay?  This is

10   not efficient.  It's not useful.  I would think a person such

11   as Mr. Dondero would want to rein in legal fees, but maybe

12   not.

13       Do you all have any ideas, Mr. Taylor, Mr. Wilson?  How

14   can we rein this in?  There's got to be a better way --

15              MR. TAYLOR:  Your Honor?

16              THE COURT:  -- than twelve different law firms filing

17   almost identical pleadings.

18              MR. TAYLOR:  Your Honor, I understand what you're

19   saying, on the one hand.  On the other hand, each of these

20   entities do have -- are separate corporations.  They have

21   different duties to various stakeholders, and they are

22   controlled by different stakeholders.  And that is one of the

23   things that has been a consistent, at least from what I

24   understand from my limited understanding and length of time in

25   the case, that that is one thing that is very important to Mr.

47

1    Dondero and those related entities, is that those duties do

2    run to different parties.  So each party has to preserve its

3    individual rights.

4        Sure.  Could it be more efficient?  Of course.  But Mr.

5    Dondero has a different set of duties than do the Advisor,

6    than do the Funds, than do the Trusts that are controlled by a

7    separate trustee.  And while of course there's some

8    interrelated cooperation amongst them, amongst the joint

9    defense agreement, it is very important that they maintain

10   their separate corporate identities and act independently from

11   each other, because they truly do have to act independently

12   from each other in many different circumstances.  They don't

13   want to lose sight of that.

14       So that is my initial explanation.  Of course, I can talk

15   with my client about it further, about seeing what can be

16   done, because he does indeed want to make it more efficient.

17   Has been hammering on me and my firm every month to try to do

18   so, and I'm sure he has with the other professionals.

19       But we do hear Your Honor, but we do want to make sure

20   that that -- those different separate corporate identities of

21   these entities is both recognized and laid out in this case.

22   It is very important to us and just integral to a lot of the

23   things that we've done in this case.

24            THE COURT:  You know what would help me understand

25   that better?  Is if in every case I had this entity is owned

Case 19-34054-sgj11    Doc 3470-1    Filed 08/26/22    Entered 08/26/22 17:11:52    Desc
Case 3:25-cv-02072-S    Document 15    Filed 04/06/25    Page 203 of 256    PageID 12922
Appendix    Page 10 of 154

48

1    by, you know, 25 percent by this, this.  If I knew the owners,

2    if I knew the equitable owners.  But I don't.  That's just all

3    kind of glossed over.  And so that's how perceptions get

4    created that Dondero, Dondero, Dondero, Dondero.  You know

5    what I'm saying?

6                MR. DONDERO:  Your Honor?

7                THE COURT:  And I don't know if you want to share

8    that information or not, but that's why I can't just accept a

9    generalization that, oh, we have very different stakeholders

10   behind --

11               MR. TAYLOR:  Your Honor?  Wait, hold on a second.

12   Your Honor, --

13               THE COURT:  -- this entity versus this one versus

14   this one.

15               MR. TAYLOR:  Your Honor, if you would allow my

16   client, he would like to very briefly address the Court on

17   those points, if he may.

18               THE COURT:  Okay.

19               MR. DONDERO:  Your Honor, just a brief history from

20   my perspective, okay?  We filed with $450 million of assets

21   and $110 million of estimated, as presented by the independent

22   board and Pachulski to the Court, trying to do a quick

23   settlement the first three or four months into bankruptcy.

24   The claims, the awards, the Class 8, the Class 9 awards, the

25   people who didn't even have standing, have all of a sudden

49

 1  ballooned to $300-some-odd million.  And the assets in the

 2  estate, which we haven't had an examiner go through all these

 3  no-process asset sales at a loss, when I would have bought

 4  them for more, has driven the estate value down to less than

 5  $250 million.

 6      We made an offer to try and settle this thing a few months

 7  ago at 20 percent more than the estimated value in the

 8  recoveries.  But Seery and the UCC are emboldened because they

 9  feel in this Court there's going to be no respect of third-

10  party investors, no respect of other Dondero entities, and

11  they've been told that they can get more than a hundred cent

12  recovery by going after me and all my other entities going

13  back ten or twelve years.

14      So there's no chance that this case ever settles.  And

15  what you're going to see is there's a half a dozen or more --

16          MR. POMERANTZ:  Your Honor, I have to -- I have to --

17          MR. DONDERO:  -- there's a half a dozen more law

18  firms coming --

19          THE COURT:  Just a moment.

20          MR. DONDERO:  -- and there's a half a dozen -- there

21  are a half a dozen more --

22          MR. POMERANTZ:  Your Honor, this --

23          THE COURT:  Mr. Morris?

24          MR. POMERANTZ:  This is Jeff Pomerantz.

25          THE COURT:  Mr. Morris?

50

1          MR. POMERANTZ:  This is Jeff Pomerantz, Your Honor.

2          THE COURT:  Oh, Mr. Pomerantz?

3          MR. POMERANTZ:  This is Jeff Pomerantz, Your Honor.

4          THE COURT:  Uh-huh.

5          MR. POMERANTZ:  You know, I think what Mr. Dondero is

6    doing is totally inappropriate.  We're not here to relitigate

7    the history of the case.  We're not here to relitigate or

8    determine why a settlement hasn't been reached.  Your Honor

9    raised some important questions, (garbled) gave an answer, you

10   pushed him, but what Mr. Dondero is doing is just

11   inappropriate, and we shouldn't -- don't think he should be

12   doing this in this manner.

13      If he wants to at some point be put on to testify, he

14   could be cross-examined.  But he's testifying about things

15   that actually just happen not to be true and it's totally

16   inappropriate for this context.

17          THE COURT:  Okay.  Well, I understand --

18          MR. DONDERO:  But Your Honor, there's going to a half

19   dozen --

20          THE COURT:  -- that -- I understand, you know, Mr.

21   Pomerantz is concerned because I asked a specific question

22   aimed at how do we rein in all the lawyers, and the answer

23   was, well, they all are separate entities with separate

24   interests and separate stakeholders.  And my question was,

25   well, could I maybe see a list, a breakdown on all of these

51

 1  entities?  Because, you know, in so many cases, --

 2          MR. DONDERO:  But Your Honor, --

 3          THE COURT:  -- in almost every case I have, I get a

 4  big giant what I call spaghetti chart at the beginning of the

 5  case where I get a breakdown of debtor affiliates and who owns

 6  what.  And this hasn't been clear to me with all of these

 7  affiliates.

 8      But I do very much have the impression, Mr. Dondero, that

 9  all roads lead back to you.  So I let you speak to this, and

10  we've kind of gone down a different trail.  And I want you to

11  know, I know --

12          MR. DONDERO:  Right.

13          THE COURT:  I know where you stand on this because

14  you have told me before.  You have huge concern that Highland

15  had $x$ hundred million dollars of assets at the beginning of

16  the case and now it's a lot lower.  I know you have concerns

17  with liquidation at what you think were very inappropriate

18  times.  I know you have all kinds of beefs, beefs about the

19  settlement with Acis, and probably UBS and the Redeemer

20  Committee.  I understand that.  But what I'm talking about

21  right now is going forward.  Going forward, how do we rein

22  this in where we don't --

23          MR. DONDERO:  But going forward, there's going to be

24  more lawyers.  There's going to be more defense.  Because the

25  Debtor is just going to keep trying to broaden, because they

Case 19-34054-sgj11 Doc 3470-1 Filed 08/26/22 Entered 08/26/22 17:11:52 Desc
Case 3:25-cv-02072-S Document 16 Filed 01/05/15154 Page 207 of 256 PageID 12926
Appendix Page 15

52

```
 1  feel empowered and enabled to go after anything related to
 2  Highland, me, et cetera.  But there's probably half a dozen
 3  more attorneys coming into this case.  I don't know what to
 4  tell you.  It's a circus.
 5           THE COURT:  Okay.  Well, I'm going to let you all
 6  think about this out of court.  Is there a way you can
 7  streamline?  I mean, I know -- I almost chuckle at myself at
 8  saying ad hoc committee of Dondero-controlled entities.  I
 9  know that that sort of sounds, I don't know, unworkable,
10  maybe.  Maybe not.  I'm not going to read 14 different
11  objections to the UBS settlement that say the very same thing.
12  I'm not going to read a different motion to withdraw the
13  reference by every single defendant in every single adversary
14  that gets filed.  This is just not an efficient way to go
15  forward.
16      So I want you all to think about how you can make this
17  more efficient.  You know, it -- a perception could exist that
18  you're trying to carpet-bomb us all with paper, the Court
19  included.  I mean, it's my job.  I'm going to read everything
20  that's put before me.  That's what I do.  That's what I'm
21  supposed to do.  But it's out of control.  So you all think of
22  a way to get it in control or I might impose something.  The
23  wheels are turning.  What could I do?  You know, page limits.
24           MR. POMERANTZ:  Your Honor, this is Jeff Pomerantz.
25  One suggestion might be, following up on what Your Honor made
```

53

1    some comments about, and Your Honor has used the word ad hoc

2    committees, and obviously it's sort of a different animal

3    here.  But as Your Honor knows, that every time an ad hoc

4    committee comes in, they have to file a 2019 statement.  So I

5    think it would at least provide Your Honor with information,

6    as it would provide all of us with information, to really

7    understand and know, when people are appearing, is it all

8    roads leading back to Dondero, or, as Mr. Taylor says, what

9    are the different constituents?  Who are the different people?

10        As Your Honor has heard from us, we lump them all together

11   because we believe the evidence has shown throughout this case

12   that it all leads -- the road leads back to Dondero.  But Your

13   Honor may consider asking them to file sort of the equivalent

14   of a 2019 statement to provide Your Honor with that

15   information under oath that Your Honor could then see, when

16   you get several objections to the same thing, whether you

17   really need to be dealing with them as seven different matters

18   or whether dealing with them as one.

19        THE COURT:  Okay.  All right.  Well, I'm giving this

20   thought.  And again, I'll let you all think about it and make

21   a proposal.  But I may or may not accept any proposal you

22   make.  And I am leaning towards requiring information to be

23   filed of who owns what, who are the stakeholders.  That'll

24   help me understand, is it necessary to have this entity filing

25   a separate objection or motion from this other entity or not?

54

 1  Can we just have an hoc committee each time?

 2      I don't even think I listed all the law firms.  I know a

 3  new law firm filed a lawsuit in front of Judge Jane Boyle

 4  recently.  We've got a hearing on that coming up in June.  I

 5  mean, and now you're -- I'm hearing there are going to be

 6  more.  Well, if you don't figure out a way to rein it in, then

 7  I'm just going to have to get that list of who are the

 8  stakeholders in these entities, under oath, because I don't

 9  understand it.  I don't understand why we need these many

10  lawyers filing position papers.

11      So, all right.  Well, we're going to adjourn, and I guess

12  I'll see you next Monday, right?

13          MR. MORRIS:  Thank you, Your Honor.  Yes.

14          THE COURT:  Okay.  Thank you.

15          THE CLERK:  All rise.

16      (Proceedings concluded at 3:07 p.m.)

17                      --oOo--

18

19

20                      CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the
22  above-entitled matter.

23   **/s/ Kathy Rehling**                      05/11/2021

24  _____        _____

    Kathy Rehling, CETD-444                     Date
25  Certified Electronic Court Transcriber

54

1  Can we just have an hoc committee each time?

2      I don't even think I listed all the law firms.  I know a

3  new law firm filed a lawsuit in front of Judge Jane Boyle

4  recently.  We've got a hearing on that coming up in June.  I

5  mean, and now you're -- I'm hearing there are going to be

6  more.  Well, if you don't figure out a way to rein it in, then

7  I'm just going to have to get that list of who are the

8  stakeholders in these entities, under oath, because I don't

9  understand it.  I don't understand why we need these many

10 lawyers filing position papers.

11     So, all right.  Well, we're going to adjourn, and I guess

12 I'll see you next Monday, right?

13             MR. MORRIS:  Thank you, Your Honor.  Yes.

14             THE COURT:  Okay.  Thank you.

15             THE CLERK:  All rise.

16     (Proceedings concluded at 3:07 p.m.)

17                         --oOo--

18

19

20                      CERTIFICATE

21     I certify that the foregoing is a correct transcript from
   the electronic sound recording of the proceedings in the
22 above-entitled matter.

23  **/s/ Kathy Rehling**                        **05/11/2021**

24 _____        _____

   Kathy Rehling, CETD-444                      Date
25 Certified Electronic Court Transcriber

# EXHIBIT 41

```
                IN THE UNITED STATES BANKRUPTCY COURT
1                 FOR THE NORTHERN DISTRICT OF TEXAS
                            DALLAS DIVISION
2
                                  )    Case No. 19-34054-sgj-11
3     In Re:                       )    Chapter 11
                                  )
4     HIGHLAND CAPITAL             )    Dallas, Texas
      MANAGEMENT, L.P.,            )    Friday, June 25, 2021
5                                  )    9:30 a.m. Docket
                                  )
6            Debtor.              )
                                  )    EXCERPT:  MOTION FOR
7                                  )    MODIFICATION OF ORDER
                                  )    AUTHORIZING RETENTION OF JAMES
8                                  )    P. SEERY, JR. DUE TO LACK OF
                                  )    SUBJECT MATTER JURISDICTION
9     _____      )    (2248)

10                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
11              UNITED STATES BANKRUPTCY JUDGE.

12    WEBEX APPEARANCES:

13    For the Debtor:          Jeffrey Nathan Pomerantz
                               PACHULSKI STANG ZIEHL & JONES, LLP
14                             10100 Santa Monica Blvd.,
                                 13th Floor
15                             Los Angeles, CA  90067-4003
                               (310) 277-6910
16
      For the Debtor:          John A. Morris
17                             PACHULSKI STANG ZIEHL & JONES, LLP
                               780 Third Avenue, 34th Floor
18                             New York, NY  10017-2024
                               (212) 561-7700
19
      For CLO Holdco, Ltd. and Jonathan E. Bridges
20    The Charitable DAF Fund, Mazin Ahmad Sbaiti
      LP:                      SBAITI & COMPANY, PLLC
21                             JP Morgan Chase Tower
                               2200 Ross Avenue, Suite 4900 W
22                             Dallas, TX  75201
                               (214) 432-2899
23
      For Get Good Trust and   Douglas S. Draper
24    Dugaboy Investment Trust: HELLER, DRAPER & HORN, LLC
                               650 Poydras Street, Suite 2500
25                             New Orleans, LA  70130
                               (504) 299-3300
```

APP 3088

109

1    bring causes of action against persons, such as officers and

2    directors or other third parties, if they first come to the

3    Bankruptcy Court and show a colorable claim.  They have to

4    come to the Bankruptcy Court, show they have a colorable claim

5    and they're the ones that should be able to pursue them.  Not

6    exactly on point, but it's just one of many cases that one

7    could cite that certainly approve gatekeeper functions of

8    various sorts of Bankruptcy Courts.

9         It doesn't matter which court might ultimately adjudicate

10   the claims; the Bankruptcy Court can be the gatekeeper.

11        And the Court agrees with the many cases cited from

12   outside this circuit, such as the case in Alabama, in the

13   Eleventh Circuit, and there was another circuit-level case, at

14   least one other, that have held that the *Barton* doctrine

15   should be extended to other types of case fiduciaries, such as

16   debtor-in-possession management, among others.

17        Finally, as I pointed out in my confirmation ruling in

18   this case, gatekeeping provisions are commonplace for all

19   types of courts, not just Bankruptcy Courts, when vexatious

20   litigants are involved.  I have commented before that we seem

21   to have vexatious litigation behavior with regard to Mr.

22   Dondero and his many controlled entities.

23        Now, as far as the Movants' argument that there was not

24   just improper gatekeeping provisions but actually an improper

25   discharge in the Seery retention order of negligence claims or

1   annoyance or anything like that.  I guess what I'm trying to

2   do is I don't want anyone to mistake the delay in ruling on

3   the contempt motion to mean I'm just not that -- you know, I'm

4   not prioritizing it, other things are more serious to me or

5   important to me, or I'm going to take two months to get to it.

6   It's literally been I've been in trial almost all day long

7   every day since you were here.  But trust me, I'm about as

8   upset as upset can be about what I heard on June 8th, and I'm

9   going to get to that ruling, and I know what I'm going to do.

10  And, well, like I said, it's just a matter of figuring out

11  dollars and whom, okay?  There's going to be contempt.  I just

12  haven't put it on paper because I've been in court all day and

13  I haven't come up with a dollar figure.  Okay?

14      So I hope -- I don't know if that matters very much, but

15  it should.

16      All right.  We stand adjourned.

17      (Proceedings concluded at 3:35 p.m.)

18                      --oOo--

19

20                   CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the

22  above-entitled matter.

23   **/s/ Kathy Rehling**                        06/29/2021

24  _____       _____

25  Kathy Rehling, CETD-444                      Date
    Certified Electronic Court Transcriber

# EXHIBIT 42

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
                               DALLAS DIVISION

                                      )    Case No. 19-34054-sgj-11
  In Re:                              )    Chapter 11
                                      )
  HIGHLAND CAPITAL                     )    Dallas, Texas
  MANAGEMENT, L.P.,                    )    March 1, 2022
                                      )    1:30 p.m. Docket
        Reorganized Debtor.           )
                                      )    - REORGANIZED DEBTOR'S MOTION
                                      )      FOR ENTRY OF AN ORDER
                                      )      APPROVING SETTLEMENT WITH
                                      )      PATRICK DAUGHERTY [3088]
                                      )    - REORGANIZED DEBTOR'S MOTION
                                      )      FOR ENTRY OF AN ORDER
                                      )      FURTHER EXTENDING THE PERIOD
                                      )      WITHIN WHICH IT MAY REMOVE
                                      )      ACTIONS [3199]
  _____)
                                      )
  ELLINGTON,                          )    Adversary Proceeding 22-3003-sgj
                                      )
             Plaintiff,               )
                                      )    STATUS CONFERENCE
  v.                                  )    (NOTICE OF REMOVAL)
                                      )
  DAUGHERTY,                          )
                                      )
             Defendant.               )
  _____)

                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                 UNITED STATES BANKRUPTCY JUDGE.

  APPEARANCES:

  For the Debtor:            John A. Morris
                             PACHULSKI STANG ZIEHL & JONES, LLP
                             780 Third Avenue, 34th Floor
                             New York, NY  10017-2024
                             (212) 561-7700

  For Scott Ellington:       Debra A. Dandeneau
                             Laura R. Zimmerman
                             BAKER & MCKENZIE, LLP
                             452 Fifth Avenue
                             New York, NY  10018
                             (212) 626-4875
```

1          THE COURT:  Okay.  And you know that I tend to

2    sometimes share my views just to see if it will spur a fit of

3    reasonableness or encourage people to settle or walk away.

4    I'm pretty exasperated with that attempt in this case.  But

5    this litigation is -- I'm going to call it the stalking

6    lawsuit.  Okay?  Every time -- I don't know how much longer it

7    will be in my court, but as long as it's in my court I'm going

8    to call it what it is, a stalking lawsuit.  It is one grown

9    man accusing another grown man of stalking.  You know, it's

10   just embarrassing to me, and it should be embarrassing to

11   those involved.

12       Now, I have read the lawsuit and I have read that Mr.

13   Ellington accuses Mr. Daugherty of driving by his house,

14   driving by his father's house, driving by his sister's house,

15   driving by his office, 143 sightings, he's taking pictures.

16   And you know, if that's true, again, that's embarrassing.  If

17   -- I don't even know what to say except this is embarrassing.

18   One grown man accusing another grown man of stalking.  Okay?

19   A statute, by the way, that was designed to protect, you know,

20   ex-wives, girlfriends, battered women, from abusive men.  You

21   know, gender doesn't matter, but wow.  It's just -- I don't

22   know what to say except people should be embarrassed, and so

23   that's what I'm going to say.

24       I don't know if it's going to make a whit of difference in

25   anyone's litigation posture.  But we'll come back on March

84

1    29th and we'll do what we need to do on the motions before the

2    Court.

3         (Proceedings concluded at 3:41 p.m.)

4                              --oOo--

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19                          CERTIFICATE

20        I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
21   above-entitled matter.

22    **/s/ Kathy Rehling**                          **03/07/2022**

23   _____    _____
     Kathy Rehling, CETD-444                      Date
24   Certified Electronic Court Transcriber

25

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 24065397) *(admitted pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
|  | § |  |
| Reorganized Debtor. | § |  |

## STIPULATION AND PROPOSED ORDER RESOLVING HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTIONS TO (A) STRIKE LETTERS ATTACHED TO APPENDIX IN SUPPORT OF THE DONDERO PARTIES' SUPPLEMENTAL RECUSAL MOTION [DOCKET NO. 3446], OR, (B) ALTERNTIVELY, TO COMPEL THE LAWYERS' DEPOSITIONS [DOCKET NO. 3449]

---

[1] The last four digits of Highland's taxpayer identification number are 8357. The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

012039

This *Stipulation and Proposed Order Resolving Highland Capital Management, L.P.'s Motions to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3446], or, (B), Alternatively, to Compel the Lawyers' Depositions [Docket No. 3449]* (the "Stipulation") is entered into between Highland Capital Management, L.P., the reorganized debtor (the "Reorganized Debtor"), on the one hand, and James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC (collectively, the "Dondero Parties" and together with the Reorganized Debtor, the "Parties") on the other.

## RECITALS

WHEREAS, on March 18, 2021, the Dondero Parties filed their motion to recuse this Court pursuant to 28 U.S.C. § 455 [Docket Nos. 2060, 2061, 2062] (the "Recusal Motion");

WHEREAS, on March 22, 2021, this Court entered its order denying the Recusal Motion [Docket No. 2083] (the "Recusal Order").  The Dondero Parties appealed the Recusal Order to the U.S. District Court for the Northern District of Texas (the "District Court");

WHEREAS, on February 9, 2022, the District Court entered its *Memorandum Opinion and Order* [D. Ct. Docket No. 39][2] (the "February Order");

WHEREAS, on July 20, 2022, the Dondero Parties filed their supplement to the Recusal Motion in this Court [Docket Nos. 3405, 3406] (the "Supplemental Motion") seeking (a) entry of a final, appealable order and (b) to supplement the record with the documents included in the appendix to the Supplemental Motion [Docket No. 3406-1] (the "Appendix");

---

[2] "D. Ct. Docket No." refers to the docket maintained by the District Court in *James Dondero, et al. v. Honorable Stacey G.C. Jernigan, et al.*, Case No. 3:21-cv-00879-K (N.D. Tex.).

WHEREAS, on August 15, 2022, Highland filed its objection to the Supplemental Motion [Docket No. 3444] and its appendix in support thereof [Docket No. 3445].  Highland also moved to strike [Docket No. 3446] (the "Motion to Strike") exhibits 35, 36, and 37 from the Dondero Parties' Appendix (the "UST Letters") or, alternatively, to compel the depositions of certain lawyers [Docket No. 3449] (the "Motion to Compel"); and

WHEREAS, the Parties wish to fully and finally resolve the Motion to Strike and the Motion to Compel in accordance with the terms set forth below.

**NOW, THEREFORE**, in consideration of the above recitals and the promises set forth below, the Parties agree and stipulate as follows:

## STIPULATION

1.      The Dondero Parties' agree to withdraw the UST Letters from the Appendix.

2.      Contemporaneously with the filing of this stipulation, the Dondero Parties will file (a) an amended appendix (the "Amended Appendix") excluding the UST Letters (exhibits 35, 36 and 37) and (b) an amended Supplemental Motion that deletes the entirety of footnote 26 beginning and continuing after the words "Indeed, lack of transparency . . ." (the "Amended Supplemental Motion" and together with the Amended Appendix, the "Required Filings").

3.      The Parties agree that upon the filing of the Required Filings by the Dondero Parties, the Motion to Strike and Motion to Compel will be moot and Highland will be deemed to have withdrawn the Motion to Strike and Motion to Compel.  Highland will file a notice that it is withdrawing the Motion to Strike and the Motion to Compel within one (1) business day after the Court enters an order in the form annexed hereto as **Exhibit A**.

4.      The Dondero Parties agree that they shall not cite to, quote, or rely upon the UST Letters in connection with any further proceedings concerning the Recusal Order or the Amended

012041

Supplemental Motion (including in connection with any appeal of any Order entered with respect to the Amended Supplemental Motion).

5.     This Stipulation is and will be binding on Highland and each of the Dondero Parties' predecessors, successors, transferees, and assigns.

6.     This Stipulation fully resolves the Motion to Strike and Motion to Compel. Except as expressly provided herein, nothing herein resolves the Supplemental Motion or the Amended Supplemental Motion or otherwise affects Highland's objection to the Supplemental Motion which shall hereafter be deemed to be an objection to the Amended Supplemental Motion.

7.     This Court shall have and retain jurisdiction over all disputes arising out of or otherwise concerning the interpretation and enforcement of this Stipulation.

*[Remainder of Page Intentionally Blank]*

**IT IS SO STIPULATED:**

Dated:  August 26, 2022

*/s/ John A. Morris*
PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*pro hac vice*)
John A. Morris (NY Bar No. 266326) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

*/s/ Michael J. Lang*
Texas State Bar No. 24036944
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
Telephone: 214-817-4500
E-mail: mlang@cwl.law

*Counsel for the Dondero Parties*

**EXHIBIT A**

**Proposed Order**

012044

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

———————————————————————

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

---

**ORDER APPROVING STIPULATION RESOLVING HIGHLAND CAPITAL
MANAGEMENT, L.P.'S MOTIONS TO (A) STRIKE LETTERS ATTACHED TO
APPENDIX  IN SUPPORT OF THE DONDERO PARTIES' SUPPLEMENTAL
RECUSAL MOTION [DOCKET NO. 3446], OR, (B) ALTERNTIVELY, TO COMPEL
THE LAWYERS' DEPOSITIONS [DOCKET NO. 3449]**

Upon consideration of the *Stipulation and Proposed Order Resolving Highland Capital*

*Management, L.P.'s Motions to (A) Strike Letters Attached to Appendix in Support of the*

*Dondero Parties' Supplemental Recusal Motion [Docket No. 3446], or, (B), Alternatively, to*

---

[1] The last four digits of Highland's taxpayer identification number are 8357. The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

012045

*Compel the Lawyers' Depositions [Docket No. 3449]* (the "<u>Stipulation</u>")[2] filed in the above-

captioned case, it is **HEREBY ORDERED THAT:**

    1.        The Stipulation, a copy of which is attached hereto as **<u>Exhibit A</u>**, is approved.

    2.        The Parties are ordered to comply with their respective obligations set forth in the

Stipulation.

    3.        This Order and the Stipulation are and will be binding on the Highland and the

Dondero Parties' predecessors, successors, transferees, and assigns.

    4.        This Court shall have and retain jurisdiction over all disputes arising out of or

otherwise concerning the interpretation and enforcement of this Order and the Stipulation.

### END OF ORDER ###

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Stipulation.

DOCS_NY:46363.5 36027/003

**012046**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 31, 2022**

_____
**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

**ORDER DENYING AMENDED MOTION OF JAMES DONDERO, HIGHLAND
CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS,
L.P., THE DUGABOY INVESTMENT TRUST, GET GOOD TRUST, AND
NEXPOINT REAL ESTATE PARTNERS, LLC, F/K/A HCRE PARTNERS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY FOR FINAL APPEALABLE
ORDER AND SUPPLEMENT TO MOTION TO RECUSE PURSUANT
<u>TO 28 U.S.C. § 455 [DE # 3470]</u>**

On July 20, 2022, James Dondero, Highland Capital Management Fund Advisors, L.P.,

NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real

Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company

("Movants") filed with the bankruptcy court, in the referenced bankruptcy case, the following

entitled motion:  *James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint*

*Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate*

012047

*Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company's Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support* [DE # 3406] (the "<u>Motion</u>").  The Motion relates to this Court's March 23, 2021 order ("<u>Original Recusal Order</u>") [DE # 2083], entered by this bankruptcy judge in the bankruptcy case, denying the Movants' motion to recuse her for alleged bias (and brief in support) that had been filed on March 18, 2021 ("<u>Original Recusal Motion</u>") [DE ## 2060 & 2061].  The Motion included a 354-page proposed "supplement" to the record.

The hearing on the Motion was originally set for August 31, 2022, at 9:30 a.m.  On August 19, 2022, this Court entered an order converting the hearing to a status conference because it was unclear to the Court exactly what relief was being requested in the Motion and the asserted basis for Movants' entitlement to such relief, including under which rule of procedure Movants were proceeding.  Prior to the status conference, on August 26, 2022, the Movants amended the Motion with the filing of *James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC, f/k/a HCRE Partners, LLC, a Delaware Limited Liability Company's Amended Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support* [DE # 3470] (the "<u>Amended Motion</u>").[1]

Having (1) reviewed the Amended Motion and proposed supplement to the record (contained in the Amended Appendix to the Amended Motion), and (2) obtained clarification on the record from the Movants, during the status conference that was held on August 31, 2022, as to

---

[1] The Amended Motion essentially restated the Motion, *verbatim*, except for the filing with the Amended Motion an Amended Appendix that removed certain letters that had been included in the original Appendix to the Motion (and intended supplement of the record) that were the subject of a motion to strike filed by Highland, and the removal from footnote 26 of a reference to those letters, and, thus, did nothing to clarify the relief being sought or the procedural and legal grounds for doing so.  The Amended Appendix reduced the proposed 354-page supplement to 152 pages.

012048

the relief being sought in the Amended Motion and the asserted legal and procedural grounds therefor; and, for the reasons stated in open court,

 **IT IS HEREBY ORDERED** that the Amended Motion **BE, AND HEREBY IS, DENIED**, as being procedurally improper.

 **IT IS FURTHER ORDERED** that this Order is without prejudice to the Movants' right to file (1) a simple motion (without an appendix or attached proposed supplements to the record) under the appropriate procedural rule(s), seeking only a revised and amended Recusal Order that removes the following language contained at the end of the Recusal Order, but otherwise leaves the Recusal Order unchanged: "The court reserves the right to supplement or amend this ruling;" and/or (2) a new motion to recuse this bankruptcy judge based on any alleged new evidence or grounds for recusal that were not considered by this bankruptcy judge at the time of its consideration of the original Recusal Order.

 **IT IS SO ORDERED.**

### End of Order ###

012049

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| In Re: | ) **Case No. 19-34054-sgj-11** |
|  | ) Chapter 11 |
|  | ) |
| HIGHLAND CAPITAL | ) Dallas, Texas |
| MANAGEMENT, L.P., | ) August 31, 2022 |
|  | ) 9:30 a.m. Docket |
| Reorganized Debtor. | ) |
|  | ) STATUS CONFERENCE RE: MOTION |
|  | ) FOR FINAL APPEALABLE ORDER |
|  | ) FILED BY JAMES DONDERO |
|  | ) [3406] |
|  | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

For the Reorganized        Jeffrey Nathan Pomerantz
Debtor:                    PACHULSKI STANG ZIEHL & JONES, LLP
                           10100 Santa Monica Blvd.,
                             11th Floor
                           Los Angeles, CA  90067
                           (310) 277-6910

For the Reorganized        Melissa S. Hayward
Debtor:                    HAYWARD, PLLC
                           10501 N. Central Expressway,
                             Suite 106
                           Dallas, TX  75231
                           (972) 755-7104

For James Dondero,         Michael Justin Lang
Movant:                    CRAWFORD WISHNEW & LANG, PLLC
                           1700 Pacific Avenue, Suite 2390
                           Dallas, TX  75201
                           (214) 817-4500

Recorded by:               Michael F. Edmond, Sr.
                           UNITED STATES BANKRUPTCY COURT
                           1100 Commerce Street, 12th Floor
                           Dallas, TX  75242
                           (214) 753-2062

012050

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-05   Filed 10/06/25   Page 229 of 256   PageID 12948
Main Document   Page 2 of 27

2

```
 1     Transcribed by:            Kathy Rehling
                                  311 Paradise Cove
 2                                Shady Shores, TX  76208
                                  (972) 786-3063
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
              Proceedings recorded by electronic sound recording;
25                transcript produced by transcription service.
```

012051

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-05 Main Dumeilet Filed 1P/a6/25 of 27 Page 230 of 256   PageID 12949

3

    <u>DALLAS, TEXAS - AUGUST 31, 2022 - 9:40 A.M.</u>

2     THE COURT: All right. We have a status conference

3 in the Highland matter. So, before I get appearances, let me

4 just kind of set the stage here. The impetus for this was a

5 motion filed by six different entities, including James

6 Dondero and NexPoint and HCMFA and Dugaboy Family Trust. It

7 was titled a Motion for Final Appealable Order and Supplement

8 to Motion to Recuse Pursuant to 28 U.S.C. Section 455.

9     So that was filed, and then Highland filed a motion to

10 strike certain items that were in the appendix. And there was

11 -- how many -- I've been counting pages here. I think there

12 was a 365-page appendix. And Highland wanted to strike

13 certain documents in that appendix. And then there was an

14 alternative request by Highland to compel depositions of

15 certain persons if those documents weren't stricken.

16     So I felt the need for a status conference. After

17 originally setting this motion for hearing, I decided to

18 convert today to a status conference because, to be perfectly

19 honest, I didn't understand what in the heck the Movants were

20 procedurally seeking.

21     Okay. So, I'm aware that Highland's motion to strike and

22 Highland's motion to compel were later resolved by

23 stipulation, but -- and then I guess an amended motion was

24 filed by Movants. But I'm still confused, and so I just want

25 to kind of talk about process and procedure.

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-05ument 11Filed 11/06/25 of 27Page 231 of 256   PageID 12950

4

1       I will say -- and I see Mr. Pomerantz on the video, and

2   Ms. Hayward and many others -- if we want to talk more

3   generally status, I'm open to that, because I have become

4   aware that the Fifth Circuit affirmed in substantial part the

5   confirmation order, so I don't know if, in light of that, the

6   parties want to talk about big-picture status.

7           MR. POMERANTZ:  Your Honor, I could address that

8   briefly.  I don't think we're prepared today --

9           THE COURT:  Okay.

10          MR. POMERANTZ:  -- for a number of reasons.  One

11   because the other adversaries aren't here.  But suffice it to

12   say we read the order and we intend to bring an appropriate

13   motion before Your Honor to implement the Fifth Circuit

14   opinion, and will do so relatively soon.

15          THE COURT:  Okay.  Thank you.  All right.  So, with

16   that, let me go ahead and get formal appearances on the motion

17   before the Court.  So, for the Movants, Mr. Lang, are you the

18   one appearing for the Movants?

19          MR. LANG:  Yes, Your Honor.

20          THE COURT:  All right.  And for Highland, who do we

21   have appearing on this motion, the status conference?

22          MR. POMERANTZ:  Good morning.  Jeff Pomerantz;

23   Pachulski Stang Ziehl & Jones; on behalf of Highland Capital.

24          THE COURT:  Okay.  And I'll just ask.  I know we have

25   observers, but is there anyone else who wanted to make an

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-05ument 1 P06625 of 27Page 232 of 256   PageID 12951

5

1   appearance on this particular motion?

2       (No response.)

3           THE COURT:  All right.  Well, Mr. Lang, I'm turning

4   it over to you.  Can you explain to me exactly what you're

5   seeking with your motion?  I know it's about recusal, --

6           MR. LANG:  Sure.

7           THE COURT:  -- but we've plowed a lot of ground, and

8   I'm kind of confused about the --

9           MR. LANG:  No, that's good.  That's fair.

10          THE COURT:  -- procedure.

11          MR. LANG:  And I just want to let you know that we

12  conferred with Highland's counsel, and they have no objection

13  -- and I understand the Court, you know, has some issues that

14  you want to discuss -- but they have no objection to our

15  request to remove the reservation language.

16      Highland also, now that we have stipulated to the removal

17  of the three documents that they had an issue with, Highland

18  also doesn't object to Movants' appendix and supplementing the

19  record.  And likewise, Movants do not object to Highland's

20  appendix and supplementation of the record.  Just so you know,

21  that's unopposed on those issues.

22      With respect to what we are seeking, we are seeking for

23  the Court just to issue an order removing the reservation

24  language.  As the Court is aware, Judge Kinkeade raised the

25  issue about that reservation language in the response

012054

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15-05    Main Document    Filed 19/06/25    Page 25 of 27    Page 233 of 256    PageID 12952

6

1    briefing.  Highland seized upon that language and -- or,

2    argued that the recusal order was not final because Your Honor

3    had, you know, could potentially supplement or amend the

4    recusal order in the future.

5        And we are trying to get this in a position to get this

6    reviewed on appeal, even if it's through mandamus, and are

7    trying to eliminate any obstacles that might pop up due to

8    that reservation language.  So, it's really that simple on

9    that issue.

10            THE COURT:  Okay.  Let me --

11            MR. POMERANTZ:  Your Honor, may I --

12            THE COURT:  Well, yes, but let me just ask this one

13    very basic question.  If all you are seeking at the end of the

14    day is for this Court to remove the one sentence at the end of

15    the March order that provided the Court reserves the right to

16    supplement or amend, why didn't you just file a motion saying

17    that?

18            MR. LANG:  Well, we say --

19            THE COURT:  And what I'm talking about is it's a

20    lengthy motion.  As I mentioned, it had 365 pages of

21    supplemental material.  And that's why we're here on a status

22    conference, because I didn't understand exactly what you were

23    seeking to do.  You know, why would you file such a thick

24    motion if all you were seeking was for me to remove?  Why

25    wouldn't you have just said -- you know, I guess cited Rule

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-05   Main Document   Filed 11/06/25   Page 235 of 27   Page 234 of 256   PageID 12953

7

1    54?  I guess that would be the applicable authority.  I mean,

2    so help me to understand.  Have you evolved your approach?

3    Did you originally think you wanted more and then now you're

4    seeking to narrow it to just having the Court delete that

5    sentence, or what?

6         MR. LANG:  No.  That goes to your second issue about

7    the supplementation.  You know, the United States Supreme

8    Court in the *Liteky* case states that, you know, when you've

9    got a recusal, you look at events occurring in the course of

10   the proceedings that evidence deep-seated favoritism or

11   antagonism.  So you look at the entire course of the

12   proceeding.

13       We put in additional examples.  I think all but one of the

14   transcripts was after the recusal motion was filed and after

15   the order.  And it is, you know, this isn't a single-issue

16   case and it's not a situation where, you know, for example,

17   the Court owns stock in a company that was one of the parties.

18   This is, you know, from our perspective, it's an ongoing case

19   that's still in process, and that in the course of the

20   proceedings there have been statements made and things that

21   happened that we believe are going to be reviewed to apply the

22   standard.

23       And so it is -- the supplementation goes to things that

24   happened after the recusal.  And so we are supplementing to

25   add that.  And that's -- even the Fifth Circuit says that you

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15-05   Main Document   Filed 11/06/25   Page 235 of 256   Page 235 of 27   PageID 12954

8

1   look at the entire course of the judicial proceedings when

2   reviewing a recusal motion.

3       So that's -- that was the second point that you raised,

4   which is why, 17 months after the order, are we supplementing?

5   It is because the proceedings continued and we believe it's

6   just additional examples and -- that support the relief that

7   we request, and we're putting it in the record, and we wanted

8   the Court to review it.

9       I think we say in the motion, or in the reply, you know,

10  we don't -- we don't think the Court is going to come to a

11  different conclusion, but regardless, we wanted to put the

12  information in the record and put it before the Court, and the

13  Court can review it and make the ruling that the Court is

14  going to make, and then we'll just go from there.

15          THE COURT:  All right.  One more question for now,

16  and then, Mr. Pomerantz, I'll hear from you.

17      Again, I care about procedure, as I hope any court does.

18  It occurred to me that there were two ways that might

19  procedurally be proper to raise the issues here.  One, as I

20  mentioned, just a simple, I guess, Rule 54 motion:  Please,

21  Judge, take out that last sentence of your order, because some

22  day we want to have a final order that we can appeal.  And I

23  don't think taking out that order, I mean, that one sentence,

24  is going to make it a final order.

25      But then the second -- so that could have been the motion.

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-05   Main Document   Filed 11/06/25   Page 25 of 27   Page 236 of 256   PageID 12955

9

1   Or you could have filed just a new motion to recuse, I guess,

2   and added a new record.

3       But it just felt like you were -- well, I was just

4   confused.  That's why we're here.  And I said I was going to

5   turn to Mr. Pomerantz, but one more question for you.  Do you

6   think if I remove the one sentence from my March 2021 order,

7   all of a sudden you have a final appealable order that you

8   could immediately file a new appeal on?

9           MR. LANG:  No.  What I previously said was that that

10  language, as Highland argued, creates, you know, an argument

11  that the Court has left open the issue on recusal.  And we

12  think that removing that language makes Your Honor's ruling on

13  this final for purposes of allowing us to seek mandamus.  So

14  that's -- that's why we -- just remove the argument that if we

15  seek mandamus, that, no, the Court is not done with this

16  issue, the Court has left open the prospect, you know,

17  prospect of later amending or supplementing the ruling.  And

18  so we're just trying to get that hurdle out of the way.

19          THE COURT:  Okay.  So you acknowledge that if the

20  last sentence is removed, it's still not going to be a final

21  appealable order because of the posture of the bankruptcy

22  case, but you think it somehow gives you the ability to seek a

23  petition for writ of mandamus?

24          MR. LANG:  I think it removes an argument when we

25  seek a petition for writ of mandamus that this is not -- that

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-1   Filed 11/08/25   Page 237 of 256   PageID 12956

10

1   the Court is not done with this issue and therefore it would

2   be premature.

3       So we're just removing -- again, the argument was made

4   after Judge Kinkeade raised the issue about that language in

5   the order, the argument was made by Highland that that

6   language means that the Court is not done with the issue,

7   potentially not done, and the Court reserved the right to

8   visit that issue at a later date, and therefore, you know, the

9   judge -- the Court's not done dealing with the issue.

10      So we are asking the Court, just remove that language,

11  remove that potential obstacle, and allow us to go forward

12  with whatever procedural rights we have.

13          THE COURT:  Okay.

14          MR. LANG:  We're not asking the Court --

15          THE COURT:  I'm just trying --

16          MR. LANG:  -- to declare --

17          THE COURT:  I'm trying not to waste judicial

18  resources.  And as I understood the Judge Kinkeade ruling,

19  which I went back and read -- I hadn't read it before you

20  filed this new motion -- while he makes a passing reference to

21  the last sentence of my March 2021 order, he gives about five

22  reasons why an order denying a motion to recuse is not a final

23  appealable order until the end of the proceedings it's filed

24  in.

25      And so I read the opinion as there was established case

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15-11    Filed 10/08/25    Page 238 of 256    PageID 12957
Main Document    Page 11 of 27

11

1    law that, even if that last sentence hadn't been in there, you

2    didn't have a final appealable order.  Do you read it

3    differently?

4            MR. LANG:  No, I don't read his opinion differently.

5    And that's why I said that, you know, as far as the petition

6    for writ of mandamus, we don't have to have a final -- the

7    proceeding doesn't have to be final.  It's a different avenue

8    for appeal.

9        And so Judge Kinkeade did not consider, even though we

10   asked him to go ahead and just consider this a petition for

11   writ of mandamus, Judge Kinkeade denied that request, so he

12   did not rule on that issue.  And that's why, again, removing

13   the language eliminates the argument under the mandamus --

14   when the mandamus is filed, it just eliminates the argument

15   that the Court is not done dealing with the issue.

16           THE COURT:  He denied -- okay.  Well, there was

17   something in that ruling that made you think, hey, if you go

18   back and get this last sentence removed, then maybe I would

19   consider a petition for writ of mandamus in this context?

20           MR. LANG:  No.  At the end of the order, he said he

21   denies Appellants' request to construe their appeal as a

22   petition for writ of mandamus.  So the way it was procedurally

23   postured, he said it could not be appealed.

24           THE COURT:  Did --

25           MR. LANG:  But the mandamus position remains open.

012060

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15   Filed 12/06/22   Page 239 of 256   PageID 12958

12

1   And when he, being Judge Kinkeade, after the briefs were

2   filed, he obviously was looking at it, he questioned his

3   jurisdiction, he requested briefing on the jurisdiction,

4   because in that order that he sent out requesting the

5   briefing, he pointed out -- you know, one of the issues he

6   pointed out was the Court's language, the reservation language

7   in the order.  And, again, Highland argued that because of

8   that language, among other things, that language made the

9   order not final.

10      So all we're saying, all we're asking is just remove that

11  language so when we file the writ of mandamus that argument

12  isn't there.  The Court is done dealing with the issue.

13  Nobody can disagree with it.

14      You know, nobody -- Highland is not agreeing that we, you

15  know, can seek mandamus, so I'm not saying that.  And I'm not

16  asking the Court to agree to that.  Mandamus is a -- we

17  believe is an option.  It's still on the table.  And we're

18  just dealing with one issue that came up before and just

19  trying to head it off before -- so that we don't have to come

20  back down and ask the Court to remove it later.

21          THE COURT:  All right.  Mr. Pomerantz, what do you

22  want to say about this?

23          MR. POMERANTZ:  So, Your Honor, this is extremely

24  frustrating.  I know Your Honor had said you didn't want to

25  waste Court time.  There has already been a tremendous amount

012061

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15    Main Document    Filed 11/06/25    Page 123 of 27    Page 240 of 256    PageID 12959

13

1   of Court time that's wasted.

2        When we got this motion, it was a head-scratcher.  We read

3   it as seeking way more things than what Mr. Lang is saying

4   now.  If he had called up and asked us if we had any issue,

5   subject to Your Honor's agreement, to remove that last

6   sentence, we would have said we don't, because the briefing

7   before the District Court and the District Court's decision

8   have really nothing to do with that last sentence.  Maybe the

9   -- Judge Kinkeade mentioned it in his December order, but it's

10  clear, as Your Honor mentions, from the reading of the

11  District Court opinion that it is irrelevant.

12       And the argument that the Court, the District Court which

13  denied interlocutory appeal is somehow, once that sentence is

14  eliminated, going to entertain and grant a writ of mandamus is

15  farcical.  It's just not going to happen.  And unfortunately,

16  what's going to happen is we're going to have to spend more

17  time, more money, and more effort.

18       And Your Honor, I know the motion to strike has been

19  resolved, but I'd just like to mention it, because this is --

20  continues to be frustrating from the Highland side.  They

21  filed an appendix that sought to slip in three letters written

22  by attorneys for various Dondero entities that were

23  essentially a smear campaign, a smear campaign on Mr. Seery, a

24  smear campaign on the Independent Directors, incidentally,

25  which may be actionable in its own right.

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15-15    Filed 11/06/24    Page 241 of 256    PageID 12960
Main Document    Page 14 of 27

14

1     That had nothing to do with bias.  They wanted to slip

2     that in, somehow it would get into the appellate record, if

3     and when they ever got to an appeals court.

4     So what do we do, Your Honor?  We called them up, called

5     Mr. Lang up and said, will you withdraw the letters?  There's

6     no basis for those to be included in the appendix.  He said

7     no.  Said, okay, will you make the deponents -- the people who

8     wrote the letters available for deposition?  Wouldn't agree to

9     that, either.

10     And then we go to the time and the money, we file our

11     motion to strike, and lo and behold, which has become a

12     considerable pattern in this case, Your Honor, what does Mr.

13     Lang do?  He calls up and says, I will withdraw the letters.

14     Okay?  That's aside.  We got what we wanted.  There's nothing

15     we can do.  But it is kind of frustrating, how that -- how

16     that played out.

17     Your Honor, this motion, to the extent it asks for that

18     sentence to be removed, that's fine.  Again, we think it's a

19     legal nullity.  What Mr. Lang asked for in his motion is for

20     Your Honor to issue a final order.  Your Honor can't determine

21     whether your order is final.  We've made that point in our

22     opposition.  It seems maybe now Mr. Lang is walking back on

23     that.  There's nothing you can do.  Your Honor can issue an

24     order; it'll be up to the District Court.

25     With respect to the supplement, Your Honor, as we put in

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15    Filed 11/06/25    Page 242 of 256    PageID 12961

15

1    the record, we think all the quote/unquote evidence that was

2    submitted just is a severe mischaracterization of the record.

3    And it's important, Your Honor, that not only does the -- we

4    agree that the evidence can come in, but we think Your Honor

5    has to make a determination whether those additional

6    allegations of bias and evidence do in fact demonstrate bias.

7    What we think Mr. Lang wanted to do, or the Appellants wanted

8    to do, or the Movants, they wanted to have that information

9    come in and argue at first blush to the Appellate Court that

10   that is bias, without having had Your Honor make the initial

11   determination, as you would have if there was a motion to

12   reconsider, as you would have if there was a new motion.

13       And so we think it's very important that Your Honor

14   consider those additional allegations.  We think categorically

15   they do not demonstrate any bias, and our Exhibit A goes

16   through each item and points out the severe

17   mischaracterizations.

18       So, Your Honor, we've wasted a lot of time.  We've wasted

19   a lot of money.  But if all they want is to remove that

20   sentence, supplement the record, have Your Honor deny the

21   motion yet again after considering the additional evidence, we

22   do not have an opposition to that.  But it was -- kind of took

23   a long time and a lot of money to get to this place.

24       Thank you, Your Honor.

25           THE COURT:  All right.  And Mr. Lang, on the subject

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15-1    Filed 11/08/25    Page 243 of 256    PageID 12962
Main Document    Page 16 of 27

16

1    of it took a lot of time and a lot of money, estate resources,

2    to get to this place, I just want to note a couple of things.

3    And I guess I'm happy to hear any response to these things

4    that I feel very frustrated about.

5        Again, my focus at this point is judicial resources as

6    well as estate resources.  And no judge, no judge looks

7    lightly on a motion to recuse.  Okay?  Any judge, I would

8    think, is going to have some self-introspection.  Like, oh my

9    goodness, what would motivate someone to think this needs to

10   be urged?

11       But, so on the topic of -- again, I want you to respond to

12   this, Mr. Lang -- my concern about judicial resources and

13   estate resources.

14       The timeline here -- and I always talk about timelines, I

15   know -- but this Court signed the confirmation order in this

16   case February 22, 2021, and your motion to recuse was filed

17   about a month later, March 18, 2021.  Now, here's the first

18   thing I'll mention about judicial resources and estate

19   resources.  Your motion and brief to recuse included an

20   appendix that was 200 -- no, excuse me, 2,722 pages long.

21   Okay?

22       So any judge, again, has to take it seriously when a

23   motion to recuse is filed.  And the standard is I have to

24   stand back and look at would a reasonable person have concerns

25   here.  So I can't just say, I know I'm not biased, I don't

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15   Filed 11/06/25   Page 244 of 256   PageID 12963
Main Document   Page 17 of 27

17

think I'm biased; I have to look at what a reasonable person

might think.

So you presented to me a 2,722-page appendix for me to do

my job and look at what would a reasonable person think. So,

then would it raise a doubt in the mind of a reasonable

observer as to the judge's impartiality?

So I think here's another point that goes to judicial

resources. I had my law clerk, just out of curiosity, count

up for me how many orders that I had signed as of the day that

the motion to recuse was filed, March 18, 2021, and I had

presided over the bankruptcy case for 15 months at that point,

but it had been in Delaware for two months before Dallas. On

the day you had filed your motion to recuse, March 18, 2021, I

had signed 263 orders in the Highland bankruptcy case and the

adversary proceedings. It's a lot more now, of course. But

so I suppose, if I was really to do my job thoroughly, I might

look not merely at your 2,722 pages of appendix attached to

your motion to recuse, but all 263 orders I had entered to

see, hmm, would a reasonable observer question my

impartiality?

So, anyway, this is all about judicial resources and

estate resources. So, going down the timeline, March 23,

2021, five days after you filed the motion to recuse -- after,

I will tell you, I won't say I dropped everything to pore

through this, but spent a lot of time -- I issued an order

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-15   Filed 11/06/25   Page 245 of 256   PageID 12964
Main Document   Page 28 of 27

18

1   denying the motion to recuse.

2        Now, here's inside baseball, okay, if there ever was:  The

3   last sentence, reserving the right to supplement or amend,

4   here's why I did it.  I didn't know it would cause a brouhaha.

5   Maybe I didn't give it enough thought.  But in reading the

6   case law during those many days and hours I spent focusing on

7   your motion to recuse, I realized that most of the case law

8   says you don't have to have a hearing, okay, the statute

9   doesn't require a hearing, the case law says you don't have to

10  have a hearing.  And I cited some of that my order.  But I

11  thought, these Movants, after seeing this order, they may come

12  back and say, you didn't give us our day in court.  We wanted

13  a hearing.  We weren't just going to rely on our 2,722-page

14  appendix.  We wanted to put on witnesses.

15       So I didn't have to stick that sentence in there, but I

16  was just sort of anticipating what the Movants might do.

17       Okay.  So, live and learn.  I guess I won't, if I'm ever

18  confronted with the situation again, do that.  But that's what

19  that was about.

20       So, my law clerk went and looked at the appellate record

21  in the past few days, because, I mean, again, head-scratcher.

22  We were trying to get a feel for how big a deal was this

23  sentence, okay, to the District Court, if at all.  But anyway,

24  we happened to note that in July, July 20, 2021, the District

25  Court record on appeal was supplemented with 1,001 more pages

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-5   Filed 11/08/25   Page 246 of 256   PageID 12965

19

1    of record.  So I guess, goodness gracious, poor Judge Kinkeade

2    and his staff, they had 3,723 pages of appendix.  I don't even

3    know if that's all.  You know, I don't know.

4         But so Judge Kinkeade dismissed the appeal because he said

5    my order was interlocutory on February 9, 2022, and then we

6    didn't see a motion for rehearing or an appeal to the Fifth

7    Circuit or a petition for writ of mandamus to the Fifth

8    Circuit.  Five and half months later, this new motion for

9    final appealable order and supplement to the motion to recuse

10   is filed, containing 365 more pages.  And then I see that, Mr.

11   Lang, you filed an amended motion to take out certain of the

12   items, with the agreement, the stipulation that was reached

13   with Debtor's counsel, so it's now a 154-page appendix.

14        But I should add that, in Highland's objection to your

15   latest motion, they attached 86 exhibits, and I couldn't count

16   all those exhibits, but it was more than 5,500 pages.  And it

17   was, as I understood it, sort of almost like a rule of

18   optional completeness.  If you're going to submit these 154

19   pages to supplement the record, we think you need to attach

20   more than snippets of a transcript here and there.  You need

21   to have the whole context.

22        So, anyway, I -- you know, look at what you're doing.  I'm

23   just -- and I guess I could totally appreciate and understand

24   if there had been a brief order from Judge Kinkeade saying,

25   because of that one sentence, this is an interlocutory order,

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15    Filed 11/08/25    Page 247 of 256    PageID 12966

20

1  no leave to appeal an interlocutory order is warranted, end of

2  order.  And, frankly, when you filed your motion, this latest

3  motion, having not seen Judge Kinkeade's order, I thought

4  that's what it was going to say.

5      So, from the tone of your motion, it sounded like that's

6  all his order was about, just:  I have a problem with this

7  last sentence, it makes the whole order interlocutory.  And

8  then I go back and read it and he gives four or five different

9  reasons why an order denying a motion to recuse is

10 interlocutory until the end of the case.  I know that's a

11 bizarre concept in the world of bankruptcy, but he considered

12 this is even the rule in the world of bankruptcy.

13     So, anyway, help me to understand why this isn't

14 unnecessary carpet-bombing the Court, me and whoever might

15 hear your petition for writ of mandamus, and the Debtor

16 estate, carpet-bombing us with paper and causing us to expend

17 resources.  And, again, we've got this backdrop of the

18 original motion to recuse being filed 15 months after I

19 started presiding over the case and after I had signed 263

20 orders.

21     Please, Mr. Lang, please help me to understand if this is

22 warranted.  Why, I mean, help me to understand why this is not

23 wasting resources in your view and why this isn't just some

24 strategy.  Again, I'm trying to not play psychologist, I'm

25 really trying to understand why you think this is fine.

012069

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15-5    Filed 12/08/25    Page 248 of 256    PageID 12967
Main Document    Page 21 of 27

21

1          MR. LANG:  Well, Your Honor, we've moved to recuse,

2     and we've stated the grounds, and we have put in documents

3     from the record that we think support those grounds.  We have

4     not unnecessarily carpet-bombed.  We've cited to the various

5     transcripts.  The length of the record is directly related to

6     the length of the transcripts mostly, the various transcripts

7     throughout the proceeding.  And so, you know, with respect to

8     the 2,722 pages of appendix, most of those are just complete

9     copies of transcripts.

10          But again, we're just creating our record to support our

11    position on our motion.  And the current motion is eight

12    pages.  It's got reference to the additional grounds that

13    we've set forth that we think support our motion.  And we

14    attached the various documents and transcripts that, again,

15    support -- we think support our position.  And we're making

16    our record for appeal.

17          And as far as Mr. Pomerantz and the withdrawing of the

18    letters, you know, I was getting ready for trial when Mr.

19    Morris called.  And he said, they're hearsay.  We had a brief

20    conversation.  I disagreed.  They filed their motion.  When I

21    got the time to look at it, I read through it, and Mr. Morris

22    and I had a conversation, and we decided, you know what, we

23    don't need them, we'll pull them out.  Let's just do away with

24    this issue.  It's not worth the time to deal with it.

25          I'm sorry they had to file their motion.  But, you know, I

1    couldn't drop everything at that moment to look through.  And

2    again, the reason that he gave was hearsay.  So, you know,

3    it's not gamesmanship.  It was just, look, you know, when we

4    got down to looking at it, when I looked at it, I decided it

5    wasn't worth the effort and the hassle, and we agreed to pull

6    them down and withdraw them.  And that's why I filed the

7    amended motion.

8         As far as the current appendix, Your Honor, we're just

9    making a record.  You know, we're trying to get this thing

10   reviewed.  We're making sure the Court is aware of all the

11   grounds and having considered all the grounds and all the

12   actions that we think support our motion.  We're giving the

13   Court the opportunity to look at it, and then just enter the

14   order without that language and we'll deal with the mandamus.

15        Again, the issue is ultimately going to be reviewed.

16   We're trying to get it reviewed.  And you're right, you know,

17   we don't have to, you know, you didn't have to have a hearing

18   on the first deal, you don't have to have a hearing on this

19   one.

20             THE COURT:  Okay.

21             MR. POMERANTZ:  Your Honor, this is -- this is just

22   one more match in furtherance of Mr. Dondero's stated desire,

23   as you've heard many times, to burn the place down.  We would

24   have hoped, and I guess it would have been naïve to hope, as I

25   know Your Honor has hoped throughout the case, that at some

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15-1    Filed 11/06/23    Page 250 of 256    PageID 12969
Main Document    Page 23 of 27

23

```
 1    point in time the Dondero side would stop blaming Your Honor,

 2    blaming Mr. Seery, blaming the estate, and actually look at

 3    what he can do to put an end to this.  Pay his notes, stop

 4    raising frivolous claims, so everyone can go on with his life.

 5    That's what the estate wanted to do and wants to do.  That's

 6    what Mr. Seery wants to do.  Unfortunately, Mr. Dondero

 7    doesn't seem capable of it, and this is just one more match on

 8    the flames.  And Mr. Lang, doing his job, following his

 9    client's wishes, is just one more player in that.  But it is

10    extremely frustrating.

11            THE COURT:  Okay.  All right.  Here's what I'm going

12    to do.  First, I'm simply going to deny the pending amended

13    motion for final appealable order and supplement to motion to

14    recuse, as it is procedurally improper as framed.  Okay?  It

15    was kind of like a Rule 54 motion.  It was kind of like a new

16    motion to recuse.  It was kind of like a Rule 59 motion for,

17    you know, new -- to put in new evidence, have a new trial, but

18    way untimely for that.

19        So I'm just denying the motion that's before me.  Okay?

20    And by doing that, I mean, I guess, I guess the stipulation

21    and order that's before me on the motion to strike and the

22    motion to compel, I guess I'll -- it's in my queue, I'll sign

23    it, unless someone tells me there is a reason it doesn't make

24    sense to sign it.

25        But I'm denying the motion before me.  But just so it's
```

012072

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 1-5    Main Document    Filed    Page 24    Page 251 of 256    PageID 12970    of 27

24

1    clear, Mr. Lang, it's without prejudice to you either filing a

2    simple Rule 54 motion, without attachments, that simply asks

3    me to strike the last sentence of my original order denying

4    your motion to recuse from March 2021.

5        If you give me a simple Rule 54-based motion simply asking

6    me to strike that sentence, I'll sign it.  Without a waiting

7    period.  Without a hearing.  And I assume Mr. Pomerantz

8    doesn't have a problem with that.

9            MR. POMERANTZ:  That is correct, Your Honor.  If all

10   that motion asks for, we would not oppose that.

11           THE COURT:  Okay.  It's also, my ruling today denying

12   your motion, is without prejudice to you filing a new motion

13   to recuse, if that's what you want to do, to start this over

14   and supplement the record.

15       But, you know, proceed as you will.  This Court is going

16   to do its duty.  And, well, if you want to do that, you do

17   that, but I'll have a more elaborate order if I have to rule

18   on a new motion to recuse.  Among other things, I'm going to

19   point out to the Court above, whoever hears this, that because

20   I think timeliness was always an issue I raised in your

21   original order, you know, filing a motion to recuse after

22   confirmation, 15 months after this judge was assigned to the

23   case, and after the judge had signed 263 orders.

24       You know, we have case authority, as I'm sure you

25   researched and know, that talk about timeliness.  Even though

Case 19-34054-sgj11    Doc 3480    Filed 09/01/22    Entered 09/01/22 10:59:54    Desc
Case 3:25-cv-02072-S    Document 15 Main Document Filed 11/06/25    Page 25 of 27Page 252 of 256    PageID 12971

25

1    it's not baked into the statute, 28 U.S.C. Section 455, it is

2    a factor.  And so this is not *A v. B* litigation.  This is a

3    case affecting many, many people.  And at some point, don't we

4    have to wonder why a motion would be filed after 263 orders?

5    If your clients legitimately think there was bias, I don't

6    know why they didn't raise the issue way, way earlier in the

7    case.

8         And that's why these appendices are so huge, right?  It

9    dovetails with the timeliness.  Okay?  Fifteen months.

10   There's a huge, huge, huge, huge record.

11        So, anyway, do you have any questions, Mr. Lang?

12        Again, I  will say it for at least the third time this

13   morning:  I'm worried about judicial resources and estate

14   resources.  Okay?  And, you know, I have to worry about I'll

15   loosely call my bosses, okay, you know, the courts that grade

16   my papers.  The District Court who hears appeals and hears

17   petitions for writ of mandamus.  The Fifth Circuit.  They're

18   going to get frustrated with me if -- well, you know, if, for

19   example, I had ruled on this motion before me today, a clearly

20   procedurally defective motion.  And if I just willy-nilly let

21   people put things in the record without a procedurally proper

22   basis, it just makes more work for the Court of Appeals,

23   right?

24        So it's not just about the lawyers here.  It's not just

25   about me and my staff.  It's about the people who grade my

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15-15   Filed 11/08/25   Page 253 of 256   PageID 12972

26

1    papers.  If I granted your motion as it's pending here before

2    me today, I have every reason to think, whether it's Judge

3    Kinkeade or the Fifth Circuit, they would think, what is this

4    judge doing?  Okay?  So it's just procedurally defective, what

5    you filed.  Okay?  But, again, you've got the ruling.  Do you

6    have any questions?

7              MR. LANG:  I don't.

8              THE COURT:  We're adjourned.

9              THE CLERK:  All rise.

10        (Proceedings concluded at 10:25 a.m.)

11                        --oOo--

12

13

14

15

16

17

18

19

20                   CERTIFICATE

21        I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23     **/s/ Kathy Rehling**                              **08/31/2022**

24   _____        _____

25   Kathy Rehling, CETD-444                      Date
     Certified Electronic Court Transcriber

012075

Case 19-34054-sgj11   Doc 3480   Filed 09/01/22   Entered 09/01/22 10:59:54   Desc
Case 3:25-cv-02072-S   Document 15   Filed 11/06/25   Page 255 of 27   Page 254 of 256   PageID 12973

27

INDEX

PROCEEDINGS                                                    3

WITNESSES

-none-

EXHIBITS

-none-

RULINGS                                                       23

END OF PROCEEDINGS                                            26

INDEX                                                         27

012076

CRAWFORD, WISHNEW & LANG PLLC
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Movants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-34054-sgj-11 |
| | ) | |
| Highland Capital Management, L.P., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455

James Dondero, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors,

L.P., The Dugaboy Investment Trust, The Get Good Trust, and NexPoint Real Estate Partners,

LLC, f/k/a HCRE Partners, LLC, a Delaware limited liability company (collectively, "Movants")

file this Renewed Motion to Recuse (the "Motion") Pursuant to 28 U.S.C. § 455[1] and would, in

support thereof, respectfully show the Court as follows:

1.      This Motion is necessary because the Court denied a prior motion by Movants to

supplement the record in support of their original motion to recuse, making it impossible for

Movants to have all evidence of the Court's bias considered on appeal.

2.      As previously asserted, the Court has essentially acknowledged that it has formed negative

opinions of Mr. Dondero in a prior bankruptcy; those opinions have carried into *this* bankruptcy;

and, despite best efforts, the Court has been unable to extricate those opinions from its mind.

---

[1] 28 U.S.C. § 455 has been made applicable to bankruptcy judges under FED. R. BANKR. P. 5004.

012077

Moreover, the record in this bankruptcy reflects that the Court's negative opinions of Mr. Dondero have resulted in, if not actual bias against Movants, the undeniable perception of bias against them that impair the ability of Movants to preserve their legal rights. And while the Court previously suggested that Movants sought recusal too late, that suggestion is misguided, because the Court continues to preside over several proceedings involving Movants, and because the Court's bias continues to pervade all proceedings before it. For the reasons set forth above and in the Movants' Memorandum of Law in Support of Renewed Motion to Recuse, which is incorporated by reference as if fully set forth herein, Movants respectfully request that their Motion be granted.  In the alternative, Movants hereby request that the Court make clear that any order denying recusal is final, so that Movants may appeal the Court's order to the Northern District of Texas.

Dated: September 27, 2022

Respectfully submitted,

CRAWFORD, WISHNEW & LANG PLLC

By: */s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Movants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 27, 2022, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

*/s/ Michael J. Lang*
Michael J. Lang

---

**RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455**  **PAGE 2**