**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re: Highland Capital Management, L.P.**

|   |   |
|---|---|
| § | |
| § | Case No**. 19-34054-sgj11** |

**The Dugaboy Investment Trust et al- Appellant**

|   |   |
|---|---|
| § | |
| § | |

vs.

**Highland Capital Management, L.P.**
**Et al-** Appellee

|   |   |
|---|---|
| § | **3:25-cv-02072-S** |
| § | |

   **[4333]  Memorandum of Opinion and Order Regarding Stay Requests (Addressing DE #4326 and 4308) entered on 7/21/25**

# Volume 28

# APPELLANT RECORD

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj** |
| | § | |
| **Reorganized Debtor.** | § | |
| | § | |

*INDEX*

## APPELLANT THE DUGABOY INVESTMENT TRUST'S STATEMENT OF ISSUES TO BE PRESENTED AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL FROM THE BANKRUPTCY COURT'S ORDER REGARDING STAY REQUESTS [ADDRESSING DE ## 4326 & 4308]

Pursuant to Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant"), having filed a Notice of Appeal [Docket No. 4353] on August 4, 2025 in the above-captioned case from the Bankruptcy Court's July 21, 2025 *Memorandum Order and Opinion Regarding Stay Requests [Addressing DE ## 4326 & 4308]*[Docket No. 4333], hereby submits this *Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal*, and respectfully requests that the Clerk prepare and forward the items listed herein to the District Court for inclusion in the record in connection with this appeal.[1]

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

1. **Did the Bankruptcy Court err in faulting Dugaboy's Stay Request because Dugaboy did not make a "standard" request for a stay pending appeal pursuant to Federal Bankruptcy Rule 8007?**

2. **Did the Bankruptcy Court err in determining that the Bankruptcy Rule 9019 settlement proceeding was not "a proceeding involving a charitable trust"?**

3. **Did the Bankruptcy Court err in concluding there was insufficient evidence connecting Mark Patrick's involvement in this Court's Rule 9019 settlement proceedings to the allegations of wrongdoing against Patrick in the Cayman Islands proceeding?**

4. **Did the Bankruptcy Court err in failing to recognize that the new evidence of Mark Patrick's misconduct exposed in the Cayman Islands proceeding fatally undermines the 9019 settlement by establishing that Patrick lacked authority to enter into the settlement?**

5. **Did the Bankruptcy Court err in concluding that a stay was unnecessary because Dugaboy could still pursue remedies against Mark Patrick in the Cayman Islands proceeding?**

6. **Did the Bankruptcy Court err in failing to recuse itself under 28 U.S.C. § 455 due to the appearance of partiality created by the presiding judge's authorship of novels that bear striking factual and thematic similarities to the Highland Capital Management bankruptcy proceedings and portray hedge fund principals in an overtly negative**

---

[1] Because of its voluminous nature, Docket #4255 will be delivered to the Clerk on a flash drive which will arrive tomorrow.

light, thereby depriving Dugaboy of an impartial judge with respect to the stay motion?

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

*Vol. 1*

*000001*

1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4353] filed by Appellant;

*000023*

2. Bankruptcy Court's *Memorandum Opinion and Order Regarding Stay Requests [Addressing DE ## 4236 & 4308* [Docket No. 4333];

*000039*

3. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

4. Any opinion, findings of fact and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings: Transcript of hearing held June 25, 2025 before Judge Stacey C.G. Jernigan [Docket No. 4296] re: Motion for Entry of an Order Approving Settlement with HMIT Entities (4216) [Docket No. 4297]; and

5. Each of the additional documents and items designated below:

*Vol. 2*

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| *000569* 2/22/2021 | 1943 | Order confirming the fifth amended chapter 11 plan, as modified and granting related relief (RE: related document(s)1472 Chapter 11 plan filed by Debtor Highland Capital Management, L.P., 1808 Chapter 11 plan filed by Debtor Highland Capital Management, L.P.). Entered on 2/22/2021 (Okafor, M.) |
| *000730* 3/18/2021 | 2060 | Motion to recuse Judge Jernigan Filed by Interested Party James Dondero (Lang, Michael) |
| *000734* 3/18/2021 | 2061 | Brief in support filed by Interested Party James Dondero (RE: related document(s)2060 Motion to recuse Judge Jernigan). (Lang, Michael) |
| *Vol. 3* *000771 Thru Vol. 5* 3/18/2021 | 2062 | Support/supplemental document Appendix to Motion to Recuse filed by Interested Party James Dondero (RE: related document(s)2060 Motion to recuse Judge Jernigan). (Lang, Michael) |
| *Vol. 5* *003493* 3/23/2021 | 2083 | Order denying motion to recuse (related document #2060) Entered on 3/23/2021. (Okafor, M.) |

2

| | 4/6/2021 | 2169 | Amended notice of appeal filed by Interested Party James Dondero (RE: related document(s)2149 Notice of appeal). (Lang, Michael) |
|---|---|---|---|
| | 4/15/2022 | 2205 | Statement of issues on appeal, filed by Interested Party James Dondero (RE: related document(s)2083 Order on motion to recuse Judge). (Lang, Michael) |
| | 4/15/2021 | 2206 | Appellant designation of contents for inclusion in record on appeal filed by Interested Party James Dondero (RE: related document(s)2169 Amended notice of appeal). Appellee designation due by 04/29/2021. (Lang, Michael) |
| | 2/9/2022 | 3264 | DISTRICT COURT MEMORANDUM OPINION AND ORDER - The Recusal Order is not a final, appealable order, is not subject to the collateral order doctrine, and is not an appealable interlocutory order under § 1292 (a) and the Court is without jurisdiction over this appeal of the Bankruptcy Court's Recusal Order. The Court further denies Appellants leave to appeal the Recusal Order under § 1292 (b), denies Appellants' request to withdraw the reference of their motion to recuse, and denies Appellants' request to construe their appeal as a petition for writ of mandamus. Accordingly, the Court dismisses this appeal for lack of jurisdiction. (Ordered by Judge Ed Kinkeade on 2/9/2022). Civil Action number:3:21-cv-00879-K, DISMISSED for lack of jurisdiction (RE: related document(s)2083 Order on motion to recuse Judge). Entered on 2/9/2022 (Whitaker, Sheniqua) Modified on 2/25/2022 (Whitaker, Sheniqua). (Entered: 02/25/2022) |
| | 7/20/2022 | 3406 | Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support Filed by Interested Party James Dondero (Attachments: #1 Appendix Appendix (Lang, Michael) Modified text on 7/21/2022 (Ecker, C.). |
| | 8/1/2022 | 3422 | Notice of hearing on Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support Filed by Interested Party James Dondero (Attachments: # 1 Appendix Appendix) (Lang, Michael) Modified text on 7/21/2022(Ecker, C.).). Hearing to be held on 8/31/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 3406, (Lang, Michael) |

Vol. 5
00 3504
00 3519
00 3521
00 3530
Vol 6
00 3544
00 3909

3

| | | | |
|---|---|---|---|
| *Vol 6*<br><br>*003912* | 8/15/2022 | 3444 | Response opposed to (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) filed by Debtor Highland Capital Management, L.P.. (Attachments: #1 Exhibit  A (Annable, Zachery) |
| *Vol. 7*<br><br>*003936*<br>*Thru END of Vol 14* | 8/15/2022 | 3445 | Exhibit List (Appendix in Support of Highland Capital Management, L.P.'s Objection to Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 USC 455 and Brief in Support) filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3444 Response). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Index 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 (Annable, Zachery) |
| *Vol 15*<br><br>*011840* | 8/15/2022 | 3446 | Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' |

| | | | |
|---|---|---|---|
| *Vol. 15* | | | Depositions) Filed by Debtor Highland Capital Management, L.P. (Annable, Zachery) |
| *011855* | 8/15/2022 | 3447 | Declaration re: (Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' Depositions) filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3446 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capi). (Annable, Zachery) |
| *011864* | 8/17/2022 | 3456 | Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3446 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' Depositions) Filed by Debtor Highland Capital Management, L.P., 3449 Motion to compel Lawyers' Depositions. Filed by Debtor Highland Capital Management, L.P. (Ecker, C.)). Hearing to be held on 8/31/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 3446 and for 3449, (Annable, Zachery) |
| *011869* | 8/22/2022 | 3463 | Reply to (related document(s): 3444 Response filed by Debtor Highland Capital Management, L.P.) filed by Interested Party James Dondero. (Lang, Michael) |
| *011874* | 8/24/2022 | 3466 | Amended Notice of hearing filed by Interested Party James Dondero (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support Filed by Interested Party James Dondero (Attachments: # 1 Appendix Appendix) (Lang, Michael) Modified text on 7/21/2022(Ecker, C.)., 3446 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capital Management, L.P.'s Motion to (A) Strike Letters Attached to Appendix in Support of the Dondero Parties' Supplemental Recusal Motion [Docket No. 3406], or, (B) Alternatively, to Compel the Lawyers' |

Case 3:25-cv-02052-S Document 15-28 Filed 10/06/25 Page 8 of 271 PageID 21121
Case 19-34054-sgj11 Document 4145-28 Filed 08/28/25 Entered 08/28/25 20:38:17 Page 8 of
Main Document     Page 7 of 16

| | | | |
|---|---|---|---|
| Vol 15 | | | Depositions) Filed by Debtor Highland Capital Management, L.P., 3449 Motion to compel Lawyers' Depositions. Filed by Debtor Highland Capital Management, L.P. (Ecker, C.), 3462 Order converting the August 31, 2022 at 9:30 AM Hearing on (A) The motion for final appealable order and supplement to motion to recuse and (B) related motions to strike and compel to a preliminary status/scheduling conference (RE: related document(s)3406 Motion for leave filed by Interested Party James Dondero, 3446 Motion to strike document filed by Debtor Highland Capital Management, L.P., 3449 Motion to compel filed by Debtor Highland Capital Management, L.P.). Entered on 8/19/2022 (Ecker, C.)). Status Conference to be held on 8/31/2022 at 09:30 AM at https://us-courts.webex.com/meet/jerniga. (Lang, Michael) |
| 011877 | 8/26/2022 | 3470 | Amended motion for final appealable order and proposed supplement to the record filed by Interested Party James Dondero (RE: related document(s)3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support). (Attachments: #1 Appendix (Lang, Michael) MODIFIED text to match PDF on 9/1/2022 (Ecker, C.). |
| 012039 | 8/26/2022 | 3471 | Stipulation by James Dondero and Highland Capital Management, L.P.. filed by Interested Party James Dondero (RE: related document(s)3406 Motion to strike (related document(s): 3406 Motion for leave Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support filed by Interested Party James Dondero) (Highland Capi, 3449 Motion to compel Lawyers' Depositions.). (Lang, Michael) |
| N/A NO PDF AVAILABLE | 8/31/2022 | 3478 | 3478 Hearing held on 8/31/2022. (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support, filed by Interested Party James Dondero.) (Appearances: M. Lang for Movants; J. Pomeranz for Reorganized Debtor. Nonevidentiary status conference. Based on discussions with counsel at status conference as to what actual relief is being sought, the motion (even as currently amended) will be denied as procedurally defective. This is without prejudice to movants filing a new motion pursuant to Rule 54 seeking the simple relief of having the last sentence of this courts 3/23/21 order deleted, or a new motion to recuse, if Movants have any desire to supplement the record. Court to issue order.) (Edmond, Michael) |
| 012047 | 9/1/2022 | 3479 | Order denying amended motion of James Dondero, Highland Capital Management Fund Advisors, L.P., Nexpoint Advisors, |

*Vol. 15*

| | | | |
|---|---|---|---|
| | | | L.P. The Dugaboy Investment Trust Get Good Trust and, Nexpoint Real Estate Partners, LLC, F/K/A HCRE Partners, A Delaware Limited Liability Company for final appealable order and supplement to motion to recuse pursuant to 28 U.S.C. Section 455 (RE: related document(s)3470 Brief filed by Interested Party James Dondero). Entered on 9/1/2022 (Okafor, Marcey) |
| | 9/1/2022 | 3480 | Transcript regarding Hearing Held 08/31/2022 (27 pages) RE: Status Conference Re: Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 (#3406). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/30/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 3478 Hearing held on 8/31/2022. (RE: related document(s)3406 Motion for Final Appealable Order and Supplement to Motion to Recuse Pursuant to 28 U.S.C. § 455 and Brief in Support, filed by Interested Party James Dondero.) (Appearances: M. Lang for Movants; J. Pomeranz for Reorganized Debtor. Nonevidentiary status conference. Based on discussions with counsel at status conference as to what actual relief is being sought, the motion (even as currently amended) will be denied as procedurally defective. This is without prejudice to movants filing a new motion pursuant to Rule 54 seeking the simple relief of having the last sentence of this courts 3/23/21 order deleted, or a new motion to recuse, if Movants have any desire to supplement the record. Court to issue order.)). Transcript to be made available to the public on 11/30/2022. (Rehling, Kathy) |
| | 9/27/2022 | 3541 | Motion to recuse Judge Stacey G. C. Jernigan Filed by Interested Party James Dondero (Lang, Michael) |
| | 9/72/2022 | 3542 | Brief in support filed by Interested Party James Dondero (RE: related document(s)3541 Motion to recuse Judge Stacey G. C. Jernigan). (Attachments: #1 Appendix (Lang, Michael) |
| | 10/14/2022 | 3567 | Agreed Scheduling Order on renewed motion to recuse (related document #3541) Entered on 10/14/2022. (Okafor, Marcey) |

*012050*

*012077*

*Vol. 16*

*012079*

*012357*

7

| | | | |
|---|---|---|---|
| **Vol. 16**<br>**012361** | 10/17/2022 | 3570 | Motion to recuse Judge Stacey G. C. Jernigan - AMENDED Filed by Interested Party James Dondero (Lang, Michael) |
| **Vol. 17**<br>**012363** | 10/17/2022 | 3571 | Brief in support filed by Interested Party James Dondero (RE: related document(s)3570 Motion to recuse Judge Stacey G. C. Jernigan - AMENDED). (Attachments: #1 Appendix (Lang, Michael) |
| **012641** | 10/31/2022 | 3595 | Response opposed to (related document(s): 3541 Motion to recuse Judge Stacey G. C. Jernigan filed by Interested Party James Dondero, 3570 Motion to recuse Judge Stacey G. C. Jernigan - AMENDED filed by Interested Party James Dondero) filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| **Vol. 18**<br><br>**012697**<br>**Thru End of Vol. 21** | 10/31/2022 | 3596 | Support/supplemental document (Appendix in Support of Highland's Objection to Renewed Motion to Recuse Pursuant to 28 U.S.C. 455 and Brief in Support) filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3595 Response). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 (Annable, Zachery) |
| **Vol. 22**<br>**016732** | 3/3/2023 | 3673 | Brief in support filed by Interested Party James Dondero (RE: related document(s)3570 Motion to recuse Judge Stacey G. C. Jernigan - AMENDED). (Lang, Michael) |
| **016737** | 3/6/2023 | 3675 | Memorandum of Opinion and Order Denying Amended Renewed Motion to Recuse Pursuant to 28 U.S.C. Section 455 (RE: related document(s)3570 Motion to recuse Judge filed by Interested Party James Dondero). Entered on 3/6/2023 (Okafor, Marcey) |
| **016773** | 3/6/2023 | 3676 | Order Denying Amended Renewed Motion to Recuse Pursuant to U.S.C. Section 455 (related document #3570) Entered on 3/6/2023. (Okafor, Marcey) |
| **016809** | 5/19/2025 | 4216 | Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland |

| | | | |
|---|---|---|---|
| | | | Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: #1 Exhibit A--Proposed Order (Annable, Zachery) |
| | 5/19/2025 | 4217 | Declaration re: (Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 (Annable, Zachery) |
| | 5/19/2025 | 4217-1 | Proposed Settlement Agreement |
| | 6/9/2025 | 4230 | Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
| | 6/20/2025 | 4251 | Exhibit List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| | 6/20/2025 | 4252 | Witness List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| | 6/20/2025 | 4255 *(to be submitted to Clerk on flash drive)* | Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 |

*Handwritten annotations in left margin: "Vol. 22", "016827", "016830", "016855", "016863", "016865", "Vol. 23", "016867", "Thru end of Vol. 25"*

9

| | | | |
|---|---|---|---|
| | | | Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Exhibit 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 , #87 Exhibit 87 , #88 Exhibit 88 , #89 Exhibit 89 , #90 Exhibit 90 , #91 Exhibit 91 , #92 Exhibit 92 , #93 Exhibit 93 , #94 Exhibit 94 , #95 Exhibit 95 , #96 Exhibit 96 , #97 Exhibit 97 , #98 Exhibit 98 , #99 Exhibit 99 , #100 Exhibit 100 , #101 Exhibit 101 , #102 Exhibit 102 , #103 Exhibit 103 , #104 Exhibit 104 , #105 Exhibit 105 , #106 Exhibit 106 , #107 Exhibit 107 , #108 Exhibit 108 , #109 Exhibit 109 , #110 Exhibit 110 , #111 Exhibit 111 , #112 Exhibit 112 , #113 Exhibit 113 , #114 Exhibit 114 , #115 Exhibit 115 , #116 Exhibit 116 , #117 Exhibit 117 , #118 Exhibit 118 , #119 Exhibit 119 , #120 Exhibit 120 , #121 Exhibit 121 , #122 Exhibit 122 , #123 Exhibit 123 (Annable, Zachery) |
| *Vol. 26*<br><br>*019524* | 6/20/2025 | 4256 | Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis) |
| *019527* | 6/20/2025 | 4257 | Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent |

| | | | Therewith)). (Attachments: #1 Exhibit 1 - Charitable DAF/CLO HoldCo Organization Chart, #2 Exhibit 2 - Rand Structure Chart, #3 Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs, #4 Exhibit 4 - Charitable Respondents Response and Disclosures (Okin, Matthew) |
|---|---|---|---|
| *Vol. 27* *019847* | 6/23/2025 | 4271 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Professional Highland Claimant Trust (RE: related document(s)4253 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 66, #2 Exhibit 67 (Annable, Zachery) |
| *019871* | 6/23/2025 | 4272 | Amended Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4257 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 5, #2 Exhibit 66, #3 Exhibit 7 7,4 Exhibit 8 ,8, Exhibit 9 (Curry, David) |
| *019998* | 6/23/2025 | 4273 | Objection to (related document(s)): 4255 List (witness/exhibit/generic) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Ohlinger, Ali) |
| *Vol. 28* *020013* | 6/23/2025 | 4277 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4255 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 124 , #2 Exhibit 125 (Annable, Zachery) |
| *020230* | 6/24/2025 | 4279 | Witness and Exhibit List with Respect to Hearing to be Held on June 25, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time)). (Attachments: #1 Exhibit 1 (Deitsch-Perez, Deborah) |
| *020241* | 6/24/2025 | 4280 | Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 126 (Annable, Zachery) |

| | 6/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). (Entered: 06/27/2025) |
| | 6/27/2025 | 4290 | Stipulation by Highland Claimant Trust, Highland Litigation Sub-Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4223 Objection). (Annable, Zachery) |
| | 6/27/2025 | 4291 | Stipulation withdrawing objection of The Dallas Foundation and Crown Global Life Insurance, LTD to Motion for Entry of an order pursuant to Bankruptcy Rule 9019 and 11 U.S.C. Section 363 approving settlement with the HMIT Entities and authorizing actions consistent therewith (RE: related document(s) 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust, 4282 Stipulation filed by Creditor Hunter Mountain Investment Trust. Entered on 6/27/2025 (Okafor, M.) |
| | 7/1/2025 | 4299 | Motion to withdraw document Consent Motion to Dismiss HMIT Remand Proceedings with Prejudice (related document(s) 3699 Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |
| | 7/1/2025 | 4300 | Motion to withdraw document Consent Motion to Dismiss Delaware Action Proceedings with Prejudice (related document(s) 4000 Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |

Handwritten annotations in left margin:
- VOL. 28  020266
- VOL. 29  020267
- 020271
- 020282
- 020289

| | | | |
|---|---|---|---|
| Vol. 29<br><br>020296 | 7/7/2025 | 4304 | Order withdrawing Emergency Motion for Leave to File Adversary Proceeding [Dkt. 3699] with prejudice (RE: related document(s)4299 Motion to withdraw document filed by Interested Party Hunter Mountain Trust, Creditor Hunter Mountain Investment Trust). IT IS THEREFORE ORDERED that the proceedings defined in the Dismissal Motion as: Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P., Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including Hunter Mountain Investment Trusts Emergency Motion for Leave to File Adversary Proceeding filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating thereto), are dismissed with prejudice. Entered on 7/7/2025 (Okafor, M.) |
| 020298 | 7/10/2025 | 4308 | Notice Letter from the Office of the Texas Attorney General Requesting a Stay filed by Interested Party State of Texas. (Stone, Johnathan) |
| 020300 | 7/14/2025 | 4311 | Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Lang, Michael) |
| 020309 | 7/16/2025 | 4323 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| 020311 | 7/17/2025 | 4326 | Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust. Objections due by 8/7/2025. (Lang, Michael) Modified text on 7/21/2025 (mdo). |
| Vol. 30<br><br>020407 | 7/17/2025 | 4329 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01876-K. (RE: related document(s)4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related |

| | | | |
|---|---|---|---|
| | | | document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| | 7/21/2025 | 4333 | Memorandum of opinion (RE: related document(s)4308 Notice (generic) filed by Interested Party State of Texas, 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust). Entered on 7/21/2025 (Okafor, M.) |
| | 7/21/2025 | 4334 | Order denying stay requests (related document 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order and 4308 Notice). Entered on 7/21/2025. (Okafor, M.) Additional attachment(s) added on 7/21/2025 (Okafor, M.) |
| | 8/4/2025 | 4353 | Notice of appeal. Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). Appellant Designation due by 08/18/2025. (Attachments: #1 Exhibit A) (Harper, Geoffrey) |
| | 8/5/2025 | 4359 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-02072-S. (RE: related document(s)4353 Notice of appeal filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). (Almaraz, Jeanette) |
| | 8/15/2025 | 4372 | Motion to recuse Judge Filed by Interested Parties James Dondero, NexPoint Advisors, L.P., NexPoint Asset Management, L.P., NexPoint Real Estate Advisors, L.P., The Dugaboy Investment Trust, The Get Good Non Exempt Trust No 2 (Attachments: #1 Proposed Order (Harper, Geoffrey) |

Dated: August 18, 2025

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: /s/ Geoffrey S. Harper

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
**CRAWFORD, WISHNEW & LANG PLLC**
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

***Counsel for Appellant The Dugaboy Investment Trust***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 18, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Highland Capital Management,*
*L.P. and the Highland Claimant Trust*

*Co-Counsel for Marc S. Kirschner, as*
*Litigation Trustee of The Highland*
*Litigation Sub-Trust*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
|  | § |  |
| Reorganized Debtor. | § |  |
|  | § |  |

### HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND LITIGATION SUB-TRUST AMENDED WITNESS AND EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON JUNE 25, 2025

Highland Capital Management, L.P., the reorganized debtor (the "<u>Debtor</u>" or "<u>Highland</u>," as applicable) in the above-captioned chapter 11 case (the "<u>Bankruptcy Case</u>"), the Highland

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 1 OF 15**

020013

Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation Sub-Trust," and together with Highland and the Claimant Trust, the "Movants"), by and through their undersigned counsel, submit the following amended witness and exhibit list with respect to the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4216], which the Court has set for hearing at 9:30 a.m. (Central Time) on June 25, 2025 (the "Hearing") in the Bankruptcy Case.

     **A.**    **Witnesses:**

       1.    James P. Seery, Jr.;

       2.    James Dondero;

       3.    Deborah Deitsch-Perez, Esq;

       4.    Julie Diaz (by deposition transcript);

       5.    Any witness identified by or called by any other party; and

       6.    Any witness necessary for rebuttal.

     **B.**    **Amended Exhibits:[2]**

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| **A.** | **Settlement Agreement** | | |
| 1. | *Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to a Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Agreement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4217] [HCMLPHMIT00002688-HCMLPHMIT00002715] | | |
| **B.** | **Negotiation Documents** | | |

---

[2] The amendments to the original exhibit list, filed at Docket No. 4255, include the additions of two exhibits: Exhibit Nos. 124 & 125, in bold font below.

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**    **PAGE 2 OF 15**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

020014

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 2. | Email from L. Phillips to J. Morris dated March 5, 2025 [HCMLPHMIT00000015-HCMLPHMIT00000017] | | |
| 3. | Email from L. Phillips to J. Morris dated March 13, 2025 [HCMLPHMIT00000022-00000026] | | |
| 4. | Email from L. Phillips to J. Morris dated March 18, 2025 [HCMLPHMIT00000028-HCMLPHMIT00000029] | | |
| 5. | Email from L. Phillips to J. Morris dated March 19, 2025 [HCMLPHMIT00000030-HCMLPHMIT00000031] | | |
| 6. | Confidentiality Agreement-M Patrick and Related Entities [HCMLPHMIT00000032-HCMLPHMIT00000045] | | |
| 7. | Email from L. Phillips to J. Morris and A. Hurt dated March 22, 2025 [HCMLPHMIT00000046-HCMLPHMIT00000048] | | |
| 8. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000052-HCMLPHMIT00000054] | | |
| 9. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000055-HCMLPHMIT00000056] | | |
| 10. | Email from L. Phillips to J. Morris dated March 28, 2025 [HCMLPHMIT00000057] | | |
| 11. | Email from L. Phillips to J. Morris dated March 30, 2025 [HCMLPHMIT00000058] | | |
| 12. | Email from L. Phillips to J. Morris dated March 31, 2025 [HCMLPHMIT00000059] | | |
| 13. | HCLOM Intercreditor and Participation Agreement [HCMLPHMIT00000060-HCMLPHMIT00000063] | | |
| 14. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000075-HCMLPHMIT00000078] | | |
| 15. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000079-HCMLPHMIT00000080] | | |
| 16. | Email from L. Phillips to J. Morris dated April 3, 2025 with attachment - Paul Murphy Joinder to Confidentiality Agreement [HCMLPHMIT00000081-HCMLPHMIT00000083] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

PAGE 3 OF 15

020015

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 17. | Email from L. Phillips to J. Morris dated April 4, 2025 [HCMLPHMIT00000089] | | |
| 18. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000090-HCMLPHMIT00000092] | | |
| 19. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachment – Shawn Raver Joinder to Confidentiality Agreement [HCMLPHMIT00000093-HCMLPHMIT00000096] | | |
| 20. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000099-HCMLPHMIT00000102] | | |
| 21. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachments- Phillips Joinder to Confidentiality Agreement (signed by Phillips) and A. Hurt Joinder to Confidentiality Agreement (signed by Hurt) [HCMLPHMIT00000103-HCMLPHMIT00000107] | | |
| 22. | Email from L. Phillips to J. Morris dated April 8, 2025 with fully executed HCLOM Remittance Agreement [HCMLPHMIT00000108-HCMLPHMIT00000112] | | |
| 23. | Email from L. Phillips to J. Morris dated April 10, 2025 with HMIT 2022 Settlement Agreement [HCMLPHMIT00000118-HCMLPHMIT00000130] | | |
| 24. | Email from L. Phillips to J. Morris dated April 17, 2025 with attachment James Shields Joinder to Confidentiality Agreement [HCMLPHMIT00000135-HCMLPHMIT00000150] | | |
| 25. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000157-HCMLPHMIT00000158] | | |
| 26. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000159-HCMLPHMIT00000161] | | |
| 27. | Email from L. Phillips to J. Morris dated May 13, 2025 [HCMLPHMIT00000162-HCMLPHMIT00000163] | | |
| 28. | Email from L. Phillips to J. Morris dated May 14, 2025 [HCMLPHMIT00000164-HCMLPHMIT00000166] | | |
| 29. | Email from L. Phillips to J. Morris dated May 14, 2025 with Redlines of Settlement Agreement [HCMLPHMIT00000167-HCMLPHMIT00000218] | | |

AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025          PAGE 4 OF 15
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

020016

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 30. | Email from L. Phillips to J. Morris dated May 15, 2025 [HCMLPHMIT00000226-HCMLPHMIT00000234] | | |
| 31. | Email from L. Phillips to J. Morris dated May 16, 2025 with Clean and Redline of Rand Settlement Agreement [HCMLPHMIT00000235-HCMLPHMIT00000283] | | |
| 32. | Email from L. Phillips to T. Cournoyer dated May 16, 2025 [HCMLPHMIT00000287-HCMLPHMIT00000289] | | |
| 33. | Email from L. Phillips to J. Seery, M. Patrick, S. Raver, J. Shields, A. Hurt dated May 17, 2025 [HCMLPHMIT00000290] | | |
| 34. | Email from L. Phillips to J. Morris dated May 17, 2025 [HCMLPHMIT00000291-HCMLPHMIT00000292] | | |
| 35. | Email from L. Phillips to J. Morris, J. Pomerantz dated May 19, 2025 with attachment HMIT Redlined Pages only to Settlement Agreement [HCMLPHMIT00000295-HCMLPHMIT00000297] | | |
| 36. | Email from L. Phillips to G. Demo, A. Hurt, J. Shields dated May 19, 2025 [HCMLPHMIT00000342-HCMLPHMIT00000344] | | |
| 37. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 with attachment - M. Patrick signature of HMIT Rand Settlement Agreement [HCMLPHMIT00000345; HCMLPHMIT00000347-HCHMLPHMIT00000370] | | |
| 38. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz date May 19, 2025 [HCMLPHMIT00000371-HCMLPHMIT00000372] | | |
| 39. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000373-HCMLPHMIT00000374] | | |
| 40. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000423-HCMLPHMIT00000428] | | |
| 41. | Email from J. Morris to L. Phillips dated March 22, 2025 [HCMLPHMIT00000562-HCMLPHMIT00000563] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 5 OF 15**

020017

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 42. | Email from J. Morris to L. Phillips, A. Hurt dated March 22, 2025 with attachment – fully executed Confidentiality Agreement [HCMLPHMIT00000564-HCMLPHMIT00000580] | | |
| 43. | Email from J. Morris to L. Phillips dated April 4, 2025 with attachment Litigation Protections M. Patrick [HCMLPHMIT00000621-HCMLPHMIT00000631] | | |
| 44. | Email from J. Morris to L. Phillips dated April 7, 2025 [HCMLPHMIT00000642-HCMLPHMIT00000644] | | |
| 45. | Email from J. Morris to L. Phillips dated April 8, 2025 with attachment – current snapshot of remaining assets [HCMLPHMIT00000656--HCMLPHMIT00000661] | | |
| 46. | Email from J. Morris to L. Phillips dated April 16, 2025 with attachment – Second Amended and Restated Indemnity Trust Agreement [HCMLPHMIT00000672-HCMLPHMIT00000727] | | |
| 47. | April 15, 2025 Draft Illustrative Highland Indemnity Trust Payout Schedule [HCMLPHMIT00000724-HCMLPHMIT00000727] | | |
| 48. | Email from J. Morris to L. Phillips dated May 15, 2025 with attachment – Draft Rand Settlement Agreement and Redline [HCMLPHMIT00000766-HCMLPHMIT00000820] | | |
| 49. | Email from J. Morris to L. Phillips dated May 15, 2025 with Clean and Redline Settlement Agreement [HCMLPHMIT00000829-HCMLPHMIT00000877] | | |
| 50. | Email from L. Phillips to D. Klos dated April 17, 2025 [HCMLPHMIT00000947] | | |
| 51. | Email re: Microsoft Teams call from D. Klos to J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt dated April 7, 2025 [HCMLPHMIT00000949] | | |
| 52. | Microsoft Teams Appointment for J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt scheduled for April 8, 2025 [HCMLPHMIT00000950] | | |

AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025    PAGE 6 OF 15
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

020018

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 53. | Email from D. Klos to J. Shields dated April 22, 2025 with attachment – Potential Settlement Structure with DAF and HMIT<br>[HCMLPHMIT00000987-HCMLPHMIT00001000] | | |
| 54. | Email from J. Seery to M. Patrick, S. Raver, L. Phillips, A. Hurt, J. Shields dated April 28, 2025 with attachment – Draft Rand Settlement Agreement<br>[HCMLPHMIT00001001-HCMLPHMIT00001025] | | |
| 55. | Email Microsoft Teams appointment from D. Klos to J. Seery, K. Hendrix, M. Patrick, S. Raver, Paul dated April 3, 2025<br>[HCMLPHMIT00001037] | | |
| 56. | Email from D. Klos to M. Patrick dated April 2, 2025<br>[HCMLPHMIT00001042] | | |
| 57. | Email from J. Seery to J. Morris, T. Cournoyer, D. Klos, M. Gray dated June 11, 2025 with attachment – Class 9 Consent to Rand Settlement and Release<br>[HCMLPHMIT00001220-HCMLPHMIT00001245] | | |
| **C.** | **Class 9 Documents** | | |
| 58. | Letter to P. Daugherty from J. Seery re: Eighth Distribution re: Highland Claimant Trust dated May 20, 2025<br>[HCMLPHMIT00002329] | | |
| 59. | Written Consent of Holders of Class 9 Subordinated Claim Trust Interests in the Highland Claimant Trust dated May 16, 2025<br>[HCMLPHMIT00002677-HCMLPHMIT00002682] | | |
| 60. | Tolling Agreement Extending Claim Objection Deadline dated July 27, 2022 | | |
| 61. | Amendment No. 1 to Tolling Agreement Extending the Claim Objection Deadline dated December 21, 2022 | | |
| 62. | Amendment No. 2 to Tolling Agreement Extending Claim Objection Deadline dated November 6, 2023 | | |
| 63. | Amendment No. 3 to Tolling Agreement Extending Claim Objection Deadline dated November 20, 2024 | | |
| **D.** | **HCLOM/HMIT** | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 7 OF 15**

020019

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 64. | Email from L. Phillips to J. Morris dated January 6, 2025 [HCMLPHMIT00000008-HCMLPHMIT00000009] | | |
| 65. | Email from L. Phillips to J. Morris, A. Hurt dated January 11, 2025 [HCMLPHMIT00000010-HCMLPHMIT00000012] | | |
| 66. | *Highland Capital Management, L.P.'s Motion for (A) a Bad Faith Finding and (B) and Award of Attorney's Fees Against Highland CLO Management, Ltd. and James Dondero in Connection with HCLOM Claims 3.65 and 3.66* [Docket No. 4176] [HCMLPHMIT00000441-HCMLPHMIT00000500] | | |
| 67. | Hearing Transcript dated December 18, 2024 [Docket No. 4197] [HCMLPHMIT00003829-HCMLPHMIT00003859] | | |
| 68. | *Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award for Attorney's Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith [Docket Nos. 3657, 4716]* [Docket No. 4199] [HCMLPHMIT00003860-HCMLPHMIT00003866] | | |
| 69. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025 [HCMLPHMIT00003868-HCMLPHMIT00003871] | | |
| E. | **Patrick Authority** | | |
| 70. | Trust Agreement of Hunter Mountain dated December 17, 2015 [HCMLPHMIT00004103-HCMLPHMIT00004114] | | |
| 71. | Show Cause Hearing Transcript June 8, 2021 [HCMLPHMIT00002716-HCMLPHMIT00003013] | | |
| 72. | HMIT Hearing Transcript June 8, 2023 [HCMLPHMIT00003014-HCMLPHMIT00003402] | | |
| 73. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015 [HCMLPHMIT00003511-HCMLPHMIT00003517] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 8 OF 15**

020020

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 74. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547] HCMLPHMIT00003523-HCMLPHMIT00003828] | | |
| 75. | HMIT Appointment of Successor Administrator dated 8/12/2022 [HCMLPHMIT00003872] | | |
| 76. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015 [HCMLPHMIT00003873-HCMLPHMIT00003879] | | |
| 77. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013 [HCMLPHMIT00003880-HCMLPHMIT00003886] | | |
| 78. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015 [HCMLPHMIT00003887-HCMLPHMIT00003893] | | |
| 79. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015 [HCMLPHMIT00003894-HCMLPHMIT00003928] | | |
| 80. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00003929-HCMLPHMIT00004023] | | |
| 81. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00004024-HCMLPHMIT00004095] | | |
| 82. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022 [HCMLPHMIT00004124-HCMLPHMIT00004126] | | |
| 83. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022 [HCMLPHMIT00004127-HCMLPHMIT00004151] | | |
| 84. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022 [HCMLPHMIT00004152-HCMLPHMIT00004176] | | |
| 85. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022 [HCMLPHMIT00004177-HCMLPHMIT00004201] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002                                                                **PAGE 9 OF 15**

020021

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 86. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022<br>[HCMLPHMIT00004202-HCMLPHMIT00004215] | | |
| 87. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022<br>[HCMLPHMIT00004216-HCMLPHMIT00004218] | | |
| 88. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022<br>[HCMLPHMIT00004219-HCMLPHMIT00004221] | | |
| 89. | 3/17/2025 Rand Advisors Form ADV<br>[HCMLPHMIT00003465-HCMLPHMIT00003493] | | |
| 90. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | | |
| 91. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | | |
| 92. | Atlas IDF LP SEC Form D dated February 24, 2025<br>[HCMLPHMIT00003518-HCMLPHMIT00003522] | | |
| 93. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025<br>[HCMLPHMIT00004096-HCMLPHMIT00004100] | | |
| 94. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015<br>[HCMLPHMIT00004115-HCMLPHMIT00004123] | | |
| 95. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | | |
| 96. | Bylaws of The Okada Family Foundation, Inc. (final version) | | |
| 97. | Bylaws of Empower Dallas Foundation, Inc. | | |
| 98. | Crown Global DVA Policy 30218 (signed) | | |
| 99. | Crown Global DVA Termsheet 30218 | | |
| 100. | Crown Global DVA Policy 30219 (signed) | | |

020022

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 101. | Crown Global DVA Termsheet 30219 | | |
| 102. | Crown Global Rand Participation Agreement (Executed) | | |
| 103. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | | |
| 104. | S&G HMIT Opinion dated January 29, 2016 | | |
| **F.** | **Dugaboy Note** | | |
| 105. | Promissory Note $24,268,621.69 dated May 31, 2017 [HCMLPHMIT00001327-HCMLPHMIT00001328] | | |
| 106. | The Dugaboy Investment Trust Offering of $1817M Promissory Note Owed to HCMLP February 2024 [HCMLPHMIT00002323-HCMLPHMIT00002327] | | |
| 107. | Participation Agreement for Par/Near Par Trades dated July 18, 2024 [HCMLPHMIT00002594-HCMLPHMIT00002600] | | |
| 108. | $18.5mm Dugaboy Note Attempted Sale – Process Update [HCMLPHMIT00002601] | | |
| 109. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024 [HCMLPHMIT00002602-HCMLPHMIT00002607] | | |
| 110. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024 [HCMLPHMIT00002608-HCMLPHMIT00002630] | | |
| 111. | Highland Claimant Trust Recommended Dugaboy Note Contribution dated June 7, 2024 [HCMLPHMIT00002631-HCMLPHMIT00002636] | | |
| 112. | Email from D. Klos to DC Sauter dated May 23, 2024 [HCMLPHMIT00002637-HCMLPHMIT00002639] | | |
| **G.** | **Capital Account Amounts** | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**                    **PAGE 11 OF 15**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

020023

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 113. | Highland Capital Management, L.P. Consolidated Financial Statement and Supplemental Information dated December 31, 2018 <br> [HCMLPHMIT00002548-HCMLPHMIT00002593] | | |
| 114. | Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. dated December 24, 2015 <br> [HCMLPHMIT00002641-HCMLPHMIT00002676] | | |
| 115. | 2018 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT) <br> [HCMLPHMIT00001332; HCMLPHMIT00001336; HCMLPHMIT00001414; HCMLPHMIT00001419; HCMLPHMIT00001424; HCMLPHMIT00001429; HCMLPHMIT00001434; HCMLPHMIT00001439] | | |
| 116. | 2019 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT) <br> [HCMLPHMIT00001762; HCMLPHMIT00001766; HCMLPHMIT00001865; HCMLPHMIT00001870; HCMLPHMIT00001875; HCMLPHMIT00001880; HCMLPHMIT00001885; HCMLPHMIT00001890] | | |
| 117. | Monthly Operating Report – FINAL November 2019 <br> [HCMLPHMIT00001329] | | |
| 118. | Hunter Mountain Note Receivable October 15, 2019 <br> [HCMLPHMIT00001330] | | |
| **H.** | **Dallas Foundation Issues** | | |
| 119. | Affidavit of James Dondero in the Grand Court of Cayman Islands FSD2025-0099 dated April 16, 2025 <br> [HCMLPHMIT00003429-HCMLPHMIT00003438] | | |
| 120. | Email from J. Pomerantz to D. Curry, M. Okin dated June 19, 2025 | | |
| **I.** | **Plan, CTA, and Litigation Trust Agreement** | | |

AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025    PAGE 12 OF 15
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

020024

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 121. | *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Pages 26-29, (entire document can be found at Docket No. 1808)<br><u>Excerpts:</u><br>Article IV. B.1-5 (pages 26-28)<br>Article IV. B.5 (pages 28-29)<br>Article IV. B.7 (page 30)<br>Article IV. B.10 (page 31)<br>Article IV. D. (pages 34-35)<br>Article VII. D.1-2 (pages 44-45)<br>Article XI (pages 53-55) | | |
| 122. | *Claimant Trust Agreement*, (entire document can be found at Docket No. 1811-2, as modified by Docket No. 1875-4)<br><u>Excerpts:</u><br>Fourth "Whereas" clause (page 1)<br>Section 2.2(a)-(b) (page 8)<br>Section 3.2(a)-(b) (pages 11-12)<br>Section 3.2(c)(iv) (page 12)<br>Section 2.3(b)(ix) (page 9) | | |
| 123. | *Litigation Sub-Trust Agreement*, (entire document can be found at Docket No. 1811-4)<br><u>Excerpts:</u><br>Fourth "Whereas" clause (page 1)<br>Section 2.2 (page 5)<br>Section 3.2(a) (page 7)<br>Section 3.2(b) (page 7)<br>Section 3.2(c)(v) (page 7)<br>Section 3.3 (b)(iii) (page 9) | | |
| **J.** | **<u>Deposition Transcripts</u>** | | |
| 124. | **Deposition Transcript of Julie Diaz dated June 22, 2025** | | |
| 125. | **Deposition Transcript of Torrey Littleton dated June 22, 2025** | | |
| 126. | Any document entered or filed in the Debtor's chapter 11 bankruptcy case, including any exhibits thereto | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**   **PAGE 13 OF 15**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

020025

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 127. | All exhibits necessary for impeachment and/or rebuttal purposes | | |
| 128. | All exhibits identified by or offered by any other party at the Hearing | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**          **PAGE 14 OF 15**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

020026

Dated:  June 24, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com
hwinograd@pszjlaw.com


 - and -

**HAYWARD PLLC**

*/s/  Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*
*and the Highland Claimant Trust*

**QUINN EMANUEL URQUHART &**
**SULLIVAN LLP**

Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000


-and-

**SIDLEY AUSTIN LLP**

Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300


*Co-Counsel for Marc S. Kirschner, as*
*Litigation Trustee of the Highland Litigation*
*Sub-Trust*

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4929-2074-0176.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 15 OF 15**

020027

**EXHIBIT 124**

020028

```
 1              UNITED STATES BANKRUPTCY COURT

 2            FOR THE NORTHERN DISTRICT OF TEXAS

 3                      DALLAS DIVISION

 4       --------------------------

 5   In Re:                     Case No. 19-34054-sgj11

 6   HIGHLAND CAPITAL MANAGEMENT,

 7   L.P.,

 8        Debtor.                    Chapter 11

 9       -------------------------X.

10

11

12

13         REMOTE VIDEO-RECORDED DEPOSITION of

14                      JULIE DIAZ

15               Sunday, June 22, 2025

16               1:37 p.m. Central Time

17

18

19

20   Reported Stenographically by:

21   Gail L. Inghram,

22   BA, RDR, CRR, RSA, CA-CSR No. 8635

23

24

25
```

1

2

3

4

5

6

7

8               WHEREUPON, the remote video-recorded

9    deposition of JULIE DIAZ was held via

10   video-conferencing on Sunday, June 22, 2025,

11   beginning at approximately 1:37 p.m. Central

12   Time, the proceedings being recorded

13   stenographically by Gail Inghram, Registered

14   Diplomate Reporter, Certified Realtime Reporter,

15   Certified Shorthand Reporter, and transcribed

16   under her direction, there being present:

17

18

19

20

21

22

23

24

25

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 8-24   Filed 06/25/02   Page 36 of 271   PageID 2149
Deposition of 3:25-cv-02072-S   Document 8-24   Filed 06/25/02   Page 36 of 271 Capital Mgmt., L.P.

```
 1    A P P E A R A N C E S:

 2    [All parties appeared via remote videoconferencing.]

 3

 4    On behalf of Highland Capital Management, and the Highland

 5    Claimant Trust:

 6        JOHN MORRIS, ESQ.

 7        jmorris@pszjlaw.com

 8        GREGORY V. DEMO, ESQ.

 9        gdemo@pszjlaw.com

10        JEFFREY POMERANTZ, ESQ.

11        jpomerantz@pszjlaw.com

12        HAYLEY WINOGRAD, ESQ.

13        hwinograd@pszjlaw.com

14            PACHULSKI STANG ZIEHL & JONES

15            780 Third Avenue, 34th Floor

16            New York, New York 10017-2024

17            310.277.6910

18

19    On behalf of Highland Litigation Trustee:

20        ROBERT S. LOIGMAN, ESQ.

21        robertloigman@quinnemanuel.com

22            QUINN EMANUEL URQUHART & SULLIVAN, LLP

23            51 Madison Avenue 22nd Floor

24            New York, New York 10010

25            212.849.7615
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 63-24    Filed 06/06/25    Page 37 of 271    PageID 2150
Deposition of James Dondero, 30(b)(6) Highland Capital Management, L.P.

```
 1   A P P E A R A N C E S (Cont'd):

 2

 3   On behalf of Defendant Dallas Foundation and Crown Global

 4   Life Insurance:

 5      MATTTHEW OKIN, ESQ.

 6      mokin@okinadams.com

 7      DAVID CURRY, ESQ.

 8      dcurry@okinadams.com

 9          OKIN ADAMS BARTLETT CURRY LLP

10          1113 Vine Street, Suite 240

11          Houston, Texas 77002

12          713.228.4100

13

14   On behalf of Defendant Dugaboy Investment Trust:

15      MICHAEL LANG, ESQ.

16      mlang@cwl.law.com

17          CRAWFORD WISHNEW & LANG PLLC

18          1700 Pacific Avenue, Suite 2390

19          Dallas, Texas 75201

20          214.817.4500

21

22

23

24

25
```

```
 1   A P P E A R A N C E S (Cont'd):

 2

 3   On Behalf of Hunter Mountain Investment Trust:

 4       LOUIS M. PHILLIPS, ESQ.

 5       lphillips@kellyhart.com

 6       AMELIA L. HURT, ESQ.

 7       ahurt@kellyhart.com

 8           KELLY HART & HALLMAN LLP

 9           301 Main Street, Suite 1600

10           Baton Rouge, Louisiana 70801

11           225.381.9643

12

13   VIDEOGRAPHER:

14       PAUL D'AMBRA

15

16

17   ALSO PRESENT:

18       NATHAN HALL, Pachulski Stang Ziehl & Jones

19       JAMES SEERY

20       TORREY LITTLETON

21       SHAWN RAVER

22

23

24

25
```

```
 1                          - - -

 2                       I N D E X

 3                          - - -

 4  EXAMINATION OF:                         PAGE

 5  JULIE DIAZ

 6          By Attorney Morris ...............8

 7

 8

 9

10

11

12              E X H I B I T S
    HIGHLAND:                              PAGE

13

14  Highland 1    Objection of the Dallas ..........63

15                Foundation and Crown Global to

16                Motion for Entry of An Order

17                Approving Settlement

18                (15 pages)

19

20

21

22

23

24

25
```

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 33-24 Filed 06/30/25   Page 40 of 271   PageID 2153
Deposition of 25-cv-02072-S   Exhibit 24 Filed 06/30/25   Page 40 of 271   Capital Management L.P.

```
 1              DEPOSITION SUPPORT INDEX

 2

 3   QUESTIONS INSTRUCTED NOT TO ANSWER:

 4   PAGE  LINE

 5   (None)

 6

 7   REQUEST FOR PRODUCTION OF DOCUMENTS

 8   PAGE  LINE

 9   (None)

10

11

12   STIPULATIONS

13   PAGE  LINE

14   (None)

15

16   QUESTIONS MARKED

17   PAGE  LINE

18   (None)

19

20

21             REPORTER'S NOTE:

22   QUOTATION MARKS ARE USED FOR CLARITY AND DO NOT NECESSARILY

23   REFLECT A DIRECT QUOTE.

24

25
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Deposition of Julie Diaz, Volume I - Exhibit 24    Filed 06/16/25    Page 41 of 271    Highland Capital Mgmt, L.P.
Case 3:25-cv-02072-S    Document 6-28    Page 96 of 502    PageID 2154

```
 1                        -   -   -

 2                  P R O C E E D I N G S

 3                        -   -   -

 4    WHEREUPON,

 5                      JULIE DIAZ,

 6    being first duly sworn or affirmed to testify to the

 7    truth, the whole truth, and nothing but the truth,

 8    was examined and testified as follows:

 9

10                      EXAMINATION

11     BY ATTORNEY MORRIS:

12          Q.    Good afternoon, Ms. Diaz.  Can you

13     hear me okay?

14          A.    I can.

15          Q.    My name is John Morris.  I'm an

16     attorney for Highland Capital Management, and

17     we're here to take your deposition today in

18     connection with the Dallas Foundation's objection

19     to a certain settlement.

20              Are you aware of that?

21          A.    Yes, I am.

22          Q.    Have you ever been deposed before?

23          A.    Yes, I have.

24          Q.    Okay.  So just some quick ground rules

25     so we're on the same page.
```

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 15-24   Filed 06/25/25   Page 42 of 271   PageID 2155
Deposition 3:25-cv-02072-S   Document Exhibit 24   Filed 06/25/25   Page 42 of 271 Capital Management L.P.

```
 1              I'm going to ask a series of
 2    questions, and it's very important that you allow
 3    me to finish my question before you begin the
 4    answer.
 5              Is that fair?
 6         A.    Yes.
 7         Q.    I will try to allow you to finish your
 8    answer before I begin a question; but if I fail
 9    to do so, will you let me know that?
10         A.    Yes, I will.
11         Q.    If I ask a question that you don't
12    understand, will you let me know that?
13         A.    I will.
14         Q.    If you need a break at any time, I'm
15    happy to accommodate you; but I just ask that you
16    not seek a break while a question is pending
17    unless you need to consult with your lawyer about
18    privilege questions.
19              Is that fair?
20         A.    Yes.
21         Q.    Are you affiliated with the Dallas
22    Foundation?
23         A.    Yes.  I am the president and CEO.
24         Q.    When did you become the president and
25    CEO of the Dallas Foundation?
```

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 15-3824   Filed 06/16/25   Page 43 of 271   PageID 2156
Deposition of Dallas Foundation   Exhibit 824   Page 10 of 102   Highland Capital Management, L.P.

```
 1          A.     Formally, April 1st, 2024.  Prior to

 2     that, I was interim CEO; and have been with the

 3     foundation for six years.

 4          Q.     Are you familiar with the company

 5     called Highland Capital Management, LP?

 6          A.     Yes, I am.

 7          Q.     Are you aware that Highland Capital

 8     Management, LP, filed for bankruptcy back in

 9     2019?

10          A.     Yes, I am.

11          Q.     Are you aware that the Dallas

12     Foundation recently filed in the bankruptcy court

13     an objection to a proposed settlement between

14     certain Highland affiliates and certain

15     affiliates of Hunter Mountain Investment Trust?

16          A.     Yes, I am.

17          Q.     Are you aware of the parties to the

18     settlement agreement that the Dallas Foundation

19     has objected to?

20          A.     Can you clarify that question.

21          Q.     Can you identify the parties on the

22     Highland side that are -- that executed the

23     settlement agreement that the Dallas Foundation

24     objected to?

25          A.     No.
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc

Deposition of... Case 3:25-cv-02072-S    Document 15-24    Filed 06/26/02 102    Page 44 of 271    ... Capital ... L.P.

```
 1          Q.    Can you identify the parties --
 2    withdrawn.
 3                Are you aware that there are
 4    parties -- are you aware that Hunter Mountain
 5    Investment Trust is a party to the settlement
 6    agreement?
 7          A.    Yes, I am.
 8          Q.    Are you aware that a gentleman named
 9    Mark Patrick signed the agreement on behalf of
10    the Hunter Mountain Investment Trust?
11          A.    I'm aware of his involvement.
12          Q.    But you're not aware as you sit here
13    right now that Mr. Patrick signed on behalf of
14    Hunter Mountain Investment Trust?
15          A.    No.
16          Q.    Can I refer to Hunter Mountain
17    Investment Trust as "HMIT" for purposes of the
18    deposition?
19          A.    Yes, you may.
20          Q.    Are you aware that there are other
21    entities that are affiliated with HMIT that are
22    also party to the settlement agreement?
23          A.    Yes, I am.
24          Q.    Can we generally refer to all of the
25    affiliates of HMIT and HMIT itself as "the HMIT
```

1    entities" for purposes of today's deposition?

2         A.    Yes.

3         Q.    Did you review the Dallas Foundation's

4    objection before it was filed?

5         A.    Yes, I did.

6         Q.    Were you responsible for authorizing

7    its filing?

8         A.    Yes.

9         Q.    Are you aware that the objection was

10   filed on behalf of an entity called Empower

11   Dallas Foundation?

12        A.    Yes.

13        Q.    Are you familiar with that entity?

14        A.    Yes, I am.

15        Q.    What is the Empower Dallas Foundation?

16        A.    Empower Dallas Foundation is a

17   supporting organization that is sponsored by the

18   Dallas Foundation.  It's a grant-making

19   organization that's been in existence for at

20   least 10 years.

21        Q.    Do you know who formed Empower Dallas

22   Foundation?

23        A.    Yes.  I'm aware that it came from Jim

24   Dondero.

25        Q.    What do you mean that it came from Jim

```
 1    Dondero?

 2         A.    Well, that the donation was made from

 3    Mr. Dondero.

 4         Q.    Did Mr. Dondero make a donation to

 5    Empower Dallas Foundation?

 6         A.    Yes.

 7         Q.    And does Empower Dallas Foundation

 8    fund the Dallas Foundation?

 9         A.    Technically, it is a -- we are a -- it

10    is a supporting organization of the Dallas

11    Foundation, which is an IRS entity for which it

12    makes grant recommendations that then flow to a

13    donor-advised fund that then the Dallas

14    Foundation effectuates, basically, the grant.

15         Q.    Do you know if the Dallas -- did I

16    step on your words?

17         A.    No.

18         Q.    Do you know if the Dallas --

19    withdrawn.

20               Do you know if Empower Dallas

21    Foundation had any contractual obligation to make

22    donations to the Dallas Foundation?

23         A.    I believe that through its charitable

24    status, it is required to make contributions on a

25    regular basis.  And we also have governance that
```

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 15-124   Filed 06/05/25   Page 47 of 271   PageID 2160
Deposition of 25-cv-02072-S   Exhibit 24   Filed 06/05/25   Page 47 of 271   Capital, D. 2160 L.P.

1    oversees activity within all of our charitable

2    funds.

3         Q.    Is there an agreement of any kind

4    between the Dallas Foundation and Empower Dallas

5    Foundation?

6         A.    Yes.  We have a fund agreement.

7         Q.    And under that fund agreement, is the

8    Dallas Foundation entitled to receive

9    contributions from Empower Dallas?

10        A.    Yes.  I don't know the technical

11   language offhand.

12        Q.    Do you know if Mr. Dondero plays any

13   role in the management of Empower Dallas

14   Foundation?

15        A.    What do you mean by "management"?

16        Q.    Does he have any involvement in --

17        A.    Yes.  As any fundholder, he would have

18   involvement in making recommendations for grants

19   he would like to put into the community, as all

20   of our fundholders do.

21        Q.    Does he play any other role, to the

22   best of your knowledge, with respect to the

23   Empower Dallas Foundation?

24        A.    No.

25        Q.    Are you familiar with --

```
 1          A.    Oh, sorry.  May I correct myself?

 2               The Empower Dallas Foundation does

 3   have its own governance, of which he is president

 4   of the foundation.  I'm the vice president.  And

 5   we have a treasurer.  As with all of our

 6   supporting orgs, the Dallas Foundation has

 7   majority oversight.

 8          Q.    The Dallas Foundation has majority

 9   oversight of Empower Dallas Foundation?

10          A.    Yes.

11          Q.    And how does it exercise that

12   oversight?

13          A.    In voting.

14          Q.    And who gets to vote?

15          A.    The officers:  the president, the vice

16   president, and the treasurer.

17          Q.    Of which entity?

18          A.    Of the supporting organization, the

19   Empower Dallas Foundation.

20          Q.    Can you identify who those people are.

21          A.    Jim Dondero is the president; I'm the

22   vice president; and our CFO, Torrey Littleton, is

23   the treasurer.

24          Q.    How about the Okada Family Foundation?

25   Are you familiar with that?
```

```
 1              A.    Oh, excuse me -- sorry.

 2              I'm -- I need to correct myself.  That

 3      is for Empower Dallas, because we have two funds

 4      I'm confusing.  Empower Dallas Foundation, I am

 5      the president; Torrey is the treasurer; and we

 6      have a secretary.

 7              For consent agendas, Jim Dondero plays

 8      an individual member role.

 9              Q.    Ma'am, what are you reading right now?

10              A.    I'm looking at the structure of our

11      supporting organizations.

12              Q.    Can you just hold that up for me so I

13      can see what you're looking at.

14              A.    It literally lists that for all of

15      them.

16              Q.    Do you have any other documents with

17      you today?

18              A.    Just my notes.

19              Q.    Can I ask you to put those away for

20      now.

21              A.    Oh, sure.

22              Q.    How about the Okada Family Foundation;

23      is that another supporting organization?

24              A.    Yes, it is.

25              Q.    And do you know if Mr. Dondero has any
```

```
 1    involvement with that entity?

 2         A.    It does not have any involvement with

 3    that entity.

 4         Q.    Okay.  Do you know if Mr. Dondero

 5    played any role in the Dallas Foundation's

 6    decision to object to the proposed settlement

 7    between the Highland entities and the HMIT

 8    entities?

 9         A.    Did not have any role.

10         Q.    Did you ever speak to him about the

11    objection?

12         A.    I have spoken to him in the last six

13    months.

14         Q.    Did you ever speak with him about the

15    objection?

16         A.    No.

17         Q.    Did you speak with him about any of

18    the facts that are set forth in the objection?

19         A.    No.

20         Q.    Was Mr. Dondero a source for some of

21    the facts that are set forth in the Dallas

22    Foundation's objection?

23         A.    No.

24         Q.    Did Mr. Dondero or anyone acting on

25    his behalf provide any information to the Dallas
```

1    Foundation that the Dallas Foundation used in its

2    objection?

3        A.    Repeat the question.

4        Q.    Did Mr. Dondero or anybody you believe

5    was acting on his behalf provide any information

6    that the Dallas Foundation used in its objection?

7        A.    I'll abstain from answering that.

8        Q.    Excuse me?

9        A.    I'd rather not answer that question.

10        Q.    I appreciate that, but you have to.

11        A.    Well, there's a lot of context around

12    the formation of where we are today.  So I have

13    been engaged with our counterpart over the last

14    six years, so I have a lot of information from

15    working through our grant-making and the

16    management of the assets over the past six years.

17            So in that same vein, I've learned a

18    lot from many interested parties.

19        Q.    Okay.  So I ask you to listen

20    carefully to my question, because it's rather

21    precise.

22            Do you know if Mr. Dondero or anybody

23    you believed was acting on his behalf provided

24    the Dallas Foundation with any information that

25    is -- that was used to prepare the objection?

```
 1          A.     No.

 2          Q.     Are you familiar with the objection?

 3          A.     I am familiar.  I authorized it and

 4     read it.

 5          Q.     And it's your testimony that Jim

 6     Dondero wasn't the source of any information

 7     that's in that objection.  Is that fair?

 8          A.     That is fair.

 9          Q.     Do you know where the idea of filing

10     the objection originated?

11          A.     I don't.

12          Q.     Do you know whose idea, who came up

13     with the idea to object to this -- withdrawn.

14                 Do you know whose idea it was to

15     object to the Highland/HMIT settlement?

16                 ATTORNEY OKIN:  Okay.  Actually,

17     Ms. Diaz, before you answer, just want to caution

18     you that as long as it's not conveying advice of

19     counsel, you can answer the question.

20          A.     You'll have to repeat that.  I don't

21     understand that.

22     BY ATTORNEY MORRIS:

23          Q.     Do you know who came up with the idea

24     of objecting to the proposed Highland/HMIT

25     settlement?
```

1          A.    I believe it came out of discussions

2     in another settlement.

3          Q.    What settlement are you referring to?

4          A.    In the Cayman Islands.

5          Q.    What settlement is that?

6          A.    Well, it has to do with the three

7     large supporting orgs and an entity called

8     DAF Holdco.

9          Q.    Which three large supporting orgs are

10    you referring to?

11         A.    Kansas City Foundation; Santa Barbara

12    Foundation; Highland Dallas Foundation; and

13    really in a small way, North Texas Community

14    Foundation.  All --

15         Q.    And I apologize.  What did you just

16    refer to those entities as?  Supporting

17    organizations?

18         A.    Yes.

19         Q.    The Kansas -- and you called it the

20    Kansas City --

21         A.    Foundation.

22         Q.    -- Foundation, the Santa Barbara

23    Foundation and the Dallas Foundation?  And those

24    are three additional supporting organizations of

25    the Dallas Foundation?

```
 1        A.     Sorry.  We have three -- four

 2   community foundations; right?  Dallas Foundation,

 3   Santa Barbara Foundation, Kansas City Foundation,

 4   and North Texas Community Foundations.

 5             The three -- Kansas City, Dallas and

 6   Highland -- I'm sorry -- Dallas, Kansas City, and

 7   Santa Barbara all have supporting organizations

 8   that were the result of contributions from

 9   Highland Capital in 2011.

10        Q.     Do you know if Mr. Dondero has any

11   relationship to the Dallas, Kansas City, or

12   Santa Barbara Foundations that you just

13   identified?

14        A.     My understanding is they have -- he

15   has the same structure of supporting org with

16   Kansas City, Santa Barbara, and Dallas.

17        Q.     Is he the president of each, to the

18   best of your knowledge?

19        A.     Yes.

20        Q.     And are those the entities that

21   commenced the Cayman Islands proceedings, to the

22   best of your understanding?

23        A.     Yes.

24        Q.     Is it your understanding that

25   Mr. Dondero directed those entities to do so?
```

```
 1          A.      No.

 2          Q.      Who directed those entities to do so,

 3    to the best of your knowledge?

 4          A.      CEOs of the organizations.

 5          Q.      And who are they?

 6          A.      Debbie Wilkerson is the CEO of

 7    Kansas City.  Jackie Carrera is the CEO of

 8    Santa Barbara.  Rose Bradshaw is the CEO of North

 9    Texas Community Foundation, although she did not

10    enter in, in the formal filing.  They have a very

11    de minimis role in the asset.

12          Q.      Are you aware that Mr. Dondero filed a

13    declaration or an affidavit in the Cayman Islands

14    in support of the Community Foundation's

15    litigation that they commenced?

16          A.      I did see that.

17          Q.      Did you read it?

18          A.      Yeah.

19          Q.      Did you see any familiarity between

20    that declaration and the Dallas Foundation's

21    objection?

22          A.      I think there were some similarities

23    because of the nature of the activities that have

24    been happening.

25          Q.      Did you learn, when you read
```

 1    Mr. Dondero's declaration in the Cayman Islands,

 2    that he's actually funding that litigation on

 3    behalf of the supporting organizations?

 4         A.    No, that's not when I learned that.

 5         Q.    That's not when you learned it or --

 6    withdrawn.

 7               Are you aware that he's funding that

 8    litigation?

 9         A.    Yes.

10         Q.    When did you learn that he was funding

11    that litigation?

12         A.    Before we got into litigation.

13         Q.    Is he funding this litigation on

14    behalf of the Dallas Foundation?

15         A.    Yes, he is.

16         Q.    And how much money did he provide for

17    the funding of this litigation?

18         A.    We have not agreed on an amount.  As

19    with any of our fundholders', legal expenses will

20    get paid through by the fund.  So that's a very

21    common business practice.  And it would go until

22    the legal issues ceased.

23         Q.    But he's made a commitment to fund --

24    to personally fund the expenses of the Dallas

25    Foundation in connection with this litigation; is

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Deposition of Edwin Kimbler    Case 3:25-cv-02072-S    Document 5-24    Filed 06/16/25    Page 57 of 271    Highland Capital Management, L.P.
Exhibit 24    Page 56 of 102    Page 57 of 271    PageID 2170

```
 1    that right?

 2        A.    Yes.

 3        Q.    Are you aware of any particular reason

 4    that that's not disclosed in the Dallas

 5    Foundation's objection?

 6        A.    I'm not aware.

 7        Q.    Why did the Dallas Foundation file the

 8    objection on behalf of Empower Dallas Foundation?

 9        A.    Well, we filed the objection on behalf

10    of both Empower and Okada Family Foundation, in

11    essence, because the person who has been

12    overseeing the activity ceased to communicate

13    with us as of last fall.  And there were enough

14    irregularities in our communication and

15    accounting leading up to then some pretty

16    dramatic changes in valuations that raised a red

17    flag for us.

18        Q.    Who is the person that you're

19    referring to?

20        A.    Mark Patrick.

21        Q.    And did the Empower Dallas Foundation

22    ask the Dallas Foundation to file this objection

23    on its behalf?

24        A.    As fiduciaries of all of our

25    charitable assets, we oversee the activity; and
```

```
 1    when there is any irregular activity, we
 2    investigate.
 3         Q.   I appreciate that.  I'm just asking
 4    you if the Empower Dallas Foundation asked the
 5    Dallas Foundation to file the objection on its
 6    behalf.
 7         A.   Well, since I am representative of the
 8    Empower Dallas Foundation, I don't have to ask
 9    anybody except ourselves to do that.
10         Q.   And did you confer with Mr. Dondero
11    about that decision?
12         A.   I think we informed him.
13         Q.   Did he review a copy of the objection
14    before it was filed?
15         A.   Not to my knowledge, no.
16         Q.   Are you aware that the Dallas
17    Foundation also filed the objection on behalf of
18    certain segregated accounts held at Crown Global
19    Life Insurance Limited?
20         A.   Yes.
21         Q.   Can I refer to Crown Global Life
22    Insurance Limited as just "Crown Global"?
23         A.   Yes.
24         Q.   And can I refer to the segregated
25    accounts that are identified in the Dallas
```

1   Foundation's objection as "the segregated

2   accounts"?

3        A.    Yes.

4        Q.    And are you familiar with those

5   segregated accounts?

6        A.    At a high level.

7        Q.    What's your understanding at a high

8   level of what those segregated accounts are?

9        A.    That the Crown Global assets are

10   really insurance annuities that pay out to the

11   fund; and that's the source of income for

12   charitable purposes.

13        Q.    Where does the income from the annuity

14   flow to?

15        A.    Flows to the supporting organizations.

16        Q.    And then the supporting organizations

17   have the proceeds from the annuity available for

18   the foundations; is that fair?

19        A.    Yes.

20        Q.    And do you know who took out these

21   insurance policies or these annuities?  Which of

22   the -- withdrawn.

23             Can you identify the supporting

24   organization that funded the purchase of the

25   annuities?

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 15-2   Filed 02/26/02   Page 60 of 271   PageID 2173
Deposition of                                Exhibit 24   Page 28605                              in the Capacity as                  L.P.

1          A.     Empower Dallas Foundation and Okada

2     Family Foundation.

3          Q.     And is the cash that is thrown off

4     from the annuities -- withdrawn.

5                To the best of your understanding, is

6     the cash that's thrown off from the annuities the

7     sole source of income for Empower Dallas

8     Foundation and the Okada Foundation?

9          A.     That's my understanding.

10         Q.     Is it your understanding that the

11    Dallas Foundation has not received anything of

12    value from Empower Dallas Foundation or the Okada

13    Family Foundation other than proceeds from the

14    annuities?

15         A.     That's my understanding.

16         Q.     Do you know why the Dallas Foundation

17    filed the objection on behalf of the segregated

18    accounts at Crown Global?

19         A.     Yes.

20         Q.     Why did the Dallas Foundation file its

21    objection on behalf of the segregated accounts?

22         A.     As I said earlier, because there had

23    been activity and essentially a write-down of

24    40 percent of value, we were concerned that there

25    were activities within Crown Global for the

```
 1    organizations that support that that we did not

 2    have any, you know, access to, vision or

 3    communication around.

 4         Q.    Does the Dallas Foundation have any

 5    relationship with Crown Global?

 6         A.    Yes.

 7         Q.    As it pertains to -- what relationship

 8    does the Dallas Foundation have with

 9    Crown Global?

10         A.    Well, I don't understand on a

11    transactional, but we get quarterly reports from

12    them.  They obviously send the proceeds to us.  I

13    mean, they are a fiduciary to us in the same way

14    we are to others.

15         Q.    Crown Global is?

16         A.    Yeah.

17         Q.    With respect to the disbursement of

18    proceeds from the annuity?

19         A.    Yes.

20         Q.    Okay.  So the proceeds from the

21    annuity don't go to Empower Dallas or the Okada

22    Family Foundation; they get remitted directly to

23    the Dallas Foundation.

24               Do I have that right?

25         A.    No.  They go -- they go to the
```

| | |
|---|---|
| 1 | supporting organizations.  But in our governance |
| 2 | that -- I refer to both as -- it flows into our |
| 3 | finance office, and then they get allocated to |
| 4 | the foundations. |
| 5 | Q.    You mentioned that there was a |
| 6 | 40 percent write-down in value.  Is that with |
| 7 | respect to the annuities? |
| 8 | A.    I don't know all of the transactions |
| 9 | that led up to that.  But what we understood, |
| 10 | there were a few -- sorry. |
| 11 | There are a few requests for us to |
| 12 | approve that we didn't understand and sent them |
| 13 | to our counsel, and then got the first-quarter |
| 14 | report for March 30th, and it was significantly |
| 15 | lower and we didn't know why. |
| 16 | So in asking for that, we found out |
| 17 | there was a decline. |
| 18 | Q.    And is that -- is it your |
| 19 | understanding that it's the decline in value -- |
| 20 | withdrawn. |
| 21 | Is it your understanding that it's the |
| 22 | unexplained decline in value that caused the |
| 23 | Dallas Foundation to file the objection on behalf |
| 24 | of the segregated accounts? |
| 25 | A.    Yes. |

 1          Q.     Did anybody ask the Dallas Foundation

 2     to file the objection on behalf of the segregated

 3     accounts?

 4          A.     No.

 5          Q.     Can you identify the owner of the

 6     segregated accounts on behalf of -- on whose

 7     behalf the Dallas Foundation filed the objection?

 8                 Withdrawn.  Too many words.

 9                 Do you know who owns the segregated

10     accounts?

11          A.     No.  I won't guess.

12          Q.     Are you aware that the owner of the

13     segregated accounts is Crown Global?

14          A.     Oh, yes.

15          Q.     And so is that your understanding,

16     that Crown Global --

17          A.     Yes.

18          Q.     -- owns the segregated accounts?

19          A.     Yes.

20          Q.     Did anybody from the Dallas Foundation

21     seek Crown Global's consent and approval before

22     filing the objection on behalf of the segregated

23     accounts?

24          A.     Yes.

25          Q.     Yes?

```
 1              And who at Crown Global gave the

 2      authorization, if you know?

 3          A.    Mr. -- the CEO and their chief legal,

 4      Hernandez -- Paul --

 5              ATTORNEY OKIN:  Let me interrupt here

 6      too, John.  You're acting as though the objection

 7      was filed solely by the Dallas Foundation.  We

 8      represent two clients here.  We represent the

 9      Dallas Foundation and Crown Global.

10              And you're putting Ms. Diaz in a

11      position where I think she thinks she has to

12      justify having -- Crown Global's actions when

13      they -- we represent them as well.

14              ATTORNEY MORRIS:  Well, as I read the

15      pleading that you filed, it said the Dallas

16      Foundation -- I won't --

17              ATTORNEY OKIN:  I think that's a --

18              ATTORNEY MORRIS:  I'll ask the

19      questions, and we'll --

20              ATTORNEY OKIN:  Take a look at our

21      signature block.  It says clearly that we're

22      doing it on behalf of the Dallas Foundation and

23      Crown Global.

24      BY ATTORNEY MORRIS:

25          Q.    Ms. Diaz, do you know if the Dallas
```

 1    Foundation ever appeared in the Highland

 2    bankruptcy case before it filed this objection?

 3         A.    I do not believe so.

 4         Q.    To the best of your knowledge, the

 5    Dallas Foundation never filed a claim against

 6    Highland in the Highland bankruptcy case;

 7    correct?

 8         A.    No.

 9         Q.    To the best of your knowledge --

10    withdrawn.

11              Have you ever heard of the Highland

12    Claimant Trust?

13         A.    No.

14         Q.    So is it fair to say that you have no

15    reason to believe that the Dallas Foundation has

16    any interest in the Highland Claimant Trust?

17         A.    No.  That is not -- that's not fair to

18    claim.

19         Q.    So is it your testimony that you

20    believe the Dallas Foundation has a direct or

21    indirect interest in the Highland Claimant Trust?

22         A.    What you asked me was had we ever

23    participated and did we then have any result

24    from it.

25              I don't know the answer to that

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 15-24   Filed 06/26/02   Page 66 of 271   Page ID 2179
Deposition of... Exhibit 24 ... Page 3466 of 102 ... Capital Management, L.P.

 1    question.

 2         Q.    I apologize if my questioning wasn't

 3    clear to you.  Let me try again.

 4              To the best of your knowledge, the

 5    Dallas Foundation has never appeared in the

 6    Highland bankruptcy case until it filed the

 7    objection that we're talking about today;

 8    correct?

 9         A.    I don't know the answer to that.

10         Q.    But to the -- you have no knowledge

11    that they ever did; is that fair?

12         A.    I have no knowledge.

13         Q.    Okay.  And you have no knowledge that

14    the Dallas Foundation ever filed a claim against

15    Highland in the Highland bankruptcy case;

16    correct?

17         A.    I have no knowledge of that.

18         Q.    And you have no knowledge that the

19    Dallas Foundation has any interest of any kind in

20    the Highland Claimant Trust; correct?

21         A.    I do not agree with that statement.

22         Q.    What knowledge do you have that the

23    Dallas Foundation has an interest in the Highland

24    Claimant Trust?

25         A.    Because of the relationship between

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 15-2   Filed 05/60/25   Page 67 of 271   Page ID 360

Deposition of James Dondero   Exhibit 24   Page 03560   Page 67 of 271   Highland Capital Management, L.P.

```
 1    Hunter Mountain and how it feeds up to

 2    Crown Global and, therefore, the supporting

 3    organizations.

 4         Q.    It might be my fault that I'm not

 5    being clear, but I'm really just focused on

 6    Highland right now.  Has nothing to do with

 7    Crown Global --

 8         A.    Okay.

 9         Q.    -- or Hunter Mountain; it's just

10    Highland.

11         A.    Okay.

12         Q.    Are you aware that as a result of the

13    bankruptcy, an entity Called the Highland

14    Claimant Trust was formed?

15         A.    I was not, no.

16         Q.    Okay.  So if you weren't aware that an

17    entity called the Highland Claimant Trust was

18    formed, is it also fair to say you have no

19    knowledge that the Dallas Foundation has an

20    interest in the Highland Claimant Trust?

21         A.    Okay.

22         Q.    Okay.  And does the Dallas Foundation

23    have any contractual relationship with Highland

24    Capital Management, LP?

25         A.    No.
```

```
 1          Q.    Has the Dallas Foundation ever had a
 2    contractual relationship with Highland Capital
 3    Management, LP, to the best of your knowledge?
 4          A.    No.
 5          Q.    Does the Dallas Foundation have any
 6    contractual relationship with an entity called
 7    the Highland Claimant Trust, to the best of your
 8    knowledge?
 9          A.    No.
10          Q.    And to the best of your knowledge, has
11    the Dallas Foundation ever had a contractual
12    relationship with an entity called the Highland
13    Claimant Trust?
14          A.    No.
15          Q.    Do you have any reason to believe, as
16    you sit here today, that Highland Capital
17    Management, LP, owes any duties or obligations to
18    the Dallas Foundation?
19                ATTORNEY OKIN:   Object to form.
20    BY ATTORNEY MORRIS:
21          Q.    You can answer.
22          A.    Can you ask the question again.
23          Q.    Sure.
24                As you sit here today, do you have any
25    reason to believe that Highland Capital
```

```
 1    Management, LP, owes any duties or obligations to

 2    the Dallas Foundation?

 3              ATTORNEY OKIN:  Object to form.

 4         A.   No.

 5    BY ATTORNEY MORRIS:

 6         Q.   As you sit here today, do you have any

 7    reason to believe that Highland Capital

 8    Management, LP, ever had any duties or

 9    obligations that it owed to the Dallas

10    Foundation?

11              ATTORNEY OKIN:  Object to form.

12         A.   No.

13    BY ATTORNEY MORRIS:

14         Q.   Are you aware that if the settlement

15    agreement between the Highland entities and the

16    HMIT entities is approved, the HMIT entities will

17    receive cash and other assets pursuant to the

18    terms of the settlement agreement?

19         A.   I'm assuming that there is assets

20    within the agreement.

21         Q.   Have you reviewed the settlement

22    agreement yourself, Ms. Diaz?

23         A.   No.

24         Q.   Are you generally familiar with the

25    terms of the settlement agreement?
```

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc

Case 3:25-cv-02072-S   Document 15-24   Filed 06/05/25   Page 70 of 271   PageID 2163
Deposition of ... Exhibit 24 ... 102 ... of ... H Capital Management, L.P.

```
 1            A.    At a high level.

 2            Q.    What's your understanding at a high

 3      level?

 4            A.    That once the settlement is complete,

 5      that Hunter Mountain will receive assets of some

 6      size that will flow up to Crown Global.

 7            Q.    Do you know if the requirement that

 8      the assets flow up to Crown Global is part of the

 9      settlement agreement that's before the Court and

10      that the Dallas Foundation is objecting to?

11            A.    That was our understanding.

12            Q.    From the agreement itself?

13            A.    I have not seen the settlement

14      agreement.

15            Q.    So you authorized an objection to a

16      settlement agreement that you haven't seen; is

17      that fair?

18            A.    That's fair.

19            Q.    Do you have any reason to believe that

20      the Dallas Foundation has a right to recover any

21      of the assets you just described that HMIT will

22      receive if the settlement is approved by the

23      Court?

24                  ATTORNEY OKIN:  Object to form.

25            A.    Can you repeat the question.
```

```
 1    BY ATTORNEY MORRIS:

 2         Q.    Do you have any reason to believe that

 3    the Dallas Foundation has a right to recover any

 4    portion of the assets that HMIT will receive if

 5    the settlement agreement is approved by the

 6    bankruptcy court?

 7              ATTORNEY OKIN:  Object to form.

 8         A.    My job is to protect the charitable

 9    assets under our organization's fiduciary

10    compliance role; and so if there is any

11    opportunity for assets to either be diminished or

12    not move forward, it's my job to ensure that I've

13    done everything I can to recover them.

14    BY ATTORNEY MORRIS:

15         Q.    But do you have an understanding as to

16    whether or not -- withdrawn.

17              I think you just testified that it's

18    your understanding at a high level that HMIT will

19    receive certain assets if the settlement

20    agreement is approved.

21              Do I have that right?

22         A.    Yes.

23         Q.    Do you have an understanding that the

24    Dallas Foundation is entitled to receive all or

25    any portion of the assets that HMIT would receive
```

1    under the settlement agreement?

2              ATTORNEY OKIN:  Object to form.

3         A.    I don't know that.

4    BY ATTORNEY MORRIS:

5         Q.    You don't know that?

6         A.    (Shakes head.)

7         Q.    Have you asked anybody whether the

8    Dallas Foundation has a right to recover any

9    portion of the assets that HMIT will receive

10   under the settlement agreement?

11             ATTORNEY OKIN:  Before you answer

12   that, Ms. Diaz, I'll just remind you:  Other than

13   disclosing any of your conversations with counsel

14   for you or for the foundation.

15   BY ATTORNEY MORRIS:

16        Q.    But you can answer the question.

17        A.    You'll have to ask the question again.

18        Q.    No problem.  I appreciate that.

19             Did you ever ask anybody whether the

20   Dallas Foundation had a right to receive any of

21   the assets that HMIT will receive under the

22   settlement agreement?

23        A.    Like somebody-who in your question?

24        Q.    Anybody.  Did you ever ask the

25   question of anybody?  Let's just start with "yes"

```
 1   or "no."

 2        A.    Yes.

 3        Q.    And who did you ask?

 4        A.    I'll strike that, because it would

 5   be -- I couldn't tell you definitively I did

 6   that.

 7        Q.    Did Mr. Dondero tell you that the

 8   Dallas Foundation had a right to the assets that

 9   HMIT was going to receive under the settlement

10   agreement?

11        A.    No.

12        Q.    And you don't recall asking that

13   question of anybody; is that fair?

14        A.    The only person I talked to this --

15   about these assets to is Mark Patrick.

16        Q.    And did Mr. Patrick tell you that the

17   Dallas Foundation had a right to recover any of

18   the proceeds under the HMIT/Highland settlement

19   agreement?

20        A.    I don't know.

21        Q.    Have you ever received any documents

22   that lead you to believe that the Dallas

23   Foundation has an ownership interest in any of

24   the assets that HMIT will receive under the

25   settlement agreement?
```

```
 1                ATTORNEY OKIN:  Object to form.
 2          A.     My understanding is that through the
 3   Hunter Mountain settlement, that those assets
 4   flow into the Atlas fund that I know Mark Patrick
 5   was managing.  So indirectly.
 6   BY ATTORNEY MORRIS:
 7          Q.     Is there a document that you reviewed
 8   that leads you to believe that the assets HMIT
 9   receives will go to the Atlas fund?
10          A.     No.
11          Q.     Can you identify with any specificity
12   which Atlas entity you have in mind that's
13   expected to receive the proceeds from the
14   HMIT/Highland settlement?
15          A.     No.
16          Q.     Do you know if the Atlas entity that
17   you just identified, does that have any
18   obligation to disburse any of the assets it may
19   receive from HMIT?
20          A.     I don't know.
21          Q.     Okay.  Let's -- do you have any reason
22   to believe that the Dallas Foundation will be
23   impacted in any way if the settlement between
24   Highland and the HMIT entities is approved?
25          A.     As I said, because the Crown Global is
```

1    to disburse money that it receives from Atlas,

2    then there would be an impact.  That's why we

3    filed the objection.

4        Q.    Is it fair to say that the Dallas

5    Foundation's concern is what happens to the

6    assets that HMIT receives after the settlement is

7    approved and it's not with the agreement itself?

8        A.    I can't answer that.

9        Q.    If Mark Patrick hadn't done anything

10   to change any of the structure that's described

11   in the Dallas Foundation's objection such that

12   the Dallas Foundation's expectations as set forth

13   in its objection were met, would the Dallas

14   Foundation have any reason to object to this

15   settlement?

16           ATTORNEY OKIN:  Objection; form.

17       A.    I don't know.

18   BY ATTORNEY MORRIS:

19       Q.    Isn't the problem here that you're

20   concerned about what happens to the money after

21   it's received by HMIT?

22       A.    I'm concerned that the case that's

23   pending in the Cayman Islands shows that

24   $300 million of charitable assets have vanished

25   and that the same type of behavior is happening

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Deposition of 25-cv-02072-S   Document 15-24   Filed 04/16/25   Page 76 of 271   Capital Mgmt., L.P.
Exhibit 24   Page 44 of 102   Page 76 of 271   PageID 21189

```
 1    in Crown Global and impacts those funds to the

 2    tune of $25 million.

 3         Q.    But that has nothing to do with

 4    Highland.

 5              Fair enough?

 6         A.    I don't know.

 7         Q.    Do you have any basis to say that

 8    Highland has any involvement in anything you just

 9    described?

10         A.    Well, I'm not a lawyer and,

11    technically, I don't know how to answer that.

12    But Highland has been involved from day one.

13         Q.    Involved in what?

14         A.    The original contribution to set up

15    the supporting orgs with those shares; like I

16    said, I -- all the different legal entities --

17    GPs, LPs, et cetera -- I leave you all to track.

18         Q.    If the Court approved the settlement

19    and Mark Patrick decided to give all of the

20    proceeds to the Dallas Foundation, would the

21    Dallas Foundation have any reason to object to

22    the settlement?

23              ATTORNEY OKIN:  Object to form.

24         A.    I think we'd want to know more.

25    ///
```

```
 1    BY ATTORNEY MORRIS:

 2         Q.    What would you want to know?

 3         A.    What are the assets that we would be

 4    receiving?  What would the structure be?

 5         Q.    Well, the assets are set forth in the

 6    settlement agreement; right?  So there's no

 7    mystery about the assets.

 8               Fair enough?

 9         A.    I don't know that.  I don't know --

10    are they -- is it cash?  Is it securities?  What

11    are the nature of the -- I would want to know a

12    lot more before accepting all things like that.

13         Q.    Do you know if Crown Global ever

14    appeared in the Highland bankruptcy?

15         A.    I don't know.

16         Q.    Do you know if the segregated accounts

17    ever filed a notice of appearance in the Highland

18    bankruptcy?

19         A.    I don't know.

20         Q.    Do you know if Crown Global ever filed

21    a claim against Highland in the Highland

22    bankruptcy?

23         A.    I don't know.

24         Q.    Do you know if the segregated accounts

25    ever filed a claim against Highland in the
```

```
 1   Highland bankruptcy?

 2        A.    I don't know.

 3        Q.    Do you know if Crown Global has an

 4   interest in the Highland Claimant Trust?

 5        A.    No.  No, I don't know.

 6        Q.    Do you know if the segregated accounts

 7   have an interest in the Highland Claimant Trust?

 8        A.    I don't know.

 9        Q.    Do you know if Crown Global has any

10   contractual relationship with Highland?

11        A.    I don't know.

12        Q.    Do you know if Crown Global has any

13   contractual relationship with the Highland

14   Claimant Trust?

15        A.    No.

16        Q.    I'm going to take Mr. -- I think it's

17   Mr. Littleton's deposition next.

18        A.    Yep.

19        Q.    Do you know if he is affiliated with

20   Crown Global in any way?

21        A.    No.  He's an employee of the Dallas

22   Foundation.

23        Q.    Thank you.

24              Do you know if Crown Global has any

25   right to recover any of the assets that HMIT and
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 15-28    Filed 04/06/25    Page 79 of 271    PageID 2192
Exhibit 24    Page 76 of 271    Deposition of Grant Scott Capital Management, L.P.

```
 1    the HMIT entities may receive under the

 2    settlement agreement?

 3              ATTORNEY OKIN:  Object to form.

 4         A.    I don't know.

 5    BY ATTORNEY MORRIS:

 6         Q.    Have you asked that question of

 7    anybody?

 8              ATTORNEY OKIN:  Other than your

 9    lawyers, you can answer that, Ms. Diaz.

10              ATTORNEY MORRIS:  Please --

11    BY ATTORNEY MORRIS:

12         Q.    Was the answer "no," Ms. Diaz?

13         A.    Ask the question again, please.

14         Q.    Have you ever asked anybody whether

15    Crown Global had the right to receive any of the

16    assets that Highland will convey to HMIT under

17    the settlement agreement?

18         A.    No.

19         Q.    We're using the phrase "HMIT entities"

20    to mean the entities on whose behalf Mark Patrick

21    signed the settlement agreement; right?  Are we

22    on the same page?

23         A.    That's what you're telling me.

24         Q.    Okay.  Are you familiar with any of

25    those entities?
```

```
 1          A.     Tell me what they are.

 2          Q.     Are you familiar with any of the Rand

 3     entities?

 4          A.     I'm familiar with Rand.

 5          Q.     And what's your familiarity with Rand?

 6          A.     Certainly it was another vehicle that

 7     flowed through to Atlas.  And when Mr. Patrick

 8     came to see me last October, told me that there

 9     might be some issues with Rand and that structure

10     might be changing.  That's vague.

11          Q.     Let's stick with the Hunter Mountain

12     Investment Trust.

13                 Are you aware of any assets that the

14     Hunter Mountain Investment Trust owns today?

15          A.     No.

16          Q.     Was it your understanding that

17     Mr. Patrick controlled Rand?

18          A.     Yes.

19          Q.     And is it your understanding that he

20     controls Rand today?

21          A.     Yes.

22          Q.     And going back to Hunter Mountain

23     Investment Trust, you're not aware of any assets

24     that that entity holds today; correct?

25          A.     No.
```

```
 1          Q.     Were you --

 2          A.     I'm assuming Rand is one of the

 3   assets, I guess.

 4          Q.     Were you ever -- did you ever know --

 5   were you ever aware of any asset that HMIT owned?

 6          A.     Well, Atlas.

 7          Q.     It's your understanding --

 8          A.     Yeah, I feel like I'm being quizzed on

 9   Hunter Mountain Trust.

10          ATTORNEY OKIN:  Let me interrupt here.

11   John, two things.

12          One, if you want to show her an org

13   chart so she can actually see these entities in a

14   way that actually would help her remember them.

15   Nobody can possibly keep them in their mind cold.

16          And, second, Ms. Diaz is not going to

17   be our witness on this Hunter Mountain structure

18   and the Rand structure.  You can keep asking her

19   questions about it and testing her memory on it,

20   but I don't think you're going to find that the

21   answers are going to be any different.

22          Mr. Littleton will talk to these

23   issues, yes.  I can't promise you he'll be able

24   to answer every one of your questions.  But to

25   the extent you want somebody with the Dallas
```

 1   Foundation's knowledge of the workings of that

 2   structure, he's the one to ask about that.

 3           ATTORNEY MORRIS:  I'll continue to ask

 4   the questions, but I appreciate that.

 5   BY ATTORNEY MORRIS:

 6       Q.    Do you know if the Dallas Foundation

 7   ever received anything of value from any of the

 8   HMIT entities?

 9       A.    Crown Global.

10       Q.    Crown Global is not an HMIT entity.

11   So I'm asking you to just focus on the entities

12   that Mark Patrick controlled, the Rand entities,

13   the Atlas entities and Hunter Mountain.

14           Did any of those entities ever give

15   anything of value to the Dallas Foundation?

16       A.    Not directly that I'm aware of, no.

17       Q.    Did any of those entities ever have

18   any business dealings with the Dallas Foundation?

19       A.    Only in the relationship with

20   Crown Global.

21       Q.    Do you have any understanding as to

22   whether any of the HMIT entities owes any duties

23   or obligations to the Dallas Foundation today?

24           ATTORNEY OKIN:  Objection to form.

25       A.    I don't know.

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 15-24    Filed 06/16/25    Page 83 of 271    PageID 2196
Deposition of ... Exhibit 24    Page 06160 of 12 Page 83 of 271 Capital Depo 21196 L.P.

 1    BY ATTORNEY MORRIS:

 2         Q.    I understand there was some corporate

 3    reorganization earlier this year.  I think that's

 4    described in the Dallas Foundation's objection.

 5              Is that just generally fair?

 6         A.    As it relates to Mr. Patrick?

 7         Q.    Yes.

 8         A.    (Nods head.)

 9         Q.    Okay.  Do you have any reason to

10    believe that before Mr. Patrick effectuated those

11    changes, that any of the HMIT entities owed any

12    duty or obligation to the Dallas Foundation?

13              ATTORNEY OKIN:  Objection to form.

14         A.    I don't know.

15    BY ATTORNEY MORRIS:

16         Q.    Are you aware that HMIT filed a couple

17    of years ago a motion in the bankruptcy court for

18    permission to bring certain claims against

19    Highland Capital Management and a gentleman named

20    James Seery?

21         A.    No.

22         Q.    Nobody ever told you that; is that

23    fair?

24         A.    Fair.

25         Q.    Are you aware that Highland contends

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 18-24   Filed 05/26/25   Page 84 of 271   PageID 3197
Deposition of Rand Corporation, Part 2   Exhibit 24   Page 05/26/25 1 02   Page 84 of 271   Highland Capital Management, L.P.

```
 1    that the settlement agreement that it has entered

 2    into with the HMIT entities is the product of

 3    good-faith, arm's-length negotiations?

 4         A.    Am I aware?  No.

 5         Q.    Do you have any knowledge of the

 6    nature of any negotiations between the Highland

 7    entities and the HMIT entities?

 8         A.    I'm aware that it's been going on for

 9    four years.

10         Q.    I'm just talking about the settlement

11    agreement now.

12         A.    Okay.

13         Q.    Do you have any knowledge of any facts

14    concerning the negotiation of that particular

15    settlement agreement?

16         A.    No.

17         Q.    Do you have any knowledge of any facts

18    that might suggest that the settlement agreement

19    was not the product of good-faith, arm's-length

20    negotiations?

21         A.    No.

22         Q.    Do you have any reason to believe that

23    the proposed settlement is unfair to Highland

24    Capital Management, LP?

25              ATTORNEY OKIN:  Object to form.
```

```
 1   BY ATTORNEY MORRIS:

 2       Q.    You can answer, ma'am.

 3       A.    I don't know.

 4       Q.    Do you know whether the proposed

 5   settlement is unfair to the Highland Claimant

 6   Trust?

 7       A.    I don't know.

 8             ATTORNEY OKIN:  Object to form.

 9   BY ATTORNEY MORRIS:

10       Q.    You don't have a view on that; is that

11   fair?

12       A.    Yes.

13       Q.    And is it fair that in connection with

14   the preparation and the filing of the

15   objection -- withdrawn.

16             The Dallas Foundation, in its

17   objection, does not contend that the settlement

18   is unfair to Highland Capital Management; is that

19   correct?

20       A.    I don't know.

21       Q.    You reviewed and authorized the filing

22   of the objection; isn't that right, ma'am?

23       A.    Right.

24       Q.    And you're familiar with the document

25   that you authorized to be filed; fair?
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S      Document 1-24    Filed 06/24/25    Page 86 of 271    PageID 2199
Deposition of Dallas Foundation 30(b)(6)        Exhibit 24        Page 54 of 102        Highland Capital Management, L.P.

```
 1              A.     Yes.

 2              Q.     And based on your recollection, do you

 3       recall the Dallas Foundation making any assertion

 4       or claim that the settlement agreement was unfair

 5       to Highland Capital Management, LP, or any of its

 6       affiliates?

 7              A.     The claim was that it was unfair to

 8       the supporting organizations.

 9              Q.     And how is the settlement agreement

10       unfair to the supporting organizations?

11              A.     Because we would -- well, what we

12       claimed is that because of our lack of

13       transparency of the flow of those funds and the

14       changes in the fund recently, that the supporting

15       organizations were losing their assets and any

16       potential future assets.

17              Q.     Is there any other basis that you're

18       aware of by which the Dallas Foundation contends

19       that the settlement agreement is unfair to it?

20              A.     No.

21              Q.     Does the Dallas Foundation contend

22       that the settlement agreement is unfair to Hunter

23       Mountain Investment Trust?

24              A.     I don't know.

25              Q.     As the person who authorized the
```

```
 1    filing of the objection on behalf of the Dallas

 2    Foundation, do you have any reason to believe

 3    that the terms of the settlement are unfair to

 4    the Hunter Mountain Investment Trust?

 5         A.    I do not.

 6         Q.    Are you aware that under the

 7    settlement agreement, the HMIT entities and the

 8    Highland entities are releasing each other from

 9    all liabilities except for the liabilities

10    arising under the settlement agreement?

11         A.    I'm assuming that's what the

12    settlement is intended to do.

13         Q.    And the Dallas Foundation doesn't have

14    any concern about the scope of the mutual

15    releases; is that fair?

16              ATTORNEY OKIN:  Objection to form.

17         A.    I don't know.

18    BY ATTORNEY MORRIS:

19         Q.    As the person who authorized the

20    filing of the objection on behalf of the Dallas

21    Foundation, do you recall there being any

22    statement in the objection where the Dallas

23    Foundation expressed any concern at all about the

24    scope of the mutual releases that are in the

25    settlement agreement?
```

```
 1              ATTORNEY OKIN:  Object to form.  The
 2    document speaks for itself.  I mean, if you want
 3    to show it to her and ask her to find it, that's
 4    fine.
 5    BY ATTORNEY MORRIS:
 6         Q.    You can answer, ma'am.
 7         A.    I don't --
 8         Q.    I'm sorry?
 9         A.    I don't recall that.
10         Q.    Okay.  Thank you.
11              Are you aware of any facts that could
12    give rise to a claim by the Dallas Foundation
13    against any Highland entity?
14              ATTORNEY OKIN:  Object to form.
15         A.    Repeat the question.
16    BY ATTORNEY MORRIS:
17         Q.    Are you aware of any facts that would
18    support a claim by the Dallas Foundation against
19    Highland Capital Management, LP, or the Highland
20    Claimant Trust?
21              ATTORNEY OKIN:  Object to form.
22         A.    No.
23    BY ATTORNEY MORRIS:
24         Q.    Do you understand the basis for the
25    Dallas Foundation's objection?
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 15-24    Filed 06/06/25    Page 89 of 271    Exhibit 24    Page 21202
Deposition of Dubel in the matter of Highland Capital Mgmt., L.P.

```
 1         A.     Yes.

 2         Q.     Can you articulate that for me.

 3    What's your understanding of the basis of the

 4    Dallas Foundation's objection?

 5             ATTORNEY OKIN:   Object to form.

 6         A.     Our objection --

 7    BY ATTORNEY MORRIS:

 8         Q.     Pardon me?  What's that, ma'am?

 9             ATTORNEY OKIN:   I said I object to the

10    form of the question.

11             Go ahead.  You can answer.

12         A.     Our objection is based on -- and I've

13    said this before -- the fact that there's been

14    irregular significant erosion of the assets to

15    date by the party who seems to control a lot of

16    the liquidity flows and oversight of the assets.

17             And so with the backdrop of all of the

18    work we're doing in the Cayman Islands to recover

19    300-plus million dollars, this seemed not

20    insignificant to protect the $25 million for

21    these two supporting organizations.

22             So as this happens on Wednesday, what

23    we've learned is that every opportunity we can to

24    slow down decisions that are made give us time to

25    understand where -- what is happening with these
```

```
 1    charitable assets and where they are.

 2    BY ATTORNEY MORRIS:

 3        Q.    Do you have any reason to believe that

 4    Mark Patrick does not have the authority to enter

 5    into the settlement agreement on behalf of each

 6    of the HMIT entities?

 7              ATTORNEY OKIN:  Object to the form of

 8    the question.

 9        A.    I don't know what authority he has to

10    enter into that.

11    BY ATTORNEY MORRIS:

12        Q.    Do you have any facts that you can

13    share with me that suggest that Mr. Patrick does

14    not have the legal authority to enter into the

15    settlement agreement on behalf of any of the HMIT

16    entities?

17              ATTORNEY OKIN:  Object to the form of

18    the question.

19        A.    I don't.

20    BY ATTORNEY MORRIS:

21        Q.    Is it your understanding that

22    Mr. Patrick was required to obtain the Dallas

23    Foundation or Crown Global's consent before

24    entering into this settlement agreement?

25        A.    I think what we would have appreciated
```

```
 1    and what had been our business as usual was

 2    information prior to and during anything that

 3    involved the assets under our aegis.

 4         Q.    Do you know if any of the HMIT

 5    entities had an obligation or duty to provide

 6    information to the Dallas Foundation or

 7    Crown Global before entering into the settlement

 8    agreement?

 9              ATTORNEY OKIN:  Object to the form of

10    the question.

11         A.    I don't --

12    BY ATTORNEY MORRIS:

13         Q.    I'm sorry.  Ms. Diaz, you don't know?

14         A.    I don't contractually know that.  But

15    whether it's authority that he was given or

16    assumed, he should have communicated with us.

17         Q.    Should he have communicated with you

18    before filing a lawsuit against the Highland --

19    withdrawn.

20              Do you believe that Mr. Patrick should

21    have communicated with the Dallas Foundation

22    before filing a lawsuit on behalf of Hunter

23    Mountain Investment Trust against Highland,

24    Mr. Seery, and others?

25         A.    I don't know.
```

```
 1          Q.    You don't have a view on that; is that

 2     fair?

 3          A.    Fair.

 4          Q.    I apologize if I asked this, but do

 5     you have any reason to believe that Mr. Patrick

 6     was required to obtain either the Dallas

 7     Foundation's or Crown Global's consent before

 8     entering into the settlement on behalf of the

 9     HMIT entities?

10               ATTORNEY OKIN:   Object to form of the

11     question.

12          A.    I don't know.

13     BY ATTORNEY MORRIS:

14          Q.    Do you have any reason to believe that

15     the Dallas Foundation or Crown Global has --

16     withdrawn.

17               Do you know if the Dallas Foundation

18     has a direct ownership interest in any of the

19     HMIT entities that are party to the settlement

20     agreement?

21          A.    I don't believe so.

22          Q.    Do you know if Crown Global has a

23     direct ownership interest in any of the HMIT

24     entities that are party to the settlement

25     agreement?
```

```
 1          A.    I don't know.

 2          Q.    Do you know if the Dallas Foundation

 3    has an indirect ownership interest in any of the

 4    HMIT entities that are party to the settlement

 5    agreement?

 6          A.    Indirect ownership?

 7                ATTORNEY OKIN:  Object to the form of

 8    the question.

 9          A.    I don't know.

10    BY ATTORNEY MORRIS:

11          Q.    Did you ever ask anybody?

12          A.    No.

13          Q.    No?

14          A.    No.

15          Q.    Do you know if Crown Global has an

16    indirect ownership interest in any of the HMIT

17    entities that are party to the settlement

18    agreement?

19                ATTORNEY OKIN:  Object to the form of

20    the question.

21          A.    I don't know.

22    BY ATTORNEY MORRIS:

23          Q.    Do you know if the Dallas Foundation

24    has any right to control any of the HMIT

25    entities?
```

```
 1              A.     No.

 2              Q.     No, you don't know; or, no, they don't

 3       have that right?

 4              A.     No, we don't have that right.

 5              Q.     Do you know if Crown Global has the

 6       right to control any of the HMIT entities?

 7              A.     I don't know.

 8              Q.     Do you know if the Dallas Foundation

 9       has the right to approve transactions that are

10       entered into by any of the HMIT entities?

11              A.     I don't know.

12              Q.     Do you know if Crown Global has the

13       right to approve any transaction that's entered

14       into by any of the HMIT entities?

15              A.     I don't know.

16              Q.     Do you know if Crown Global or the

17       segregated accounts has any right to control any

18       of the HMIT entities?

19              A.     I don't know.

20              Q.     Do you know if Crown Global or the

21       segregated accounts has any right to approve

22       transactions that any of the HMIT entities might

23       enter into?

24              A.     I don't know.

25              Q.     Do you know if any of the HMIT
```

```
 1   entities were required to obtain the segregated

 2   accounts' consent before entering into the

 3   settlement agreement?

 4           ATTORNEY OKIN:  Object to the form of

 5   the question.

 6       A.    I don't know.

 7           ATTORNEY MORRIS:  Okay.  We're going

 8   to put up on the screen -- Nathan, can you please

 9   put up on the screen the Dallas Foundation's

10   objection.

11   BY ATTORNEY MORRIS:

12       Q.    And while we wait, Ms. Diaz, I will

13   tell you that, you know, the good news with

14   COVID -- or at least one piece of the good

15   news -- is that we learned to do these remote

16   depositions so people don't have to travel and

17   it's much less expensive for clients.

18           The bad news is that I'm not in the

19   room with you and we have to put documents on the

20   screen, and sometimes that can be a little bit

21   cumbersome.

22           The Dallas Foundation's objection is

23   fairly lengthy.  This is not a test at all.  I am

24   going to point to certain parts of the objection.

25   But if you believe that you need to see any other
```

 1   portion of the document, will you let me know

 2   that so that I give you a chance to be fully

 3   informed?

 4        A.    Yes.

 5             ATTORNEY MORRIS:  Okay.  I think it's

 6   towards the end, Nathan, paragraph 32.

 7             This will be -- let's just call it

 8   Highland 1.

 9             (Whereupon, Exhibit Highland 1

10             was marked for identification and

11             is attached hereto.)

12   BY ATTORNEY MORRIS:

13        Q.    So we've got up on the screen

14   paragraph 32 of the objection.  And the third

15   sentence states, "Unfortunately, it does not

16   appear, however, that joint official liquidators

17   are parties to or have authorized the

18   settlement."

19             Do you see that?

20        A.    I see it.

21        Q.    Okay.  Are you aware that joint

22   official liquidators were appointed by a Cayman

23   court?

24        A.    Yes.

25        Q.    Do you know the entity over which the

```
 1    joint official liquidators were appointed?

 2         A.    I've met with them.

 3               Entity?

 4               ATTORNEY OKIN:  Ms. Diaz, maybe you

 5    need the question repeated.  You seem to be

 6    confused by the wrong part of it.

 7               THE WITNESS:  Okay.

 8               ATTORNEY MORRIS:  Thank you, Matt.

 9    That's fine.  That's fine.  I'll ask the question

10    again.

11    BY ATTORNEY MORRIS:

12         Q.    Can you identify the entity that's the

13    subject of the Cayman Islands liquidation

14    proceeding?

15         A.    Yes; the DAF Holdco.

16         Q.    Are you aware that all of the HMIT

17    entities are Delaware corporations?  Withdrawn.

18               Are you aware that all of the HMIT

19    entities were formed under the laws of the State

20    of Delaware?

21         A.    Sounds familiar.

22         Q.    And have you ever communicated with

23    the joint official liquidators?

24         A.    Yes.

25         Q.    When did you do that?
```

```
 1          A.     Two weeks ago.

 2          Q.     Did you make them aware of Highland's

 3    motion to have the settlement between the

 4    Highland entities and the HMIT entities approved?

 5          A.     I'd have to look at my calendar.

 6          Q.     Do you need your calendar to refresh

 7    your recollection as to whether or not you

 8    informed them of the Highland settlement motion?

 9          A.     I would want to make sure that the day

10    I met with them is clear in my mind as to this

11    versus when we've talked to them.

12          Q.     Fair enough.

13          A.     As you can imagine, there's been a lot

14    of detail around all of these cases.

15          Q.     Sure.  And I don't mean to be

16    disrespectful at all, ma'am.  I apologize if you

17    took it that way.

18                 Do you recall ever making the joint

19    official liquidators aware of the Dallas

20    Foundation's objection to the settlement motion?

21          A.     As I said, I don't know if we've made

22    them aware of the objection, except as it relates

23    to ancillary activity that we're concerned about

24    regarding Mark Patrick.

25                 So this was filed on June 9th, and I
```

 1   would want to make sure that I spoke with them

 2   before or after that; and I don't have that.

 3        Q.   Do you know if anybody provided a copy

 4   of the Dallas Foundation's objection to the joint

 5   official liquidators?

 6        A.   I don't know that.

 7        Q.   Did you ever consider doing that?

 8        A.   I will after today.

 9        Q.   Do you know if anybody asked the joint

10   official liquidators to make an appearance in

11   this case?

12        A.   I don't know that.

13        Q.   Did you ever ask the joint official

14   liquidators to appear in this case?

15        A.   We've already precluded that we don't

16   know whether I've actually talked to them about

17   this case, so that's moot; right?

18        Q.   Okay.  Do you believe that Mr. Patrick

19   was required to obtain the joint official

20   liquidators' authorization before entering into

21   the settlement agreement?

22        A.   I don't know that.

23             ATTORNEY OKIN:  Object to the form of

24   the question.

25   ///

```
 1    BY ATTORNEY MORRIS:

 2         Q.    I'm sorry, ma'am.  What did you say?

 3         A.    I don't know that.

 4         Q.    Did you have any reason to believe

 5    that Mr. Patrick was required to obtain the joint

 6    official liquidators' consent before entering

 7    into this settlement agreement?

 8         A.    I don't know.

 9         Q.    Do you have any reason to believe that

10    the joint official liquidators have any authority

11    to reject the proposed settlement?

12              ATTORNEY OKIN:  Object to the form.

13         A.    I don't know.

14    BY ATTORNEY MORRIS:

15         Q.    A little bit further down, towards the

16    bottom of this paragraph, there's a reference, it

17    says that the Court-appointed fiduciary, quote,

18    may -- withdrawn.

19              It says:

20              "Indeed, many of Mr. Patrick's

21         actions, including the insertion of

22         newly created entities into the fund's

23         structure for the apparent purpose of

24         diverting charitable assets, will now be

25         subject to the scrutiny of an
```

```
 1              independent, Court-appointed fiduciary

 2              and may be subject to clawback or other

 3              avoidance actions in the Cayman

 4              liquidation or such other tribunal as

 5              has jurisdiction."

 6                   Do you see that?

 7         A.    No.  You need to scroll down on the --

 8         Q.    It's just at the end of paragraph 32

 9    here.  It's the last sentence of 32.

10         A.    And so what's your question?

11         Q.    I just want to make sure that you and

12    I are on the same page, because I'm going to ask

13    some questions about this sentence.

14         A.    Yeah.

15         Q.    You're not an expert in Cayman Islands

16    law; fair?

17         A.    Fair.

18         Q.    You're not a lawyer, are you?

19         A.    Nope.

20         Q.    You're not an expert on clawback or

21    other avoidance actions, as that phrase is used

22    in the Dallas Foundation's objection in

23    paragraph 32; fair?

24         A.    Fair.

25         Q.    Do you have any understanding as to
```

 1   what facts must be established to succeed in a

 2   clawback or other avoidance action?

 3         A.    Repeat the question.

 4         Q.    Do you have any understanding as to

 5   what facts somebody needs to prove in order to

 6   succeed on a clawback or other avoidance action?

 7         A.    Not in a corporate setting.

 8         Q.    Is there any other type of setting

 9   that would pertain to the Dallas Foundation's

10   claims against Mr. Patrick?

11         A.    No.

12         Q.    Okay.  Do you have a view as to the

13   likelihood that the Dallas Foundation might

14   succeed in clawing back or asserting another

15   avoidance action to set aside the settlement

16   agreement if it's approved by the bankruptcy

17   court?

18               ATTORNEY OKIN:  Object to form.

19         A.    I don't know.

20   BY ATTORNEY MORRIS:

21         Q.    And you don't have a view; is that

22   fair?

23         A.    No, I just really don't know --

24         Q.    If we could --

25         A.    -- whether we will.

```
1         Q.    Okay.  You would have to speculate; is

2    that fair?

3         A.    Yes.

4               ATTORNEY MORRIS:  Can we scroll down

5    to paragraph 33, please.

6               ATTORNEY OKIN:  John, how much longer

7    do you anticipate going?  We talked about these

8    being an hour and a half.

9               ATTORNEY MORRIS:  Correct.  And we

10   started at exactly 2:37 New York time.  I expect

11   to finish at 4:07 New York time.

12              ATTORNEY OKIN:  Are we doing

13   additional questions from anybody else?

14              ATTORNEY MORRIS:  Mr. Phillips, do you

15   have any questions?

16              You're on mute, sir.

17              We'll be done in the 90 minutes.

18              ATTORNEY PHILLIPS:  Not at this time.

19              ATTORNEY MORRIS:  Okay.  Thank you.

20   BY ATTORNEY MORRIS:

21        Q.    So in paragraph 33, it says at the

22   end, quote:  "Even if approved by this Court,

23   consummation of the settlement is not likely to

24   buy the peace the debtor now seeks."

25              Do you see that?
```

```
 1        A.     Yes.

 2        Q.     Are you aware of anything in the

 3   Dallas Foundation's objection that suggests the

 4   Highland parties have done anything wrong here?

 5        A.     Repeat that question.

 6        Q.     Is there anything in the Dallas

 7   Foundation objection that you read and authorized

 8   to be filed that suggests that any of the

 9   Highland parties have done anything wrong?

10             ATTORNEY PHILLIPS:  I'm going to

11   object to that question because you said that she

12   read and authorized it to be filed.

13             ATTORNEY MORRIS:  I apologize.  I

14   apologize.  Thank you.

15   BY ATTORNEY MORRIS:

16        Q.     Let me start again, Ms. Diaz.

17             Do you recall whether there's anything

18   in the Dallas Foundation objection that asserts

19   that any of the Highland parties have done

20   anything wrong in connection with the entry into

21   the settlement agreement?

22        A.     I don't recall.

23        Q.     Are you aware of any facts that cause

24   you to believe that any of the Highland entities

25   did anything wrong in negotiating and entering
```

```
 1    into the settlement agreement?

 2          A.    I don't know.

 3          Q.    If you're not aware of any facts

 4    suggesting that Highland has engaged in

 5    wrongdoing, do you know why the Dallas Foundation

 6    has informed the Court that consummation of the

 7    settlement is not likely to buy the peace the

 8    debtor now seeks?

 9                ATTORNEY OKIN:  Object to form.

10          A.    I'll abstain from answering that.

11    BY ATTORNEY MORRIS:

12          Q.    That's not a thing, respectfully.

13                ATTORNEY MORRIS:  If -- Matt, if you

14    want to just help your witness out.

15                ATTORNEY OKIN:  You want me to give

16    her the answer?

17    BY ATTORNEY MORRIS:

18          Q.    Well, there's no abstention, so you

19    have to answer the question, ma'am.

20                ATTORNEY OKIN:  As best you can answer

21    it, Ms. Diaz, answer it.  If you can't answer it,

22    tell him you can't answer it.

23          A.    And I'll just say, when you say

24    "Highland," you want to be more specific?

25    ///
```

```
 1    BY ATTORNEY MORRIS:

 2        Q.    Sure.  Highland Capital Management,

 3    LP, the Highland Claimant Trust or the Highland

 4    Litigation Subtrust.

 5        A.    And so repeat the question.

 6        Q.    Okay.  If you don't have any facts

 7    suggesting that they've done anything wrong, why

 8    did the Dallas Foundation inform the Court, at

 9    the end of paragraph 33, that consummation of the

10    settlement is not likely to buy the peace the

11    debtor now seeks?

12            ATTORNEY OKIN:  Object to form.

13    BY ATTORNEY MORRIS:

14        Q.    You can answer.

15            ATTORNEY OKIN:  If you can answer it.

16        A.    Again, I'll just repeat that the peace

17    that the debtor seeks will be tainted because of

18    the harm that will come to the Dallas Foundation.

19    BY ATTORNEY MORRIS:

20        Q.    Anything else?

21        A.    No.

22        Q.    Is the Dallas Foundation considering

23    bringing any claims against Highland, the

24    Highland Claimant Trust or any of its

25    fiduciaries?
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 16-18    Filed 07/05/25    Page 107 of 271    PageID 3122
Exhibit 24 Page 06 of 102    Dondero v. Highland Capital Mgmt., L.P.

```
 1            A.      (No audible response.)

 2            Q.      I'm sorry, ma'am.  Did you answer?

 3            A.      I did.  I said, "No."

 4            Q.      Thank you.

 5                    In paragraph 34 --

 6                    ATTORNEY MORRIS:  Yeah, right there.

 7    Thank you Nathan --

 8    BY ATTORNEY MORRIS:

 9            Q.      -- it says, quote:  "There is ample

10    evidence that Mr. Patrick has acted and is acting

11    well outside the scope of his authority and

12    fiduciary obligations."

13                    Have I read that correctly?

14            A.      Yes.

15            Q.      Focusing solely on the settlement

16    agreement, do you have any reason to believe that

17    Mr. Patrick is acting outside of the scope of his

18    authority in entering into the settlement

19    agreement on behalf of each of the HMIT entities?

20                    ATTORNEY OKIN:  Object to form.

21            A.      And I don't know.

22    BY ATTORNEY MORRIS:

23            Q.      Okay.  Focusing solely on the

24    settlement agreement, do you have any reason to

25    believe that Mr. Patrick is breaching his
```

```
 1    fiduciary obligations by entering into the

 2    settlement agreement on behalf of each of the

 3    HMIT entities?

 4          A.    I don't know.

 5                ATTORNEY MORRIS:  Can we scroll up to

 6    paragraph 16, please.

 7                Do you see paragraph 16 concerns

 8    material nonpublic inside information?

 9          A.    Yes.

10          Q.    And was Mr. Dondero the source of the

11    information in this particular paragraph?

12          A.    No.

13          Q.    Who was?

14          A.    My attorneys.

15          Q.    That's how you learned about it; is

16    that fair?

17          A.    Yes.

18          Q.    Do you see there's a reference to a

19    put option in the last line of this paragraph?

20          A.    Yes.

21          Q.    Are you generally familiar with that

22    put option?

23          A.    Yes.

24          Q.    And do you know who the counterparty

25    is for that put option?
```

```
 1          A.    No, I don't.

 2          Q.    You don't know?

 3          A.    No.

 4          Q.    Did you ever ask?

 5          A.    I'm sure when we --

 6                ATTORNEY OKIN:  Louis, you're not on

 7     mute, by the way.

 8     BY ATTORNEY MORRIS:

 9          Q.    Go ahead, Ms. Diaz.  I'm sorry.

10          A.    I'm sure when we received the

11     contribution, we asked.  And you can ask our CFO

12     that question.

13                My understanding from the original

14     call in Labor Day weekend to our attorney was

15     that we should call the put.  That was a 10-year,

16     I believe, and this would have been at year 7;

17     and we didn't understand why he would be calling

18     to ask that.  And ...

19          Q.    Has the Dallas Foundation exercised

20     the put as of today?

21          A.    Absolutely not.

22          Q.    Why not?

23          A.    We stopped all activity because this,

24     again, was the beginning of, why is somebody

25     doing that, not giving us the information, not
```

```
 1      talking to us directly; and that -- and at advice

 2      of counsel, we -- we have been very careful with

 3      any of our activities to date.

 4           Q.    And do you know what material

 5      nonpublic inside information Mr. Patrick

 6      supposedly misused?

 7           A.    I'll just tell you the quote he gave

 8      us, which was Jim Dondero's spiraling out of

 9      control and you need to do this because nothing

10      appears to be what it is.

11           Q.    He didn't tell you who -- withdrawn.

12                 Is that your basis for alleging that

13      he had material nonpublic inside information --

14           A.    I'll -- well, I guess, I can't

15      abstain.  I don't know.

16           Q.    Do you have any other --

17           A.    If my --

18           Q.    I'm sorry.

19           A.    Well, if my attorney says, "Don't do

20      that," we don't do it.

21           Q.    I appreciate that.  I don't quarrel

22      with you.  I'm just trying to learn facts here.

23                 Can you identify any information that

24      you believe Mr. Patrick had that constitutes

25      material nonpublic inside information, as that
```

1    phrase is used in the Dallas Foundation's

2    objections?

3         A.    Right.

4              ATTORNEY OKIN:  Hold on, John.  I

5    assume you're not -- I assume we're talking about

6    information that's no longer nonpublic?

7              ATTORNEY MORRIS:  If -- if you all

8    want to mark this -- I don't know what it is,

9    Matt, so I can't say.  And it's not my

10   information either.  So I'm happy to mark it

11   confidential if you really prefer.

12             ATTORNEY OKIN:  I -- I don't even know

13   if she knows the answer to the question.

14        A.    I don't know the answer to that.  But

15   I will tell you that we quickly got a call from

16   Skyview saying that Mark Patrick was no longer

17   employed there and that that was confidential,

18   yeah, insider information.

19   BY ATTORNEY MORRIS:

20        Q.    Oh, so somebody at Skyview told you

21   that; is that fair?

22        A.    That's fair.

23        Q.    And who was that at Skyview?

24        A.    Well, it was an attorney for Skyview.

25        Q.    Was it D.C. Sauder?

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc

Case 3:25-cv-02072-S   Document 18-24   Filed 06/30/25   Page 112 of 271   PageID 3125 L.P.

Exhibit 24   Page 80 of 102 Capital Markets, L.P.

```
 1          A.    No.  A woman.

 2          Q.    Okay.  So a female attorney at Skyview

 3    told you that Mark Patrick had been terminated

 4    and that he had material nonpublic inside

 5    information.

 6                Do I have that right?

 7          A.    That they were investigating him and

 8    understood that we had called the -- he had

 9    called -- told us to call the put option.

10          Q.    Okay.  But as you sit here today,

11    you're not able to tell me what material

12    nonpublic inside information Mr. Patrick

13    supposedly had; fair?

14          A.    Fair.

15                ATTORNEY MORRIS:  Ma'am, thank you so

16    much.  I appreciate your time.

17                Matt, thank you for a professional

18    deposition.

19                We'll see you all, I guess, in a

20    little bit for the next deposition.

21                Thanks, folks.

22                THE COURT REPORTER:  Do you want a

23    copy of the transcript?

24                ATTORNEY OKIN:  Yes, rushed, please.

25    Whenever John gets it.
```

```
 1              ATTORNEY PHILLIPS:  Yes, expedited,

 2     like everybody else.

 3              THE COURT REPORTER:  Mr. Lang, do you

 4     want a copy of the transcript?

 5              ATTORNEY LANG:  Yes, please.

 6              (Whereupon, at 3:08 p.m. Central

 7              Time, the proceedings concluded.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              INSTRUCTIONS TO DEPONENT

 2              After reading this volume of your

 3     deposition, indicate any corrections or changes

 4     to your testimony and the reasons therefor on the

 5     Errata Sheet supplied to you and sign it.  DO NOT

 6     make marks or notations on the transcript volume

 7     itself.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                 E R R A T A

 2

 3          I wish to make the following changes,

 4     for the following reasons:

 5   Page  Line

 6   _____  _____   CHANGE: _____

 7   REASON: _____

 8   _____  _____   CHANGE: _____

 9   REASON: _____

10   _____  _____   CHANGE: _____

11   REASON: _____

12   _____  _____   CHANGE: _____

13   REASON: _____

14   _____  _____   CHANGE: _____

15   REASON: _____

16   _____  _____   CHANGE: _____

17   REASON: _____

18   _____  _____   CHANGE: _____

19   REASON: _____

20   _____  _____   CHANGE: _____

21   REASON: _____

22   _____  _____   CHANGE: _____

23   REASON: _____

24

25
```

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 16-8    Filed 06/04/25    Page 116 of 271    PageID 3129
Deposition of 3:25-cv-02072-S    Document 16-8    Filed 06/04/25    Page 116 of 271    Highland Capital Management L.P.

```
 1

 2

 3                 C E R T I F I C A T I O N

 4

 5

 6            I hereby certify that I have read the

 7     foregoing transcript of my deposition testimony,

 8     and that my answers to the questions propounded,

 9     with the attached corrections or changes, if any,

10      are true and correct.

11

12     -----------------------------------
       JULIE DIAZ
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1
2              CERTIFICATE OF SHORTHAND REPORTER
3
4
5              I, Gail Inghram, Registered Diplomate
6     Reporter, Certified Realtime Reporter, Realtime
7     Systems Administrator, CA-Certified Shorthand
8     Reporter No. 8635, and Notary Public, the officer
9     before whom the foregoing proceedings were taken,
10    do hereby certify that the foregoing transcript
11    is a true and correct record of the proceedings;
12    that said proceedings were taken by me
13    stenographically and thereafter reduced to
14    typewriting under my supervision; and that I am
15    neither counsel for, related to, nor employed by
16    any of the parties to this case and have no
17    interest, financial or otherwise, in its outcome.
18
19
20
21    _____
      Gail Inghram,
22    BA, RDR, CRR, RSA, CA-CSR No. 8635
23
24
25
```

## WORD INDEX

**< $ >**
**$25** 43:2 56:20
**$300** 42:24

**< 1 >**
**1** 6:14 63:8, 9
**1:37** 1:16 2:11
**10** 12:20
**10010** 3:24
**10017-2024** 3:16
**10-year** 76:15
**11** 1:8
**1113** 4:10
**15** 6:18
**16** 75:6, 7
**1600** 5:9
**1700** 4:18
**19-34054-sgj11** 1:5
**1st** 10:1

**< 2 >**
**2:37** 70:10
**2011** 21:9
**2019** 10:9
**2024** 10:1
**2025** 1:15 2:10
**212.849.7615** 3:25
**214.817.4500** 4:20
**22** 1:15 2:10
**225.381.9643** 5:11
**22nd** 3:23
**2390** 4:18
**240** 4:10

**< 3 >**
**3:08** 80:6
**300-plus** 56:19
**301** 5:9
**30th** 29:14
**310.277.6910** 3:17
**32** 63:6, 14 68:8, 9, 23
**33** 70:5, 21 73:9
**34** 74:5
**34th** 3:15

**< 4 >**

**4:07** 70:11
**40** 27:24 29:6

**< 5 >**
**51** 3:23

**< 6 >**
**63** 6:14

**< 7 >**
**7** 76:16
**70801** 5:10
**713.228.4100** 4:12
**75201** 4:19
**77002** 4:11
**780** 3:15

**< 8 >**
**8** 6:6
**8635** 1:22 84:8, 21

**< 9 >**
**90** 70:17
**9th** 65:25

**< A >**
**able** 48:23 79:11
**Absolutely** 76:21
**abstain** 18:7 72:10 77:15
**abstention** 72:18
**accepting** 44:12
**access** 28:2
**accommodate** 9:15
**accounting** 24:15
**accounts** 25:18, 25 26:2, 5, 8 27:18, 21 29:24 30:3, 6, 10, 13, 18, 23 44:16, 24 45:6 61:17, 21 62:2
**acted** 74:10
**acting** 17:24 18:5, 23 31:6 74:10, 17
**action** 69:2, 6, 15
**actions** 31:12 67:21 68:3, 21
**activities** 22:23 27:25 77:3

**activity** 14:1 24:12, 25 25:1 27:23 65:23 76:23
**ADAMS** 4:9
**additional** 20:24 70:13
**Administrator** 84:7
**advice** 19:18 77:1
**aegis** 58:3
**affidavit** 22:13
**affiliated** 9:21 11:21 45:19
**affiliates** 10:14, 15 11:25 53:6
**affirmed** 8:6
**afternoon** 8:12
**agendas** 16:7
**ago** 50:17 65:1
**agree** 33:21
**agreed** 23:18
**agreement** 10:18, 23 11:6, 9, 22 14:3, 6, 7 36:15, 18, 20, 22, 25 37:9, 12, 14, 16 38:5, 20 39:1, 10, 22 40:10, 19, 25 42:7 44:6 46:2, 17, 21 51:1, 11, 15, 18 53:4, 9, 19, 22 54:7, 10, 25 57:5, 15, 24 58:8 59:20, 25 60:5, 18 62:3 66:21 67:7 69:16 71:21 72:1 74:16, 19, 24 75:2
**ahead** 56:11 76:9
**ahurt@kellyhart.com** 5:7
**alleging** 77:12
**allocated** 29:3
**allow** 9:2, 7
**AMELIA** 5:6
**amount** 23:18
**ample** 74:9
**ancillary** 65:23
**annuities** 26:10, 21, 25 27:4, 6, 14 29:7
**annuity** 26:13, 17 28:18, 21
**ANSWER** 7:3 9:4, 8 18:9 19:17, 19 32:25

33:3 35:21 39:11, 16 42:8 43:11 46:9, 12 48:24 52:2 55:6 56:11 72:16, 19, 20, 21, 22 73:14, 15 74:2 78:13, 14
**answering** 18:7 72:10
**answers** 48:21 83:8
**anticipate** 70:7
**anybody** 18:4, 22 25:9 30:1, 20 39:7, 19, 24, 25 40:13 46:7, 14 60:11 66:3, 9 70:13
**apologize** 20:15 33:2 59:4 65:16 71:13, 14
**apparent** 67:23
**appear** 63:16 66:14
**appearance** 44:17 66:10
**appeared** 3:2 32:1 33:5 44:14
**appears** 77:10
**appointed** 63:22 64:1
**appreciate** 18:10 25:3 39:18 49:4 77:21 79:16
**appreciated** 57:25
**approval** 30:21
**approve** 29:12 61:9, 13, 21
**approved** 36:16 37:22 38:5, 20 41:24 42:7 43:18 65:4 69:16 70:22
**Approving** 6:17
**approximately** 2:11
**April** 10:1
**arising** 54:10
**arm's-length** 51:3, 19
**articulate** 56:2
**aside** 69:15
**asked** 25:4 32:22 39:7 46:6, 14 59:4 66:9 76:11
**asking** 25:3 29:16 40:12 48:18 49:11
**asserting** 69:14

Case 19-34054-sgj11 Doc 4277-1 Filed 06/24/25 Entered 06/24/25 10:20:25 Desc

Case 3:25-cv-02072-S Document 1-28 Filed 08/05/25 Page 119 of 271 PageID 2122
Exhibit 24 Filed 08/05/25 Page 119 of 271 Capital Management, L.P.

**assertion** 53:*3*
**asserts** 71:*18*
**asset** 22:*11* 48:*5*
**assets** 18:*16* 24:*25*
26:*9* 36:*17, 19* 37:*5,*
*8, 21* 38:*4, 9, 11, 19,*
*25* 39:*9, 21* 40:*8, 15,*
*24* 41:*3, 8, 18* 42:*6,*
*24* 44:*3, 5, 7* 45:*25*
46:*16* 47:*13, 23* 48:*3*
53:*15, 16* 56:*14, 16*
57:*1* 58:*3* 67:*24*
**assume** 78:*5*
**assumed** 58:*16*
**assuming** 36:*19* 48:*2*
54:*11*
**Atlas** 41:*4, 9, 12, 16*
42:*1* 47:*7* 48:*6*
49:*13*
**attached** 63:*11* 83:*9*
**Attorney** 6:*6* 8:*11,*
*16* 19:*16, 22* 31:*5, 14,*
*17, 18, 20, 24* 35:*19,*
*20* 36:*3, 5, 11, 13*
37:*24* 38:*1, 7, 14*
39:*2, 4, 11, 15* 41:*1, 6*
42:*16, 18* 43:*23* 44:*1*
46:*3, 5, 8, 10, 11*
48:*10* 49:*3, 5, 24*
50:*1, 13, 15* 51:*25*
52:*1, 8, 9* 54:*16, 18*
55:*1, 5, 14, 16, 21, 23*
56:*5, 7, 9* 57:*2, 7, 11,*
*17, 20* 58:*9, 12* 59:*10,*
*13* 60:*7, 10, 19, 22*
62:*4, 7, 11* 63:*5, 12*
64:*4, 8, 11* 66:*23*
67:*1, 12, 14* 69:*18, 20*
70:*4, 6, 9, 12, 14, 18,*
*19, 20* 71:*10, 13, 15*
72:*9, 11, 13, 15, 17, 20*
73:*1, 12, 13, 15, 19*
74:*6, 8, 20, 22* 75:*5*
76:*6, 8, 14* 77:*19*
78:*4, 7, 12, 19, 24*
79:*2, 15, 24* 80:*1, 5*
**attorneys** 75:*14*
**audible** 74:*1*

**authority** 57:*4, 9, 14*
58:*15* 67:*10* 74:*11,*
*18*
**authorization** 31:*2*
66:*20*
**authorized** 19:*3*
37:*15* 52:*21, 25*
53:*25* 54:*19* 63:*17*
71:*7, 12*
**authorizing** 12:*6*
**available** 26:*17*
**Avenue** 3:*15, 23* 4:*18*
**avoidance** 68:*3, 21*
69:*2, 6, 15*
**aware** 8:*20* 10:*7, 11,*
*17* 11:*3, 4, 8, 11, 12,*
*20* 12:*9, 23* 22:*12*
23:*7* 24:*3, 6* 25:*16*
30:*12* 34:*12, 16*
36:*14* 47:*13, 23* 48:*5*
49:*16* 50:*16, 25* 51:*4,*
*8* 53:*18* 54:*6* 55:*11,*
*17* 63:*21* 64:*16, 18*
65:*2, 19, 22* 71:*2, 23*
72:*3*

**< B >**
**BA** 1:*22* 84:*21*
**back** 10:*8* 47:*22*
69:*14*
**backdrop** 56:*17*
**bad** 62:*18*
**BANKRUPTCY** 1:*1*
10:*8, 12* 32:*2, 6* 33:*6,*
*15* 34:*13* 38:*6* 44:*14,*
*18, 22* 45:*1* 50:*17*
69:*16*
**Barbara** 20:*11, 22*
21:*3, 7, 12, 16* 22:*8*
**BARTLETT** 4:*9*
**based** 53:*2* 56:*12*
**basically** 13:*14*
**basis** 13:*25* 43:*7*
53:*17* 55:*24* 56:*3*
77:*12*
**Baton** 5:*10*
**beginning** 2:*11* 76:*24*
**behalf** 3:*4, 19* 4:*3,*
*14* 5:*3* 11:*9, 13*
12:*10* 17:*25* 18:*5, 23*

23:*3, 14* 24:*8, 9, 23*
25:*6, 17* 27:*17, 21*
29:*23* 30:*2, 6, 7, 22*
31:*22* 46:*20* 54:*1, 20*
57:*5, 15* 58:*22* 59:*8*
74:*19* 75:*2*
**behavior** 42:*25*
**believe** 13:*23* 18:*4*
20:*1* 32:*3, 15, 20*
35:*15, 25* 36:*7* 37:*19*
38:*2* 40:*22* 41:*8, 22*
50:*10* 51:*22* 54:*2*
57:*3* 58:*20* 59:*5, 14,*
*21* 62:*25* 66:*18* 67:*4,*
*9* 71:*24* 74:*16, 25*
76:*16* 77:*24*
**believed** 18:*23*
**best** 14:*22* 21:*18, 22*
22:*3* 27:*5* 32:*4, 9*
33:*4* 35:*3, 7, 10*
72:*20*
**bit** 62:*20* 67:*15*
79:*20*
**block** 31:*21*
**bottom** 67:*16*
**Bradshaw** 22:*8*
**breaching** 74:*25*
**break** 9:*14, 16*
**bring** 50:*18*
**bringing** 73:*23*
**business** 23:*21* 49:*18*
58:*1*
**buy** 70:*24* 72:*7*
73:*10*

**< C >**
**CA-Certified** 84:*7*
**CA-CSR** 1:*22* 84:*21*
**calendar** 65:*5, 6*
**call** 63:*7* 76:*14, 15*
78:*15* 79:*9*
**called** 10:*5* 12:*10*
20:*7, 19* 34:*13, 17*
35:*6, 12* 79:*8, 9*
**calling** 76:*17*
**CAPITAL** 1:*6* 3:*4*
8:*16* 10:*5, 7* 21:*9*
34:*24* 35:*2, 16, 25*
36:*7* 50:*19* 51:*24*

52:*18* 53:*5* 55:*19*
73:*2*
**careful** 77:*2*
**carefully** 18:*20*
**Carrera** 22:*7*
**Case** 1:*5* 32:*2, 6*
33:*6, 15* 42:*22* 66:*11,*
*14, 17* 84:*16*
**cases** 65:*14*
**cash** 27:*3, 6* 36:*17*
44:*10*
**cause** 71:*23*
**caused** 29:*22*
**caution** 19:*17*
**Cayman** 20:*4* 21:*21*
22:*13* 23:*1* 42:*23*
56:*18* 63:*22* 64:*13*
68:*3, 15*
**ceased** 23:*22* 24:*12*
**Central** 1:*16* 2:*11*
80:*6*
**CEO** 9:*23, 25* 10:*2*
22:*6, 7, 8* 31:*3*
**CEOs** 22:*4*
**certain** 8:*19* 10:*14*
25:*18* 38:*19* 50:*18*
62:*24*
**Certainly** 47:*6*
**CERTIFICATE** 84:*2*
**Certified** 2:*14, 15*
84:*6*
**certify** 83:*6* 84:*10*
**cetera** 43:*17*
**CFO** 15:*22* 76:*11*
**chance** 63:*2*
**change** 42:*10* 82:*6, 8,*
*10, 12, 14, 16, 18, 20,*
*22*
**changes** 24:*16* 50:*11*
53:*14* 81:*3* 82:*3*
83:*9*
**changing** 47:*10*
**Chapter** 1:*8*
**charitable** 13:*23*
14:*1* 24:*25* 26:*12*
38:*8* 42:*24* 57:*1*
67:*24*
**chart** 48:*13*
**chief** 31:*3*

**City** 20:*11, 20* 21:*3, 5, 6, 11, 16* 22:7
**claim** 32:*5, 18* 33:*14* 44:*21, 25* 53:*4, 7* 55:*12, 18*
**Claimant** 3:*5* 32:*12, 16, 21* 33:*20, 24* 34:*14, 17, 20* 35:*7, 13* 45:*4, 7, 14* 52:*5* 55:*20* 73:*3, 24*
**claimed** 53:*12*
**claims** 50:*18* 69:*10* 73:*23*
**clarify** 10:*20*
**CLARITY** 7:*22*
**clawback** 68:*2, 20* 69:*2, 6*
**clawing** 69:*14*
**clear** 33:*3* 34:*5* 65:*10*
**clearly** 31:*21*
**clients** 31:*8* 62:*17*
**cold** 48:*15*
**come** 73:*18*
**commenced** 21:*21* 22:*15*
**commitment** 23:*23*
**common** 23:*21*
**communicate** 24:*12*
**communicated** 58:*16, 17, 21* 64:*22*
**communication** 24:*14* 28:*3*
**community** 14:*19* 20:*13* 21:*2, 4* 22:*9, 14*
**company** 10:*4*
**complete** 37:*4*
**compliance** 38:*10*
**concern** 42:*5* 54:*14, 23*
**concerned** 27:*24* 42:*20, 22* 65:*23*
**concerning** 51:*14*
**concerns** 75:*7*
**concluded** 80:*7*
**confer** 25:*10*
**confidential** 78:*11, 17*
**confused** 64:*6*
**confusing** 16:*4*

**connection** 8:*18* 23:*25* 52:*13* 71:*20*
**consent** 16:*7* 30:*21* 57:*23* 59:*7* 62:*2* 67:*6*
**consider** 66:*7*
**considering** 73:*22*
**constitutes** 77:*24*
**consult** 9:*17*
**consummation** 70:*23* 72:*6* 73:*9*
**Cont'd** 4:*1* 5:*1*
**contend** 52:*17* 53:*21*
**contends** 50:*25* 53:*18*
**context** 18:*11*
**continue** 49:*3*
**contractual** 13:*21* 34:*23* 35:*2, 6, 11* 45:*10, 13*
**contractually** 58:*14*
**contribution** 43:*14* 76:*11*
**contributions** 13:*24* 14:*9* 21:*8*
**control** 56:*15* 60:*24* 61:*6, 17* 77:*9*
**controlled** 47:*17* 49:*12*
**controls** 47:*20*
**conversations** 39:*13*
**convey** 46:*16*
**conveying** 19:*18*
**copy** 25:*13* 66:*3* 79:*23* 80:*4*
**corporate** 50:*2* 69:*7*
**corporations** 64:*17*
**correct** 15:*1* 16:*2* 32:*7* 33:*8, 16, 20* 47:*24* 52:*19* 70:*9* 83:*10* 84:*11*
**corrections** 81:*3* 83:*9*
**correctly** 74:*13*
**counsel** 19:*19* 29:*13* 39:*13* 77:*2* 84:*15*
**counterpart** 18:*13*
**counterparty** 75:*24*
**couple** 50:*16*
**COURT** 1:*1* 10:*12* 37:*9, 23* 38:*6* 43:*18* 50:*17* 63:*23* 69:*17*

70:*22* 72:*6* 73:*8* 79:*22* 80:*3*
**Court-appointed** 67:*17* 68:*1*
**COVID** 62:*14*
**CRAWFORD** 4:*17*
**created** 67:*22*
**Crown** 4:*3* 6:*15* 25:*18, 21, 22* 26:*9* 27:*18, 25* 28:*5, 9, 15* 30:*13, 16, 21* 31:*1, 9, 12, 23* 34:*2, 7* 37:*6, 8* 41:*25* 43:*1* 44:*13, 20* 45:*3, 9, 12, 20, 24* 46:*15* 49:*9, 10, 20* 57:*23* 58:*7* 59:*7, 15, 22* 60:*15* 61:*5, 12, 16, 20*
**CRR** 1:*22* 84:*21*
**cumbersome** 62:*21*
**CURRY** 4:*7, 9*

**< D >**
**D.C** 78:*25*
**DAF** 20:*8* 64:*15*
**DALLAS** 1:*3* 4:*3, 19* 6:*14* 8:*18* 9:*21, 25* 10:*11, 18, 23* 12:*3, 11, 15, 16, 18, 21* 13:*5, 7, 8, 10, 13, 15, 18, 20, 22* 14:*4, 8, 9, 13, 23* 15:*2, 6, 8, 9, 19* 16:*3, 4* 17:*5, 21, 25* 18:*1, 6, 24* 20:*12, 23, 25* 21:*2, 5, 6, 11, 16* 22:*20* 23:*14, 24* 24:*4, 7, 8, 21, 22* 25:*4, 5, 8, 16, 25* 27:*1, 7, 11, 12, 16, 20* 28:*4, 8, 21, 23* 29:*23* 30:*1, 7, 20* 31:*7, 9, 15, 22, 25* 32:*5, 15, 20* 33:*5, 14, 19, 23* 34:*19, 22* 35:*1, 5, 11, 18* 36:*2, 9* 37:*10, 20* 38:*3, 24* 39:*8, 20* 40:*8, 17, 22* 41:*22* 42:*4, 11, 12, 13* 43:*20, 21* 45:*21* 48:*25* 49:*6, 15, 18, 23* 50:*4, 12* 52:*16* 53:*3,*

*18, 21* 54:*1, 13, 20, 22* 55:*12, 18, 25* 56:*4* 57:*22* 58:*6, 21* 59:*6, 15, 17* 60:*2, 23* 61:*8* 62:*9, 22* 65:*19* 66:*4* 68:*22* 69:*9, 13* 71:*3, 6, 18* 72:*5* 73:*8, 18, 22* 76:*19* 78:*1*
**D'AMBRA** 5:*14*
**date** 56:*15* 77:*3*
**DAVID** 4:*7*
**day** 43:*12* 65:*9* 76:*14*
**dcurry@okinadams.com** 4:*8*
**de** 22:*11*
**dealings** 49:*18*
**Debbie** 22:*6*
**Debtor** 1:*8* 70:*24* 72:*8* 73:*11, 17*
**decided** 43:*19*
**decision** 17:*6* 25:*11*
**decisions** 56:*24*
**declaration** 22:*13, 20* 23:*1*
**decline** 29:*17, 19, 22*
**Defendant** 4:*3, 14*
**definitively** 40:*5*
**Delaware** 64:*17, 20*
**DEMO** 3:*8*
**DEPONENT** 81:*1*
**deposed** 8:*22*
**DEPOSITION** 1:*13* 2:*9* 7:*1* 8:*17* 11:*18* 12:*1* 45:*17* 79:*18, 20* 81:*3* 83:*7*
**depositions** 62:*16*
**described** 37:*21* 42:*10* 43:*9* 50:*4*
**detail** 65:*14*
**DIAZ** 1:*14* 2:*9* 6:*5* 8:*5, 12* 19:*17* 31:*10, 25* 36:*22* 39:*12* 46:*9, 12* 48:*16* 58:*13* 62:*12* 64:*4* 71:*16* 72:*21* 76:*9* 83:*12*
**different** 43:*16* 48:*21*
**diminished** 38:*11*
**Diplomate** 2:*14* 84:*5*

Case 19-34054-sgj11    Doc 4277-1    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 4-124    Filed 08/05/25    Page 121 of 271    PageID 5234
Exhibit 24    Page 88 of 102    Dondero - HarbourVest 30(b)(6) & Individual Capacity, Vol. I, 6/14/2021, J.P.

**DIRECT** 7:*23* 32:*20* 59:*18, 23*

**directed** 21:*25* 22:*2*

**direction** 2:*16*

**directly** 28:*22* 49:*16* 77:*1*

**disburse** 41:*18* 42:*1*

**disbursement** 28:*17*

**disclosed** 24:*4*

**disclosing** 39:*13*

**discussions** 20:*1*

**disrespectful** 65:*16*

**DISTRICT** 1:*2*

**diverting** 67:*24*

**DIVISION** 1:*3*

**document** 41:*7* 52:*24* 55:*2* 63:*1*

**DOCUMENTS** 7:*7* 16:*16* 40:*21* 62:*19*

**doing** 31:*22* 56:*18* 66:*7* 70:*12* 76:*25*

**dollars** 56:*19*

**donation** 13:*2, 4*

**donations** 13:*22*

**Dondero** 12:*24* 13:*1, 3, 4* 14:*12* 15:*21* 16:*7, 25* 17:*4, 20, 24* 18:*4, 22* 19:*6* 21:*10, 25* 22:*12* 25:*10* 40:*7* 75:*10*

**Dondero's** 23:*1* 77:*8*

**donor-advised** 13:*13*

**dramatic** 24:*16*

**Dugaboy** 4:*14*

**duly** 8:*6*

**duties** 35:*17* 36:*1, 8* 49:*22*

**duty** 50:*12* 58:*5*

**< E >**

**earlier** 27:*22* 50:*3*

**effectuated** 50:*10*

**effectuates** 13:*14*

**either** 38:*11* 59:*6* 78:*10*

**EMANUEL** 3:*22*

**employed** 78:*17* 84:*15*

**employee** 45:*21*

**Empower** 12:*10, 15, 16, 21* 13:*5, 7, 20* 14:*4, 9, 13, 23* 15:*2, 9, 19* 16:*3, 4* 24:*8, 10, 21* 25:*4, 8* 27:*1, 7, 12* 28:*21*

**engaged** 18:*13* 72:*4*

**ensure** 38:*12*

**enter** 22:*10* 57:*4, 10, 14* 61:*23*

**entered** 51:*1* 61:*10, 13*

**entering** 57:*24* 58:*7* 59:*8* 62:*2* 66:*20* 67:*6* 71:*25* 74:*18* 75:*1*

**entities** 11:*21* 12:*1* 17:*7, 8* 20:*16* 21:*20, 25* 22:*2* 36:*15, 16* 41:*24* 43:*16* 46:*1, 19, 20, 25* 47:*3* 48:*13* 49:*8, 11, 12, 13, 14, 17, 22* 50:*11* 51:*2, 7* 54:*7, 8* 57:*6, 16* 58:*5* 59:*9, 19, 24* 60:*4, 17, 25* 61:*6, 10, 14, 18, 22* 62:*1* 64:*17, 19* 65:*4* 67:*22* 71:*24* 74:*19* 75:*3*

**entitled** 14:*8* 38:*24*

**entity** 12:*10, 13* 13:*11* 15:*17* 17:*1, 3* 20:*7* 34:*13, 17* 35:*6, 12* 41:*12, 16* 47:*24* 49:*10* 55:*13* 63:*25* 64:*3, 12*

**Entry** 6:*16* 71:*20*

**erosion** 56:*14*

**Errata** 81:*5*

**ESQ** 3:*6, 8, 10, 12, 20* 4:*5, 7, 15* 5:*4, 6*

**essence** 24:*11*

**essentially** 27:*23*

**established** 69:*1*

**et** 43:*17*

**everybody** 80:*2*

**evidence** 74:*10*

**exactly** 70:*10*

**EXAMINATION** 6:*4*

**8:*10**

**examined** 8:*8*

**excuse** 16:*1* 18:*8*

**executed** 10:*22*

**exercise** 15:*11*

**exercised** 76:*19*

**Exhibit** 63:*9*

**existence** 12:*19*

**expect** 70:*10*

**expectations** 42:*12*

**expected** 41:*13*

**expedited** 80:*1*

**expenses** 23:*19, 24*

**expensive** 62:*20*

**expert** 68:*15, 20*

**expressed** 54:*23*

**extent** 48:*25*

**< F >**

**fact** 56:*13*

**facts** 17:*18, 21* 51:*13, 17* 55:*11, 17* 57:*12* 69:*1, 5* 71:*23* 72:*3* 73:*6* 77:*22*

**fail** 9:*8*

**fair** 9:*5, 19* 19:*7, 8* 26:*18* 32:*14, 17* 33:*11* 34:*18* 37:*17, 18* 40:*13* 42:*4* 43:*5* 44:*8* 50:*5, 23, 24* 52:*11, 13, 25* 54:*15* 59:*2, 3* 65:*12* 68:*16, 17, 23, 24* 69:*22* 70:*2* 75:*16* 78:*21, 22* 79:*13, 14*

**fairly** 62:*23*

**fall** 24:*13*

**familiar** 10:*4* 12:*13* 14:*25* 15:*25* 19:*2, 3* 26:*4* 36:*24* 46:*24* 47:*2, 4* 52:*24* 64:*21* 75:*21*

**familiarity** 22:*19* 47:*5*

**Family** 15:*24* 16:*22* 24:*10* 27:*2, 13* 28:*22*

**fault** 34:*4*

**feeds** 34:*1*

**feel** 48:*8*

**female** 79:*2*

**fiduciaries** 24:*24* 73:*25*

**fiduciary** 28:*13* 38:*9* 67:*17* 68:*1* 74:*12* 75:*1*

**file** 24:*7, 22* 25:*5* 27:*20* 29:*23* 30:*2*

**filed** 10:*8, 12* 12:*4, 10* 22:*12* 24:*9* 25:*14, 17* 27:*17* 30:*7* 31:*7, 15* 32:*2, 5* 33:*6, 14* 42:*3* 44:*17, 20, 25* 50:*16* 52:*25* 65:*25* 71:*8, 12*

**filing** 12:*7* 19:*9* 22:*10* 30:*22* 52:*14, 21* 54:*1, 20* 58:*18, 22*

**finance** 29:*3*

**financial** 84:*17*

**find** 48:*20* 55:*3*

**fine** 55:*4* 64:*9*

**finish** 9:*3, 7* 70:*11*

**first** 8:*6*

**first-quarter** 29:*13*

**flag** 24:*17*

**Floor** 3:*15, 23*

**flow** 13:*12* 26:*14* 37:*6, 8* 41:*4* 53:*13*

**flowed** 47:*7*

**Flows** 26:*15* 29:*2* 56:*16*

**focus** 49:*11*

**focused** 34:*5*

**Focusing** 74:*15, 23*

**folks** 79:*21*

**following** 82:*3, 4*

**follows** 8:*8*

**foregoing** 83:*7* 84:*9, 10*

**form** 35:*19* 36:*3, 11* 37:*24* 38:*7* 39:*2* 41:*1* 42:*16* 43:*23* 46:*3* 49:*24* 50:*13* 51:*25* 52:*8* 54:*16* 55:*1, 14, 21* 56:*5, 10* 57:*7, 17* 58:*9* 59:*10* 60:*7, 19* 62:*4* 66:*23* 67:*12* 69:*18* 72:*9* 73:*12* 74:*20*

formal  22:*10*
**Formally**  10:*1*
**formation**  18:*12*
**formed**  12:*21*  34:*14*,
*18*  64:*19*
forth  17:*18*, *21*
*42*:*12*  44:*5*
**forward**  38:*12*
**found**  29:*16*
**Foundation**  4:*3*  6:*15*
*9*:*22*, *25*  10:*3*, *12*, *18*,
*23*  12:*11*, *15*, *16*, *18*,
*22*  13:*5*, *7*, *8*, *11*, *14*,
*21*, *22*  14:*4*, *5*, *8*, *14*,
*23*  15:*2*, *4*, *6*, *8*, *9*, *19*,
*24*  16:*4*, *22*  18:*1*, *6*,
*24*  20:*11*, *12*, *14*, *21*,
*22*, *23*, *25*  21:*2*, *3*
*22*:*9*  23:*14*, *25*  24:*7*,
*8*, *10*, *21*, *22*  25:*4*, *5*, *8*,
*17*  27:*1*, *2*, *8*, *11*, *12*,
*13*, *16*, *20*  28:*4*, *8*, *22*,
*23*  29:*23*  30:*1*, *7*, *20*
*31*:*7*, *9*, *16*, *22*  32:*1*, *5*,
*15*, *20*  33:*5*, *14*, *19*, *23*
*34*:*19*, *22*  35:*1*, *5*, *11*,
*18*  36:*2*, *10*  37:*10*, *20*
*38*:*3*, *24*  39:*8*, *14*, *20*
*40*:*8*, *17*, *23*  41:*22*
*42*:*14*  43:*20*, *21*
*45*:*22*  49:*6*, *15*, *18*, *23*
*50*:*12*  52:*16*  53:*3*, *18*,
*21*  54:*2*, *13*, *21*, *23*
*55*:*12*, *18*  57:*23*  58:*6*,
*21*  59:*15*, *17*  60:*2*, *23*
*61*:*8*  69:*13*  71:*7*, *18*
*72*:*5*  73:*8*, *18*, *22*
*76*:*19*
**foundations**  21:*2*, *4*,
*12*  26:*18*  29:*4*
**Foundation's**  8:*18*
*12*:*3*  17:*5*, *22*  22:*14*,
*20*  24:*5*  26:*1*  42:*5*,
*11*, *12*  49:*1*  50:*4*
*55*:*25*  56:*4*  59:*7*
*62*:*9*, *22*  65:*20*  66:*4*
*68*:*22*  69:*9*  71:*3*
*78*:*1*
**four**  21:*1*  51:*9*
**fully**  63:*2*

**fund**  13:*8*, *13*  14:*6*, *7*
*23*:*20*, *23*, *24*  26:*11*
*41*:*4*, *9*  53:*14*
**funded**  26:*24*
**fundholder**  14:*17*
**fundholders**  14:*20*
*23*:*19*
**funding**  23:*2*, *7*, *10*,
*13*, *17*
**funds**  14:*2*  16:*3*
*43*:*1*  53:*13*
**fund's**  67:*22*
**further**  67:*15*
**future**  53:*16*

**< G >**
**Gail**  1:*21*  2:*13*  84:*5*,
*21*
**gdemo@pszjlaw.com**
*3*:*9*
**generally**  11:*24*
*36*:*24*  50:*5*  75:*21*
**gentleman**  11:*8*
*50*:*19*
**give**  43:*19*  49:*14*
*55*:*12*  56:*24*  63:*2*
*72*:*15*
**given**  58:*15*
**giving**  76:*25*
**Global**  4:*3*  6:*15*
*25*:*18*, *21*, *22*  26:*9*
*27*:*18*, *25*  28:*5*, *9*, *15*
*30*:*13*, *16*  31:*1*, *9*, *23*
*34*:*2*, *7*  37:*6*, *8*  41:*25*
*43*:*1*  44:*13*, *20*  45:*3*,
*9*, *12*, *20*, *24*  46:*15*
*49*:*9*, *10*, *20*  58:*7*
*59*:*15*, *22*  60:*15*  61:*5*,
*12*, *16*, *20*
**Global's**  30:*21*  31:*12*
*57*:*23*  59:*7*
**go**  23:*21*  28:*21*, *25*
*41*:*9*  56:*11*  76:*9*
**going**  9:*1*  40:*9*
*45*:*16*  47:*22*  48:*16*,
*20*, *21*  51:*8*  62:*7*, *24*
*68*:*12*  70:*7*  71:*10*
**Good**  8:*12*  62:*13*, *14*
**good-faith**  51:*3*, *19*

**governance**  13:*25*
*15*:*3*  29:*1*
**GPs**  43:*17*
**grant**  13:*12*, *14*
**grant-making**  12:*18*
*18*:*15*
**grants**  14:*18*
**GREGORY**  3:*8*
**ground**  8:*24*
**guess**  30:*11*  48:*3*
*77*:*14*  79:*19*

**< H >**
**half**  70:*8*
**HALL**  5:*18*
**HALLMAN**  5:*8*
**happening**  22:*24*
*42*:*25*  56:*25*
**happens**  42:*5*, *20*
*56*:*22*
**happy**  9:*15*  78:*10*
**harm**  73:*18*
**HART**  5:*8*
**HAYLEY**  3:*12*
**head**  39:*6*  50:*8*
**hear**  8:*13*
**heard**  32:*11*
**held**  2:*9*  25:*18*
**he'll**  48:*23*
**help**  48:*14*  72:*14*
**hereto**  63:*11*
**Hernandez**  31:*4*
**high**  26:*6*, *7*  37:*1*, *2*
*38*:*18*
**HIGHLAND**  1:*6*  3:*4*,
*19*  6:*12*, *14*  8:*16*
*10*:*5*, *7*, *14*, *22*  17:*7*
*20*:*12*  21:*6*, *9*  32:*1*, *6*,
*11*, *16*, *21*  33:*6*, *15*, *20*,
*23*  34:*6*, *10*, *13*, *17*, *20*,
*23*  35:*2*, *7*, *12*, *16*, *25*
*36*:*7*, *15*  41:*24*  43:*4*,
*8*, *12*  44:*14*, *17*, *21*, *25*
*45*:*1*, *4*, *7*, *10*, *13*
*46*:*16*  50:*19*, *25*  51:*6*,
*23*  52:*5*, *18*  53:*5*
*54*:*8*  55:*13*, *19*  58:*18*,
*23*  63:*8*, *9*  65:*4*, *8*
*71*:*4*, *9*, *19*, *24*  72:*4*,
*24*  73:*2*, *3*, *23*, *24*

**Highland/HMIT**
*19*:*15*, *24*
**Highland's**  65:*2*
**HMIT**  11:*17*, *21*, *25*
*17*:*7*  36:*16*  37:*21*
*38*:*4*, *18*, *25*  39:*9*, *21*
*40*:*9*, *24*  41:*8*, *19*, *24*
*42*:*6*, *21*  45:*25*  46:*1*,
*16*, *19*  48:*5*  49:*8*, *10*,
*22*  50:*11*, *16*  51:*2*, *7*
*54*:*7*  57:*6*, *15*  58:*4*
*59*:*9*, *19*, *23*  60:*4*, *16*,
*24*  61:*6*, *10*, *14*, *18*, *22*,
*25*  64:*16*, *18*  65:*4*
*74*:*19*  75:*3*
**HMIT/Highland**
*40*:*18*  41:*14*
**hold**  16:*12*  78:*4*
**Holdco**  20:*8*  64:*15*
**holds**  47:*24*
**hour**  70:*8*
**Houston**  4:*11*
**Hunter**  5:*3*  10:*15*
*11*:*4*, *10*, *14*, *16*  34:*1*,
*9*  37:*5*  41:*3*  47:*11*,
*14*, *22*  48:*9*, *17*  49:*13*
*53*:*22*  54:*4*  58:*22*
**HURT**  5:*6*
**hwinograd@pszjlaw.c
om**  3:*13*

**< I >**
**idea**  19:*9*, *12*, *13*, *14*,
*23*
**identification**  63:*10*
**identified**  21:*13*
*25*:*25*  41:*17*
**identify**  10:*21*  11:*1*
*15*:*20*  26:*23*  30:*5*
*41*:*11*  64:*12*  77:*23*
**imagine**  65:*13*
**impact**  42:*2*
**impacted**  41:*23*
**impacts**  43:*1*
**important**  9:*2*
**including**  67:*21*
**income**  26:*11*, *13*
*27*:*7*
**independent**  68:*1*

**INDEX** 7:*1*
**indicate** 81:*3*
**indirect** 32:*21* 60:*3, 6, 16*
**indirectly** 41:*5*
**individual** 16:*8*
**inform** 73:*8*
**information** 17:*25* 18:*5, 14, 24* 19:*6* 58:*2, 6* 75:*8, 11* 76:*25* 77:*5, 13, 23, 25* 78:*6, 10, 18* 79:*5, 12*
**informed** 25:*12* 63:*3* 65:*8* 72:*6*
**Inghram** 1:*21* 2:*13* 84:*5, 21*
**insertion** 67:*21*
**inside** 75:*8* 77:*5, 13, 25* 79:*4, 12*
**insider** 78:*18*
**insignificant** 56:*20*
**INSTRUCTED** 7:*3*
**INSTRUCTIONS** 81:*1*
**Insurance** 4:*4* 25:*19, 22* 26:*10, 21*
**intended** 54:*12*
**interest** 32:*16, 21* 33:*19, 23* 34:*20* 40:*23* 45:*4, 7* 59:*18, 23* 60:*3, 16* 84:*17*
**interested** 18:*18*
**interim** 10:*2*
**interrupt** 31:*5* 48:*10*
**investigate** 25:*2*
**investigating** 79:*7*
**Investment** 4:*14* 5:*3* 10:*15* 11:*5, 10, 14, 17* 47:*12, 14, 23* 53:*23* 54:*4* 58:*23*
**involved** 43:*12, 13* 58:*3*
**involvement** 11:*11* 14:*16, 18* 17:*1, 2* 43:*8*
**irregular** 25:*1* 56:*14*
**irregularities** 24:*14*
**IRS** 13:*11*

**Islands** 20:*4* 21:*21* 22:*13* 23:*1* 42:*23* 56:*18* 64:*13* 68:*15*
**issues** 23:*22* 47:*9* 48:*23*
**its** 12:*7* 13:*23* 15:*3* 18:*1, 6* 24:*23* 25:*5* 27:*20* 42:*13* 52:*16* 53:*5* 73:*24* 84:*17*

**< J >**
**Jackie** 22:*7*
**JAMES** 5:*19* 50:*20*
**JEFFREY** 3:*10*
**Jim** 12:*23*, 25 15:*21* 16:*7* 19:*5* 77:*8*
**jmorris@pszjlaw.com** 3:*7*
**job** 38:*8, 12*
**JOHN** 3:*6* 8:*15* 31:*6* 48:*11* 70:*6* 78:*4* 79:*25*
**joint** 63:*16, 21* 64:*1, 23* 65:*18* 66:*4, 9, 13, 19* 67:*5, 10*
**JONES** 3:*14* 5:*18*
**jpomerantz@pszjlaw.c om** 3:*11*
**JULIE** 1:*14* 2:*9* 6:*5* 8:*5* 83:*12*
**June** 1:*15* 2:*10* 65:*25*
**jurisdiction** 68:*5*
**justify** 31:*12*

**< K >**
**Kansas** 20:*11, 19, 20* 21:*3, 5, 6, 11, 16* 22:*7*
**keep** 48:*15, 18*
**KELLY** 5:*8*
**kind** 14:*3* 33:*19*
**know** 9:*9, 12* 12:*21* 13:*15, 18, 20* 14:*10, 12* 16:*25* 17:*4* 18:*22* 19:*9, 12, 14, 23* 21:*10* 26:*20* 27:*16* 28:*2* 29:*8, 15* 30:*9* 31:*2, 25* 32:*25* 33:*9* 37:*7* 39:*3, 5* 40:*20* 41:*4, 16, 20* 42:*17* 43:*6, 11,*

24 44:*2, 9, 11, 13, 15, 16, 19, 20, 23, 24* 45:*2, 3, 5, 6, 8, 9, 11, 12, 19, 24* 46:*4* 48:*4* 49:*6, 25* 50:*14* 52:*3, 4, 7, 20* 53:*24* 54:*17* 57:*9* 58:*4, 13, 14, 25* 59:*12, 17, 22* 60:*1, 2, 9, 15, 21, 23* 61:*2, 5, 7, 8, 11, 12, 15, 16, 19, 20, 24, 25* 62:*6, 13* 63:*1, 25* 65:*21* 66:*3, 6, 9, 12, 16, 22* 67:*3, 8, 13* 69:*19, 23* 72:*2, 5* 74:*21* 75:*4, 24* 76:*2* 77:*4, 15* 78:*8, 12, 14*
**knowledge** 14:*22* 21:*18* 22:*3* 25:*15* 32:*4, 9* 33:*4, 10, 12, 13, 17, 18, 22* 34:*19* 35:*3, 8, 10* 49:*1* 51:*5, 13, 17*
**knows** 78:*13*

**< L >**
**L.P** 1:*7*
**Labor** 76:*14*
**lack** 53:*12*
**LANG** 4:*15, 17* 80:*3, 5*
**language** 14:*11*
**large** 20:*7, 9*
**law** 68:*16*
**laws** 64:*19*
**lawsuit** 58:*18, 22*
**lawyer** 9:*17* 43:*10* 68:*18*
**lawyers** 46:*9*
**lead** 40:*22*
**leading** 24:*15*
**leads** 41:*8*
**learn** 22:*25* 23:*10* 77:*22*
**learned** 18:*17* 23:*4, 5* 56:*23* 62:*15* 75:*15*
**leave** 43:*17*
**led** 29:*9*
**legal** 23:*19, 22* 31:*3* 43:*16* 57:*14*
**lengthy** 62:*23*

**level** 26:*6, 8* 37:*1, 3* 38:*18*
**liabilities** 54:*9*
**Life** 4:*4* 25:*19, 21*
**likelihood** 69:*13*
**Limited** 25:*19, 22*
**LINE** 7:*4, 8, 13, 17* 75:*19* 82:*5*
**liquidation** 64:*13* 68:*4*
**liquidators** 63:*16, 22* 64:*1, 23* 65:*19* 66:*5, 10, 14, 20* 67:*6, 10*
**liquidity** 56:*16*
**listen** 18:*19*
**lists** 16:*14*
**literally** 16:*14*
**Litigation** 3:*19* 22:*15* 23:*2, 8, 11, 12, 13, 17, 25* 73:*4*
**little** 62:*20* 67:*15* 79:*20*
**LITTLETON** 5:*20* 15:*22* 48:*22*
**Littleton's** 45:*17*
**LLP** 3:*22* 4:*9* 5:*8*
**LOIGMAN** 3:*20*
**long** 19:*18*
**longer** 70:*6* 78:*6, 16*
**look** 31:*20* 65:*5*
**looking** 16:*10, 13*
**losing** 53:*15*
**lot** 18:*11, 14, 18* 44:*12* 56:*15* 65:*13*
**LOUIS** 5:*4* 76:*6*
**Louisiana** 5:*10*
**lower** 29:*15*
**LP** 10:*5, 8* 34:*24* 35:*3, 17* 36:*1, 8* 51:*24* 53:*5* 55:*19* 73:*3*
**lphillips@kellyhart.co m** 5:*5*
**LPs** 43:*17*

**< M >**
**Ma'am** 16:*9* 52:*2, 22* 55:*6* 56:*8* 65:*16* 67:*2* 72:*19* 74:*2*

79:*15*
**Madison** 3:*23*
**Main** 5:*9*
**majority** 15:*7, 8*
**making** 14:*18* 53:*3*
65:*18*
**MANAGEMENT** 1:*6*
3:*4* 8:*16* 10:*5, 8*
14:*13, 15* 18:*16*
34:*24* 35:*3, 17* 36:*1,*
*8* 50:*19* 51:*24* 52:*18*
53:*5* 55:*19* 73:*2*
**managing** 41:*5*
**March** 29:*14*
**Mark** 11:*9* 24:*20*
40:*15* 41:*4* 42:*9*
43:*19* 46:*20* 49:*12*
57:*4* 65:*24* 78:*8, 10,*
*16* 79:*3*
**MARKED** 7:*16*
63:*10*
**MARKS** 7:*22* 81:*6*
**material** 75:*8* 77:*4,*
*13, 25* 79:*4, 11*
**Matt** 64:*8* 72:*13*
78:*9* 79:*17*
**MATTTHEW** 4:*5*
**mean** 12:*25* 14:*15*
28:*13* 46:*20* 55:*2*
65:*15*
**member** 16:*8*
**memory** 48:*19*
**mentioned** 29:*5*
**met** 42:*13* 64:*2*
65:*10*
**MICHAEL** 4:*15*
**million** 42:*24* 43:*2*
56:*19, 20*
**mind** 41:*12* 48:*15*
65:*10*
**minimis** 22:*11*
**minutes** 70:*17*
**misused** 77:*6*
**mlang@cwl.law.com**
4:*16*
**mokin@okinadams.co**
**m** 4:*6*
**money** 23:*16* 42:*1, 20*
**months** 17:*13*
**moot** 66:*17*

**MORRIS** 3:*6* 6:*6*
8:*11, 15* 19:*22* 31:*14,*
*18, 24* 35:*20* 36:*5, 13*
38:*1, 14* 39:*4, 15*
41:*6* 42:*18* 44:*1*
46:*5, 10, 11* 49:*3, 5*
50:*1, 15* 52:*1, 9*
54:*18* 55:*5, 16, 23*
56:*7* 57:*2, 11, 20*
58:*12* 59:*13* 60:*10,*
*22* 62:*7, 11* 63:*5, 12*
64:*8, 11* 67:*1, 14*
69:*20* 70:*4, 9, 14, 19,*
*20* 71:*13, 15* 72:*11,*
*13, 17* 73:*1, 13, 19*
74:*6, 8, 22* 75:*5* 76:*8*
78:*7, 19* 79:*15*
**Motion** 6:*16* 50:*17*
65:*3, 8, 20*
**Mountain** 5:*3* 10:*15*
11:*4, 10, 14, 16* 34:*1,*
*9* 37:*5* 41:*3* 47:*11,*
*14, 22* 48:*9, 17* 49:*13*
53:*23* 54:*4* 58:*23*
**move** 38:*12*
**mute** 70:*16* 76:*7*
**mutual** 54:*14, 24*
**mystery** 44:*7*

**< N >**
**name** 8:*15*
**named** 11:*8* 50:*19*
**NATHAN** 5:*18* 62:*8*
63:*6* 74:*7*
**nature** 22:*23* 44:*11*
51:*6*
**NECESSARILY** 7:*22*
**need** 9:*14, 17* 16:*2*
62:*25* 64:*5* 65:*6*
68:*7* 77:*9*
**needs** 69:*5*
**negotiating** 71:*25*
**negotiation** 51:*14*
**negotiations** 51:*3, 6,*
*20*
**neither** 84:*15*
**never** 32:*5* 33:*5*
**New** 3:*16, 24* 70:*10,*
*11*

**newly** 67:*22*
**news** 62:*13, 15, 18*
**Nods** 50:*8*
**nonpublic** 75:*8* 77:*5,*
*13, 25* 78:*6* 79:*4, 12*
**Nope** 68:*19*
**North** 20:*13* 21:*4*
22:*8*
**NORTHERN** 1:*2*
**Notary** 84:*8*
**notations** 81:*6*
**NOTE** 7:*21*
**notes** 16:*18*
**notice** 44:*17*

**< O >**
**object** 17:*6* 19:*13, 15*
35:*19* 36:*3, 11* 37:*24*
38:*7* 39:*2* 41:*1*
42:*14* 43:*21, 23* 46:*3*
51:*25* 52:*8* 55:*1, 14,*
*21* 56:*5, 9* 57:*7, 17*
58:*9* 59:*10* 60:*7, 19*
62:*4* 66:*23* 67:*12*
69:*18* 71:*11* 72:*9*
73:*12* 74:*20*
**objected** 10:*19, 24*
**objecting** 19:*24*
37:*10*
**Objection** 6:*14* 8:*18*
10:*13* 12:*4, 9* 17:*11,*
*15, 18, 22* 18:*2, 6, 25*
19:*2, 7, 10* 22:*21*
24:*5, 8, 9, 22* 25:*5, 13,*
*17* 26:*1* 27:*17, 21*
29:*23* 30:*2, 7, 22*
31:*6* 32:*2* 33:*7*
37:*15* 42:*3, 11, 13, 16*
49:*24* 50:*4, 13* 52:*15,*
*17, 22* 54:*1, 16, 20, 22*
55:*25* 56:*4, 6, 12*
62:*10, 22, 24* 63:*14*
65:*20, 22* 66:*4* 68:*22*
71:*3, 7, 18*
**objections** 78:*2*
**obligation** 13:*21*
41:*18* 50:*12* 58:*5*
**obligations** 35:*17*
36:*1, 9* 49:*23* 74:*12*
75:*1*

**obtain** 57:*22* 59:*6*
62:*1* 66:*19* 67:*5*
**obviously** 28:*12*
**October** 47:*8*
**offhand** 14:*11*
**office** 29:*3*
**officer** 84:*6*
**officers** 15:*15*
**official** 63:*16, 22*
64:*1, 23* 65:*19* 66:*5,*
*10, 13, 19* 67:*6, 10*
**Oh** 15:*1* 16:*1, 21*
30:*14* 78:*20*
**Okada** 15:*24* 16:*22*
24:*10* 27:*1, 8, 12*
28:*21*
**okay** 8:*13, 24* 17:*4*
18:*19* 19:*16* 28:*20*
33:*13* 34:*8, 11, 16, 21,*
*22* 41:*21* 46:*24* 50:*9*
51:*12* 55:*10* 62:*7*
63:*5, 21* 64:*7* 66:*18*
69:*12* 70:*1, 19* 73:*6*
74:*23* 79:*2, 10*
**OKIN** 4:*5, 9* 19:*16*
31:*5, 17, 20* 35:*19*
36:*3, 11* 37:*24* 38:*7*
39:*2, 11* 41:*1* 42:*16*
43:*23* 46:*3, 8* 48:*10*
49:*24* 50:*13* 51:*25*
52:*8* 54:*16* 55:*1, 14,*
*21* 56:*5, 9* 57:*7, 17*
58:*9* 59:*10* 60:*7, 19*
62:*4* 64:*4* 66:*23*
67:*12* 69:*18* 70:*6, 12*
72:*9, 15, 20* 73:*12, 15*
74:*20* 76:*6* 78:*4, 12*
79:*24*
**once** 37:*4*
**opportunity** 38:*11*
56:*23*
**option** 75:*19, 22, 25*
79:*9*
**Order** 6:*16* 69:*5*
**org** 21:*15* 48:*12*
**organization** 12:*17,*
*19* 13:*10* 15:*18*
16:*23* 26:*24*
**organizations** 16:*11*
20:*17, 24* 21:*7* 22:*4*

23:*3* 26:*15*, *16* 28:*1*
29:*1* 34:*3* 53:*8*, *10*,
*15* 56:*21*
**organization's** 38:*9*
**orgs** 15:*6* 20:*7*, *9*
43:*15*
**original** 43:*14* 76:*13*
**originated** 19:*10*
**outcome** 84:*17*
**outside** 74:*11*, *17*
**oversee** 24:*25*
**overseeing** 24:*12*
**oversees** 14:*1*
**oversight** 15:*7*, *9*, *12*
56:*16*
**owed** 36:*9* 50:*11*
**owes** 35:*17* 36:*1*
49:*22*
**owned** 48:*5*
**owner** 30:*5*, *12*
**ownership** 40:*23*
59:*18*, *23* 60:*3*, *6*, *16*
**owns** 30:*9*, *18* 47:*14*

**< P >**
**p.m** 1:*16* 2:*11* 80:*6*
**PACHULSKI** 3:*14*
5:*18*
**Pacific** 4:*18*
**PAGE** 6:*4*, *12* 7:*4*, *8*,
*13*, *17* 8:*25* 46:*22*
68:*12* 82:*5*
**pages** 6:*18*
**paid** 23:*20*
**paragraph** 63:*6*, *14*
67:*16* 68:*8*, *23* 70:*5*,
*21* 73:*9* 74:*5* 75:*6*, *7*,
*11*, *19*
**Pardon** 56:*8*
**part** 37:*8* 64:*6*
**participated** 32:*23*
**particular** 24:*3*
51:*14* 75:*11*
**parties** 3:*2* 10:*17*, *21*
11:*1*, *4* 18:*18* 63:*17*
71:*4*, *9*, *19* 84:*16*
**parts** 62:*24*
**party** 11:*5*, *22* 56:*15*
59:*19*, *24* 60:*4*, *17*

**Patrick** 11:*9*, *13*
24:*20* 40:*15*, *16* 41:*4*
42:*9* 43:*19* 46:*20*
47:*7*, *17* 49:*12* 50:*6*,
*10* 57:*4*, *13*, *22* 58:*20*
59:*5* 65:*24* 66:*18*
67:*5* 69:*10* 74:*10*, *17*,
*25* 77:*5*, *24* 78:*16*
79:*3*, *12*
**Patrick's** 67:*20*
**PAUL** 5:*14* 31:*4*
**pay** 26:*10*
**peace** 70:*24* 72:*7*
73:*10*, *16*
**pending** 9:*16* 42:*23*
**people** 15:*20* 62:*16*
**percent** 27:*24* 29:*6*
**permission** 50:*18*
**person** 24:*11*, *18*
40:*14* 53:*25* 54:*19*
**personally** 23:*24*
**pertain** 69:*9*
**pertains** 28:*7*
**PHILLIPS** 5:*4*
70:*14*, *18* 71:*10* 80:*1*
**phrase** 46:*19* 68:*21*
78:*1*
**piece** 62:*14*
**play** 14:*21*
**played** 17:*5*
**plays** 14:*12* 16:*7*
**pleading** 31:*15*
**Please** 46:*10*, *13*
62:*8* 70:*5* 75:*6*
79:*24* 80:*5*
**PLLC** 4:*17*
**point** 62:*24*
**policies** 26:*21*
**POMERANTZ** 3:*10*
**portion** 38:*4*, *25*
39:*9* 63:*1*
**position** 31:*11*
**possibly** 48:*15*
**potential** 53:*16*
**practice** 23:*21*
**precise** 18:*21*
**precluded** 66:*15*
**prefer** 78:*11*
**preparation** 52:*14*

**prepare** 18:*25*
**present** 2:*16* 5:*17*
**president** 9:*23*, *24*
15:*3*, *4*, *15*, *16*, *21*, *22*
16:*5* 21:*17*
**pretty** 24:*15*
**Prior** 10:*1* 58:*2*
**privilege** 9:*18*
**problem** 39:*18* 42:*19*
**proceeding** 64:*14*
**proceedings** 2:*12*
21:*21* 80:*7* 84:*9*, *11*,
*12*
**proceeds** 26:*17*
27:*13* 28:*12*, *18*, *20*
40:*18* 41:*13* 43:*20*
**product** 51:*2*, *19*
**PRODUCTION** 7:*7*
**professional** 79:*17*
**promise** 48:*23*
**proposed** 10:*13* 17:*6*
19:*24* 51:*23* 52:*4*
67:*11*
**propounded** 83:*8*
**protect** 38:*8* 56:*20*
**prove** 69:*5*
**provide** 17:*25* 18:*5*
23:*16* 58:*5*
**provided** 18:*23* 66:*3*
**Public** 84:*8*
**purchase** 26:*24*
**purpose** 67:*23*
**purposes** 11:*17* 12:*1*
26:*12*
**pursuant** 36:*17*
**put** 14:*19* 16:*19*
62:*8*, *9*, *19* 75:*19*, *22*,
*25* 76:*15*, *20* 79:*9*
**putting** 31:*10*

**< Q >**
**quarrel** 77:*21*
**quarterly** 28:*11*
**question** 9:*3*, *8*, *11*, *16*
10:*20* 18:*3*, *9*, *20*
19:*19* 33:*1* 35:*22*
37:*25* 39:*16*, *17*, *23*,
*25* 40:*13* 46:*6*, *13*
55:*15* 56:*10* 57:*8*, *18*
58:*10* 59:*11* 60:*8*, *20*

62:*5* 64:*5*, *9* 66:*24*
68:*10* 69:*3* 71:*5*, *11*
72:*19* 73:*5* 76:*12*
78:*13*
**questioning** 33:*2*
**QUESTIONS** 7:*3*, *16*
9:*2*, *18* 31:*19* 48:*19*,
*24* 49:*4* 68:*13* 70:*13*,
*15* 83:*8*
**quick** 8:*24*
**quickly** 78:*15*
**QUINN** 3:*22*
**quizzed** 48:*8*
**QUOTATION** 7:*22*
**QUOTE** 7:*23* 67:*17*
70:*22* 74:*9* 77:*7*

**< R >**
**raised** 24:*16*
**Rand** 47:*2*, *4*, *5*, *9*, *17*,
*20* 48:*2*, *18* 49:*12*
**RAVER** 5:*21*
**RDR** 1:*22* 84:*21*
**read** 19:*4* 22:*17*, *25*
31:*14* 71:*7*, *12* 74:*13*
83:*6*
**reading** 16:*9* 81:*2*
**really** 20:*13* 26:*10*
34:*5* 69:*23* 78:*11*
**Realtime** 2:*14* 84:*6*
**reason** 24:*3* 32:*15*
35:*15*, *25* 36:*7* 37:*19*
38:*2* 41:*21* 42:*14*
43:*21* 50:*9* 51:*22*
54:*2* 57:*3* 59:*5*, *14*
67:*4*, *9* 74:*16*, *24*
82:*7*, *9*, *11*, *13*, *15*, *17*,
*19*, *21*, *23*
**reasons** 81:*4* 82:*4*
**recall** 40:*12* 53:*3*
54:*21* 55:*9* 65:*18*
71:*17*, *22*
**receive** 14:*8* 36:*17*
37:*5*, *22* 38:*4*, *19*, *24*,
*25* 39:*9*, *20*, *21* 40:*9*,
*24* 41:*13*, *19* 46:*1*, *15*
**received** 27:*11* 40:*21*
42:*21* 49:*7* 76:*10*
**receives** 41:*9* 42:*1*, *6*
**receiving** 44:*4*

recollection 53:*2*
65:*7*
recommendations
13:*12* 14:*18*
record 84:*11*
recorded 2:*12*
recover 37:*20* 38:*3,*
*13* 39:*8* 40:*17* 45:*25*
56:*18*
red 24:*16*
reduced 84:*13*
refer 11:*16, 24* 20:*16*
25:*21, 24* 29:*2*
reference 67:*16*
75:*18*
referring 20:*3, 10*
24:*19*
REFLECT 7:*23*
refresh 65:*6*
regarding 65:*24*
Registered 2:*13* 84:*5*
regular 13:*25*
reject 67:*11*
related 84:*15*
relates 50:*6* 65:*22*
relationship 21:*11*
28:*5, 7* 33:*25* 34:*23*
35:*2, 6, 12* 45:*10, 13*
49:*19*
releases 54:*15, 24*
releasing 54:*8*
remember 48:*14*
remind 39:*12*
remitted 28:*22*
REMOTE 1:*13* 2:*8*
3:*2* 62:*15*
reorganization 50:*3*
Repeat 18:*3* 19:*20*
37:*25* 55:*15* 69:*3*
71:*5* 73:*5, 16*
repeated 64:*5*
report 29:*14*
Reported 1:*20*
Reporter 2:*14, 15*
79:*22* 80:*3* 84:*2, 6, 8*
REPORTER'S 7:*21*
reports 28:*11*
represent 31:*8, 13*
representative 25:*7*

REQUEST 7:*7*
requests 29:*11*
required 13:*24*
57:*22* 59:*6* 62:*1*
66:*19* 67:*5*
requirement 37:*7*
respect 14:*22* 28:*17*
29:*7*
respectfully 72:*12*
response 74:*1*
responsible 12:*6*
result 21:*8* 32:*23*
34:*12*
review 12:*3* 25:*13*
reviewed 36:*21* 41:*7*
52:*21*
right 11:*13* 16:*9*
21:*2* 24:*1* 28:*24*
34:*6* 37:*20* 38:*3, 21*
39:*8, 20* 40:*8, 17*
44:*6* 45:*25* 46:*15, 21*
52:*22, 23* 60:*24* 61:*3,*
*4, 6, 9, 13, 17, 21*
66:*17* 74:*6* 78:*3*
79:*6*
rise 55:*12*
ROBERT 3:*20*
robertloigman@quinn
emanuel.com 3:*21*
role 14:*13, 21* 16:*8*
17:*5, 9* 22:*11* 38:*10*
room 62:*19*
Rose 22:*8*
Rouge 5:*10*
RSA 1:*22* 84:*21*
rules 8:*24*
rushed 79:*24*

< S >
Santa 20:*11, 22* 21:*3,*
*7, 12, 16* 22:*8*
Sauder 78:*25*
saying 78:*16*
says 31:*21* 67:*17, 19*
70:*21* 74:*9* 77:*19*
scope 54:*14, 24*
74:*11, 17*
screen 62:*8, 9, 20*
63:*13*

scroll 68:*7* 70:*4*
75:*5*
scrutiny 67:*25*
second 48:*16*
secretary 16:*6*
securities 44:*10*
see 16:*13* 22:*16, 19*
47:*8* 48:*13* 62:*25*
63:*19, 20* 68:*6* 70:*25*
75:*7, 18* 79:*19*
seek 9:*16* 30:*21*
seeks 70:*24* 72:*8*
73:*11, 17*
seen 37:*13, 16*
SEERY 5:*19* 50:*20*
58:*24*
segregated 25:*18, 24*
26:*1, 5, 8* 27:*17, 21*
29:*24* 30:*2, 6, 9, 13,*
*18, 22* 44:*16, 24* 45:*6*
61:*17, 21* 62:*1*
send 28:*12*
sent 29:*12*
sentence 63:*15* 68:*9,*
*13*
series 9:*1*
set 17:*18, 21* 42:*12*
43:*14* 44:*5* 69:*15*
setting 69:*7, 8*
Settlement 6:*17* 8:*19*
10:*13, 18, 23* 11:*5, 22*
17:*6* 19:*15, 25* 20:*2,*
*3, 5* 36:*14, 18, 21, 25*
37:*4, 9, 13, 16, 22*
38:*5, 19* 39:*1, 10, 22*
40:*9, 18, 25* 41:*3, 14,*
*23* 42:*6, 15* 43:*18, 22*
44:*6* 46:*2, 17, 21*
51:*1, 10, 15, 18, 23*
52:*5, 17* 53:*4, 9, 19,*
*22* 54:*3, 7, 10, 12, 25*
57:*5, 15, 24* 58:*7*
59:*8, 19, 24* 60:*4, 17*
62:*3* 63:*18* 65:*3, 8,*
*20* 66:*21* 67:*7, 11*
69:*15* 70:*23* 71:*21*
72:*1, 7* 73:*10* 74:*15,*
*18, 24* 75:*2*
Shakes 39:*6*

share 57:*13*
shares 43:*15*
SHAWN 5:*21*
Sheet 81:*5*
Shorthand 2:*15* 84:*2,*
*7*
show 48:*12* 55:*3*
shows 42:*23*
side 10:*22*
sign 81:*5*
signature 31:*21*
signed 11:*9, 13* 46:*21*
significant 56:*14*
significantly 29:*14*
similarities 22:*22*
sir 70:*16*
sit 11:*12* 35:*16, 24*
36:*6* 79:*10*
six 10:*3* 17:*12*
18:*14, 16*
size 37:*6*
Skyview 78:*16, 20, 23,*
*24* 79:*2*
slow 56:*24*
small 20:*13*
sole 27:*7*
solely 31:*7* 74:*15, 23*
somebody 48:*25*
69:*5* 76:*24* 78:*20*
somebody-who 39:*23*
sorry 15:*1* 16:*1*
21:*1, 6* 29:*10* 55:*8*
58:*13* 67:*2* 74:*2*
76:*9* 77:*18*
Sounds 64:*21*
source 17:*20* 19:*6*
26:*11* 27:*7* 75:*10*
speak 17:*10, 14, 17*
speaks 55:*2*
specific 72:*24*
specificity 41:*11*
speculate 70:*1*
spiraling 77:*8*
spoke 66:*1*
spoken 17:*12*
sponsored 12:*17*
STANG 3:*14* 5:*18*
start 39:*25* 71:*16*
started 70:*10*
State 64:*19*

statement 33:*21*
54:*22*
STATES 1:*1* 63:*15*
status 13:*24*
Stenographically
1:*20* 2:*13* 84:*13*
step 13:*16*
stick 47:*11*
STIPULATIONS
7:*12*
stopped 76:*23*
Street 4:*10* 5:*9*
strike 40:*4*
structure 16:*10*
21:*15* 42:*10* 44:*4*
47:*9* 48:*17, 18* 49:*2*
67:*23*
subject 64:*13* 67:*25*
68:*2*
Subtrust 73:*4*
succeed 69:*1, 6, 14*
suggest 51:*18* 57:*13*
suggesting 72:*4* 73:*7*
suggests 71:*3, 8*
Suite 4:*10, 18* 5:*9*
SULLIVAN 3:*22*
Sunday 1:*15* 2:*10*
supervision 84:*14*
supplied 81:*5*
SUPPORT 7:*1*
22:*14* 28:*1* 55:*18*
supporting 12:*17*
13:*10* 15:*6, 18* 16:*11,*
*23* 20:*7, 9, 16, 24*
21:*7, 15* 23:*3* 26:*15,*
*16, 23* 29:*1* 34:*2*
43:*15* 53:*8, 10, 14*
56:*21*
supposedly 77:*6*
79:*13*
sure 16:*21* 35:*23*
65:*9, 15* 66:*1* 68:*11*
73:*2* 76:*5, 10*
sworn 8:*6*
Systems 84:*7*

< T >
tainted 73:*17*
take 8:*17* 31:*20*

45:*16*
taken 84:*9, 12*
talk 48:*22*
talked 40:*14* 65:*11*
66:*16* 70:*7*
talking 33:*7* 51:*10*
77:*1* 78:*5*
technical 14:*10*
Technically 13:*9*
43:*11*
tell 40:*5, 7, 16* 47:*1*
62:*13* 72:*22* 77:*7, 11*
78:*15* 79:*11*
telling 46:*23*
terminated 79:*3*
terms 36:*18, 25* 54:*3*
test 62:*23*
testified 8:*8* 38:*17*
testify 8:*6*
testimony 19:*5*
32:*19* 81:*4* 83:*7*
testing 48:*19*
TEXAS 1:*2* 4:*11, 19*
20:*13* 21:*4* 22:*9*
Thank 45:*23* 55:*10*
64:*8* 70:*19* 71:*14*
74:*4, 7* 79:*15, 17*
Thanks 79:*21*
therefor 81:*4*
thing 72:*12*
things 44:*12* 48:*11*
think 22:*22* 25:*12*
31:*11, 17* 38:*17*
43:*24* 45:*16* 48:*20*
50:*3* 57:*25* 63:*5*
thinks 31:*11*
Third 3:*15* 63:*14*
three 20:*6, 9, 24*
21:*1, 5*
thrown 27:*3, 6*
Time 1:*16* 2:*12*
9:*14* 56:*24* 70:*10, 11,*
*18* 79:*16* 80:*7*
today 8:*17* 16:*17*
18:*12* 33:*7* 35:*16, 24*
36:*6* 47:*14, 20, 24*
49:*23* 66:*8* 76:*20*
79:*10*
today's 12:*1*

told 47:*8* 50:*22*
78:*20* 79:*3, 9*
TORREY 5:*20*
15:*22* 16:*5*
track 43:*17*
transaction 61:*13*
transactional 28:*11*
transactions 29:*8*
61:*9, 22*
transcribed 2:*15*
transcript 79:*23*
80:*4* 81:*6* 83:*7*
84:*10*
transparency 53:*13*
travel 62:*16*
treasurer 15:*5, 16, 23*
16:*5*
tribunal 68:*4*
true 83:*10* 84:*11*
Trust 3:*5* 4:*14* 5:*3*
10:*15* 11:*5, 10, 14, 17*
32:*12, 16, 21* 33:*20,*
*24* 34:*14, 17, 20* 35:*7,*
*13* 45:*4, 7, 14* 47:*12,*
*14, 23* 48:*9* 52:*6*
53:*23* 54:*4* 55:*20*
58:*23* 73:*3, 24*
Trustee 3:*19*
truth 8:*7*
try 9:*7* 33:*3*
trying 77:*22*
tune 43:*2*
two 16:*3* 31:*8* 48:*11*
56:*21* 65:*1*
type 42:*25* 69:*8*
typewriting 84:*14*

< U >
understand 9:*12*
19:*21* 28:*10* 29:*12*
50:*2* 55:*24* 56:*25*
76:*17*
understanding 21:*14,*
*22, 24* 26:*7* 27:*5, 9,*
*10, 15* 29:*19, 21*
30:*15* 37:*2, 11* 38:*15,*
*18, 23* 41:*2* 47:*16, 19*
48:*7* 49:*21* 56:*3*
57:*21* 68:*25* 69:*4*

76:*13*
understood 29:*9* 79:*8*
unexplained 29:*22*
unfair 51:*23* 52:*5,*
*18* 53:*4, 7, 10, 19, 22*
54:*3*
Unfortunately 63:*15*
UNITED 1:*1*
URQUHART 3:*22*
usual 58:*1*

< V >
vague 47:*10*
valuations 24:*16*
value 27:*12, 24* 29:*6,*
*19, 22* 49:*7, 15*
vanished 42:*24*
vehicle 47:*6*
vein 18:*17*
versus 65:*11*
vice 15:*4, 15, 22*
videoconferencing 3:*2*
video-conferencing
2:*10*
VIDEOGRAPHER
5:*13*
VIDEO-RECORDED
1:*13* 2:*8*
view 52:*10* 59:*1*
69:*12, 21*
Vine 4:*10*
vision 28:*2*
volume 81:*2, 6*
vote 15:*14*
voting 15:*13*

< W >
wait 62:*12*
want 19:*17* 43:*24*
44:*2, 11* 48:*12, 25*
55:*2* 65:*9* 66:*1*
68:*11* 72:*14, 15, 24*
78:*8* 79:*22* 80:*4*
way 20:*13* 28:*13*
41:*23* 45:*20* 48:*14*
65:*17* 76:*7*
Wednesday 56:*22*
weekend 76:*14*
weeks 65:*1*

**Well** 13:*2* 18:*11*
20:*6* 24:*9* 25:*7*
28:*10* 31:*13, 14*
43:*10* 44:*5* 48:*6*
53:*11* 72:*18* 74:*11*
77:*14, 19* 78:*24*
**we're** 8:*17, 25* 31:*21*
33:*7* 46:*19* 56:*18*
62:*7* 65:*23* 78:*5*
**we've** 56:*23* 63:*13*
65:*11, 21* 66:*15*
**Wilkerson** 22:*6*
**WINOGRAD** 3:*12*
**wish** 82:*3*
**WISHNEW** 4:*17*
**withdrawn** 11:*2*
13:*19* 19:*13* 23:*6*
26:*22* 27:*4* 29:*20*
30:*8* 32:*10* 38:*16*
52:*15* 58:*19* 59:*16*
64:*17* 67:*18* 77:*11*
**witness** 48:*17* 64:*7*
72:*14*
**woman** 79:*1*
**words** 13:*16* 30:*8*
**work** 56:*18*
**working** 18:*15*
**workings** 49:*1*
**write-down** 27:*23*
29:*6*
**wrong** 64:*6* 71:*4, 9,*
*20, 25* 73:*7*
**wrongdoing** 72:*5*

**< Y >**
**Yeah** 22:*18* 28:*16*
48:*8* 68:*14* 74:*6*
78:*18*
**year** 50:*3* 76:*16*
**years** 10:*3* 12:*20*
18:*14, 16* 50:*17* 51:*9*
**Yep** 45:*18*
**York** 3:*16, 24* 70:*10,*
*11*

**< Z >**
**ZIEHL** 3:*14* 5:*18*

## WORD LIST

**< $ >**
**$25**  (*2*)
**$300**  (*1*)

**< 1 >**
**1**  (*3*)
**1:37**  (*2*)
**10**  (*1*)
**10010**  (*1*)
**10017-2024**  (*1*)
**10-year**  (*1*)
**11**  (*1*)
**1113**  (*1*)
**15**  (*1*)
**16**  (*2*)
**1600**  (*1*)
**1700**  (*1*)
**19-34054-sgj11**  (*1*)
**1st**  (*1*)

**< 2 >**
**2:37**  (*1*)
**2011**  (*1*)
**2019**  (*1*)
**2024**  (*1*)
**2025**  (*2*)
**212.849.7615**  (*1*)
**214.817.4500**  (*1*)
**22**  (*2*)
**225.381.9643**  (*1*)
**22nd**  (*1*)
**2390**  (*1*)
**240**  (*1*)

**< 3 >**
**3:08**  (*1*)
**300-plus**  (*1*)
**301**  (*1*)
**30th**  (*1*)
**310.277.6910**  (*1*)
**32**  (*5*)
**33**  (*3*)
**34**  (*1*)
**34th**  (*1*)

**< 4 >**
**4:07**  (*1*)

**40**  (*2*)

**< 5 >**
**51**  (*1*)

**< 6 >**
**63**  (*1*)

**< 7 >**
**7**  (*1*)
**70801**  (*1*)
**713.228.4100**  (*1*)
**75201**  (*1*)
**77002**  (*1*)
**780**  (*1*)

**< 8 >**
**8**  (*1*)
**8635**  (*3*)

**< 9 >**
**90**  (*1*)
**9th**  (*1*)

**< A >**
**able**  (*2*)
**Absolutely**  (*1*)
**abstain**  (*3*)
**abstention**  (*1*)
**accepting**  (*1*)
**access**  (*1*)
**accommodate**  (*1*)
**accounting**  (*1*)
**accounts**  (*20*)
**acted**  (*1*)
**acting**  (*6*)
**action**  (*3*)
**actions**  (*4*)
**activities**  (*3*)
**activity**  (*7*)
**ADAMS**  (*1*)
**additional**  (*2*)
**Administrator**  (*1*)
**advice**  (*2*)
**aegis**  (*1*)
**affidavit**  (*1*)
**affiliated**  (*3*)
**affiliates**  (*4*)
**affirmed**  (*1*)

**afternoon**  (*1*)
**agendas**  (*1*)
**ago**  (*2*)
**agree**  (*1*)
**agreed**  (*1*)
**agreement**  (*59*)
**ahead**  (*2*)
**ahurt@kellyhart.com**  (*1*)
**alleging**  (*1*)
**allocated**  (*1*)
**allow**  (*2*)
**AMELIA**  (*1*)
**amount**  (*1*)
**ample**  (*1*)
**ancillary**  (*1*)
**annuities**  (*7*)
**annuity**  (*4*)
**ANSWER**  (*30*)
**answering**  (*2*)
**answers**  (*2*)
**anticipate**  (*1*)
**anybody**  (*16*)
**apologize**  (*6*)
**apparent**  (*1*)
**appear**  (*2*)
**appearance**  (*2*)
**appeared**  (*4*)
**appears**  (*1*)
**appointed**  (*2*)
**appreciate**  (*6*)
**appreciated**  (*1*)
**approval**  (*1*)
**approve**  (*4*)
**approved**  (*10*)
**Approving**  (*1*)
**approximately**  (*1*)
**April**  (*1*)
**arising**  (*1*)
**arm's-length**  (*2*)
**articulate**  (*1*)
**aside**  (*1*)
**asked**  (*8*)
**asking**  (*5*)
**asserting**  (*1*)
**assertion**  (*1*)
**asserts**  (*1*)
**asset**  (*2*)
**assets**  (*38*)

**assume**  (*2*)
**assumed**  (*1*)
**assuming**  (*3*)
**Atlas**  (*8*)
**attached**  (*2*)
**Attorney**  (*126*)
**attorneys**  (*1*)
**audible**  (*1*)
**authority**  (*7*)
**authorization**  (*2*)
**authorized**  (*9*)
**authorizing**  (*1*)
**available**  (*1*)
**Avenue**  (*3*)
**avoidance**  (*5*)
**aware**  (*42*)

**< B >**
**BA**  (*2*)
**back**  (*3*)
**backdrop**  (*1*)
**bad**  (*1*)
**BANKRUPTCY**  (*15*)
**Barbara**  (*7*)
**BARTLETT**  (*1*)
**based**  (*2*)
**basically**  (*1*)
**basis**  (*6*)
**Baton**  (*1*)
**beginning**  (*2*)
**behalf**  (*35*)
**behavior**  (*1*)
**believe**  (*31*)
**believed**  (*1*)
**best**  (*12*)
**bit**  (*3*)
**block**  (*1*)
**bottom**  (*1*)
**Bradshaw**  (*1*)
**breaching**  (*1*)
**break**  (*1*)
**bring**  (*1*)
**bringing**  (*1*)
**business**  (*3*)
**buy**  (*3*)

**< C >**
**CA-Certified**  (*1*)
**CA-CSR**  (*2*)

calendar  (2)
call  (5)
called  (10)
calling  (1)
CAPITAL  (17)
careful  (1)
carefully  (1)
Carrera  (1)
Case  (10)
cases  (1)
cash  (4)
cause  (1)
caused  (1)
caution  (1)
Cayman  (10)
ceased  (2)
Central  (3)
CEO  (7)
CEOs  (1)
certain  (7)
Certainly  (1)
CERTIFICATE  (1)
Certified  (3)
certify  (2)
cetera  (1)
CFO  (2)
chance  (1)
change  (10)
changes  (6)
changing  (1)
Chapter  (1)
charitable  (8)
chart  (1)
chief  (1)
City  (8)
claim  (9)
Claimant  (18)
claimed  (1)
claims  (3)
clarify  (1)
CLARITY  (1)
clawback  (4)
clawing  (1)
clear  (3)
clearly  (1)
clients  (2)
cold  (1)
come  (1)
commenced  (2)

commitment  (1)
common  (1)
communicate  (1)
communicated  (4)
communication  (2)
community  (6)
company  (1)
complete  (1)
compliance  (1)
concern  (3)
concerned  (4)
concerning  (1)
concerns  (1)
concluded  (1)
confer  (1)
confidential  (2)
confused  (1)
confusing  (1)
connection  (4)
consent  (6)
consider  (1)
considering  (1)
constitutes  (1)
consult  (1)
consummation  (3)
Cont'd  (2)
contend  (1)
contends  (2)
context  (1)
continue  (1)
contractual  (7)
contractually  (1)
contribution  (2)
contributions  (3)
control  (5)
controlled  (2)
controls  (1)
conversations  (1)
convey  (1)
conveying  (1)
copy  (4)
corporate  (2)
corporations  (1)
correct  (11)
corrections  (2)
correctly  (1)
counsel  (5)
counterpart  (1)
counterparty  (1)

couple  (1)
COURT  (14)
Court-appointed  (2)
COVID  (1)
CRAWFORD  (1)
created  (1)
Crown  (45)
CRR  (2)
cumbersome  (1)
CURRY  (2)

< D >
D.C  (1)
DAF  (2)
DALLAS  (160)
D'AMBRA  (1)
date  (2)
DAVID  (1)
day  (3)
dcurry@okinadams.com  (1)
de  (1)
dealings  (1)
Debbie  (1)
Debtor  (5)
decided  (1)
decision  (2)
decisions  (1)
declaration  (3)
decline  (3)
Defendant  (2)
definitively  (1)
Delaware  (2)
DEMO  (1)
DEPONENT  (1)
deposed  (1)
DEPOSITION  (11)
depositions  (1)
described  (4)
detail  (1)
DIAZ  (20)
different  (2)
diminished  (1)
Diplomate  (2)
DIRECT  (4)
directed  (2)
direction  (1)
directly  (3)
disburse  (2)

disbursement  (1)
disclosed  (1)
disclosing  (1)
discussions  (1)
disrespectful  (1)
DISTRICT  (1)
diverting  (1)
DIVISION  (1)
document  (4)
DOCUMENTS  (4)
doing  (5)
dollars  (1)
donation  (2)
donations  (1)
Dondero  (20)
Dondero's  (2)
donor-advised  (1)
dramatic  (1)
Dugaboy  (1)
duly  (1)
duties  (4)
duty  (2)

< E >
earlier  (2)
effectuated  (1)
effectuates  (1)
either  (3)
EMANUEL  (1)
employed  (2)
employee  (1)
Empower  (25)
engaged  (2)
ensure  (1)
enter  (5)
entered  (3)
entering  (9)
entities  (55)
entitled  (2)
entity  (19)
Entry  (2)
erosion  (1)
Errata  (1)
ESQ  (10)
essence  (1)
essentially  (1)
established  (1)
et  (1)
everybody  (1)

Case 19-34054-sgj11   Doc 4277-1   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 6-8   Filed 08/05/25   Page 131 of 271   PageID 2244
Exhibit B124   Page 96 of 102   Page 131 of 271 Capital Markets, L.P.

evidence (1)
exactly (1)
EXAMINATION (2)
examined (1)
excuse (2)
executed (1)
exercise (1)
exercised (1)
Exhibit (1)
existence (1)
expect (1)
expectations (1)
expected (1)
expedited (1)
expenses (2)
expensive (1)
expert (2)
expressed (1)
extent (1)

< F >
fact (1)
facts (13)
fail (1)
fair (36)
fairly (1)
fall (1)
familiar (14)
familiarity (2)
Family (6)
fault (1)
feeds (1)
feel (1)
female (1)
fiduciaries (2)
fiduciary (6)
file (6)
filed (25)
filing (10)
finance (1)
financial (1)
find (2)
fine (3)
finish (3)
first (1)
first-quarter (1)
flag (1)
Floor (2)
flow (6)

flowed (1)
Flows (3)
focus (1)
focused (1)
Focusing (2)
folks (1)
following (2)
follows (1)
foregoing (3)
form (33)
formal (1)
Formally (1)
formation (1)
formed (4)
forth (4)
forward (1)
found (1)
Foundation (145)
foundations (5)
Foundation's (24)
four (2)
fully (1)
fund (11)
funded (1)
fundholder (1)
fundholders (2)
funding (5)
funds (4)
fund's (1)
further (1)
future (1)

< G >
Gail (4)
gdemo@pszjlaw.com (1)
generally (4)
gentleman (2)
give (6)
given (1)
giving (1)
Global (41)
Global's (4)
go (7)
going (13)
Good (3)
good-faith (2)
governance (3)
GPs (1)

grant (2)
grant-making (2)
grants (1)
GREGORY (1)
ground (1)
guess (4)

< H >
half (1)
HALL (1)
HALLMAN (1)
happening (3)
happens (3)
happy (2)
harm (1)
HART (1)
HAYLEY (1)
head (2)
hear (1)
heard (1)
held (2)
he'll (1)
help (2)
hereto (1)
Hernandez (1)
high (5)
HIGHLAND (82)
Highland/HMIT (2)
Highland's (1)
HMIT (54)
HMIT/Highland (2)
hold (2)
Holdco (2)
holds (1)
hour (1)
Houston (1)
Hunter (19)
HURT (1)
hwinograd@pszjlaw.com (1)

< I >
idea (5)
identification (1)
identified (3)
identify (8)
imagine (1)
impact (1)
impacted (1)

impacts (1)
important (1)
including (1)
income (3)
independent (1)
INDEX (1)
indicate (1)
indirect (4)
indirectly (1)
individual (1)
inform (1)
information (19)
informed (4)
Inghram (4)
insertion (1)
inside (6)
insider (1)
insignificant (1)
INSTRUCTED (1)
INSTRUCTIONS (1)
Insurance (5)
intended (1)
interest (13)
interested (1)
interim (1)
interrupt (2)
investigate (1)
investigating (1)
Investment (13)
involved (3)
involvement (6)
irregular (2)
irregularities (1)
IRS (1)
Islands (8)
issues (3)
its (13)

< J >
Jackie (1)
JAMES (2)
JEFFREY (1)
Jim (6)
jmorris@pszjlaw.com (1)
job (2)
JOHN (7)
joint (11)
JONES (2)

jpomerantz@pszjlaw.com *(1)*
JULIE *(5)*
June *(3)*
jurisdiction *(1)*
justify *(1)*

< K >
Kansas *(9)*
keep *(2)*
KELLY *(1)*
kind *(2)*
know *(122)*
knowledge *(21)*
knows *(1)*

< L >
L.P *(1)*
Labor *(1)*
lack *(1)*
LANG *(4)*
language *(1)*
large *(2)*
law *(1)*
laws *(1)*
lawsuit *(2)*
lawyer *(3)*
lawyers *(1)*
lead *(1)*
leading *(1)*
leads *(1)*
learn *(3)*
learned *(6)*
leave *(1)*
led *(1)*
legal *(5)*
lengthy *(1)*
level *(5)*
liabilities *(2)*
Life *(3)*
likelihood *(1)*
Limited *(2)*
LINE *(6)*
liquidation *(2)*
liquidators *(11)*
liquidity *(1)*
listen *(1)*
lists *(1)*
literally *(1)*

Litigation *(10)*
little *(3)*
LITTLETON *(3)*
Littleton's *(1)*
LLP *(3)*
LOIGMAN *(1)*
long *(1)*
longer *(3)*
look *(2)*
looking *(2)*
losing *(1)*
lot *(6)*
LOUIS *(2)*
Louisiana *(1)*
lower *(1)*
LP *(11)*
lphillips@kellyhart.com *(1)*
LPs *(1)*

< M >
Ma'am *(10)*
Madison *(1)*
Main *(1)*
majority *(2)*
making *(3)*
MANAGEMENT *(19)*
managing *(1)*
March *(1)*
Mark *(14)*
MARKED *(2)*
MARKS *(2)*
material *(6)*
Matt *(4)*
MATTHEW *(1)*
mean *(6)*
member *(1)*
memory *(1)*
mentioned *(1)*
met *(3)*
MICHAEL *(1)*
million *(4)*
mind *(3)*
minimis *(1)*
minutes *(1)*
misused *(1)*
mlang@cwl.law.com *(1)*

mokin@okinadams.com *(1)*
money *(3)*
months *(1)*
moot *(1)*
MORRIS *(69)*
Motion *(5)*
Mountain *(19)*
move *(1)*
mute *(2)*
mutual *(2)*
mystery *(1)*

< N >
name *(1)*
named *(2)*
NATHAN *(4)*
nature *(3)*
NECESSARILY *(1)*
need *(8)*
needs *(1)*
negotiating *(1)*
negotiation *(1)*
negotiations *(3)*
neither *(1)*
never *(2)*
New *(6)*
newly *(1)*
news *(3)*
Nods *(1)*
nonpublic *(7)*
Nope *(1)*
North *(3)*
NORTHERN *(1)*
Notary *(1)*
notations *(1)*
NOTE *(1)*
notes *(1)*
notice *(1)*

< O >
object *(35)*
objected *(2)*
objecting *(2)*
Objection *(63)*
objections *(1)*
obligation *(4)*
obligations *(6)*
obtain *(5)*

obviously *(1)*
October *(1)*
offhand *(1)*
office *(1)*
officer *(1)*
officers *(1)*
official *(11)*
Oh *(5)*
Okada *(7)*
okay *(29)*
OKIN *(52)*
once *(1)*
opportunity *(2)*
option *(4)*
Order *(1)*
org *(2)*
organization *(6)*
organizations *(15)*
organization's *(1)*
orgs *(4)*
original *(2)*
originated *(1)*
outcome *(1)*
outside *(2)*
oversee *(1)*
overseeing *(1)*
oversees *(1)*
oversight *(4)*
owed *(2)*
owes *(3)*
owned *(1)*
owner *(2)*
ownership *(6)*
owns *(3)*

< P >
p.m *(3)*
PACHULSKI *(2)*
Pacific *(1)*
PAGE *(10)*
pages *(1)*
paid *(1)*
paragraph *(13)*
Pardon *(1)*
part *(2)*
participated *(1)*
particular *(3)*
parties *(11)*
parts *(1)*

party *(7)*
Patrick *(31)*
Patrick's *(1)*
PAUL *(2)*
pay *(1)*
peace *(4)*
pending *(2)*
people *(2)*
percent *(2)*
permission *(1)*
person *(5)*
personally *(1)*
pertain *(1)*
pertains *(1)*
PHILLIPS *(5)*
phrase *(3)*
piece *(1)*
play *(1)*
played *(1)*
plays *(2)*
pleading *(1)*
Please *(7)*
PLLC *(1)*
point *(1)*
policies *(1)*
POMERANTZ *(1)*
portion *(4)*
position *(1)*
possibly *(1)*
potential *(1)*
practice *(1)*
precise *(1)*
precluded *(1)*
prefer *(1)*
preparation *(1)*
prepare *(1)*
present *(2)*
president *(10)*
pretty *(1)*
Prior *(2)*
privilege *(1)*
problem *(2)*
proceeding *(1)*
proceedings *(6)*
proceeds *(8)*
product *(2)*
PRODUCTION *(1)*
professional *(1)*
promise *(1)*

proposed *(6)*
propounded *(1)*
protect *(2)*
prove *(1)*
provide *(4)*
provided *(1)*
Public *(1)*
purchase *(1)*
purpose *(1)*
purposes *(3)*
pursuant *(1)*
put *(11)*
putting *(1)*

< Q >
quarrel *(1)*
quarterly *(1)*
question *(39)*
questioning *(1)*
QUESTIONS *(12)*
quick *(1)*
quickly *(1)*
QUINN *(1)*
quizzed *(1)*
QUOTATION *(1)*
QUOTE *(5)*

< R >
raised *(1)*
Rand *(9)*
RAVER *(1)*
RDR *(2)*
read *(8)*
reading *(2)*
really *(5)*
Realtime *(3)*
reason *(29)*
reasons *(2)*
recall *(7)*
receive *(17)*
received *(5)*
receives *(3)*
receiving *(1)*
recollection *(2)*
recommendations *(2)*
record *(1)*
recorded *(1)*
recover *(7)*
red *(1)*

reduced *(1)*
refer *(6)*
reference *(2)*
referring *(3)*
REFLECT *(1)*
refresh *(1)*
regarding *(1)*
Registered *(2)*
regular *(1)*
reject *(1)*
related *(1)*
relates *(2)*
relationship *(11)*
releases *(2)*
releasing *(1)*
remember *(1)*
remind *(1)*
remitted *(1)*
REMOTE *(4)*
reorganization *(1)*
Repeat *(8)*
repeated *(1)*
report *(1)*
Reported *(1)*
Reporter *(9)*
REPORTER'S *(1)*
reports *(1)*
represent *(3)*
representative *(1)*
REQUEST *(1)*
requests *(1)*
required *(6)*
requirement *(1)*
respect *(3)*
respectfully *(1)*
response *(1)*
responsible *(1)*
result *(3)*
review *(2)*
reviewed *(1)*
right *(31)*
rise *(1)*
ROBERT *(1)*
robertloigman@quinn
emanuel.com *(1)*
role *(7)*
room *(1)*
Rose *(1)*
Rouge *(1)*

RSA *(2)*
rules *(1)*
rushed *(1)*

< S >
Santa *(7)*
Sauder *(1)*
saying *(1)*
says *(6)*
scope *(4)*
screen *(4)*
scroll *(3)*
scrutiny *(1)*
second *(1)*
secretary *(1)*
securities *(1)*
see *(13)*
seek *(2)*
seeks *(4)*
seen *(2)*
SEERY *(3)*
segregated *(20)*
send *(1)*
sent *(1)*
sentence *(3)*
series *(1)*
set *(6)*
setting *(2)*
Settlement *(84)*
Shakes *(1)*
share *(1)*
shares *(1)*
SHAWN *(1)*
Sheet *(1)*
Shorthand *(3)*
show *(2)*
shows *(1)*
side *(1)*
sign *(1)*
signature *(1)*
signed *(3)*
significant *(1)*
significantly *(1)*
similarities *(1)*
sir *(1)*
sit *(5)*
six *(4)*
size *(1)*
Skyview *(5)*

slow  *(1)*
small  *(1)*
sole  *(1)*
solely  *(3)*
somebody  *(4)*
somebody-who  *(1)*
sorry  *(11)*
Sounds  *(1)*
source  *(5)*
speak  *(3)*
speaks  *(1)*
specific  *(1)*
specificity  *(1)*
speculate  *(1)*
spiraling  *(1)*
spoke  *(1)*
spoken  *(1)*
sponsored  *(1)*
STANG  *(2)*
start  *(2)*
started  *(1)*
State  *(1)*
statement  *(2)*
STATES  *(2)*
status  *(1)*
Stenographically  *(3)*
step  *(1)*
stick  *(1)*
STIPULATIONS  *(1)*
stopped  *(1)*
Street  *(2)*
strike  *(1)*
structure  *(9)*
subject  *(3)*
Subtrust  *(1)*
succeed  *(3)*
suggest  *(2)*
suggesting  *(2)*
suggests  *(2)*
Suite  *(3)*
SULLIVAN  *(1)*
Sunday  *(2)*
supervision  *(1)*
supplied  *(1)*
SUPPORT  *(4)*
supporting  *(23)*
supposedly  *(2)*
sure  *(9)*
sworn  *(1)*

Systems  *(1)*

< T >
tainted  *(1)*
take  *(3)*
taken  *(2)*
talk  *(1)*
talked  *(4)*
talking  *(4)*
technical  *(1)*
Technically  *(2)*
tell  *(10)*
telling  *(1)*
terminated  *(1)*
terms  *(3)*
test  *(1)*
testified  *(2)*
testify  *(1)*
testimony  *(4)*
testing  *(1)*
TEXAS  *(6)*
Thank  *(9)*
Thanks  *(1)*
therefor  *(1)*
thing  *(1)*
things  *(2)*
think  *(11)*
thinks  *(1)*
Third  *(2)*
three  *(5)*
thrown  *(2)*
Time  *(9)*
today  *(14)*
today's  *(1)*
told  *(5)*
TORREY  *(3)*
track  *(1)*
transaction  *(1)*
transactional  *(1)*
transactions  *(3)*
transcribed  *(1)*
transcript  *(5)*
transparency  *(1)*
travel  *(1)*
treasurer  *(4)*
tribunal  *(1)*
true  *(2)*
Trust  *(32)*
Trustee  *(1)*

truth  *(3)*
try  *(2)*
trying  *(1)*
tune  *(1)*
two  *(5)*
type  *(2)*
typewriting  *(1)*

< U >
understand  *(8)*
understanding  *(26)*
understood  *(2)*
unexplained  *(1)*
unfair  *(9)*
Unfortunately  *(1)*
UNITED  *(1)*
URQUHART  *(1)*
usual  *(1)*

< V >
vague  *(1)*
valuations  *(1)*
value  *(7)*
vanished  *(1)*
vehicle  *(1)*
vein  *(1)*
versus  *(1)*
vice  *(3)*
videoconferencing  *(1)*
video-conferencing  *(1)*
VIDEOGRAPHER  *(1)*
VIDEO-RECORDED  *(2)*
view  *(4)*
Vine  *(1)*
vision  *(1)*
volume  *(2)*
vote  *(1)*
voting  *(1)*

< W >
wait  *(1)*
want  *(16)*
way  *(7)*
Wednesday  *(1)*
weekend  *(1)*
weeks  *(1)*

Well  *(17)*
we're  *(9)*
we've  *(5)*
Wilkerson  *(1)*
WINOGRAD  *(1)*
wish  *(1)*
WISHNEW  *(1)*
withdrawn  *(16)*
witness  *(3)*
woman  *(1)*
words  *(2)*
work  *(1)*
working  *(1)*
workings  *(1)*
write-down  *(2)*
wrong  *(6)*
wrongdoing  *(1)*

< Y >
Yeah  *(6)*
year  *(2)*
years  *(6)*
Yep  *(1)*
York  *(6)*

< Z >
ZIEHL  *(2)*

**EXHIBIT 125**

020130

```
 1              UNITED STATES BANKRUPTCY COURT

 2           FOR THE NORTHERN DISTRICT OF TEXAS

 3                    DALLAS DIVISION

 4      --------------------------

 5   In Re:                      Case No. 19-34054-sgj11

 6   HIGHLAND CAPITAL MANAGEMENT,

 7   L.P.,

 8        Debtor.               Chapter 11

 9      -------------------------X.

10

11

12         REMOTE VIDEO-RECORDED DEPOSITION of

13                  TORREY LITTLETON

14               Sunday, June 22, 2025

15               3:30 p.m. Central time

16

17

18

19

20   Reported Stenographically by:

21   Gail L. Inghram,

22   BA, RDR, CRR, RSA, CA-CSR No. 8635

23

24

25
```

1

2

3

4

5

6

7

8          WHEREUPON, the remote video-recorded

9   deposition of TORREY LITTLETON was held via

10   video-conferencing on Sunday, June 22, 2025,

11   beginning at approximately 3:30 p.m. Central

12   Time, the proceedings being recorded

13   stenographically by Gail Inghram, Registered

14   Diplomate Reporter, Certified Realtime Reporter,

15   Certified Shorthand Reporter, and transcribed

16   under her direction, there being present:

17

18

19

20

21

22

23

24

25

```
 1   A P P E A R A N C E S:

 2   [All parties appeared via remote videoconferencing.]

 3

 4   On behalf of Highland Capital Management, and the Highland

 5   Claimant Trust:

 6       JOHN MORRIS, ESQ.

 7       jmorris@pszjlaw.com

 8       GREGORY V. DEMO, ESQ.

 9       gdemo@pszjlaw.com

10       JEFFREY POMERANTZ, ESQ.

11       jpomerantz@pszjlaw.com

12       HAYLEY WINOGRAD, ESQ.

13       hwinograd@pszjlaw.com

14          PACHULSKI STANG ZIEHL & JONES

15          780 Third Avenue, 34th Floor

16          New York, New York 10017-2024

17          310.277.6910

18

19   On behalf of Highland Litigation Trustee:

20       ROBERT S. LOIGMAN, ESQ.

21       robertloigman@quinnemanuel.com

22          QUINN EMANUEL URQUHART & SULLIVAN, LLP

23          51 Madison Avenue 22nd Floor

24          New York, New York 10010

25          212.849.7615
```

```
 1    A P P E A R A N C E S (Cont'd):

 2

 3    On behalf of Defendant Dallas Foundation and Crown Global

 4    Life Insurance:

 5        MATTTHEW OKIN, ESQ.

 6        mokin@okinadams.com

 7        DAVID CURRY, ESQ.

 8        dcurry@okinadams.com

 9            OKIN ADAMS BARTLETT CURRY LLP

10            1113 Vine Street, Suite 240

11            Houston, Texas 77002

12            713.228.4100

13

14    On behalf of Defendant Dugaboy Investment Trust:

15        MICHAEL LANG, ESQ.

16        mlang@cwl.law.com

17            CRAWFORD WISHNEW & LANG PLLC

18            1700 Pacific Avenue, Suite 2390

19            Dallas, Texas 75201

20            214.817.4500

21

22

23

24

25
```

```
 1   A P P E A R A N C E S (Cont'd):

 2

 3   On Behalf of Hunter Mountain Investment Trust:

 4       LOUIS M. PHILLIPS, ESQ.

 5       lphillips@kellyhart.com

 6       AMELIA L. HURT, ESQ.

 7       ahurt@kellyhart.com

 8          KELLY HART & HALLMAN LLP

 9          301 Main Street, Suite 1600

10          Baton Rouge, Louisiana 70801

11          225.381.9643

12

13   VIDEOGRAPHER:

14       PAUL D'AMBRA

15

16

17   ALSO PRESENT:

18       NATHAN HALL, Pachulski Stang Ziehl & Jones

19       JAMES SEERY

20       SHAWN RAVER

21       JULIE DIAZ

22

23

24

25
```

```
 1                        - - -

 2                    I N D E X

 3                        - - -

 4

 5   EXAMINATION OF:                        PAGE

 6   TORREY LITTLETON

 7          Attorney Morris ..................8

 8

 9

10

11   PREVIOUSLY MARKED EXHIBITS REFERENCED:

12   NUMBER                      PAGE

13   Exhibit Highland 1 ..........58

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              DEPOSITION SUPPORT INDEX

 2   INSTRUCTION NOT TO ANSWER:

 3   PAGE   LINE

 4     67     21

 5

 6

 7   REQUEST FOR PRODUCTION OF DOCUMENTS

 8   PAGE   LINE

 9   (None)

10

11

12   STIPULATIONS

13   PAGE   LINE

14   (None)

15

16   QUESTIONS MARKED

17   PAGE   LINE

18   (None)

19

20

21              REPORTER'S NOTE:

22   QUOTATION MARKS ARE USED FOR CLARITY AND DO NOT NECESSARILY

23   REFLECT A DIRECT QUOTE.

24

25
```

```
 1                    -   -   -

 2                P R O C E E D I N G S

 3                    -   -   -

 4    WHEREUPON,

 5                    TORREY LITTLETON,

 6    being first duly sworn or affirmed to testify to the

 7    truth, the whole truth, and nothing but the truth,

 8    was examined and testified as follows:

 9

10                    EXAMINATION

11     BY ATTORNEY MORRIS:

12        Q.    Actually, I just want to start by

13    apologizing to the witness that I did not tell

14    him that Sunday depositions were casual.  Thanks

15    for dressing up.

16        A.    I appreciate it.  No worries.

17        Q.    And for some of us, Mr. Littleton,

18    every day is Sunday unless we're going to court.

19              It's nice to meet you, sir.

20        A.    Same here.

21        Q.    Can you hear me okay, sir?

22        A.    Yes, I can hear you.

23        Q.    Okay.  Good afternoon.  My name is

24    John Morris.  I'm an attorney at a law firm who

25    represents Highland Capital Management, LP, and
```

```
 1    the Highland Claimant Trust.  And we're here

 2    today for your deposition in connection with the

 3    Dallas Foundation's objection to a certain

 4    proposed settlement agreement between Highland

 5    and some affiliates and some entities that are

 6    controlled by Mark Patrick.

 7              Do you understand that?

 8        A.    Yes.

 9        Q.    Have you ever been deposed before,

10    sir?

11        A.    No.  This is my first time.

12        Q.    Okay.  It's not -- just relax.  It's

13    a -- it's a formal process, but it's not a

14    complicated process.  I'm going to ask you a

15    series of questions, and it's very important that

16    you let me finish my question before you begin

17    your answer.  Okay?

18        A.    Yes, sir.

19        Q.     It's important that I allow you to

20    finish your answer before I begin my next

21    question; and if I fail to do that, will you let

22    me know?

23        A.    Yes, sir, I will.

24        Q.    Do you understand that your testimony

25    today is being transcribed by Gail, the court
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 68-125   Filed 06/06/25   Page 145 of 271   PageID 21258
Deposition of 3:25-cv-02072-S   Document Exhibit 125   Filed 06/06/25   Page 145 of 271 Capital Index 21258 L.P.

1    reporter?

2         A.    Yes.

3         Q.    So everything you and I say is going

4    to be written down verbatim, or that's the goal

5    anyway.

6              Do you understand that?

7         A.    Yes, I do.

8         Q.    Okay.  If there's a question that I

9    ask that you don't understand, will you let me

10   know and I'll try to rephrase it?

11        A.    Yes.

12        Q.    From time to time your lawyer might

13   object to some of my questions.  It will give --

14   it's formal, legal stuff, lawyer stuff.  It gives

15   me a chance to think about whether there's a

16   legal infirmity in my question, and it gives me

17   an opportunity to rephrase it if I want.

18             But unless he directs you not to

19   answer, I'm going to ask you to answer the

20   question anyway.  Okay?

21        A.    Okay.

22        Q.    Just so you're not surprised by the

23   process.

24             If you need a break for any reason at

25   any time, let me know, and I'll try to

```
 1    accommodate you as long as a question is not

 2    pending.  Okay?

 3         A.    Yes.

 4         Q.    Are you affiliated with the Dallas

 5    Foundation, sir?

 6         A.    Yes, I am.

 7         Q.    In what capacity?

 8         A.    I am the CFO here at the Dallas

 9    Foundation.

10         Q.    How long have you been the CFO of the

11    Dallas Foundation?

12         A.    I've been the CFO here since

13    January 1st of 2022, but I've been with the

14    organization for 13 years.

15         Q.    And what are your duties and

16    responsibilities as the CFO?

17         A.    As the CFO, my main duty is to ensure

18    the proper oversight and fiduciary stewardship of

19    our charitable assets.  That means having

20    fiduciary oversight of our investments, our

21    financial reporting, any legal aspects that may

22    impact the foundation in any capacity.

23              I also serve as a board director as

24    relates to some of our supporting organizations,

25    part of our conversation here today with Empower
```

<pre>
 1    Foundation and the Okada Family Foundation.
 2           Q.    Are you a lawyer?
 3           A.    No, sir.
 4           Q.    Are you familiar with a company called
 5    Highland Capital Management, LP?
 6           A.    Yes, sir.
 7           Q.    Are you aware that that entity filed
 8    for bankruptcy a number of years ago?
 9           A.    Yes, sir.
10           Q.    Are you aware that that entity used to
11    be controlled by a gentleman named Jim Dondero?
12           A.    Yes, sir.
13           Q.    Okay.  Are you aware that the Dallas
14    Foundation recently filed an objection in the
15    bankruptcy court overseeing Highland's bankruptcy
16    and the objection pertaining to a proposed
17    settlement agreement between Highland and certain
18    affiliates and certain entities that are
19    controlled by Mr. Patrick?
20           A.    Yes, sir.
21           Q.    Did you review that objection before
22    it was filed?
23           A.    Yeah, I read through the objections.
24    But for the most part, I rely on our legal team
25    to give us a summary and kind of walk us through
</pre>

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc

Case 3:25-cv-02072-S   Document 8-8   Exhibit 25 Filed 06/04/25   Page 148 of 271   PageID 2126   L.P.

```
 1    some of the pertinent details.

 2         Q.    Are you familiar with the entities

 3    that Mr. Patrick signed that agreement on behalf

 4    of?

 5         A.    Yeah; I believe it's the Hunter

 6    Mountain Investment Trust.

 7         Q.    Right.  And you're aware that in

 8    addition to the Hunter Mountain -- can we refer

 9    to Hunter Mountain Investment Trust as "HMIT"

10    today?

11         A.    Yes.

12         Q.    And are you aware that certain

13    affiliates of HMIT are also party to the

14    settlement agreement that is the subject of this

15    proceeding?

16         A.    I am.

17         Q.    And can we refer to HMIT and those

18    affiliates that are party to the agreement as

19    "the HMIT entities"?

20         A.    Yes.

21         Q.    Okay.  It's going to make our day a

22    little bit quicker and a little bit easier.

23         A.    Sure.

24         Q.    Do you know who approved the filing of

25    the objection on behalf of the Dallas Foundation?
```

 1          A.    Yeah, so it was approved by President

 2    Julie Diaz.

 3          Q.    Anybody else?

 4          A.    Then our legal team helped us kind of

 5    put together the objection.

 6          Q.    Do you know, have you ever met

 7    Jim Dondero?

 8          A.    I have never met him personally, no.

 9          Q.    Have you ever spoken with him?

10          A.    I think I was on one conference call

11    with him one time that I can recall.

12          Q.    Okay.  Do you know if he had any role

13    in the preparation of the Dallas Foundation's

14    objection?

15          A.    I didn't have any exposure with

16    Mr. Dondero.  So, no, I do not know.

17          Q.    Do you know where the idea of filing

18    the objection originated?  Like, whose idea was

19    it?

20          A.    Yes -- yes.

21          Q.    Whose idea was it to file the

22    objection?

23          A.    Well, it's a combination of the

24    Empower and Okada Foundation boards.  Just

25    looking at some of the investment activity that

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 8-18   Filed 06/06/25   Page 150 of 271   PageID 2263
Exhibit 125   Page 106 of 100   Page 150 of 271   Highland Capital Mgmt L.P.

```
 1    transpired through the first quarter, we had some

 2    concerns about the activity.  And a portion of

 3    that activity was the sale of Hunter Mountain

 4    interests through the Rand PE Fund I that

 5    ultimately rolled up to the Atlas, LP Fund, which

 6    impacted the economic value of the portfolio

 7    that's held by Crown Global.

 8         Q.    That's why the -- let's unpack that a

 9    little bit.  I asked where did the -- who came up

10    with the idea of objecting?  Let's take that

11    first.

12         A.    Sure, sure.  Yeah, I think it was the

13    board of the foundations, so primarily Julie Diaz

14    and myself just kind of thinking through the

15    activity that we became aware of.

16         Q.    And Mr. Dondero is a member of the

17    board; right?

18         A.    That's correct.

19         Q.    And it's just the three of you;

20    correct?

21         A.    That's correct.

22              ATTORNEY OKIN:  Object to form.

23    BY ATTORNEY MORRIS:

24         Q.    The Dallas Foundation's objection

25    refers to certain litigation pending in the
```

1    Cayman Islands.

2            Are you aware of that?

3        A.    Yes.

4        Q.    Are you aware that Mr. Dondero is

5    funding that litigation on behalf of the

6    supporting organizations that commenced it?

7        A.    Yes, sir.

8        Q.    And you're aware that he's funding

9    this litigation on behalf of the Dallas

10   Foundation; correct?

11       A.    That's correct.

12       Q.    Do you know why Empower Dallas

13   Foundation and the Okada Family Foundation didn't

14   just file the objection in their own name rather

15   than having the Dallas Foundation do it for them?

16            ATTORNEY OKIN:  Object to form.

17       A.    I think we looked it as the Dallas

18   Foundation is the supporting organization of the

19   two entities.  And we felt that the Dallas

20   Foundation and our president, Julie Diaz, we just

21   decided to file it under the foundation based on

22   a recommendation from our legal counsel.

23   BY ATTORNEY MORRIS:

24       Q.    Are you aware that the objection is

25   also filed on behalf of Crown Global Life

```
 1    Insurance, Limited?

 2         A.    Yes, sir.

 3         Q.    Okay.  And what is Crown Global Life

 4    Insurance, Limited?

 5         A.    The Crown Global Life Insurance,

 6    Limited, is an issuer of insurance annuities.

 7         Q.    What -- what role does it play with

 8    respect to the Dallas Foundation?

 9         A.    Yeah, so it plays a role more so with

10    the Empower Dallas and Okada Family Foundation.

11    They each hold policies with Crown Global through

12    the insurance annuities.  So the legal contract

13    is between Empower Dallas and Okada Family

14    Foundation with Crown Global.

15         Q.    And -- and is the withdrawn.

16               Does the annuity pay dividends or make

17    other distributions?

18         A.    Yeah, it makes distributions to the

19    fund as fixed payments through the contract, yes,

20    sir.

21         Q.    And do those fixed payments go

22    directly from Crown Global to Empower Dallas and

23    the Okada Family Foundation respectively?

24         A.    That's correct.

25         Q.    And do you know what the annuities are
```

```
 1   invested in?
 2        A.    I don't know the actual underlying
 3   investments.  I know the annuities have within
 4   them the Atlas IDF, LP Fund, and that they --
 5   what ultimately rolls up is the Rand Fund I, the
 6   Beacon Mountain and the Hunter Mountain, HMIT,
 7   ultimately rolls up.
 8        Q.    And is -- are the annuities the sole
 9   source of Empower Dallas and the Okada Family
10   Foundation's income, to the best of your
11   knowledge?
12        A.    That's correct, yes, sir.
13        Q.    And does a portion of that income then
14   flow up to the Dallas Foundation?
15        A.    Well, the income doesn't flow to the
16   Dallas Foundation.  What does happen is, as
17   Empower and the Okada Family Foundations make
18   recommendations, those recommendations flow to
19   the Dallas Foundation, to the corresponding
20   donor-advised fund; and then ultimately those
21   donor-advised funds make the grants out to the
22   community.
23             We typically don't get any of the
24   income through the Crown Global vehicle -- the
25   Dallas Foundation doesn't get any income through
```

 1   the Crown Global vehicle.

 2        Q.    Is there anybody in the room with you

 3   right now?

 4        A.    No, sir.

 5        Q.    Do you have any device on other than

 6   the computer that we're sharing right now?

 7        A.    No.  I have a fan on.  Is it causing

 8   feedback?

 9        Q.    No, but I have a fan on too.  Maybe

10   it's --

11        A.    Okay.  Sorry.  Yeah.  Sorry about

12   that.

13        Q.    Do you have any notes or anything that

14   you're reading from or that you're looking at?

15        A.    No, sir, no.

16        Q.    Okay.  So there are these annuities.

17   How did those annuities get funded?  Do you know?

18        A.    Yes.  So back in 2015, I believe, in

19   November of 2015, we funded the annuities with

20   about $29 million.  So contributions from -- I

21   think it was about $22 million from the --

22   Mr. Dondero, and then I believe another $7

23   million from Mr. Okada, which ultimately were

24   sent over to Crown Global to invest in the

25   annuities.

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 8-25 Filed 06/26/25   Page 155 of 271   PageID 2268
Exhibit 25 Page 20 of 100   Page 155 of 271   Capital Group L.P.

1          Q.     And under the annuities, they pay

2    fixed amounts to both supporting organizations?

3          A.     Yes, sir, that's correct.

4          Q.     And is there any market risk that the

5    supporting organizations have, or is this a -- is

6    it your understanding that it's a contractual

7    obligation of Crown Global to pay that fixed

8    amount for some duration?

9          A.     Yeah, I believe Crown Global takes the

10   risk.  They have to pay a fixed amount through

11   the obligation.  I believe they take an M&E

12   expense, which compensates for the risk.

13         Q.     What's that last piece?  I missed --

14         A.     The M&E expenses, it's part of

15   their -- we receive their statements quarterly.

16   They have an administrative fee that they take,

17   and then they have what they call an M&E expense,

18   which it was explained a while back that's a

19   percentage that they take to compensate for the

20   risk associated with insurance annuities.

21         Q.     And is the annuity tied to a -- is it

22   a fixed period of time, or is it tied to a

23   particular event?

24         A.     That, I cannot answer.

25         Q.     Okay.  But is it fair to say that the

```
 1    supporting organizations paid money to Crown

 2    Royal -- Crown Global -- it's getting late.

 3    Sorry.

 4              ATTORNEY OKIN:  Sounds good.

 5              THE WITNESS:  No.  Sounds good, yeah.

 6    BY ATTORNEY MORRIS:

 7        Q.    Let me restate the question.

 8              Is it your understanding that the

 9    supporting organizations paid money to

10    Crown Global; and in exchange, they got annuities

11    which produced a fixed stream of income for a

12    period of time in the future?  Is that right?

13        A.    That's correct.

14        Q.    Okay.  And that the assets -- the

15    segregated accounts themselves are owned by

16    Crown Global; correct?

17        A.    I believe the Atlas IDF Fund, I

18    believe Crown Global has partnership interests in

19    that particular fund.  I don't think they have

20    any ownership of the other underlying segregated

21    accounts.  Not that I'm aware of.

22        Q.    Do the segregated accounts hold

23    anything other than the annuities?  Withdrawn.

24              Do the segregated accounts hold the

25    annuities?
```

```
1              A.      The segregated accounts, not to my

2      knowledge do they hold the annuities.  What I

3      believe hold the annuities is the Atlas IDF, LP

4      Fund holds the annuities.

5              Q.      But Crown Global is the one who takes

6      the risk with respect to the investments in the

7      annuities; correct?

8              A.      That's correct.

9              Q.      And do they take the risk as well with

10     respect to the value of Atlas, for example?

11             A.      Yes, they do take the risk with the

12     value of Atlas.

13             Q.      So whether Atlas is worth a dollar or

14     a billion dollars, Crown Global has the same

15     obligation to the supporting organizations to pay

16     the fixed stream of income that it agreed to when

17     it sold the annuity to them; correct?

18             A.      That's my understanding.

19             Q.      Okay.  So that regardless of the value

20     of the segregated accounts, the supporting

21     organizations are guaranteed to receive the exact

22     same amount of money over time as long as

23     Crown Global complies with its obligations in the

24     annuity contract; correct?

25             A.      Yes, sir.
```

```
 1        Q.    Okay.  Do you know if the Dallas

 2   Foundation ever appeared in the Highland

 3   bankruptcy before it filed this objection?

 4        A.    No, sir, I don't believe we did.

 5        Q.    And as the CFO, is it fair to say that

 6   you know that the Dallas Foundation never filed a

 7   claim in the Highland bankruptcy?

 8        A.    Yes, sir.

 9        Q.    And do you also know that the Dallas

10   Foundation does not have an interest in the

11   Highland Claimant Trust that was formed as part

12   of the plan of reorganization?

13             ATTORNEY OKIN:  Object to form.

14   BY ATTORNEY MORRIS:

15        Q.    Withdrawn.  Let me lay a little bit of

16   foundation.

17             Are you familiar with an entity called

18   the Highland Claimant Trust?

19        A.    Yes.

20        Q.    Okay.  Does the Dallas Foundation

21   have, directly or indirectly, any interest in the

22   Highland Claimant Trust?

23             ATTORNEY OKIN:  Object to form.

24        A.    What I could say is that it depends on

25   the settlement with relationship with Hunter
```

1    Mountain and indirectly with the roll-up that the

2    beneficial interest to Empower and Okada

3    Foundation and how that settlement impacts the

4    economic interest there.  I think that's where

5    the Dallas Foundation could indirectly have some

6    interest.  While we're not the sole ownership of

7    the Crown Global policy, we do have a

8    relationship with Empower Dallas and the Okada

9    supporting organizations.

10   BY ATTORNEY MORRIS:

11       Q.    Well, you don't have an interest in

12   what, did you say?  The annuities?

13       A.    We do have an interest in the annuity

14   contracts.

15       Q.    The Dallas Foundation didn't fund the

16   annuity contracts; correct?

17       A.    No, we did not fund them.  But --

18       Q.    And the Dallas Foundation doesn't own

19   the annuity contracts; correct?

20       A.    No, we don't own the annuity

21   contracts.  But what we do is we do have a

22   fiduciary responsibility for any relationship

23   that they financially to protect, preserve and to

24   grow these charitable assets.  And, ultimately,

25   the supporting organizations, they roll up into

 1    our financial statements.

 2          Q.    Is it your understanding that

 3    Crown Global has a duty to distribute --

 4    withdrawn.

 5                Is it your understanding that

 6    Crown Global has a duty to make distributions to

 7    the Dallas Foundation?

 8          A.    No, sir.  They make distributions to

 9    Empower and Okada supporting organizations.

10          Q.    Do you have any reason to believe that

11    Crown Global owes any duty at all to the Dallas

12    Foundation with respect to the annuities?

13                ATTORNEY OKIN:  Object to form.

14          A.    There's no direct responsibility from

15    Crown Global to the Dallas Foundation.  But

16    because of our relationship with Okada and

17    Empower, there is an indirect relationship there,

18    that we have an interest.

19    BY ATTORNEY MORRIS:

20          Q.    And let's go beyond the annuities.

21                Do you know whether Crown Global has

22    any direct duty to the Dallas Foundation for any

23    reason?

24                ATTORNEY OKIN:  Object to form.

25          A.    I'm going to say not directly.

```
 1    BY ATTORNEY MORRIS:

 2         Q.    Okay.  Thank you.

 3               Does the Dallas Foundation carry on

 4    its balance sheet any interest in the Highland

 5    Claimant Trust?

 6         A.    No, sir.

 7         Q.    Do you know if the Dallas Foundation

 8    has any contractual relationship with Highland

 9    Capital Management or the Highland Claimant

10    Trust?

11         A.    No, sir, we don't.

12         Q.    Do you have any reason to believe

13    today that Highland Capital Management or the

14    Highland Claimant Trust owes any duties or

15    obligations to the Dallas Foundation?

16               ATTORNEY OKIN:  Object to form.

17         A.    I wouldn't say there was any duties or

18    obligations to the Dallas Foundation.  But I do

19    think we have, again, some interest in the

20    settlements and how the funds originally were

21    supposed to flow up to Empower and Okada.

22               Empower and Okada, they roll up to the

23    Dallas Foundation's financial statements.  So I

24    think there is some indirect interest in Highland

25    Capital Claimant Trust and the decisions that are
```

Case 19-34054-sgj11    Doc 4277-2    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Case 3:25-cv-02072-S    Document 1-5    Filed 08/28/25    Page 162 of 271    Highland Capital Mgmt., L.P.
Exhibit 25    Page 26 of 100    Page 162 of 271    PageID 2275

```
 1    being made as it relates to the settlement.

 2    BY ATTORNEY MORRIS:

 3         Q.    I'm going to respectfully move to

 4    strike and ask you to listen carefully to my

 5    question --

 6         A.    Yes, sir.

 7         Q.    -- and this will go very smoothly.

 8              Do you have any reason to believe that

 9    Highland Capital Management or the Highland

10    Claimant Trust owes any duties or obligations to

11    the Dallas Foundation?

12              ATTORNEY OKIN:  Objection; form.

13              THE WITNESS:  My apologies.

14              ATTORNEY OKIN:  Go ahead.

15         A.    No, sir.

16    BY ATTORNEY MORRIS:

17         Q.    Are you aware that if the settlement

18    between the Highland entities and the HMIT

19    entities is approved, that the HMIT entities will

20    receive cash and other assets as set forth in the

21    agreement?

22         A.    Yes.

23         Q.    Do you have any reason to believe that

24    the Dallas Foundation has a right to receive any

25    of the cash or other assets that would be
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 18-1   Filed 06/26/25   Page 163 of 271   PageID 2276
Declaration of Michael Quilling   Exhibit 25   Page 28 of 100   Highland Capital Management L.P.

 1    delivered to HMIT if the settlement is approved?

 2              ATTORNEY OKIN:   Object to form.

 3         A.    Like I say based on the facts is that

 4    the interest in HMIT were sold for a million

 5    dollars.  So I believe the current structure as

 6    of now, the two supporting organizations would

 7    not receive any settlements.  They would not have

 8    any economic benefit of the settlement payout.

 9              Based on the historical structure,

10    yes, I would have said yes.  We had interest in

11    that settlement that would ultimately impact the

12    fair market values for Empower and Okada.

13    BY ATTORNEY MORRIS:

14         Q.    Are you familiar with the fair market

15    value of Empower and Okada?

16         A.    So the fair market value is through

17    the insurance annuity.  So based on the --

18         Q.    I'm sorry.  Through the insurance

19    what?

20         A.    It's the insurance through

21    Crown Global, so they produce a fund statement on

22    a quarterly basis.  We use that to state the fair

23    market value.

24         Q.    And is the fair market value based on

25    anything other than the projected future income

1    stream that you described earlier?

2        A.    I believe there is impact related to

3    some of the sub accounts.  One thing we do know

4    is in February of 2025, we saw the fair market

5    value increased by 918,000 due to the sale of

6    Rand's interest in Hunter Mountain.  So we do

7    believe there are other assets that impact the

8    fair market value.

9        Q.    But that's the fair market value of

10   the annuities; is that right?

11       A.    The sale of the Rand -- the interest

12   in the Hunter Mountain, the Rand?

13       Q.    Yeah, yeah.  Is what you're describing

14   the fair market value of the annuities that flows

15   up to the supporting organizations?

16       A.    I believe we have a couple of

17   investments that are within the Crown Global

18   structure.  I think you have insurance annuities,

19   and then you have other assets that are also

20   within that structure through the Atlas platform.

21   The way I understand it, the Atlas platform

22   allows for other alternative investments to be

23   wrapped within the insurance annuities.

24       Q.    Did the supporting organizations have

25   an ownership interest in Crown Global?

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 28-25 Filed 06/26/25   Page 165 of 271   PageID 21278
Exhibit 25 Page 30 of 100   Rand, et al. v. Atlas Capital Mgmt., L.P.

```
 1         A.    Yeah.  They hold the policy, right?
 2    The supporting organizations hold the policy
 3    through Crown Global, so absolutely.
 4         Q.    And the policy that you're referring
 5    to are the annuity policies?
 6         A.    The annuity policies, that's correct.
 7         Q.    And, again, just for clarity, it does
 8    not matter to the supporting organization what
 9    the value of the assets that are held by
10    Crown Global is; what matters is the agreed-upon
11    future flow of distributions; fair?
12         A.    That's fair, yes, sir.  Yes.
13         Q.    Are you familiar at all with the
14    structure of the Highland Claimant Trust?
15         A.    Not with the Highland Claimant Trust,
16    no.  I'm familiar with the structure of the --
17    the Rand structure here as relates to the Empower
18    Dallas, and then I'm familiar with the DAF Holdco
19    structure.
20         Q.    Are you familiar with the HMIT
21    structure?
22         A.    I'm familiar -- I know how the
23    structure flows up to the Atlas IDF Fund.
24         Q.    Have you reviewed any of the governing
25    documents for HMIT or any of the Rand funds or
```

 1    any of the Atlas funds?  Have you ever reviewed

 2    the governing documents?

 3         A.    At a high level, I took a glance at

 4    the governing documents to get an understanding

 5    of the flow.  I've seen organizational flow

 6    charts to kind of give me an idea of who owns

 7    what and how does it roll up ultimately to

 8    Crown Global.

 9         Q.    Do you have any knowledge as to what,

10    if any, role Crown Global played in the Highland

11    bankruptcy?

12         A.    No, sir.

13         Q.    So we've talked about the Rand and the

14    Atlas entities and Hunter Mountain, and we've

15    referred to those that signed on to the agreement

16    as "the HMIT entities"; right?

17         A.    Yes.

18         Q.    Do you know why each of the HMIT

19    entities was created?  Do you know what purpose

20    they served?

21         A.    You know, I know that they create some

22    vehicles that allow some different types of

23    investments.  I would imagine -- I don't know why

24    the structures were created the way they were.

25    We don't have that kind of insight.  That's just

1    an assumption.

2         Q.    Can you identify any assets that HMIT

3    owns today?

4         A.    No, sir.

5         Q.    Were you ever able to identify any

6    assets that HMIT owned?

7         A.    No.

8         Q.    In your duties as the CFO for the

9    Dallas Foundation, did you ever make an inquiry

10   as to what assets HMIT owned?

11        A.    We made an inquiry to the Atlas

12   structure unsuccessfully over the years because

13   they were able to get to the underlying assets to

14   have a clear understanding of the holdings; so,

15   no, I couldn't tell you that I was successful in

16   understanding the underlying assets.

17        Q.    So you've been the CFO for three years

18   now --

19        A.    Yes, sir.

20        Q.    -- and a half?

21              But you were with the organization for

22   about six; right?

23        A.    For 13, 13 total.

24        Q.    Thank you.

25              So you've been with the organization

 1   long before Mark Patrick ever had any role with

 2   respect to the HMIT entities; right?

 3        A.    Yes, sir.

 4        Q.    Okay.  At any time that you've been

 5   with the Dallas Foundation, were you ever

 6   informed as to the assets that were held by HMIT?

 7        A.    No, sir.

 8        Q.    No; right?

 9        A.    That's correct -- no.

10        Q.    Do you know today what assets are held

11   by any of the HMIT entities?

12        A.    No, sir.

13        Q.    At any time during your tenure at the

14   Dallas Foundation, were you ever informed as to

15   what the assets were that any of the HMIT

16   entities owned?

17        A.    No, sir.

18        Q.    Okay.  And did you ever think that, as

19   part of your duties and responsibilities working

20   for the Dallas Foundation, that you needed to

21   know that information?

22        A.    Absolutely.  Yeah, we inquired on

23   multiple occasions to get our auditors

24   comfortable with the investment vehicle.

25        Q.    And you were never able to get that

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S    Document 18-5  Filed 06/26/25   Page 169 of 271   PageID 2282
Exhibit 25  Page 35 of 100   Page 169 of 271   CapitalDec 21 2021.P.

 1    information, is that right?

 2         A.    That's right.

 3         Q.    And that was true for the entire time

 4    of your tenure at the Dallas Foundation?

 5         A.    Yes, sir.

 6         Q.    Okay.  In the course of your duties,

 7    did you ever communicate with anybody who was

 8    acting on behalf of HMIT?

 9         A.    I had some communications with

10    Mark Patrick, but I don't think he was over HMIT

11    at the time.  I don't know.  So it's kind of hard

12    to understand the transfer of a trustee or

13    ownership or oversight those accounts had.

14              So at a high level, he was probably

15    the person I tried to communicate with if we had

16    any questions around the valuations.

17         Q.    But it wasn't necessarily because he

18    was wearing the HMIT hat; it was because he wore

19    a lot of hats.  Is that fair?

20         A.    That's fair, yes.

21         Q.    During the course of your tenure at

22    the Dallas Foundation, did you ever once say to

23    yourself, I need to speak to the guy who's the

24    head of HMIT?

25         A.    No, we've never said that.

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Deposition 3:25-cv-02072-S   Document 68-25 Filed 06/06/25   Page 170 of 271   PageID 21283
Exhibit 25 Page 36 of 100   Page 170 of 271 Capital Dec 3 CP.

1    Q.    Okay.  Did you ever say to yourself at

2    any time during your tenure at the Dallas

3    Foundation, I need to speak to the head of any of

4    the HMIT entities?

5    A.    No, sir.

6    Q.    Do you know if the Dallas Foundation

7    ever received anything of value from HMIT

8    directly?

9    A.    I can't say directly, no.  I just

10   assumed it had rolled up.  It was -- we had some

11   value through the structure, I would imagine.

12   Q.    Do you know if the Dallas Foundation

13   ever received anything of value directly from any

14   of the HMIT entities?

15   A.    No, sir.

16   Q.    Do you know if any of the --

17   withdrawn.

18         Do you have any reason to believe that

19   any of the HMIT entities owes a duty or

20   obligation to the Dallas Foundation today?

21         ATTORNEY OKIN:  Object to the form.

22   A.    I believe that there's going to be

23   impact to our economic interest in Crown Global.

24   I do believe there's a fiduciary obligation to

25   the Dallas Foundation to have communication if

 1   there are investment decisions that are being

 2   made that's going to impact that economic

 3   interest, positive or negatively.

 4   BY ATTORNEY MORRIS:

 5        Q.    Sorry.  I may not have heard it

 6   clearly.

 7             But do you believe that Highland

 8   Capital Management or the Highland Claimant Trust

 9   owes a fiduciary duty to the Dallas Foundation?

10        A.    Sorry.  No.  No.  No.  I thought you

11   said HMIT.  Sorry.

12        Q.    You know what?  I probably did.  Let's

13   do that.

14        A.    Yeah.

15        Q.    Did you believe -- do you believe that

16   any of the HMIT entities owes a fiduciary duty to

17   the Dallas Foundation?

18             ATTORNEY OKIN:  Object to form.

19        A.    Again, I'll just restate what I said.

20             If it's starting to impact the

21   economic interest for the value of the

22   Crown Global policies, I do think there's a

23   fiduciary obligation to have a conversation to

24   inform of any investment decisions that are being

25   made that could have significant impact to that

```
 1   value.

 2   BY ATTORNEY MORRIS:

 3        Q.    Okay.  Are you aware that HMIT filed a

 4   motion in the bankruptcy court a couple of years

 5   ago seeking permission to file a lawsuit against

 6   Highland Capital Management and others?

 7        A.    Yes, sir, I am aware of that.

 8        Q.    You are.

 9              Did HMIT seek the Dallas Foundation's

10   approval before filing that motion?

11        A.    No, sir, not that I'm aware of.

12        Q.    Do you believe that HMIT was required

13   to seek the Dallas Foundation's approval before

14   filing that lawsuit?

15        A.    Again, I think it -- I don't know if

16   "seek approval" is the right language I would

17   use.  But I do think informing the Dallas

18   Foundation, that this could impact the economic

19   interests of Empower and Okada Foundation.

20        Q.    And nobody ever told you that; is that

21   right?

22        A.    That's correct.

23        Q.    How did you learn about the lawsuit

24   that HMIT commenced against Highland and others a

25   couple of years ago?
```

```
 1        A.    Well, as we kind of got -- one, it was
 2    kind of some news that was -- that came about
 3    through some other research.  Currently, as of
 4    today, we have our legal team working, pulling
 5    together facts so they kind of reiterated some of
 6    the facts that could impact the overall case.  So
 7    I will just lean on our legal team to kind of
 8    bring us up to speed on this fact-finding.
 9        Q.    Do you know who authorized the filing
10    of that motion?
11        A.    From HMIT?
12            ATTORNEY OKIN:  Object to form.  Which
13    motion do you mean, John?
14            ATTORNEY MORRIS:  The same one we're
15    talking about, the motion for permission from the
16    bankruptcy court to sue Highland and other
17    parties.
18            ATTORNEY OKIN:  The one he told you he
19    didn't even know about what was filed.
20            ATTORNEY MORRIS:  Hey, Matt, he did
21    tell me.  He actually did tell me --
22            ATTORNEY OKIN:  He told you he heard
23    about it after, but go ahead.
24    BY ATTORNEY MORRIS:
25        Q.    So...
```

1          A.    Yes, sir, I believe it was

2    Mr. Mark Patrick that filed them.

3          Q.    That authorized the filing of that

4    lawsuit?

5          A.    Yes, sir.

6          Q.    Do you think he did anything wrong in

7    doing that?

8                ATTORNEY OKIN:   Object to form.

9          A.    What I can say is that it has

10   impact -- it can potentially have some impact on

11   the -- it's convoluted.  I can't say he did

12   anything wrong with filing that motion.  But if

13   it's going to impact the Empower and Okada

14   Foundation, which is why I'm here today, is to

15   represent those supporting orgs, you know, I

16   think we have interest in the decisions that he's

17   making, right?

18   BY ATTORNEY MORRIS:

19         Q.    Okay.  But we can agree that he never

20   sought nor obtained the Dallas Foundation's

21   approval to file that motion; correct?

22         A.    Yes, sir, we can agree.

23         Q.    And can we also agree that you only

24   heard about that lawsuit after it was commenced

25   or after the motion was filed?

```
 1            A.    Yes, sir.

 2            Q.    Okay.  Have you read the settlement

 3     agreement that is the subject of the Dallas

 4     Foundation's objection?

 5            A.    Yeah, I've got some high-level facts

 6     related to the settlement agreement.  We had a

 7     legal team kind of -- again, we leaned on them to

 8     kind of pull out some of the important facts that

 9     could impact the Empower and Okada Foundation.

10            Q.    Do you know generally what HMIT is

11     proposing to give and receive under the

12     settlement agreement?

13            A.    Yes, sir, generally, I do know.  I

14     believe they're trying to release liability on

15     some of the claims.  I think that's part of the

16     settlement agreement.  I'm also aware that there

17     are future payouts that will be made to Hunter

18     Mountain.

19            Q.    And are you aware of other assets that

20     Hunter Mountain might receive if the settlement

21     agreement is pursued?

22            A.    Yes.

23            Q.    And what other assets are you aware

24     of?

25            A.    I know there's a large sum of assets,
```

1    you know, in the -- 300 million, I think that's

2    the amount of it that I don't recall.  But I

3    couldn't go verbatim.

4           Q.    It's not your understanding that

5    there's $300 million worth of anything that's

6    related to that agreement --

7           A.    Oh, yeah, yeah, yeah.  But, yeah, it's

8    not -- it's not there -- I was thinking about

9    there was some data around -- I apologize if I'm

10   getting my facts confused.

11          Q.    That's okay.

12          A.    Yeah, actually, there's a -- as it

13   relates to the Empower and Okada, I believe there

14   was an impact of roughly 23-plus million dollars,

15   potentially.

16          Q.    But that has nothing to do with

17   Highland; correct?

18          A.    That's correct.

19          Q.    And it has nothing to do with this

20   settlement agreement; correct?

21               ATTORNEY OKIN:  Object to form.

22          A.    Well, I think if it has impact,

23   ultimately, again, to Empower and Okada, again,

24   we sold our interest in Highland Capital

25   Management -- or Hunter Mountain for a million

```
 1    dollars.  So based on what we know is if there is

 2    a payout of $23 million, Empower and Okada, we

 3    won't benefit from it.

 4    BY ATTORNEY MORRIS:

 5         Q.    So is it fair to say that the Dallas

 6    Foundation's concern is not with the terms of the

 7    settlement agreement itself but with the

 8    disposition of the assets that Hunter Mountain

 9    will receive if the settlement agreement is

10    approved?

11              ATTORNEY OKIN:  Object to form.

12         A.    Well, the only thing I would say about

13    that is we have individuals making some

14    questionable decisions and, you know, with

15    charitable assets.  I believe Highland Dallas has

16    entered into a settlement agreement with this

17    individual.  I think that's -- that's what I

18    could say is somewhat problematic.

19    BY ATTORNEY MORRIS:

20         Q.    What's problematic?

21         A.    Oh, we have an individual that's

22    shifting around charitable assets out of the

23    responsibility of Empower and Okada; right?  And,

24    you know, Highland Capital has entered into an

25    agreement with this individual.  I think we all
```

```
 1    understand the facts that are at play.

 2         Q.     Do you have any reason to believe that

 3    the settlement agreement was not the product of

 4    an arm's-length, good-faith negotiation between

 5    adverse parties?

 6                ATTORNEY OKIN:  Object to form.

 7         A.     I can't say anything.  Yeah, I wasn't

 8    a part of those conversations, so I can't opine.

 9    BY ATTORNEY MORRIS:

10         Q.     And you don't have any facts that

11    would suggest that the settlement agreement is

12    anything other than the product of good-faith,

13    arm's-length negotiations; correct?

14                ATTORNEY OKIN:  Object to the form.

15         A.     I wasn't part of the conversation, so

16    I can't opine.  But what I can state is that I

17    believe there's significant impact to the Okada

18    and Empower Dallas Foundation.

19    BY ATTORNEY MORRIS:

20         Q.     And that's as -- not as a result of

21    the settlement agreement, but as a result of what

22    the Dallas Foundation contends was the

23    restructuring that Mr. Patrick engaged in earlier

24    this year; fair?

25                ATTORNEY OKIN:  Object to form.
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Deposition of: Jo Capital Depo Page 179 of 271 Capital Depo L.P.
Case 3:25-cv-02072-S   Document 18-1   Filed 06/25/100   Page 179 of 271   PageID 31292

```
 1          A.     For the most part, I'd say that's

 2     fair.

 3     BY ATTORNEY MORRIS:

 4          Q.     Okay.  Do you have any concerns that

 5     the settlement agreement is not the product of

 6     arm's-length, good-faith negotiations?

 7          A.     I'd have to restate that, again, we

 8     have an individual who's moving around charitable

 9     assets.  And, again, I think we understand the

10     facts of restructuring, and the agreement was

11     made to settle with this individual.  So from our

12     standpoint, again, it impacts the two supporting

13     organizations that we are here representing.

14             So I think there's two things at play.

15     The negotiations that you had with this

16     individual, I can't opine whether or not that it

17     wasn't done in good faith; but the impact of that

18     settlement agreement does impact Okada and

19     Empower Dallas.

20          Q.     And that's because as a result of

21     Mr. Patrick's restructuring, the Dallas

22     Foundation is concerned that it may not have --

23     it may not receive as much as it would have

24     indirectly had the restructuring not taken place;

25     fair?
```

```
 1          A.    That's fair.

 2              ATTORNEY OKIN:  Object to form.

 3    BY ATTORNEY MORRIS:

 4          Q.    Okay.  Do you have any reason to

 5    believe that the proposed settlement is unfair to

 6    Highland Capital Management, LP?

 7          A.    Yeah, I don't have any reason to

 8    opine, no.

 9          Q.    Okay.  Do you have any reason to opine

10    as to whether or not the proposed settlement

11    agreement is unfair to the Highland Claimant

12    Trust?

13          A.    No, sir.

14          Q.    Do you have any reason to opine that

15    the proposed settlement agreement is unfair to

16    the Highland Litigation Subtrust?

17          A.    No, sir.

18          Q.    Do you have any reason to opine that

19    the settlement agreement is unfair to Hunter

20    Mountain Investment Trust?

21          A.    No, sir.  We can make good-faith

22    settlements, given that there are facts that

23    certain organizations or entities could be

24    impacted, given what we've already talked about,

25    what Mark Patrick has done with the
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 6-18   Filed 06/06/25   Page 181 of 271   PageID 3294
Depo of James Seery   Exhibit 25   Page 46 of 100   Highland Capital Mgmt L.P.

 1    restructuring.

 2         Q.    So two things can be true, at the same

 3    time --

 4         A.    Two things can be true.

 5         Q.    Two things can be true at the same

 6    time; right, sir?  The settlement agreement can

 7    be a fair and reasonable settlement that's the

 8    product of arm's-length and good-faith

 9    negotiations; while at the same time, the Dallas

10    Foundation can still have concerns over the

11    disposition of the assets that Hunter Mountain

12    receives as a result of this restructuring; fair?

13         A.    I think for the most part, that's

14    fair.  The only caveat I would add to that is if

15    I'm negotiating with an individual that we know

16    is causing harm to other organizations, I just

17    say maybe we don't care about that.  But from our

18    standpoint, we do.

19         Q.    Do you have any reason to believe that

20    the proposed settlement is unfair to any of the

21    HMIT entities?

22         A.    No, sir.

23         Q.    Are you aware that under the

24    settlement agreement, the HMIT entities are

25    releasing the Highland parties from any liability

```
 1    other than that which arises out of the
 2    settlement agreement itself?
 3         A.    Yeah.  I believe that was a part of
 4    the settlement.  That's why we have the
 5    settlement.  Yeah.
 6         Q.    Do you have any concern about the
 7    scope of the releases that the HMIT entities are
 8    providing?
 9              ATTORNEY OKIN:  Object to form.
10    BY ATTORNEY MORRIS:
11         Q.    You can answer, sir.
12         A.    No, sir; only as it impacts, how does
13    it impact or potentially can impact lost income
14    for Okada and Empower.
15         Q.    Do you have any reason to believe that
16    the granting of the releases in the proposed
17    settlement agreement by the HMIT entities will
18    have any impact at all on the supporting
19    organizations?
20              ATTORNEY OKIN:  Object to form.
21         A.    Again, I think there's an economic
22    interest in what does the settlement -- the loss
23    of income streams to Empower and Okada, which we
24    believe is true.
25    ///
```

```
 1    BY ATTORNEY MORRIS:

 2         Q.    I'm just focused on the releases now.

 3         A.    Sure.

 4         Q.    Do you have any reason to believe that

 5    the releases that the HMIT parties are granting

 6    under the proposed settlement will have any

 7    economic impact on the supporting organizations?

 8               ATTORNEY OKIN:  Object to form.

 9         A.    No, sir.

10    BY ATTORNEY MORRIS:

11         Q.    Okay.  Are you aware of any facts that

12    could give rise to a claim by the Dallas

13    Foundation against Highland?

14               ATTORNEY OKIN:  Object to form.

15         A.    Can you elaborate on that a little bit

16    for me.

17    BY ATTORNEY MORRIS:

18         Q.    Sure.

19               So I'm just -- I'm wondering if you

20    know of any facts that might give rise to a claim

21    or a cause of action by the Dallas Foundation

22    against Highland Capital Management.

23               ATTORNEY OKIN:  Object to form.

24         A.    Not directly, no, sir.

25    ///
```

 1   BY ATTORNEY MORRIS:

 2        Q.     Okay.  Are you aware of any facts that

 3   might give rise to a claim or cause of action

 4   that the Dallas Foundation could assert against

 5   the Highland Claimant Trust?

 6               ATTORNEY OKIN:  Object to form.

 7        A.     No, sir, not directly, no.

 8   BY ATTORNEY MORRIS:

 9        Q.     Do you understand the basis for the

10   Dallas Foundation's objection to the proposed

11   settlement?

12        A.     Absolutely, yes, I do.

13        Q.     Can you describe for me in your own

14   words what your understanding is of the basis of

15   the objection.

16        A.     Yeah.  We are aware that we sold Rand

17   PE Fund, which rolls up to the Atlas IDF Fund,

18   sold its interest in the Hunter Mountain for a

19   million dollars; and we believe that we have

20   significant future economic payments that would

21   be paid out to Hunter Mountain that Empower and

22   Okada would no longer benefit from.

23        Q.     Is it fair to say that the Dallas

24   Foundation is concerned, not with the terms of

25   the settlement agreement itself, but with the

1   possibility that it may not get its fair share of

2   the consideration that the HMIT entities are to

3   receive under the settlement agreement?

4          ATTORNEY OKIN:  Object to form.

5      A.     Yeah, for the most part, that's the

6   key -- that's our concern.

7   BY ATTORNEY MORRIS:

8      Q.     Okay.  Do you understand that Mark

9   Patrick has entered into the settlement agreement

10   with the Highland entities on behalf of each of

11   the HMIT entities?

12     A.     That's my understanding.

13     Q.     Do you have any reason to believe that

14   the governing documents for the HMIT entities did

15   not authorize Mr. Patrick to enter into the

16   settlement agreement on behalf of each of the

17   HMIT entities?

18          ATTORNEY OKIN:  Object to form.

19     A.     You know, what I would say to that is,

20   you know, regardless of the governing documents,

21   I do believe there's a fiduciary obligation that

22   Mr. Patrick had to the supporting organizations,

23   to inform us of any significant investment

24   decisions that could impact the economic interest

25   in the Crown Global vehicle.

```
 1              So I just believe that, you know, just

 2      like any trustee investment advisor/control

 3      person, those are just normal conversations that

 4      we expect to have; and we not did not have that

 5      in this situation.

 6      BY ATTORNEY MORRIS:

 7          Q.    Okay.  Anything else?

 8          A.    No, sir.

 9          Q.    Okay.  You don't believe that

10      Mr. Patrick was required to obtain the Dallas

11      Foundation's consent before entering into the

12      settlement agreement; fair?

13          A.    That's fair.

14          Q.    And you don't have any reason to

15      believe that the Dallas Foundation has any right

16      or ability to prevent Mr. Patrick from entering

17      into the settlement agreement on behalf of the

18      HMIT entities; fair?

19              ATTORNEY OKIN:  Object to form.

20          A.    You know, I think there's two things

21      can be true again.  I think there's documentation

22      which I haven't seen, but, again, there's a

23      fiduciary obligation to the interested parties, I

24      believe, just as any relationship with an

25      investment advisor or control person.
```

Deposition of Dallas Foundation by Charles Tennison, Jr. and Mark Conway Capital Dec 8, 2021 H.P.

```
 1   BY ATTORNEY MORRIS:

 2        Q.    And in your view, does the fiduciary

 3   duty that you believe Mr. Patrick had as the

 4   representative of the HMIT entities, does that

 5   extend anywhere beyond the duty to inform?

 6             ATTORNEY OKIN:  Object to form.

 7        A.    Well, I'm just trying to think

 8   about -- you know, we advised $650 million of

 9   assets under management.  We have advisors all

10   the time, before they make any decisions on the

11   sale of investments, we're informed about it.

12   They kind of let us know if it's going to have

13   impact to our portfolios.  And that's just an

14   expectation that we have of any investment

15   advisor or control person.

16   BY ATTORNEY MORRIS:

17        Q.    I appreciate that you have that

18   expectation.  Do you have an expectation that the

19   HMIT entities needed to obtain the Dallas

20   Foundation's consent before entering into the

21   settlement agreement?

22        A.    I'm not a legal person.  But I would

23   imagine if you have the documentation legally, I

24   don't know if you had to get our consent.  It's

25   more so just a fiduciary obligation.
```

```
 1          Q.    And, legally, do you have any reason

 2   to believe that the Dallas Foundation has a legal

 3   right over transactions that Mark Patrick, in his

 4   capacity as the representative of any of the HMIT

 5   entities, wanted to enter into?

 6                ATTORNEY OKIN:   Object to form.

 7          A.    As an interested party, I think we

 8   have an ability to have conversations to see if

 9   this decision was made that negatively impacted

10   the supporting organizations.   I think we do have

11   a right there to really understand why this

12   decision was made.   Why are we selling the

13   interest for a million dollars?   Why now?   Why is

14   the timing that happened now?   Because if nothing

15   happened, what we know is we would have benefited

16   from the settlement payouts.

17   BY ATTORNEY MORRIS:

18          Q.    Does the Dallas Foundation have a

19   direct ownership interest in any of the HMIT

20   entities?

21          A.    Not a direct ownership, no, sir.

22          Q.    Does the Dallas Foundation have any

23   indirect ownership interest in any of the HMIT

24   entities?

25                ATTORNEY OKIN:   Object to form.
```

```
 1          A.    Not directly.  The Dallas Foundation
 2     does not.
 3     BY ATTORNEY MORRIS:
 4          Q.    So no direct interest -- withdrawn.
 5                No direct ownership interest and no
 6     indirect ownership interest; fair?
 7                ATTORNEY OKIN:  Object to form.
 8          A.    We do have an interest in -- because
 9     the assets roll up to our balance sheet overall,
10     they would present an audited financial
11     statement.  So we do have to understand the
12     fluctuations in market value to explain not just
13     to our board but to our auditors what's happened.
14     So we do have indirect interest.
15     BY ATTORNEY MORRIS:
16          Q.    And none of the HMIT entities appear
17     as an asset on the Dallas Foundation's balance
18     sheet; correct?
19          A.    Not directly.  But if they roll up and
20     they feed into the Atlas IDF Fund, right, and
21     then the Atlas IDF Fund, which is a part of the
22     Crown Global annuities, feeds into our balance
23     sheet, there is an indirect interest in HMIT.
24                Fair to say?
25          Q.    Does any Atlas entity appear on the
```

```
 1    Dallas Foundation balance sheet?

 2         A.    Yeah, through the Crown Global

 3    annuity.  So if you look at the Crown Global

 4    statement, it lists an Atlas LP as the investment

 5    vehicle.

 6         Q.    Do you know if the Dallas Foundation

 7    has any right to control any of the HMIT

 8    entities?

 9              ATTORNEY OKIN:  Object to form.

10         A.    No, we can't directly control the HMIT

11    entities.

12    BY ATTORNEY MORRIS:

13         Q.    Do you know if the Dallas Foundation

14    has any right to approve or disapprove of any

15    potential transaction that an HMIT entity was

16    contemplating entering into?

17         A.    Yeah, so with the Atlas IDF Fund, what

18    I can say is the Empower and Okada, they do have

19    the opportunity to consent.

20              We had some notes that were -- there

21    were some notes that Mark Patrick wanted to sell

22    in February.  We had to get the consent of

23    Crown Global in order to sell these notes; and we

24    had -- we opined with Crown Global to withdraw

25    consent, right?
```

```
 1              So he did reach out to Crown Global
 2    for consent in which the Empower and Okada had an
 3    opportunity to provide our recommendation.
 4         Q.    Let's focus on the settlement
 5    agreement.
 6              Do you have any reason to believe that
 7    Mr. Patrick was required to obtain the consent of
 8    the Dallas Foundation before he signed it on
 9    behalf of the HMIT entities?
10              ATTORNEY OKIN:  Object to form.
11         A.    No.
12    BY ATTORNEY MORRIS:
13         Q.    Do you have any reason to believe that
14    Mr. Patrick was required to obtain the consent of
15    the supporting organizations before entering into
16    the settlement agreement on behalf of the HMIT
17    entities?
18              ATTORNEY OKIN:  Object to form.
19         A.    No, sir.
20    BY ATTORNEY MORRIS:
21         Q.    Do you have any reason to believe that
22    Mr. Patrick was required to obtain the consent of
23    Crown Global before entering into the proposed
24    settlement agreement on behalf of each of the
25    HMIT entities?
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc

Declaration -- In Support of Exhibit 125 Filed 06/05/100 Page 192 of 271 Capital Markets L.P.
Case 3:25-cv-02072-S   Document 68-2   Filed 06/06/25   Page 58 of 100   PageID 21305

```
 1                ATTORNEY OKIN:  Object to form.

 2        A.    No, sir.

 3   BY ATTORNEY MORRIS:

 4        Q.    Do you have any reason to believe that

 5   Crown Global has any right to control any of the

 6   HMIT entities?

 7                ATTORNEY OKIN:  Object to form.

 8        A.    Not that I'm aware of, no.

 9   BY ATTORNEY MORRIS:

10        Q.    Do you have any reason to believe

11   that -- we're going to move on.

12                So we're going to put up on the screen

13   the Dallas Foundation's objection.

14        A.    Yes, sir.

15        Q.    It will just take a moment for my

16   colleague to do that.

17                While he's doing that, let me just

18   tell you that this can be a little bit of a

19   cumbersome process.  I'm doing this by Zoom.  If

20   there's any aspect of the document that you

21   recall that you think you need to review to

22   refresh your recollection or to put it in

23   context, will you just let me know that so that I

24   give you a full and fair opportunity to answer

25   the questions?
```

```
 1            A.     Yes, sir.

 2                   ATTORNEY MORRIS:  Okay.  Can we go to

 3      paragraph 32, please.

 4                      (Previously marked Highland Exhibit

 5                   1 introduced by counsel.)

 6      BY ATTORNEY MORRIS:

 7            Q.     So I've put up on the screen,

 8      Mr. Littleton, the portion of the Dallas

 9      Foundation's objection that was filed in this

10      case.

11                   And you're familiar with that

12      document; is that right?

13            A.     Yeah.  I couldn't repeat it back to

14      you verbatim, but I understand some of the

15      high-level facts in this objection.

16            Q.     You give me comfort when you say that.

17      You should not be able to repeat verbatim what

18      this document is.  So --

19                   ATTORNEY OKIN:  And, Mr. Littleton,

20      although he didn't say it this time, he did say

21      it in the prior one:  If you need to see any more

22      of this in order to be able to answer his

23      questions, be sure to point that out.

24                   THE WITNESS:  Absolutely.

25                   ATTORNEY MORRIS:  I actually did say
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 6-28   Filed 06/06/25   Page 194 of 271   PageID 21307
Exhibit 25   Page 96 of 100   Page 194 of 271   Highland Capital Mgmt., L.P.

```
 1    that.  That's okay.

 2              ATTORNEY OKIN:  Did you say that this

 3    time?  I know you said it last time.

 4              ATTORNEY MORRIS:  Sorry, I must be

 5    putting you to sleep.

 6              ATTORNEY OKIN:  That's a possibility.

 7    BY ATTORNEY MORRIS:

 8         Q.    Looking at the third line, I'm just

 9    going to read this quote:  "Unfortunately, it

10    does not appear, however, that joint official

11    liquidators are parties to or have authorized the

12    settlement."

13              Do you see that sentence?

14         A.    Yes, sir.

15         Q.    Do you know the entity over which the

16    joint official liquidators were appointed?

17         A.    Yes, sir.  It's the DAF Foundation

18    Holdco.

19         Q.    And that's in the Cayman Islands; is

20    that right?

21         A.    Yes, sir; that's correct.

22         Q.    Are you aware that all of the HMIT

23    entities are Delaware organizations?

24         A.    Yes, sir; that's correct.

25         Q.    Have you ever communicated with the
```

 1   joint official liquidators?

 2        A.    No, not officially.  We do have a

 3   planned communication this week.

 4        Q.    Do you know if anybody acting on

 5   behalf of the Dallas Foundation has ever informed

 6   the joint official liquidators of Highland's

 7   motion to have the settlement agreement approved?

 8        A.    No, sir.

 9        Q.    Do you know if anybody acting on

10   behalf of the Dallas Foundation has provided a

11   copy of the objection that's on the screen to the

12   joint official liquidators?

13        A.    Not that I'm aware of, sir.

14        Q.    Do you have any reason to believe, as

15   you sit here today, that the joint official

16   liquidators have any knowledge of the settlement

17   agreement that is going to be before the Court on

18   Wednesday?

19             ATTORNEY OKIN:  Object to form.

20        A.    I can't directly say.

21   BY ATTORNEY MORRIS:

22        Q.    Okay.  You haven't had any

23   communications with anybody in the world at any

24   time that led you to believe that the joint

25   official liquidators were informed of the

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Declaration of Jason Morris - Exhibit 25   Filed 06/23/25   Page 196 of 271   Capital Deposit P.
Case 3:25-cv-02072-S   Document 18-25   Page 100   Page 196 of 271   Page ID 21309

```
 1    proposed settlement agreement or the Dallas

 2    Foundation's objection; fair?

 3         A.    That's fair, sir.

 4         Q.    Okay.  Do you have any reason to

 5    believe that Mr. Patrick was required to obtain

 6    the authorization of the joint official

 7    liquidators before entering into this settlement

 8    agreement on behalf of the HMIT entities?

 9              ATTORNEY OKIN:  Object to form.

10         A.    No, sir, I can't.  I can't speak to

11    that.

12    BY ATTORNEY MORRIS:

13         Q.    Can you speak to whether or not the

14    joint official liquidators have any right to veto

15    or prevent the HMIT entities from entering into

16    the settlement agreement?

17         A.    Again, I'm not a legal person, so I

18    can't really opine on the official capacity of

19    the joint liquidators and what they're capable of

20    doing and not doing.  So I'm going to have to

21    say, no, I can't answer that question.

22         Q.    Further down in the paragraph it

23    states that:

24              "Indeed, many of Mr. Patrick's

25         actions, including the insertion of
```

1    newly created entities into the fund's

2    structure for the apparent purpose of

3    diverting charitable assets will now be

4    subject to the scrutiny of an

5    independent, Court-appointed fiduciary

6    and may be subject to clawback or other

7    avoidance actions in the Cayman

8    liquidation or such other tribunal as

9    has jurisdiction."

10         Have I read that correctly, sir?

11    A.    Yes, sir, you have.

12    Q.    Okay.  You're not an expert in Cayman

13    Islands law; correct?

14    A.    No, sir.

15    Q.    I think you said earlier you're not a

16    lawyer.  Right?

17    A.    That's correct.

18    Q.    Do you have any understanding as to

19    what facts must be established in order to

20    succeed in a clawback or avoidance action?

21    A.    It would just be assumption of mine

22    that I would have, whether it's a breach of

23    contract, discovery of various actions

24    decision-making.  But, no, I can't give you a

25    legal opinion.

```
 1          Q.    Do you have any view at all as to

 2    likelihood that the supporting organizations or

 3    the Dallas Foundation might succeed in clawing

 4    back or succeeding in other avoidance actions to

 5    set aside the settlement agreement if it's

 6    approved by the Court?

 7                ATTORNEY OKIN:  Object to form.

 8                And I'll also just remind you,

 9    Mr. Littleton, to the extent it's implicated,

10    don't go into attorney-client privileged

11    information that you may have received.

12          A.    Yeah, I can't -- I can't answer your

13    question, Mr. Morris, on that one.

14    BY ATTORNEY MORRIS:

15          Q.    Is it fair to say you'd have to

16    speculate as to whether or not -- let me just

17    finish the question.

18                Is it fair to say that you would have

19    to speculate as to whether or not the Dallas

20    Foundation or anybody else might succeed in

21    clawing back or avoiding the settlement agreement

22    if it's approved by the Court?

23                ATTORNEY OKIN:  Object to form.

24          A.    It would be my opinion.  It would be

25    speculation of how I feel, given the facts that
```

```
 1    I've seen and just some of the impact that we've

 2    seen on our supporting organizations; and I would

 3    just leave it there.

 4              ATTORNEY MORRIS:  Okay.  If we could

 5    scroll up to paragraph 33, please.

 6    BY ATTORNEY MORRIS:

 7         Q.   Okay.  The last sentence of

 8    paragraph 33 says:  "Thus, even if approved by

 9    this Court, consummation of the settlement is not

10    likely to buy the peace the debtor now seeks."

11              Do you see that?

12         A.   Yes, sir.

13         Q.   Do you have any reason to believe that

14    the Highland parties have done anything wrong in

15    entering into this proposed settlement agreement?

16              ATTORNEY OKIN:  Object to form.

17         A.   You know, what I would say is we have

18    an individual, in Mr. Patrick, that's moving

19    around charitable assets; and we -- Highland

20    Capital or the Highland entities have settled --

21    have made a settlement agreement with this

22    individual, knowing some of the facts of how the

23    charities are being negatively impacted.

24    That's -- that would be my comment there.

25    ///
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Case 3:25-cv-02072-S   Document 18-25   Filed 06/06/25   Page 200 of 271   Highland Capital Mgmt. L.P.
Exhibit 25   Page 66 of 100   Page 201 of 271   PageID 2318

```
 1    BY ATTORNEY MORRIS:

 2         Q.    I'm not asking about the impact on the

 3    charitable foundations, and I'm not asking about

 4    Mr. Patrick.  I'm just asking if you have any

 5    facts that lead you to believe that Highland has

 6    engaged in any wrongdoing with respect to

 7    negotiation and entry into the proposed

 8    settlement agreement.

 9              ATTORNEY OKIN:  Object to form.  He

10    answered your question.

11    BY ATTORNEY MORRIS:

12         Q.    You can answer, sir.

13         A.    No, sir.  I'll just leave it as I

14    stated.  That was my answer.

15         Q.    All right.  So I didn't hear any

16    facts, so you don't have any facts.  Is that

17    fair?

18              ATTORNEY OKIN:  Object to form;

19    argumentative.  Come on, John.

20              ATTORNEY MORRIS:  Matt, I'm being --

21              ATTORNEY OKIN:  You asked him if they

22    did anything wrong.  He told you they did

23    something wrong by --

24              (Indiscernible cross-talk.)

25              THE COURT REPORTER:  I'm sorry.  I
```

Case 19-34054-sgj11    Doc 4277-2    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc
Declaration of James P. Seery, Jr. in Support of Highland Capital Management, L.P. Page 201 of 271
Case 3:25-cv-02072-S    Document 28-25    Filed 06/06/25    Page 201 of 271    PageID 21314

```
 1    can't understand you both when you are talking at

 2    the same time.

 3    BY ATTORNEY MORRIS:

 4         Q.    Mr. Littleton, are you aware of any

 5    facts that cause you to believe that the Highland

 6    parties have done anything wrong in entering into

 7    this agreement?

 8              ATTORNEY OKIN:  Object to form.

 9         A.    Again, I would just state that we have

10    an individual who is moving around charitable

11    assets, and I think we all are aware of the facts

12    of what has taken place.  Now, whether we want to

13    consider that as anything wrong, in quotations,

14    that's up for opinion.

15              In terms of "facts" facts, I can't --

16    no, I'm going to say, no, I don't have facts that

17    I can with share you, Mr. Morris.

18    BY ATTORNEY MORRIS:

19         Q.    And you don't even have any facts that

20    suggest Highland had any role in moving the

21    assets around that you just described; fair?

22         A.    Yeah, I don't understand that Highland

23    has moved around the assets.  But I think when

24    you're making a deal knowing that the individual

25    that I'm settling with has done some things that
```

```
 1    are questionable, you know, I think that
 2    discussion can be up for debate, whether -- you
 3    know, charities are being impacted; significant
 4    dollars are not going to be going out to the
 5    community; there's a lot of uncertainty with
 6    these assets.
 7               And we all know the facts.  The facts
 8    are clearly outlined.
 9       Q.   Do you know why the Dallas Foundation
10    contends that:  "Even if approved by the Court,
11    consummation of the settlement is not likely to
12    buy the peace that the debtor now seeks"?
13               What's the basis for that, if you have
14    any understanding at all?
15       A.    That one there, sir, I'm not going to
16    be able to answer that one for you.
17       Q.    Are you aware of any potential claims
18    that the Dallas Foundation is considering
19    bringing against Highland Capital Management or
20    the Highland Claimant Trust?
21               ATTORNEY OKIN:  I'm going to instruct
22    him not to answer that.  To the extent that he
23    would be aware of those, that would be --
24               ATTORNEY MORRIS:  Why don't we just do
25    "yes" or "no," Matt.  Okay?
```

 1           ATTORNEY OKIN:  No.  I think -- I

 2     think whether or not there are any claims and

 3     whether we're considering any claims is

 4     attorney-client privilege.  It's not a "yes" or

 5     "no" or detail; it's a not answer.

 6           ATTORNEY MORRIS:  I'll ask him on

 7     Wednesday.

 8           ATTORNEY OKIN:  Okay.

 9     BY ATTORNEY MORRIS:

10     Q.     Let's go to -- yeah, paragraph 34 says

11     that "there is ample evidence that Mr. Patrick

12     has acted and is acting well outside the scope of

13     his authority and fiduciary obligations."

14           Do you see that?

15     A.     Yes, sir, I do.

16     Q.     Okay.  I want to focus solely on the

17     negotiation and execution of the settlement

18     agreement.

19           Focusing --

20     A.     Yes, sir.

21     Q.     Focusing solely on the settlement

22     agreement, do you believe that Mr. Patrick acted

23     outside of the scope of his authority to

24     negotiate and enter into the settlement agreement

25     on behalf of each of the HMIT entities?

```
 1              ATTORNEY OKIN:  Object to form of the
 2      question.
 3          A.    Again, I think it's something that
 4      I've stated a few times now.  Two things can be
 5      true.  I think we've already agreed on that.
 6      BY ATTORNEY MORRIS:
 7          Q.    Which two things can be true here?
 8          A.    The good-faith conversation with the
 9      settlement; but at the same time, it could have a
10      consequential impact on the Okada and Empower
11      Dallas supporting organizations.
12          Q.    Okay.  Do you believe -- do you have
13      any reason to believe that Mr. Patrick acted
14      outside of his fiduciary obligations with respect
15      to his negotiation and execution of the
16      settlement agreement on behalf of the HMIT
17      entities?
18              ATTORNEY OKIN:  Object to form.  Are
19      you asking him personally or the organization
20      that filed this?
21              ATTORNEY MORRIS:  It's not a 30(b)(6)
22      witness.  I know the difference.
23              ATTORNEY OKIN:  Just so we're clear.
24          A.    Yeah, I do think there was a fiduciary
25      obligation to inform and have a conversation with
```

```
 1   the interested parties.

 2   BY ATTORNEY MORRIS:

 3       Q.    Okay.  So, again, it's a duty to

 4   inform but nothing more; is that fair?

 5             ATTORNEY OKIN:  Object to form.

 6       A.    Yeah, yeah, again, I think it's, you

 7   know, something that we all expect to have,

 8   again, with our investment advisors, control

 9   persons, trustees.

10   BY ATTORNEY MORRIS:

11       Q.    Okay.  Can we go to paragraph 16,

12   please.

13             Do you see paragraph 16 refers to

14   material nonpublic information?

15       A.    Yes, sir.  I see it.

16       Q.    Do you know what material nonpublic

17   information is being referred to there?

18       A.    No, sir.

19       Q.    Did you ever ask anybody?

20       A.    No.  I didn't want to get involved in

21   that conversation, no, sir.  I did not ask

22   anybody.

23       Q.    Do you know where -- withdrawn.

24             Do you know the Dallas Foundation's

25   source of information that enabled it to state,
```

1    upon information and belief, that the information

2    provided was obtained by Mr. Patrick through his

3    employment at Skyview and constituted MNPI?

4            ATTORNEY OKIN:   Object to form.

5        A.    No, sir, I was not -- no.

6    BY ATTORNEY MORRIS:

7        Q.    You don't know where that information

8    came from?

9        A.    No, sir.

10        Q.    The next sentence refers to a put

11    option.

12            Do you see that?

13        A.    Yes, sir.

14        Q.    Did the foundation have a put option?

15        A.    Yeah, the Highland Dallas Foundation

16    had a put option agreement with the Dugaboy

17    Investment Trust.  I think we had 1.5 million

18    shares of NexPoint Hospitality Trust.  I think it

19    was a contribution that was given in 2019 with

20    the 7-year put option.

21        Q.    And is that option now expired?

22        A.    I believe it converted into a

23    different investment vehicle now.

24        Q.    So the Dallas Foundation never

25    exercised that option; correct?

```
 1          A.     Correct.

 2          Q.     Why not?

 3          A.     We didn't have a -- we didn't feel we

 4    had any reason to exercise the put option.

 5          Q.     Did you ever do any analysis to try to

 6    determine what the economic impact would be on

 7    the Dallas Foundation if they actually exercised

 8    that put option?

 9          A.     We had some conversations with our

10    internal investment advisor, and at the time his

11    recommendation was not to make any changes or

12    call the put option.

13          Q.     Who was that advisor?

14          A.     Madden & Associates at the time --

15    excuse me.  Madden Asset Management.

16          Q.     Do you have the shares to exercise the

17    put today?

18          A.     To be honest, Mr. Morris, there's a

19    little bit of discovery we have to understand now

20    that the shares have converted.  I believe they

21    converted to a different vehicle in April of this

22    year.

23          Q.     Are you aware that the Dallas

24    Foundation lost $9 million by not exercising the

25    put option before it converted?
```

```
 1                ATTORNEY OKIN:  Object to form.

 2        A.    I think we -- so we do have some

 3   information that we just need to understand

 4   thoroughly about what's happened now that the

 5   assets transferred into a different vehicle.

 6   BY ATTORNEY MORRIS:

 7        Q.    Well, you're the CFO; right?  And I

 8   think you said that your duty is to be

 9   responsible for the foundation's assets; right?

10        A.    That's fair; yes, sir.

11        Q.    Were you aware that the put was going

12   to convert before it actually converted?

13        A.    I was not aware of that.  I was not

14   informed of that.

15        Q.    Were you ever told what the value

16   would be to the Dallas Foundation if the Dallas

17   Foundation exercised the put?

18        A.    Yeah, I believe you're correct, it was

19   in the ballpark range of $9 million.

20        Q.    So is it fair to say that had the

21   Dallas Foundation exercised the put, then it

22   would have recovered $9 million?

23        A.    Yeah, I think that's fair, yeah.

24        Q.    What's the value of the shares that it

25   received upon conversion?  Do you know that?
```

Case 19-34054-sgj11 Doc 4277-2 Filed 06/24/25 Entered 06/24/25 10:20:25 Desc
Deposition of Grant Scott James — Exhibit 2 Page 209 of 271 Highland Capital Management, L.P.
Case 3:25-cv-02072-S Document 18-25 Filed 06/06/25 Page 209 of 271 PageID 21322

1    A.    No, I don't know that.  We were just

2    notified recently that the shares had converted.

3    Q.    Is one of the reasons that you didn't

4    exercise the put option is because Dugaboy,

5    Mr. Dondero's family trust, was the counterparty?

6    ATTORNEY OKIN:  Object to the form.

7    A.    No, sir, that wouldn't be the reason.

8    BY ATTORNEY MORRIS:

9    Q.    Do you think Mark Patrick breached his

10   fiduciary duty by telling the Dallas Foundation

11   that it should consider exercising a put that was

12   worth $9 million?

13   ATTORNEY OKIN:  Object to form.

14   A.    You know, I think there was

15   information that was not privy to individuals, so

16   I don't know if we could rely on that information

17   to make a decision.

18   BY ATTORNEY MORRIS:

19   Q.    This was a put that was owned by the

20   Dallas Foundation; do I have that right?

21   A.    The Highland Dallas Foundation,

22   supporting organization.

23   Q.    And what's the relationship between

24   the Dallas Foundation and the Highland Dallas

25   Foundation?

 1      A.    Very similar to the relationship

 2    between Empower Dallas and Okada Dallas.  The

 3    Highland Dallas Foundation is the supporting org

 4    that we have indirect oversight of.

 5      Q.    And if the Highland Dallas Foundation

 6    had exercised the put, would that have inured to

 7    the benefit of the Dallas Foundation?

 8            ATTORNEY OKIN:  Object to form.

 9      A.    It ultimately would have.  What it

10    would have benefited was the supporting

11    organization to allow for more impactful

12    grant-making.  So you would have had $9 million

13    of liquidity that could be pushed out into the

14    community.

15            ATTORNEY MORRIS:  Okay.  How much time

16    do I have left, Matt?  I know you're watching.

17            ATTORNEY OKIN:  I lost track, I was so

18    enraptured by your questions.

19            18 minutes.

20            ATTORNEY MORRIS:  You wouldn't be the

21    first one.

22            Why don't we take a short break here.

23    I've got 18 minutes left.  If we could just take

24    a five-minute break.

25    ///

```
 1                    (Recess taken from 4:42 p.m. to
 2               4:49 p.m.)
 3    BY ATTORNEY MORRIS:
 4         Q.    Mr. Littleton, I think you answered
 5    this.  If I did, I apologize.
 6               Can you confirm for me that you've
 7    never communicated with the joint official
 8    liquidators?
 9         A.    Yes, sir.  That is correct, other than
10    emails to set up a conversation.
11         Q.    Conversations that you did not
12    participate in; is that right?
13         A.    Yeah, just for -- yeah, just for some
14    questions they wanted to ask of the Dallas
15    Foundation's finance team.
16         Q.    But did you participate -- so you
17    spoke with the joint official liquidators'
18    finance team?
19         A.    No.  They wanted to set up a call.
20    That's the only time -- the only communication
21    I've had.
22         Q.    And you haven't had that call yet; is
23    that right?
24         A.    That's correct.
25         Q.    And that call is going to be scheduled
```

```
 1    for sometime in the future; fair?

 2         A.    Yes, sir.

 3              ATTORNEY MORRIS:  I have no further

 4    questions.

 5              ATTORNEY PHILLIPS:  No questions.

 6              ATTORNEY OKIN:  All right.

 7              ATTORNEY MORRIS:  Mr. Littleton, thank

 8    you very, very much for your time and patience.

 9              Matt, thank you for arranging this on

10    short notice.

11              Gail, do you need anything else from

12    anybody?

13              THE COURT REPORTER:  Okay.  I have

14    copies for Mr. Morris, Mr. Lang, Mr. Okin,

15    and Mr. Phillips.

16              Anybody else?

17              ATTORNEY OKIN:  Gail, we do want to

18    read and sign both transcripts.

19                   (Whereupon, at 4:50 p.m. Central

20                   Time the proceedings concluded.)

21

22

23

24

25
```

```
 1                INSTRUCTIONS TO DEPONENT

 2                After reading this volume of your

 3     deposition, indicate any corrections or changes

 4     to your testimony and the reasons therefor on the

 5     Errata Sheet supplied to you and sign it.  DO NOT

 6     make marks or notations on the transcript volume

 7     itself.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          E R R A T A

 2

 3              I wish to make the following changes,

 4        for the following reasons:

 5     Page   Line

 6     _____   _____   CHANGE: _____

 7     REASON: _____

 8     _____   _____   CHANGE: _____

 9     REASON: _____

10     _____   _____   CHANGE: _____

11     REASON: _____

12     _____   _____   CHANGE: _____

13     REASON: _____

14     _____   _____   CHANGE: _____

15     REASON: _____

16     _____   _____   CHANGE: _____

17     REASON: _____

18     _____   _____   CHANGE: _____

19     REASON: _____

20     _____   _____   CHANGE: _____

21     REASON: _____

22     _____   _____   CHANGE: _____

23     REASON: _____

24

25
```

Case 19-34054-sgj11   Doc 4277-2   Filed 06/24/25   Entered 06/24/25 10:20:25   Desc
Deposition of Torrey Littleton   Exhibit 25   Filed 06/06/25   Page 215 of 271   Capital Markets L.P.
Case 3:25-cv-02072-S   Document 69-8   Page 86 of 100   PageID 21328

```
 1

 2

 3                   C E R T I F I C A T I O N

 4

 5

 6          I hereby certify that I have read the

 7    foregoing transcript of my deposition testimony,

 8    and that my answers to the questions propounded,

 9    with the attached corrections or changes, if any,

10    are true and correct.

11

12    ------------------------------------
      TORREY LITTLETON
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1

 2              CERTIFICATE OF SHORTHAND REPORTER

 3

 4

 5              I, Gail Inghram, Registered Diplomate

 6    Reporter, Certified Realtime Reporter, Realtime

 7    Systems Administrator, CA-Certified Shorthand

 8    Reporter No. 8635, and Notary Public, the officer

 9    before whom the foregoing proceedings were taken,

10    do hereby certify that the foregoing transcript

11    is a true and correct record of the proceedings;

12    that said proceedings were taken by me

13    stenographically and thereafter reduced to

14    typewriting under my supervision; and that I am

15    neither counsel for, related to, nor employed by

16    any of the parties to this case and have no

17    interest, financial or otherwise, in its outcome.

18

19

20

21    _____
      Gail Inghram,
22    BA, RDR, CRR, RSA, CA-CSR No. 8635

23

24

25
```

## WORD INDEX

**< $ >**
**$22**  19:*21*
**$23**  42:*2*
**$29**  19:*20*
**$300**  41:*5*
**$650**  52:*8*
**$7**  19:*22*
**$9**  72:*24*  73:*19, 22*
74:*12*  75:*12*

**< 1 >**
**1**  6:*13*  58:*5*
**1.5**  71:*17*
**10010**  3:*24*
**10017-2024**  3:*16*
**11**  1:*8*
**1113**  4:*10*
**13**  11:*14*  32:*23*
**16**  70:*11, 13*
**1600**  5:*9*
**1700**  4:*18*
**18**  75:*19, 23*
**19-34054-sgj11**  1:*5*
**1st**  11:*13*

**< 2 >**
**2015**  19:*18, 19*
**2019**  71:*19*
**2022**  11:*13*
**2025**  1:*14*  2:*10*  29:*4*
**21**  7:*4*
**212.849.7615**  3:*25*
**214.817.4500**  4:*20*
**22**  1:*14*  2:*10*
**225.381.9643**  5:*11*
**22nd**  3:*23*
**2390**  4:*18*
**23-plus**  41:*14*
**240**  4:*10*

**< 3 >**
**3:30**  1:*15*  2:*11*
**30(b)(6**  69:*21*
**300**  41:*1*
**301**  5:*9*
**310.277.6910**  3:*17*
**32**  58:*3*

**33**  64:*5, 8*
**34**  68:*10*
**34th**  3:*15*

**< 4 >**
**4:42**  76:*1*
**4:49**  76:*2*
**4:50**  77:*19*

**< 5 >**
**51**  3:*23*
**58**  6:*13*

**< 6 >**
**67**  7:*4*

**< 7 >**
**70801**  5:*10*
**713.228.4100**  4:*12*
**75201**  4:*19*
**77002**  4:*11*
**780**  3:*15*
**7-year**  71:*20*

**< 8 >**
**8**  6:*7*
**8635**  1:*22*  81:*8, 21*

**< 9 >**
**918,000**  29:*5*

**< A >**
**ability**  51:*16*  53:*8*
**able**  32:*5, 13*  33:*25*
58:*17, 22*  67:*16*
**absolutely**  30:*3*
33:*22*  49:*12*  58:*24*
**accommodate**  11:*1*
**accounts**  21:*15, 21,*
*22, 24*  22:*1, 20*  29:*3*
34:*13*
**acted**  68:*12, 22*  69:*13*
**acting**  34:*8*  60:*4, 9*
68:*12*
**action**  48:*21*  49:*3*
62:*20*
**actions**  61:*25*  62:*7,*
*23*  63:*4*
**activity**  14:*25*  15:*2,*

*3, 15*
**actual**  18:*2*
**ADAMS**  4:*9*
**add**  46:*14*
**addition**  13:*8*
**administrative**  20:*16*
**Administrator**  81:*7*
**adverse**  43:*5*
**advised**  52:*8*
**advisor**  51:*25*  52:*15*
72:*10, 13*
**advisor/control**  51:*2*
**advisors**  52:*9*  70:*8*
**affiliated**  11:*4*
**affiliates**  9:*5*  12:*18*
13:*13, 18*
**affirmed**  8:*6*
**afternoon**  8:*23*
**ago**  12:*8*  37:*5, 25*
**agree**  39:*19, 22, 23*
**agreed**  22:*16*  69:*5*
**agreed-upon**  30:*10*
**agreement**  9:*4*  12:*17*
13:*3, 14, 18*  27:*21*
31:*15*  40:*3, 6, 12, 16,*
*21*  41:*6, 20*  42:*7, 9,*
*16, 25*  43:*3, 11, 21*
44:*5, 10, 18*  45:*11, 15,*
*19*  46:*6, 24*  47:*2, 17*
49:*25*  50:*3, 9, 16*
51:*12, 17*  52:*21*  56:*5,*
*16, 24*  60:*7, 17*  61:*1,*
*8, 16*  63:*5, 21*  64:*15,*
*21*  65:*8*  66:*7*  68:*18,*
*22, 24*  69:*16*  71:*16*
**ahead**  27:*14*  38:*23*
**ahurt@kellyhart.com**
5:*7*
**allow**  9:*19*  31:*22*
75:*11*
**allows**  29:*22*
**alternative**  29:*22*
**AMELIA**  5:*6*
**amount**  20:*8, 10*
22:*22*  41:*2*
**amounts**  20:*2*
**ample**  68:*11*
**analysis**  72:*5*
**annuities**  17:*6, 12, 25*
18:*3, 8*  19:*16, 17, 19,*

*25*  20:*1, 20*  21:*10, 23,*
*25*  22:*2, 3, 4, 7*  24:*12*
25:*12, 20*  29:*10, 14,*
*18, 23*  54:*22*
**annuity**  17:*16*  20:*21*
22:*17, 24*  24:*13, 16,*
*19, 20*  28:*17*  30:*5, 6*
55:*3*
**ANSWER**  7:*2*  9:*17,*
*20*  10:*19*  20:*24*
47:*11*  57:*24*  58:*22*
61:*21*  63:*12*  65:*12,*
*14*  67:*16, 22*  68:*5*
**answered**  65:*10*  76:*4*
**answers**  80:*8*
**Anybody**  14:*3*  19:*2*
34:*7*  60:*4, 9, 23*
63:*20*  70:*19, 22*
77:*12, 16*
**anyway**  10:*5, 20*
**apologies**  27:*13*
**apologize**  41:*9*  76:*5*
**apologizing**  8:*13*
**apparent**  62:*2*
**appear**  54:*16, 25*
59:*10*
**appeared**  3:*2*  23:*2*
**appointed**  59:*16*
**appreciate**  8:*16*
52:*17*
**approval**  37:*10, 13,*
*16*  39:*21*
**approve**  55:*14*
**approved**  13:*24*  14:*1*
27:*19*  28:*1*  42:*10*
60:*7*  63:*6, 22*  64:*8*
67:*10*
**approximately**  2:*11*
**April**  72:*21*
**argumentative**  65:*19*
**arises**  47:*1*
**arm's-length**  43:*4, 13*
44:*6*  46:*8*
**arranging**  77:*9*
**aside**  63:*5*
**asked**  15:*9*  65:*21*
**asking**  65:*2, 3, 4*
69:*19*
**aspect**  57:*20*

aspects 11:*21*
assert 49:*4*
asset 54:*17* 72:*15*
assets 11:*19* 21:*14*
24:*24* 27:*20, 25* 29:*7,*
*19* 30:*9* 32:*2, 6, 10,*
*13, 16* 33:*6, 10, 15*
40:*19, 23, 25* 42:*8, 15,*
*22* 44:*9* 46:*11* 52:*9*
54:*9* 62:*3* 64:*19*
66:*11, 21, 23* 67:*6*
73:*5, 9*
associated 20:*20*
Associates 72:*14*
assumed 35:*10*
assumption 32:*1*
62:*21*
Atlas 15:*5* 18:*4*
21:*17* 22:*3, 10, 12, 13*
29:*20, 21* 30:*23* 31:*1,*
*14* 32:*11* 49:*17*
54:*20, 21, 25* 55:*4, 17*
attached 80:*9*
Attorney 6:*7* 8:*11,*
*24* 15:*22, 23* 16:*16,*
*23* 21:*4, 6* 23:*13, 14,*
*23* 24:*10* 25:*13, 19,*
*24* 26:*1, 16* 27:*2, 12,*
*14, 16* 28:*2, 13* 35:*21*
36:*4, 18* 37:*2* 38:*12,*
*14, 18, 20, 22, 24* 39:*8,*
*18* 41:*21* 42:*4, 11, 19*
43:*6, 9, 14, 19, 25*
44:*3* 45:*2, 3* 47:*9, 10,*
*20* 48:*1, 8, 10, 14, 17,*
*23* 49:*1, 6, 8* 50:*4, 7,*
*18* 51:*6, 19* 52:*1, 6,*
*16* 53:*6, 17, 25* 54:*3,*
*7, 15* 55:*9, 12* 56:*10,*
*12, 18, 20* 57:*1, 3, 7, 9*
58:*2, 6, 19, 25* 59:*2, 4,*
*6, 7* 60:*19, 21* 61:*9,*
*12* 63:*7, 14, 23* 64:*4,*
*6, 16* 65:*1, 9, 11, 18,*
*20, 21* 66:*3, 8, 18*
67:*21, 24* 68:*1, 6, 8, 9*
69:*1, 6, 18, 21, 23*
70:*2, 5, 10* 71:*4, 6*
73:*1, 6* 74:*6, 8, 13, 18*

75:*8, 15, 17, 20* 76:*3*
77:*3, 5, 6, 7, 17*
attorney-client 63:*10*
68:*4*
audited 54:*10*
auditors 33:*23* 54:*13*
authority 68:*13, 23*
authorization 61:*6*
authorize 50:*15*
authorized 38:*9*
39:*3* 59:*11*
Avenue 3:*15, 23* 4:*18*
avoidance 62:*7, 20*
63:*4*
avoiding 63:*21*
aware 12:*7, 10, 13*
13:*7, 12* 15:*15* 16:*2,*
*4, 8, 24* 21:*21* 27:*17*
37:*3, 7, 11* 40:*16, 19,*
*23* 46:*23* 48:*11* 49:*2,*
*16* 57:*8* 59:*22* 60:*13*
66:*4, 11* 67:*17, 23*
72:*23* 73:*11, 13*

< B >
BA 1:*22* 81:*21*
back 19:*18* 20:*18*
58:*13* 63:*4, 21*
balance 26:*4* 54:*9,*
*17, 22* 55:*1*
ballpark 73:*19*
BANKRUPTCY 1:*1*
12:*8, 15* 23:*3, 7*
31:*11* 37:*4* 38:*16*
BARTLETT 4:*9*
based 16:*21* 28:*3, 9,*
*17, 24* 42:*1*
basis 28:*22* 49:*9, 14*
67:*13*
Baton 5:*10*
Beacon 18:*6*
beginning 2:*11*
behalf 3:*4, 19* 4:*3,*
*14* 5:*3* 13:*3, 25* 16:*5,*
*9, 25* 34:*8* 50:*10, 16*
51:*17* 56:*9, 16, 24*
60:*5, 10* 61:*8* 68:*25*
69:*16*
belief 71:*1*

believe 13:*5* 19:*18,*
*22* 20:*9, 11* 21:*17, 18*
22:*3* 23:*4* 25:*10*
26:*12* 27:*8, 23* 28:*5*
29:*2, 7, 16* 35:*18, 22,*
*24* 36:*7, 15* 37:*12*
39:*1* 40:*14* 41:*13*
42:*15* 43:*2, 17* 45:*5*
46:*19* 47:*3, 15, 24*
48:*4* 49:*19* 50:*13, 21*
51:*1, 9, 15, 24* 52:*3*
53:*2* 56:*6, 13, 21*
57:*4, 10* 60:*14, 24*
61:*5* 64:*13* 65:*5*
66:*5* 68:*22* 69:*12, 13*
71:*22* 72:*20* 73:*18*
beneficial 24:*2*
benefit 28:*8* 42:*3*
49:*22* 75:*7*
benefited 53:*15*
75:*10*
best 18:*10*
beyond 25:*20* 52:*5*
billion 22:*14*
bit 13:*22* 15:*9*
23:*15* 48:*15* 57:*18*
72:*19*
board 11:*23* 15:*13,*
*17* 54:*13*
boards 14:*24*
breach 62:*22*
breached 74:*9*
break 10:*24* 75:*22,*
*24*
bring 38:*8*
bringing 67:*19*
buy 64:*10* 67:*12*

< C >
CA-Certified 81:*7*
CA-CSR 1:*22* 81:*21*
call 14:*10* 20:*17*
72:*12* 76:*19, 22, 25*
called 12:*4* 23:*17*
capable 61:*19*
capacity 11:*7, 22*
53:*4* 61:*18*
CAPITAL 1:*6* 3:*4*
8:*25* 12:*5* 26:*9, 13,*
*25* 27:*9* 36:*8* 37:*6*

41:*24* 42:*24* 45:*6*
48:*22* 64:*20* 67:*19*
care 46:*17*
carefully 27:*4*
carry 26:*3*
Case 1:*5* 38:*6* 58:*10*
81:*16*
cash 27:*20, 25*
casual 8:*14*
cause 48:*21* 49:*3*
66:*5*
causing 19:*7* 46:*16*
caveat 46:*14*
Cayman 16:*1* 59:*19*
62:*7, 12*
Central 1:*15* 2:*11*
77:*19*
certain 9:*3* 12:*17, 18*
13:*12* 15:*25* 45:*23*
CERTIFICATE 81:*2*
Certified 2:*14, 15*
81:*6*
certify 80:*6* 81:*10*
CFO 11:*8, 10, 12, 16,*
*17* 23:*5* 32:*8, 17*
73:*7*
chance 10:*15*
CHANGE 79:*6, 8, 10,*
*12, 14, 16, 18, 20, 22*
changes 72:*11* 78:*3*
79:*3* 80:*9*
Chapter 1:*8*
charitable 11:*19*
24:*24* 42:*15, 22* 44:*8*
62:*3* 64:*19* 65:*3*
66:*10*
charities 64:*23* 67:*3*
charts 31:*6*
claim 23:*7* 48:*12, 20*
49:*3*
Claimant 3:*5* 9:*1*
23:*11, 18, 22* 26:*5, 9,*
*14, 25* 27:*10* 30:*14,*
*15* 36:*8* 45:*11* 49:*5*
67:*20*
claims 40:*15* 67:*17*
68:*2, 3*
CLARITY 7:*22* 30:*7*
clawback 62:*6, 20*

**clawing** 63:*3, 21*
**clear** 32:*14* 69:*23*
**clearly** 36:*6* 67:*8*
**colleague** 57:*16*
**combination** 14:*23*
**Come** 65:*19*
**comfort** 58:*16*
**comfortable** 33:*24*
**commenced** 16:*6*
 37:*24* 39:*24*
**comment** 64:*24*
**communicate** 34:*7, 15*
**communicated** 59:*25*
 76:*7*
**communication** 35:*25*
 60:*3* 76:*20*
**communications** 34:*9*
 60:*23*
**community** 18:*22*
 67:*5* 75:*14*
**company** 12:*4*
**compensate** 20:*19*
**compensates** 20:*12*
**complicated** 9:*14*
**complies** 22:*23*
**computer** 19:*6*
**concern** 42:*6* 47:*6*
 50:*6*
**concerned** 44:*22*
 49:*24*
**concerns** 15:*2* 44:*4*
 46:*10*
**concluded** 77:*20*
**conference** 14:*10*
**confirm** 76:*6*
**confused** 41:*10*
**connection** 9:*2*
**consent** 51:*11* 52:*20,
 24* 55:*19, 22, 25* 56:*2,
 7, 14, 22*
**consequential** 69:*10*
**consider** 66:*13* 74:*11*
**consideration** 50:*2*
**considering** 67:*18*
 68:*3*
**constituted** 71:*3*
**consummation** 64:*9*
 67:*11*
**Cont'd** 4:*1* 5:*1*

**contemplating** 55:*16*
**contends** 43:*22* 67:*10*
**context** 57:*23*
**contract** 17:*12, 19*
 22:*24* 62:*23*
**contracts** 24:*14, 16,
 19, 21*
**contractual** 20:*6*
 26:*8*
**contribution** 71:*19*
**contributions** 19:*20*
**control** 51:*25* 52:*15*
 55:*7, 10* 57:*5* 70:*8*
**controlled** 9:*6* 12:*11,
 19*
**conversation** 11:*25*
 36:*23* 43:*15* 69:*8, 25*
 70:*21* 76:*10*
**conversations** 43:*8*
 51:*3* 53:*8* 72:*9*
 76:*11*
**conversion** 73:*25*
**convert** 73:*12*
**converted** 71:*22*
 72:*20, 21, 25* 73:*12*
 74:*2*
**convoluted** 39:*11*
**copies** 77:*14*
**copy** 60:*11*
**correct** 15:*18, 20, 21*
 16:*10, 11* 17:*24*
 18:*12* 20:*3* 21:*13, 16*
 22:*7, 8, 17, 24* 24:*16,
 19* 30:*6* 33:*9* 37:*22*
 39:*21* 41:*17, 18, 20*
 43:*13* 54:*18* 59:*21,
 24* 62:*13, 17* 71:*25*
 72:*1* 73:*18* 76:*9, 24*
 80:*10* 81:*11*
**corrections** 78:*3* 80:*9*
**correctly** 62:*10*
**corresponding** 18:*19*
**counsel** 16:*22* 58:*5*
 81:*15*
**counterparty** 74:*5*
**couple** 29:*16* 37:*4, 25*
**course** 34:*6, 21*
**COURT** 1:*1* 8:*18*
 9:*25* 12:*15* 37:*4*
 38:*16* 60:*17* 63:*6, 22*

64:*9* 65:*25* 67:*10*
 77:*13*
**Court-appointed** 62:*5*
**CRAWFORD** 4:*17*
**create** 31:*21*
**created** 31:*19, 24*
 62:*1*
**cross-talk** 65:*24*
**Crown** 4:*3* 15:*7*
 16:*25* 17:*3, 5, 11, 14,
 22* 18:*24* 19:*1, 24*
 20:*7, 9* 21:*1, 2, 10, 16,
 18* 22:*5, 14, 23* 24:*7*
 25:*3, 6, 11, 15, 21*
 28:*21* 29:*17, 25* 30:*3,
 10* 31:*8, 10* 35:*23*
 36:*22* 50:*25* 54:*22*
 55:*2, 3, 23, 24* 56:*1,
 23* 57:*5*
**CRR** 1:*22* 81:*21*
**cumbersome** 57:*19*
**current** 28:*5*
**Currently** 38:*3*
**CURRY** 4:*7, 9*

**< D >**
**DAF** 30:*18* 59:*17*
**DALLAS** 1:*3* 4:*3, 19*
 9:*3* 11:*4, 8, 11* 12:*13*
 13:*25* 14:*13* 15:*24*
 16:*9* 17:*2, 15, 17, 19*
 17:*8, 10, 13, 22* 18:*9,
 14, 16, 19, 25* 23:*1, 6,
 9, 20* 24:*5, 8, 15, 18*
 25:*7, 11, 15, 22* 26:*3,
 7, 15, 18, 23* 27:*11, 24*
 30:*18* 32:*9* 33:*5, 14,
 20* 34:*4, 22* 35:*2, 6,
 12, 20, 25* 36:*9, 17*
 37:*9, 13, 17* 39:*20*
 40:*3* 42:*5, 15* 43:*18,
 22* 44:*19, 21* 46:*9*
 48:*12, 21* 49:*4, 10, 23*
 51:*10, 15* 52:*19* 53:*2,
 18, 22* 54:*1, 17* 55:*1,
 6, 13* 56:*8* 57:*13*
 58:*8* 60:*5, 10* 61:*1*
 63:*3, 19* 67:*9, 18*
 69:*11* 70:*24* 71:*15,
 24* 72:*7, 23* 73:*16, 21*

74:*10, 20, 21, 24* 75:*2,
 3, 5, 7* 76:*14*
**D'AMBRA** 5:*14*
**data** 41:*9*
**DAVID** 4:*7*
**day** 8:*18* 13:*21*
**dcurry@okinadams.co
m** 4:*8*
**deal** 66:*24*
**debate** 67:*2*
**Debtor** 1:*8* 64:*10*
 67:*12*
**decided** 16:*21*
**decision** 53:*9, 12*
 74:*17*
**decision-making**
 62:*24*
**decisions** 26:*25* 36:*1,
 24* 39:*16* 42:*14*
 50:*24* 52:*10*
**Defendant** 4:*3, 14*
**Delaware** 59:*23*
**delivered** 28:*1*
**DEMO** 3:*8*
**depends** 23:*24*
**DEPONENT** 78:*1*
**deposed** 9:*9*
**DEPOSITION** 1:*12*
 2:*9* 7:*1* 9:*2* 78:*3*
 80:*7*
**depositions** 8:*14*
**describe** 49:*13*
**described** 29:*1* 66:*21*
**describing** 29:*13*
**detail** 68:*5*
**details** 13:*1*
**determine** 72:*6*
**device** 19:*5*
**DIAZ** 5:*21* 14:*2*
 15:*13* 16:*20*
**difference** 69:*22*
**different** 31:*22*
 71:*23* 72:*21* 73:*5*
**Diplomate** 2:*14* 81:*5*
**DIRECT** 7:*23* 25:*14,
 22* 53:*19, 21* 54:*4, 5*
**direction** 2:*16*
**directly** 17:*22* 23:*21*
 25:*25* 35:*8, 9, 13*

48:*24*  49:*7*  54:*1, 19*
55:*10*  60:*20*
**director**  11:*23*
**directs**  10:*18*
**disapprove**  55:*14*
**discovery**  62:*23*
72:*19*
**discussion**  67:*2*
**disposition**  42:*8*
46:*11*
**distribute**  25:*3*
**distributions**  17:*17,*
*18*  25:*6, 8*  30:*11*
**DISTRICT**  1:*2*
**diverting**  62:*3*
**dividends**  17:*16*
**DIVISION**  1:*3*
**document**  57:*20*
58:*12, 18*
**documentation**  51:*21*
52:*23*
**DOCUMENTS**  7:*7*
30:*25*  31:*2, 4*  50:*14,*
*20*
**doing**  39:*7*  57:*17, 19*
61:*20*
**dollar**  22:*13*
**dollars**  22:*14*  28:*5*
41:*14*  42:*1*  49:*19*
53:*13*  67:*4*
**Dondero**  12:*11*  14:*7,*
*16*  15:*16*  16:*4*  19:*22*
**Dondero's**  74:*5*
**donor-advised**  18:*20,*
*21*
**dressing**  8:*15*
**due**  29:*5*
**Dugaboy**  4:*14*  71:*16*
74:*4*
**duly**  8:*6*
**duration**  20:*8*
**duties**  11:*15*  26:*14,*
*17*  27:*10*  32:*8*  33:*19*
34:*6*
**duty**  11:*17*  25:*3, 6,*
*11, 22*  35:*19*  36:*9, 16*
52:*3, 5*  70:*3*  73:*8*
74:*10*

**< E >**

**earlier**  29:*1*  43:*23*
62:*15*
**easier**  13:*22*
**economic**  15:*6*  24:*4*
28:*8*  35:*23*  36:*2, 21*
37:*18*  47:*21*  48:*7*
49:*20*  50:*24*  72:*6*
**elaborate**  48:*15*
**emails**  76:*10*
**EMANUEL**  3:*22*
**employed**  81:*15*
**employment**  71:*3*
**Empower**  11:*25*
14:*24*  16:*12*  17:*10,*
*13, 22*  18:*9, 17*  24:*2,*
*8*  25:*9, 17*  26:*21, 22*
28:*12, 15*  30:*17*
37:*19*  39:*13*  40:*9*
41:*13, 23*  42:*2, 23*
43:*18*  44:*19*  47:*14,*
*23*  49:*21*  55:*18*  56:*2*
69:*10*  75:*2*
**enabled**  70:*25*
**engaged**  43:*23*  65:*6*
**enraptured**  75:*18*
**ensure**  11:*17*
**enter**  50:*15*  53:*5*
68:*24*
**entered**  42:*16, 24*
50:*9*
**entering**  51:*11, 16*
52:*20*  55:*16*  56:*15,*
*23*  61:*7, 15*  64:*15*
66:*6*
**entire**  34:*3*
**entities**  9:*5*  12:*18*
13:*2, 19*  16:*19*  27:*18,*
*19*  31:*14, 16, 19*  33:*2,*
*11, 16*  35:*4, 14, 19*
36:*16*  45:*23*  46:*21,*
*24*  47:*7, 17*  50:*2, 10,*
*11, 14, 17*  51:*18*  52:*4,*
*19*  53:*5, 20, 24*  54:*16*
55:*8, 11*  56:*9, 17, 25*
57:*6*  59:*23*  61:*8, 15*
62:*1*  64:*20*  68:*25*
69:*17*
**entity**  12:*7, 10*  23:*17*
54:*25*  55:*15*  59:*15*

**entry**  65:*7*
**Errata**  78:*5*
**ESQ**  3:*6, 8, 10, 12, 20*
4:*5, 7, 15*  5:*4, 6*
**established**  62:*19*
**event**  20:*23*
**evidence**  68:*11*
**exact**  22:*21*
**EXAMINATION**  6:*5*
8:*10*
**examined**  8:*8*
**example**  22:*10*
**exchange**  21:*10*
**excuse**  72:*15*
**execution**  68:*17*
69:*15*
**exercise**  72:*4, 16*
74:*4*
**exercised**  71:*25*  72:*7*
73:*17, 21*  75:*6*
**exercising**  72:*24*
74:*11*
**Exhibit**  6:*13*  58:*4*
**EXHIBITS**  6:*11*
**expect**  51:*4*  70:*7*
**expectation**  52:*14, 18*
**expense**  20:*12, 17*
**expenses**  20:*14*
**expert**  62:*12*
**expired**  71:*21*
**explain**  54:*12*
**explained**  20:*18*
**exposure**  14:*15*
**extend**  52:*5*
**extent**  63:*9*  67:*22*

**< F >**

**fact-finding**  38:*8*
**facts**  28:*3*  38:*5, 6*
40:*5, 8*  41:*10*  43:*1,*
*10*  44:*10*  45:*22*
48:*11, 20*  49:*2*  58:*15*
62:*19*  63:*25*  64:*22*
65:*5, 16*  66:*5, 11, 15,*
*16, 19*  67:*7*
**fail**  9:*21*
**fair**  20:*25*  23:*5*
28:*12, 14, 16, 22, 24*
29:*4, 8, 9, 14*  30:*11,*
*12*  34:*19, 20*  42:*5*

43:*24*  44:*2, 25*  45:*1*
46:*7, 12, 14*  49:*23*
50:*1*  51:*12, 13, 18*
54:*6, 24*  57:*24*  61:*2,*
*3*  63:*15, 18*  65:*17*
66:*21*  70:*4*  73:*10, 20,*
*23*  77:*1*
**faith**  44:*17*
**familiar**  12:*4*  13:*2*
23:*17*  28:*14*  30:*13,*
*16, 18, 20, 22*  58:*11*
**Family**  12:*1*  16:*13*
17:*10, 13, 23*  18:*9, 17*
74:*5*
**fan**  19:*7, 9*
**February**  29:*4*  55:*22*
**fee**  20:*16*
**feed**  54:*20*
**feedback**  19:*8*
**feeds**  54:*22*
**feel**  63:*25*  72:*3*
**felt**  16:*19*
**fiduciary**  11:*18, 20*
24:*22*  35:*24*  36:*9, 16,*
*23*  50:*21*  51:*23*  52:*2,*
*25*  62:*5*  68:*13*  69:*14,*
*24*  74:*10*
**file**  14:*21*  16:*14, 21*
37:*5*  39:*21*
**filed**  12:*7, 14, 22*
16:*25*  23:*3, 6*  37:*3*
38:*19*  39:*2, 25*  58:*9*
69:*20*
**filing**  13:*24*  14:*17*
37:*10, 14*  38:*9*  39:*3,*
*12*
**finance**  76:*15, 18*
**financial**  11:*21*  25:*1*
26:*23*  54:*10*  81:*17*
**financially**  24:*23*
**finish**  9:*16, 20*  63:*17*
**firm**  8:*24*
**first**  8:*6*  9:*11*  15:*1,*
*11*  75:*21*
**five-minute**  75:*24*
**fixed**  17:*19, 21*  20:*2,*
*7, 10, 22*  21:*11*  22:*16*
**Floor**  3:*15, 23*
**flow**  18:*14, 15, 18*

26:21 30:11 31:5
**flows** 29:14 30:23
**fluctuations** 54:12
**focus** 56:4 68:16
**focused** 48:2
**Focusing** 68:19, 21
**following** 79:3, 4
**follows** 8:8
**foregoing** 80:7 81:9, 10
**form** 15:22 16:16 23:13, 23 25:13, 24 26:16 27:12 28:2 35:21 36:18 38:12 39:8 41:21 42:11 43:6, 14, 25 45:2 47:9, 20 48:8, 14, 23 49:6 50:4, 18 51:19 52:6 53:6, 25 54:7 55:9 56:10, 18 57:1, 7 60:19 61:9 63:7, 23 64:16 65:9, 18 66:8 69:1, 18 70:5 71:4 73:1 74:6, 13 75:8
**formal** 9:13 10:14
**formed** 23:11
**forth** 27:20
**Foundation** 4:3 11:5, 9, 11, 22 12:1, 14 13:25 14:24 16:10, 13, 15, 18, 20, 21 17:8, 10, 14, 23 18:14, 16, 19, 25 23:2, 6, 10, 16, 20 24:3, 5, 15, 18 25:7, 12, 15, 22 26:3, 7, 15, 18 27:11, 24 32:9 33:5, 14, 20 34:4, 22 35:3, 6, 12, 20, 25 36:9, 17 37:18, 19 39:14 40:9 43:18, 22 44:22 46:10 48:13, 21 49:4, 24 51:15 53:2, 18, 22 54:1 55:1, 6, 13 56:8 59:17 60:5, 10 63:3, 20 67:9, 18 71:14, 15, 24 72:7, 24 73:16, 17, 21 74:10, 20, 21, 24, 25 75:3, 5, 7

**foundations** 15:13 18:17 65:3
**Foundation's** 9:3 14:13 15:24 18:10 26:23 37:9, 13 39:20 40:4 42:6 49:10 51:11 52:20 54:17 57:13 58:9 61:2 70:24 73:9 76:15
**full** 57:24
**Fund** 15:4, 5 17:19 18:4, 5, 20 21:17, 19 22:4 24:15, 17 28:21 30:23 49:17 54:20, 21 55:17
**funded** 19:17, 19
**funding** 16:5, 8
**funds** 18:21 26:20 30:25 31:1
**fund's** 62:1
**Further** 61:22 77:3
**future** 21:12 28:25 30:11 40:17 49:20 77:1

**< G >**
**Gail** 1:21 2:13 9:25 77:11, 17 81:5, 21
gdemo@pszjlaw.com 3:9
**generally** 40:10, 13
**gentleman** 12:11
**getting** 21:2 41:10
**give** 10:13 12:25 31:6 40:11 48:12, 20 49:3 57:24 58:16 62:24
**given** 45:22, 24 63:25 71:19
**gives** 10:14, 16
**glance** 31:3
**Global** 4:3 15:7 16:25 17:3, 5, 11, 14, 22 18:24 19:1, 24 20:7, 9 21:2, 10, 16, 18 22:5, 14, 23 24:7 25:3, 6, 11, 15, 21 28:21 29:17, 25 30:3, 10 31:8, 10 35:23 36:22 50:25 54:22

55:2, 3, 23, 24 56:1, 23 57:5
**go** 17:21 25:20 27:7, 14 38:23 41:3 58:2 63:10 68:10 70:11
**goal** 10:4
**going** 8:18 9:14 10:3, 19 13:21 25:25 27:3 35:22 36:2 39:13 52:12 57:11, 12 59:9 60:17 61:20 66:16 67:4, 15, 21 73:11 76:25
**Good** 8:23 21:4, 5 44:17
**good-faith** 43:4, 12 44:6 45:21 46:8 69:8
**governing** 30:24 31:2, 4 50:14, 20
**granting** 47:16 48:5
**grant-making** 75:12
**grants** 18:21
**GREGORY** 3:8
**grow** 24:24
**guaranteed** 22:21
**guy** 34:23

**< H >**
**half** 32:20
**HALL** 5:18
**HALLMAN** 5:8
**happen** 18:16
**happened** 53:14, 15 54:13 73:4
**hard** 34:11
**harm** 46:16
**HART** 5:8
**hat** 34:18
**hats** 34:19
**HAYLEY** 3:12
**head** 34:24 35:3
**hear** 8:21, 22 65:15
**heard** 36:5 38:22 39:24
**held** 2:9 15:7 30:9 33:6, 10
**helped** 14:4
**Hey** 38:20
**high** 31:3 34:14

**HIGHLAND** 1:6 3:4, 19 6:13 8:25 9:1, 4 12:5, 17 23:2, 7, 11, 18, 22 26:4, 8, 9, 13, 14, 24 27:9, 18 30:14, 15 31:10 36:7, 8 37:6, 24 38:16 41:17, 24 42:15, 24 45:6, 11, 16 46:25 48:13, 22 49:5 50:10 58:4 64:14, 19, 20 65:5 66:5, 20, 22 67:19, 20 71:15 74:21, 24 75:3, 5
**Highland's** 12:15 60:6
**high-level** 40:5 58:15
**historical** 28:9
**HMIT** 13:9, 13, 17, 19 18:6 27:18, 19 28:1, 4 30:20, 25 31:16, 18 32:2, 6, 10 33:2, 6, 11, 15 34:8, 10, 18, 24 35:4, 7, 14, 19 36:11, 16 37:3, 9, 12, 24 38:11 40:10 46:21, 24 47:7, 17 48:5 50:2, 11, 14, 17 51:18 52:4, 19 53:4, 19, 23 54:16, 23 55:7, 10, 15 56:9, 16, 25 57:6 59:22 61:8, 15 68:25 69:16
**hold** 17:11 21:22, 24 22:2, 3 30:1, 2
**Holdco** 30:18 59:18
**holdings** 32:14
**holds** 22:4
**honest** 72:18
**Hospitality** 71:18
**Houston** 4:11
**Hunter** 5:3 13:5, 8, 9 15:3 18:6 23:25 29:6, 12 31:14 40:17, 20 41:25 42:8 45:19 46:11 49:18, 21
**HURT** 5:6
hwinograd@pszjlaw.com 3:13

Case 19-34054-sgj11    Doc 4277-2    Filed 06/24/25    Entered 06/24/25 10:20:25    Desc

Case 3:25-cv-02072-S    Document 6-8 Filed 08/05/100 Page 222 of 271 Exhibit B-25 Filed 08/05/100 Page 86/of 100 Capital Page D. 21335.P.

**< I >**
**idea** 14:*17*, *18*, *21*
*15*:*10* 31:6
**identify** 32:*2*, *5*
**IDF** 18:*4* 21:*17*
22:*3* 30:*23* 49:*17*
54:*20*, *21* 55:*17*
**imagine** 31:*23* 35:*11*
52:*23*
**impact** 11:*22* 28:*11*
29:*2*, *7* 35:*23* 36:*2*,
*20*, *25* 37:*18* 38:6
39:*10*, *13* 40:*9* 41:*14*,
*22* 43:*17* 44:*17*, *18*
47:*13*, *18* 48:*7* 50:*24*
52:*13* 64:*1* 65:*2*
69:*10* 72:6
**impacted** 15:6 45:*24*
53:*9* 64:*23* 67:*3*
**impactful** 75:*11*
**impacts** 24:*3* 44:*12*
47:*12*
**implicated** 63:*9*
**important** 9:*15*, *19*
40:*8*
**including** 61:*25*
**income** 18:*10*, *13*, *15*,
*24*, *25* 21:*11* 22:*16*
28:*25* 47:*13*, *23*
**increased** 29:*5*
**independent** 62:*5*
**INDEX** 7:*1*
**indicate** 78:*3*
**indirect** 25:*17* 26:*24*
53:*23* 54:6, *14*, *23*
75:*4*
**indirectly** 23:*21*
24:*1*, *5* 44:*24*
**Indiscernible** 65:*24*
**individual** 42:*17*, *21*,
*25* 44:*8*, *11*, *16* 46:*15*
64:*18*, *22* 66:*10*, *24*
**individuals** 42:*13*
74:*15*
**infirmity** 10:*16*
**inform** 36:*24* 50:*23*
52:*5* 69:*25* 70:*4*
**information** 33:*21*
34:*1* 63:*11* 70:*14*, *17*,

*25* 71:*1*, *7* 73:*3*
74:*15*, *16*
**informed** 33:6, *14*
52:*11* 60:*5*, *25* 73:*14*
**informing** 37:*17*
**Ingham** 1:*21* 2:*13*
81:*5*, *21*
**inquired** 33:*22*
**inquiry** 32:*9*, *11*
**insertion** 61:*25*
**insight** 31:*25*
**instruct** 67:*21*
**INSTRUCTION** 7:*2*
**INSTRUCTIONS**
78:*1*
**Insurance** 4:*4* 17:*1*,
*4*, *5*, *6*, *12* 20:*20*
28:*17*, *18*, *20* 29:*18*,
*23*
**interest** 23:*10*, *21*
24:*2*, *4*, *6*, *11*, *13*
25:*18* 26:*4*, *19*, *24*
28:*4*, *10* 29:6, *11*, *25*
35:*23* 36:*3*, *21* 39:*16*
41:*24* 47:*22* 49:*18*
50:*24* 53:*13*, *19*, *23*
54:*4*, *5*, *6*, *8*, *14*, *23*
81:*17*
**interested** 51:*23*
53:*7* 70:*1*
**interests** 15:*4* 21:*18*
37:*19*
**internal** 72:*10*
**introduced** 58:*5*
**inured** 75:6
**invest** 19:*24*
**invested** 18:*1*
**Investment** 4:*14* 5:*3*
13:6, *9* 14:*25* 33:*24*
36:*1*, *24* 45:*20* 50:*23*
51:*2*, *25* 52:*14* 55:*4*
70:*8* 71:*17*, *23* 72:*10*
**investments** 11:*20*
18:*3* 22:6 29:*17*, *22*
31:*23* 52:*11*
**involved** 70:*20*
**Islands** 16:*1* 59:*19*
62:*13*
**issuer** 17:6

**its** 22:*23* 26:*4* 49:*18*
50:*1* 81:*17*

**< J >**
**JAMES** 5:*19*
**January** 11:*13*
**JEFFREY** 3:*10*
**Jim** 12:*11* 14:7
**jmorris@pszjlaw.com**
3:7
**JOHN** 3:6 8:*24*
38:*13* 65:*19*
**joint** 59:*10*, *16* 60:*1*,
*6*, *12*, *15*, *24* 61:6, *14*,
*19* 76:*7*, *17*
**JONES** 3:*14* 5:*18*
**jpomerantz@pszjlaw.c**
**om** 3:*11*
**JULIE** 5:*21* 14:*2*
15:*13* 16:*20*
**June** 1:*14* 2:*10*
**jurisdiction** 62:*9*

**< K >**
**KELLY** 5:*8*
**key** 50:6
**kind** 12:*25* 14:*4*
15:*14* 31:6, *25* 34:*11*
38:*1*, *2*, *5*, *7* 40:*7*, *8*
52:*12*
**know** 9:*22* 10:*10*, *25*
13:*24* 14:6, *12*, *16*, *17*
16:*12* 17:*25* 18:*2*, *3*
19:*17* 23:*1*, 6, *9*
25:*21* 26:*7* 29:*3*
30:*22* 31:*18*, *19*, *21*,
*23* 33:*10*, *21* 34:*11*
35:6, *12*, *16* 36:*12*
37:*15* 38:*9*, *19* 39:*15*
40:*10*, *13*, *25* 41:*1*
42:*1*, *14*, *24* 46:*15*
48:*20* 50:*19*, *20* 51:*1*,
*20* 52:*8*, *12*, *24* 53:*15*
55:6, *13* 57:*23* 59:*3*,
*15* 60:*4*, *9* 64:*17*
67:*1*, *3*, *7*, *9* 69:*22*
70:*7*, *16*, *23*, *24* 71:*7*
73:*25* 74:*1*, *14*, *16*
75:*16*
**knowing** 64:*22* 66:*24*

**knowledge** 18:*11*
22:*2* 31:*9* 60:*16*

**< L >**
**L.P** 1:7
**LANG** 4:*15*, *17*
77:*14*
**language** 37:*16*
**large** 40:*25*
**late** 21:*2*
**law** 8:*24* 62:*13*
**lawsuit** 37:*5*, *14*, *23*
39:*4*, *24*
**lawyer** 10:*12*, *14*
12:*2* 62:*16*
**lay** 23:*15*
**lead** 65:*5*
**lean** 38:*7*
**leaned** 40:*7*
**learn** 37:*23*
**leave** 64:*3* 65:*13*
**led** 60:*24*
**left** 75:*16*, *23*
**legal** 10:*14*, *16* 11:*21*
12:*24* 14:*4* 16:*22*
17:*12* 38:*4*, 7 40:*7*
52:*22* 53:*2* 61:*17*
62:*25*
**legally** 52:*23* 53:*1*
**level** 31:*3* 34:*14*
**liability** 40:*14* 46:*25*
**Life** 4:*4* 16:*25* 17:*3*,
5
**likelihood** 63:*2*
**Limited** 17:*1*, *4*, *6*
**LINE** 7:*3*, *8*, *13*, *17*
59:*8* 79:*5*
**liquidation** 62:*8*
**liquidators** 59:*11*, *16*
60:*1*, *6*, *12*, *16*, *25*
61:*7*, *14*, *19* 76:*8*, *17*
**liquidity** 75:*13*
**listen** 27:*4*
**lists** 55:*4*
**Litigation** 3:*19*
15:*25* 16:*5*, *9* 45:*16*
**little** 13:*22* 15:*9*
23:*15* 48:*15* 57:*18*
72:*19*

**LITTLETON** 1:*13*
2:*9* 6:*6* 8:*5*, *17* 58:*8*,
*19* 63:*9* 66:*4* 76:*4*
77:*7* 80:*12*
**LLP** 3:*22* 4:*9* 5:*8*
**LOIGMAN** 3:*20*
**long** 11:*1*, *10* 22:*22*
33:*1*
**longer** 49:*22*
**look** 55:*3*
**looked** 16:*17*
**looking** 14:*25* 19:*14*
59:*8*
**loss** 47:*22*
**lost** 47:*13* 72:*24*
75:*17*
**lot** 34:*19* 67:*5*
**LOUIS** 5:*4*
**Louisiana** 5:*10*
**LP** 8:*25* 12:*5* 15:*5*
18:*4* 22:*3* 45:*6* 55:*4*
**lphillips@kellyhart.co
m** 5:*5*

**< M >**
**M&E** 20:*11*, *14*, *17*
**Madden** 72:*14*, *15*
**Madison** 3:*23*
**Main** 5:*9* 11:*17*
**making** 39:*17* 42:*13*
66:*24*
**MANAGEMENT** 1:*6*
3:*4* 8:*25* 12:*5* 26:*9*,
*13* 27:*9* 36:*8* 37:*6*
41:*25* 45:*6* 48:*22*
52:*9* 67:*19* 72:*15*
**Mark** 9:*6* 33:*1*
34:*10* 39:*2* 45:*25*
50:*8* 53:*3* 55:*21*
74:*9*
**MARKED** 6:*11* 7:*16*
58:*4*
**market** 20:*4* 28:*12*,
*14*, *16*, *23*, *24* 29:*4*, *8*,
*9*, *14* 54:*12*
**MARKS** 7:*22* 78:*6*
**material** 70:*14*, *16*
**Matt** 38:*20* 65:*20*
67:*25* 75:*16* 77:*9*

**matter** 30:*8*
**matters** 30:*10*
**MATTTHEW** 4:*5*
**mean** 38:*13*
**means** 11:*19*
**meet** 8:*19*
**member** 15:*16*
**met** 14:*6*, *8*
**MICHAEL** 4:*15*
**million** 19:*20*, *21*, *23*
28:*4* 41:*1*, *5*, *14*, *25*
42:*2* 49:*19* 52:*8*
53:*13* 71:*17* 72:*24*
73:*19*, *22* 74:*12*
75:*12*
**mine** 62:*21*
**minutes** 75:*19*, *23*
**missed** 20:*13*
**mlang@cwl.law.com**
4:*16*
**MNPI** 71:*3*
**mokin@okinadams.co
m** 4:*6*
**moment** 57:*15*
**money** 21:*1*, *9* 22:*22*
**MORRIS** 3:*6* 6:*7*
8:*11*, *24* 15:*23* 16:*23*
21:*6* 23:*14* 24:*10*
25:*19* 26:*1* 27:*2*, *16*
28:*13* 36:*4* 37:*2*
38:*14*, *20*, *24* 39:*18*
42:*4*, *19* 43:*9*, *19*
44:*3* 45:*3* 47:*10*
48:*1*, *10*, *17* 49:*1*, *8*
50:*7* 51:*6* 52:*1*, *16*
53:*17* 54:*3*, *15* 55:*12*
56:*12*, *20* 57:*3*, *9*
58:*2*, *6*, *25* 59:*4*, *7*
60:*21* 61:*12* 63:*13*,
*14* 64:*4*, *6* 65:*1*, *11*,
*20* 66:*3*, *17*, *18* 67:*24*
68:*6*, *9* 69:*6*, *21* 70:*2*,
*10* 71:*6* 72:*18* 73:*6*
74:*8*, *18* 75:*15*, *20*
76:*3* 77:*3*, *7*, *14*
**motion** 37:*4*, *10*
38:*10*, *13*, *15* 39:*12*,
*21*, *25* 60:*7*
**Mountain** 5:*3* 13:*6*,
*8*, *9* 15:*3* 18:*6* 24:*1*

29:*6*, *12* 31:*14* 40:*18*,
*20* 41:*25* 42:*8* 45:*20*
46:*11* 49:*18*, *21*
**move** 27:*3* 57:*11*
**moved** 66:*23*
**moving** 44:*8* 64:*18*
66:*10*, *20*
**multiple** 33:*23*

**< N >**
**name** 8:*23* 16:*14*
**named** 12:*11*
**NATHAN** 5:*18*
**NECESSARILY** 7:*22*
34:*17*
**need** 10:*24* 34:*23*
35:*3* 57:*21* 58:*21*
73:*3* 77:*11*
**needed** 33:*20* 52:*19*
**negatively** 36:*3* 53:*9*
64:*23*
**negotiate** 68:*24*
**negotiating** 46:*15*
**negotiation** 43:*4*
65:*7* 68:*17* 69:*15*
**negotiations** 43:*13*
44:*6*, *15* 46:*9*
**neither** 81:*15*
**never** 14:*8* 23:*6*
33:*25* 34:*25* 39:*19*
71:*24* 76:*7*
**New** 3:*16*, *24*
**newly** 62:*1*
**news** 38:*2*
**NexPoint** 71:*18*
**nice** 8:*19*
**nonpublic** 70:*14*, *16*
**normal** 51:*3*
**NORTHERN** 1:*2*
**Notary** 81:*8*
**notations** 78:*6*
**NOTE** 7:*21*
**notes** 19:*13* 55:*20*,
*21*, *23*
**notice** 77:*10*
**notified** 74:*2*
**November** 19:*19*
**NUMBER** 6:*12* 12:*8*

**< O >**

**object** 10:*13* 15:*22*
16:*16* 23:*13*, *23*
25:*13*, *24* 26:*16* 28:*2*
35:*21* 36:*18* 38:*12*
39:*8* 41:*21* 42:*11*
43:*6*, *14*, *25* 45:*2*
47:*9*, *20* 48:*8*, *14*, *23*
49:*6* 50:*4*, *18* 51:*19*
52:*6* 53:*6*, *25* 54:*7*
55:*9* 56:*10*, *18* 57:*1*,
*7* 60:*19* 61:*9* 63:*7*,
*23* 64:*16* 65:*9*, *18*
66:*8* 69:*1*, *18* 70:*5*
71:*4* 73:*1* 74:*6*, *13*
75:*8*
**objecting** 15:*10*
**objection** 9:*3* 12:*14*,
*16*, *21* 13:*25* 14:*5*, *14*,
*18*, *22* 15:*24* 16:*14*,
*24* 23:*3* 27:*12* 40:*4*
49:*10*, *15* 57:*13* 58:*9*,
*15* 60:*11* 61:*2*
**objections** 12:*23*
**obligation** 20:*7*, *11*
22:*15* 35:*20*, *24*
36:*23* 50:*21* 51:*23*
52:*25* 69:*25*
**obligations** 22:*23*
26:*15*, *18* 27:*10*
68:*13* 69:*14*
**obtain** 51:*10* 52:*19*
56:*7*, *14*, *22* 61:*5*
**obtained** 39:*20* 71:*2*
**occasions** 33:*23*
**officer** 81:*8*
**official** 59:*10*, *16*
60:*1*, *6*, *12*, *15*, *25*
61:*6*, *14*, *18* 76:*7*, *17*
**officially** 60:*2*
**Oh** 41:*7* 42:*21*
**Okada** 12:*1* 14:*24*
16:*13* 17:*10*, *13*, *23*
18:*9*, *17* 19:*23* 24:*2*,
*8* 25:*9*, *16* 26:*21*, *22*
28:*12*, *15* 37:*19*
39:*13* 40:*9* 41:*13*, *23*
42:*2*, *23* 43:*17* 44:*18*
47:*14*, *23* 49:*22*
55:*18* 56:*2* 69:*10*
75:*2*

**okay** 8:*21*, *23*  9:*12*,
*17*  10:*8*, *20*, *21*  11:*2*
12:*13*  13:*21*  14:*12*
17:*3*  19:*11*, *16*  20:*25*
21:*14*  22:*19*  23:*1*, *20*
26:*2*  33:*4*, *18*  34:*6*
35:*1*  37:*3*  39:*19*
40:*2*  41:*11*  44:*4*
45:*4*, *9*  48:*11*  49:*2*
50:*8*  51:*7*, *9*  58:*2*
59:*1*  60:*22*  61:*4*
62:*12*  64:*4*, *7*  67:*25*
68:*8*, *16*  69:*12*  70:*3*,
*11*  75:*15*  77:*13*
**OKIN** 4:*5*, *9*  15:*22*
16:*16*  21:*4*  23:*13*, *23*
25:*13*, *24*  26:*16*
27:*12*, *14*  28:*2*  35:*21*
36:*18*  38:*12*, *18*, *22*
39:*8*  41:*21*  42:*11*
43:*6*, *14*, *25*  45:*2*
47:*9*, *20*  48:*8*, *14*, *23*
49:*6*  50:*4*, *18*  51:*19*
52:*6*  53:*6*, *25*  54:*7*
55:*9*  56:*10*, *18*  57:*1*,
*7*  58:*19*  59:*2*, *6*
60:*19*  61:*9*  63:*7*, *23*
64:*16*  65:*9*, *18*, *21*
66:*8*  67:*21*  68:*1*, *8*
69:*1*, *18*, *23*  70:*5*
71:*4*  73:*1*  74:*6*, *13*
75:*8*, *17*  77:*6*, *14*, *17*
**once** 34:*22*
**opine** 43:*8*, *16*  44:*16*
45:*8*, *9*, *14*, *18*  61:*18*
**opined** 55:*24*
**opinion** 62:*25*  63:*24*
66:*14*
**opportunity** 10:*17*
55:*19*  56:*3*  57:*24*
**option** 71:*11*, *14*, *16*,
*20*, *21*, *25*  72:*4*, *8*, *12*,
*25*  74:*4*
**order** 55:*23*  58:*22*
62:*19*
**org** 75:*3*
**organization** 11:*14*
16:*18*  30:*8*  32:*21*, *25*
69:*19*  74:*22*  75:*11*
**organizational** 31:*5*

**organizations** 11:*24*
16:*6*  20:*2*, *5*  21:*1*, *9*
22:*15*, *21*  24:*9*, *25*
25:*9*  28:*6*  29:*15*, *24*
30:*2*  44:*13*  45:*23*
46:*16*  47:*19*  48:*7*
50:*22*  53:*10*  56:*15*
59:*23*  63:*2*  64:*2*
69:*11*
**orgs** 39:*15*
**originally** 26:*20*
**originated** 14:*18*
**outcome** 81:*17*
**outlined** 67:*8*
**outside** 68:*12*, *23*
69:*14*
**overall** 38:*6*  54:*9*
**overseeing** 12:*15*
**oversight** 11:*18*, *20*
34:*13*  75:*4*
**owes** 25:*11*  26:*14*
27:*10*  35:*19*  36:*9*, *16*
**owned** 21:*15*  32:*6*,
*10*  33:*16*  74:*19*
**ownership** 21:*20*
24:*6*  29:*25*  34:*13*
53:*19*, *21*, *23*  54:*5*, *6*
**owns** 31:*6*  32:*3*

**< P >**

**p.m** 1:*15*  2:*11*  76:*1*,
*2*  77:*19*
**PACHULSKI** 3:*14*
5:*18*
**Pacific** 4:*18*
**PAGE** 6:*5*, *12*  7:*3*, *8*,
*13*, *17*  79:*5*
**paid** 21:*1*, *9*  49:*21*
**paragraph** 58:*3*
61:*22*  64:*5*, *8*  68:*10*
70:*11*, *13*
**part** 11:*25*  12:*24*
20:*14*  23:*11*  33:*19*
40:*15*  43:*8*, *15*  44:*1*
46:*13*  47:*3*  50:*5*
54:*21*
**participate** 76:*12*, *16*
**particular** 20:*23*
21:*19*

**parties** 3:*2*  38:*17*
43:*5*  46:*25*  48:*5*
51:*23*  59:*11*  64:*14*
66:*6*  70:*1*  81:*16*
**partnership** 21:*18*
**party** 13:*13*, *18*  53:*7*
**patience** 77:*8*
**Patrick** 9:*6*  12:*19*
13:*3*  33:*1*  34:*10*
39:*2*  43:*23*  45:*25*
50:*9*, *15*, *22*  51:*10*, *16*
52:*3*  53:*3*  55:*21*
56:*7*, *14*, *22*  61:*5*
64:*18*  65:*4*  68:*11*, *22*
69:*13*  71:*2*  74:*9*
**Patrick's** 44:*21*  61:*24*
**PAUL** 5:*14*
**pay** 17:*16*  20:*1*, *7*, *10*
22:*15*
**payments** 17:*19*, *21*
49:*20*
**payout** 28:*8*  42:*2*
**payouts** 40:*17*  53:*16*
**PE** 15:*4*  49:*17*
**peace** 64:*10*  67:*12*
**pending** 11:*2*  15:*25*
**percentage** 20:*19*
**period** 20:*22*  21:*12*
**permission** 37:*5*
38:*15*
**person** 34:*15*  51:*3*,
*25*  52:*15*, *22*  61:*17*
**personally** 14:*8*
69:*19*
**persons** 70:*9*
**pertaining** 12:*16*
**pertinent** 13:*1*
**PHILLIPS** 5:*4*  77:*5*,
*15*
**piece** 20:*13*
**place** 44:*24*  66:*12*
**plan** 23:*12*
**planned** 60:*3*
**platform** 29:*20*, *21*
**play** 17:*7*  43:*1*
44:*14*
**played** 31:*10*
**plays** 17:*9*
**please** 58:*3*  64:*5*

70:*12*
**PLLC** 4:*17*
**point** 58:*23*
**policies** 17:*11*  30:*5*,
*6*  36:*22*
**policy** 24:*7*  30:*1*, *2*, *4*
**POMERANTZ** 3:*10*
**portfolio** 15:*6*
**portfolios** 52:*13*
**portion** 15:*2*  18:*13*
58:*8*
**positive** 36:*3*
**possibility** 50:*1*  59:*6*
**potential** 55:*15*  67:*17*
**potentially** 39:*10*
41:*15*  47:*13*
**preparation** 14:*13*
**present** 2:*16*  5:*17*
54:*10*
**preserve** 24:*23*
**President** 14:*1*  16:*20*
**prevent** 51:*16*  61:*15*
**PREVIOUSLY** 6:*11*
58:*4*
**primarily** 15:*13*
**prior** 58:*21*
**privilege** 68:*4*
**privileged** 63:*10*
**privy** 74:*15*
**probably** 34:*14*
36:*12*
**problematic** 42:*18*, *20*
**proceeding** 13:*15*
**proceedings** 2:*12*
77:*20*  81:*9*, *11*, *12*
**process** 9:*13*, *14*
10:*23*  57:*19*
**produce** 28:*21*
**produced** 21:*11*
**product** 43:*3*, *12*
44:*5*  46:*8*
**PRODUCTION** 7:*7*
**projected** 28:*25*
**proper** 11:*18*
**proposed** 9:*4*  12:*16*
45:*5*, *10*, *15*  46:*20*
47:*16*  48:*6*  49:*10*
56:*23*  61:*1*  64:*15*
65:*7*

proposing 40:*11*
propounded 80:*8*
protect 24:*23*
provide 56:*3*
provided 60:*10* 71:*2*
providing 47:*8*
Public 81:*8*
pull 40:*8*
pulling 38:*4*
purpose 31:*19* 62:*2*
pursued 40:*21*
pushed 75:*13*
put 14:*5* 57:*12, 22*
58:*7* 71:*10, 14, 16, 20*
72:*4, 8, 12, 17, 25*
73:*11, 17, 21* 74:*4, 11,*
*19* 75:*6*
putting 59:*5*

< Q >
quarter 15:*1*
quarterly 20:*15*
28:*22*
question 9:*16, 21*
10:*8, 16, 20* 11:*1*
21:*7* 27:*5* 61:*21*
63:*13, 17* 65:*10* 69:*2*
questionable 42:*14*
67:*1*
QUESTIONS 7:*16*
9:*15* 10:*13* 34:*16*
57:*25* 58:*23* 75:*18*
76:*14* 77:*4, 5* 80:*8*
quicker 13:*22*
QUINN 3:*22*
QUOTATION 7:*22*
quotations 66:*13*
QUOTE 7:*23* 59:*9*

< R >
Rand 15:*4* 18:*5*
29:*11, 12* 30:*17, 25*
31:*13* 49:*16*
Rand's 29:*6*
range 73:*19*
RAVER 5:*20*
RDR 1:*22* 81:*21*
reach 56:*1*

read 12:*23* 40:*2*
59:*9* 62:*10* 77:*18*
80:*6*
reading 19:*14* 78:*2*
really 53:*11* 61:*18*
Realtime 2:*14* 81:*6*
reason 10:*24* 25:*10,*
*23* 26:*12* 27:*8, 23*
35:*18* 43:*2* 45:*4, 7, 9,*
*14, 18* 46:*19* 47:*15*
48:*4* 50:*13* 51:*14*
53:*1* 56:*6, 13, 21*
57:*4, 10* 60:*14* 61:*4*
64:*13* 69:*13* 72:*4*
74:*7* 79:*7, 9, 11, 13,*
*15, 17, 19, 21, 23*
reasonable 46:*7*
reasons 74:*3* 78:*4*
79:*4*
recall 14:*11* 41:*2*
57:*21*
receive 20:*15* 22:*21*
27:*20, 24* 28:*7* 40:*11,*
*20* 42:*9* 44:*23* 50:*3*
received 35:*7, 13*
63:*11* 73:*25*
receives 46:*12*
Recess 76:*1*
recollection 57:*22*
recommendation
16:*22* 56:*3* 72:*11*
recommendations
18:*18*
record 81:*11*
recorded 2:*12*
recovered 73:*22*
reduced 81:*13*
refer 13:*8, 17*
REFERENCED 6:*11*
referred 31:*15* 70:*17*
referring 30:*4*
refers 15:*25* 70:*13*
71:*10*
REFLECT 7:*23*
refresh 57:*22*
regardless 22:*19*
50:*20*
Registered 2:*13* 81:*5*
reiterated 38:*5*

related 29:*2* 40:*6*
41:*6* 81:*15*
relates 11:*24* 27:*1*
30:*17* 41:*13*
relationship 23:*25*
24:*8, 22* 25:*16, 17*
26:*8* 51:*24* 74:*23*
75:*1*
relax 9:*12*
release 40:*14*
releases 47:*7, 16*
48:*2, 5*
releasing 46:*25*
rely 12:*24* 74:*16*
remind 63:*8*
REMOTE 1:*12* 2:*8*
3:*2*
reorganization 23:*12*
repeat 58:*13, 17*
rephrase 10:*10, 17*
Reported 1:*20*
Reporter 2:*14, 15*
10:*1* 65:*25* 77:*13*
81:*2, 6, 8*
REPORTER'S 7:*21*
reporting 11:*21*
represent 39:*15*
representative 52:*4*
53:*4*
representing 44:*13*
represents 8:*25*
REQUEST 7:*7*
required 37:*12*
51:*10* 56:*7, 14, 22*
61:*5*
research 38:*3*
respect 17:*8* 22:*6, 10*
25:*12* 33:*2* 65:*6*
69:*14*
respectfully 27:*3*
respectively 17:*23*
responsibilities 11:*16*
33:*19*
responsibility 24:*22*
25:*14* 42:*23*
responsible 73:*9*
restate 21:*7* 36:*19*
44:*7*
restructuring 43:*23*
44:*10, 21, 24* 46:*1, 12*

result 43:*20, 21*
44:*20* 46:*12*
review 12:*21* 57:*21*
reviewed 30:*24* 31:*1*
Right 13:*7* 15:*17*
19:*3, 6* 21:*12* 27:*24*
29:*10* 30:*1* 31:*16*
32:*22* 33:*2, 8* 34:*1, 2*
37:*16, 21* 39:*17*
42:*23* 46:*6* 51:*15*
53:*3, 11* 54:*20* 55:*7,*
*14, 25* 57:*5* 58:*12*
59:*20* 61:*14* 62:*16*
65:*15* 73:*7, 9* 74:*20*
76:*12, 23* 77:*6*
rise 48:*12, 20* 49:*3*
risk 20:*4, 10, 12, 20*
22:*6, 9, 11*
ROBERT 3:*20*
robertloigman@quinn
emanuel.com 3:*21*
role 14:*12* 17:*7, 9*
31:*10* 33:*1* 66:*20*
roll 24:*25* 26:*22*
31:*7* 54:*9, 19*
rolled 15:*5* 35:*10*
rolls 18:*5, 7* 49:*17*
roll-up 24:*1*
room 19:*2*
Rouge 5:*10*
roughly 41:*14*
Royal 21:*2*
RSA 1:*22* 81:*21*

< S >
sale 15:*3* 29:*5, 11*
52:*11*
saw 29:*4*
says 64:*8* 68:*10*
scheduled 76:*25*
scope 47:*7* 68:*12, 23*
screen 57:*12* 58:*7*
60:*11*
scroll 64:*5*
scrutiny 62:*4*
see 53:*8* 58:*21*
59:*13* 64:*11* 68:*14*
70:*13, 15* 71:*12*
seek 37:*9, 13, 16*

seeking 37:5
seeks 64:10 67:12
seen 31:5 51:22
  64:1, 2
SEERY 5:19
segregated 21:15, 20,
  22, 24 22:1, 20
sell 55:21, 23
selling 53:12
sent 19:24
sentence 59:13 64:7
  71:10
series 9:15
serve 11:23
served 31:20
set 27:20 63:5
  76:10, 19
settle 44:11
settled 64:20
settlement 9:4 12:17
  13:14 23:25 24:3
  27:1, 17 28:1, 8, 11
  40:2, 6, 12, 16, 20
  41:20 42:7, 9, 16
  43:3, 11, 21 44:5, 18
  45:5, 10, 15, 19 46:6,
  7, 20, 24 47:2, 4, 5, 17,
  22 48:6 49:11, 25
  50:3, 9, 16 51:12, 17
  52:21 53:16 56:4, 16,
  24 59:12 60:7, 16
  61:1, 7, 16 63:5, 21
  64:9, 15, 21 65:8
  67:11 68:17, 21, 24
  69:9, 16
settlements 26:20
  28:7 45:22
settling 66:25
share 50:1 66:17
shares 71:18 72:16,
  20 73:24 74:2
sharing 19:6
SHAWN 5:20
sheet 26:4 54:9, 18,
  23 55:1 78:5
shifting 42:22
short 75:22 77:10
Shorthand 2:15 81:2,
  7
sign 77:18 78:5

signed 13:3 31:15
  56:8
significant 36:25
  43:17 49:20 50:23
  67:3
similar 75:1
sir 8:19, 21 9:10, 18,
  23 11:5 12:3, 6, 9, 12,
  20 16:7 17:2, 20
  18:12 19:4, 15 20:3
  22:25 23:4, 8 25:8
  26:6, 11 27:6, 15
  30:12 31:12 32:4, 19
  33:3, 7, 12, 17 34:5
  35:5, 15 37:7, 11
  39:1, 5, 22 40:1, 13
  45:13, 17, 21 46:6, 22
  47:11, 12 48:9, 24
  49:7 51:8 53:21
  56:19 57:2, 14 58:1
  59:14, 17, 21, 24 60:8,
  13 61:3, 10 62:10, 11,
  14 64:12 65:12, 13
  67:15 68:15, 20
  70:15, 18, 21 71:5, 9,
  13 73:10 74:7 76:9
  77:2
sit 60:15
situation 51:5
six 32:22
Skyview 71:3
sleep 59:5
smoothly 27:7
sold 22:17 28:4
  41:24 49:16, 18
sole 18:8 24:6
solely 68:16, 21
somewhat 42:18
Sorry 19:11 21:3
  28:18 36:5, 10, 11
  59:4 65:25
sought 39:20
Sounds 21:4, 5
source 18:9 70:25
speak 34:23 35:3
  61:10, 13
speculate 63:16, 19
speculation 63:25
speed 38:8

spoke 76:17
spoken 14:9
standpoint 44:12
  46:18
STANG 3:14 5:18
start 8:12
starting 36:20
state 28:22 43:16
  66:9 70:25
stated 65:14 69:4
statement 28:21
  54:11 55:4
statements 20:15
  25:1 26:23
STATES 1:1 61:23
Stenographically
  1:20 2:13 81:13
stewardship 11:18
STIPULATIONS
  7:12
stream 21:11 22:16
  29:1
streams 47:23
Street 4:10 5:9
strike 27:4
structure 28:5, 9
  29:18, 20 30:14, 16,
  17, 19, 21, 23 32:12
  35:11 62:2
structures 31:24
stuff 10:14
sub 29:3
subject 13:14 40:3
  62:4, 6
Subtrust 45:16
succeed 62:20 63:3,
  20
succeeding 63:4
successful 32:15
sue 38:16
suggest 43:11 66:20
Suite 4:10, 18 5:9
SULLIVAN 3:22
sum 40:25
summary 12:25
Sunday 1:14 2:10
  8:14, 18
supervision 81:14
supplied 78:5
SUPPORT 7:1

supporting 11:24
  16:6, 18 20:2, 5 21:1,
  9 22:15, 20 24:9, 25
  25:9 28:6 29:15, 24
  30:2, 8 39:15 44:12
  47:18 48:7 50:22
  53:10 56:15 63:2
  64:2 69:11 74:22
  75:3, 10
supposed 26:21
Sure 13:23 15:12
  48:3, 18 58:23
surprised 10:22
sworn 8:6
Systems 81:7

< T >
take 15:10 20:11, 16,
  19 22:9, 11 57:15
  75:22, 23
taken 44:24 66:12
  76:1 81:9, 12
takes 20:9 22:5
talked 31:13 45:24
talking 38:15 66:1
team 12:24 14:4
  38:4, 7 40:7 76:15,
  18
tell 8:13 32:15
  38:21 57:18
telling 74:10
tenure 33:13 34:4,
  21 35:2
terms 42:6 49:24
  66:15
testified 8:8
testify 8:6
testimony 9:24 78:4
  80:7
TEXAS 1:2 4:11, 19
Thank 26:2 32:24
  77:7, 9
Thanks 8:14
therefor 78:4
thing 29:3 42:12
things 44:14 46:2, 4,
  5 51:20 66:25 69:4,
  7
think 10:15 14:10
  15:12 16:17 19:21

21:*19*  24:*4*  26:*19, 24*
29:*18*  33:*18*  34:*10*
36:*22*  37:*15, 17*  39:*6,*
*16*  40:*15*  41:*1, 22*
42:*17, 25*  44:*9, 14*
46:*13*  47:*21*  51:*20,*
*21*  52:*7*  53:*7, 10*
57:*21*  62:*15*  66:*11,*
*23*  67:*1*  68:*1, 2*  69:*3,*
*5, 24*  70:*6*  71:*17, 18*
73:*2, 8, 23*  74:*9, 14*
76:*4*
**thinking**  15:*14*  41:*8*
**Third**  3:*15*  59:*8*
**thoroughly**  73:*4*
**thought**  36:*10*
**three**  15:*19*  32:*17*
**tied**  20:*21, 22*
**time**  1:*15*  2:*12*  9:*11*
10:*12, 25*  14:*11*
20:*22*  21:*12*  22:*22*
33:*4, 13*  34:*3, 11*
35:*2*  46:*3, 6, 9*  52:*10*
58:*20*  59:*3*  60:*24*
66:*2*  69:*9*  72:*10, 14*
75:*15*  76:*20*  77:*8, 20*
**times**  69:*4*
**timing**  53:*14*
**today**  9:*2, 25*  11:*25*
13:*10*  26:*13*  32:*3*
33:*10*  35:*20*  38:*4*
39:*14*  60:*15*  72:*17*
**told**  37:*20*  38:*18, 22*
65:*22*  73:*15*
**TORREY**  1:*13*  2:*9*
6:*6*  8:*5*  80:*12*
**total**  32:*23*
**track**  75:*17*
**transaction**  55:*15*
**transactions**  53:*3*
**transcribed**  2:*15*
9:*25*
**transcript**  78:*6*  80:*7*
81:*10*
**transcripts**  77:*18*
**transfer**  34:*12*
**transferred**  73:*5*
**transpired**  15:*1*
**tribunal**  62:*8*
**tried**  34:*15*

**true**  34:*3*  46:*2, 4, 5*
47:*24*  51:*21*  69:*5, 7*
80:*10*  81:*11*
**Trust**  3:*5*  4:*14*  5:*3*
9:*1*  13:*6, 9*  23:*11, 18,*
*22*  26:*5, 10, 14, 25*
27:*10*  30:*14, 15*  36:*8*
45:*12, 20*  49:*5*  67:*20*
71:*17, 18*  74:*5*
**Trustee**  3:*19*  34:*12*
51:*2*
**trustees**  70:*9*
**truth**  8:*7*
**try**  10:*10, 25*  72:*5*
**trying**  40:*14*  52:*7*
**two**  16:*19*  28:*6*
44:*12, 14*  46:*2, 4, 5*
51:*20*  69:*4, 7*
**types**  31:*22*
**typewriting**  81:*14*
**typically**  18:*23*

**< U >**
**ultimately**  15:*5*  18:*5,*
*7, 20*  19:*23*  24:*24*
28:*11*  31:*7*  41:*23*
75:*9*
**uncertainty**  67:*5*
**underlying**  18:*2*
21:*20*  32:*13, 16*
**understand**  9:*7, 24*
10:*6, 9*  29:*21*  34:*12*
43:*1*  44:*9*  49:*9*  50:*8*
53:*11*  54:*11*  58:*14*
66:*1, 22*  72:*19*  73:*3*
**understanding**  20:*6*
21:*8*  22:*18*  25:*2, 5*
31:*4*  32:*14, 16*  41:*4*
49:*14*  50:*12*  62:*18*
67:*14*
**unfair**  45:*5, 11, 15,*
*19*  46:*20*
**Unfortunately**  59:*9*
**UNITED**  1:*1*
**unpack**  15:*8*
**unsuccessfully**  32:*12*
**URQUHART**  3:*22*
**use**  28:*22*  37:*17*

**< V >**
**valuations**  34:*16*
**value**  15:*6*  22:*10, 12,*
*19*  28:*15, 16, 23, 24*
29:*5, 8, 9, 14*  30:*9*
35:*7, 11, 13*  36:*21*
37:*1*  54:*12*  73:*15, 24*
**values**  28:*12*
**various**  62:*23*
**vehicle**  18:*24*  19:*1*
33:*24*  50:*25*  55:*5*
71:*23*  72:*21*  73:*5*
**vehicles**  31:*22*
**verbatim**  10:*4*  41:*3*
58:*14, 17*
**veto**  61:*14*
**videoconferencing**  3:*2*
**video-conferencing**
2:*10*
**VIDEOGRAPHER**
5:*13*
**VIDEO-RECORDED**
1:*12*  2:*8*
**view**  52:*2*  63:*1*
**Vine**  4:*10*
**volume**  78:*2, 6*

**< W >**
**walk**  12:*25*
**want**  8:*12*  10:*17*
66:*12*  68:*16*  70:*20*
77:*17*
**wanted**  53:*5*  55:*21*
76:*14, 19*
**watching**  75:*16*
**way**  29:*21*  31:*24*
**wearing**  34:*18*
**Wednesday**  60:*18*
68:*7*
**week**  60:*3*
**Well**  14:*23*  18:*15*
22:*9*  24:*11*  38:*1*
41:*22*  42:*12*  52:*7*
68:*12*  73:*7*
**we're**  8:*18*  9:*1*  19:*6*
24:*6*  38:*14*  52:*11*
57:*11, 12*  68:*3*  69:*23*
**we've**  31:*13, 14*
34:*25*  45:*24*  64:*1*

69:*5*
**WINOGRAD**  3:*12*
**wish**  79:*3*
**WISHNEW**  4:*17*
**withdraw**  55:*24*
**withdrawn**  17:*15*
21:*23*  23:*15*  25:*4*
35:*17*  54:*4*  70:*23*
**witness**  8:*13*  21:*5*
27:*13*  58:*24*  69:*22*
**wondering**  48:*19*
**words**  49:*14*
**wore**  34:*18*
**working**  33:*19*  38:*4*
**world**  60:*23*
**worries**  8:*16*
**worth**  22:*13*  41:*5*
74:*12*
**wrapped**  29:*23*
**written**  10:*4*
**wrong**  39:*6, 12*
64:*14*  65:*22, 23*  66:*6,*
*13*
**wrongdoing**  65:*6*

**< Y >**
**Yeah**  12:*23*  13:*5*
14:*1*  15:*12*  17:*9, 18*
19:*11*  20:*9*  21:*5*
29:*13*  30:*1*  33:*22*
36:*14*  40:*5*  41:*7, 12*
43:*7*  45:*7*  47:*3, 5*
49:*16*  50:*5*  55:*2, 17*
58:*13*  63:*12*  66:*22*
68:*10*  69:*24*  70:*6*
71:*15*  73:*18, 23*
76:*13*
**year**  43:*24*  72:*22*
**years**  11:*14*  12:*8*
32:*12, 17*  37:*4, 25*
**York**  3:*16, 24*

**< Z >**
**ZIEHL**  3:*14*  5:*18*
**Zoom**  57:*19*

## WORD LIST

**< $ >**
$22  (1)
$23  (1)
$29  (1)
$300  (1)
$650  (1)
$7  (1)
$9  (5)

**< 1 >**
1  (2)
1.5  (1)
10010  (1)
10017-2024  (1)
11  (1)
1113  (1)
13  (3)
16  (2)
1600  (1)
1700  (1)
18  (2)
19-34054-sgj11  (1)
1st  (1)

**< 2 >**
2015  (2)
2019  (1)
2022  (1)
2025  (3)
21  (1)
212.849.7615  (1)
214.817.4500  (1)
22  (2)
225.381.9643  (1)
22nd  (1)
2390  (1)
23-plus  (1)
240  (1)

**< 3 >**
3:30  (2)
30(b)(6  (1)
300  (1)
301  (1)
310.277.6910  (1)
32  (1)
33  (2)

34  (1)
34th  (1)

**< 4 >**
4:42  (1)
4:49  (1)
4:50  (1)

**< 5 >**
51  (1)
58  (1)

**< 6 >**
67  (1)

**< 7 >**
70801  (1)
713.228.4100  (1)
75201  (1)
77002  (1)
780  (1)
7-year  (1)

**< 8 >**
8  (1)
8635  (3)

**< 9 >**
918,000  (1)

**< A >**
ability  (2)
able  (6)
absolutely  (4)
accommodate  (1)
accounts  (8)
acted  (3)
acting  (4)
action  (3)
actions  (4)
activity  (4)
actual  (1)
ADAMS  (1)
add  (1)
addition  (1)
administrative  (1)
Administrator  (1)
adverse  (1)
advised  (1)

advisor  (4)
advisor/control  (1)
advisors  (2)
affiliated  (1)
affiliates  (4)
affirmed  (1)
afternoon  (1)
ago  (3)
agree  (3)
agreed  (2)
agreed-upon  (1)
agreement  (57)
ahead  (2)
ahurt@kellyhart.com  (1)
allow  (3)
allows  (1)
alternative  (1)
AMELIA  (1)
amount  (4)
amounts  (1)
ample  (1)
analysis  (1)
annuities  (26)
annuity  (12)
ANSWER  (16)
answered  (2)
answers  (1)
Anybody  (11)
anyway  (2)
apologies  (1)
apologize  (2)
apologizing  (1)
apparent  (1)
appear  (3)
appeared  (2)
appointed  (1)
appreciate  (2)
approval  (4)
approve  (1)
approved  (10)
approximately  (1)
April  (1)
argumentative  (1)
arises  (1)
arm's-length  (4)
arranging  (1)
aside  (1)
asked  (2)

asking  (4)
aspect  (1)
aspects  (1)
assert  (1)
asset  (2)
assets  (34)
associated  (1)
Associates  (1)
assumed  (1)
assumption  (2)
Atlas  (19)
attached  (1)
Attorney  (143)
attorney-client  (2)
audited  (1)
auditors  (2)
authority  (2)
authorization  (1)
authorize  (1)
authorized  (3)
Avenue  (3)
avoidance  (3)
avoiding  (1)
aware  (32)

**< B >**
BA  (2)
back  (5)
balance  (5)
ballpark  (1)
BANKRUPTCY  (9)
BARTLETT  (1)
based  (6)
basis  (4)
Baton  (1)
Beacon  (1)
beginning  (1)
behalf  (22)
belief  (1)
believe  (62)
beneficial  (1)
benefit  (4)
benefited  (2)
best  (1)
beyond  (2)
billion  (1)
bit  (7)
board  (4)
boards  (1)

breach *(1)*
breached *(1)*
break *(3)*
bring *(1)*
bringing *(1)*
buy *(2)*

< C >
CA-Certified *(1)*
CA-CSR *(2)*
call *(6)*
called *(2)*
capable *(1)*
capacity *(4)*
CAPITAL *(16)*
care *(1)*
carefully *(1)*
carry *(1)*
Case *(4)*
cash *(2)*
casual *(1)*
cause *(3)*
causing *(2)*
caveat *(1)*
Cayman *(4)*
Central *(3)*
certain *(6)*
CERTIFICATE *(1)*
Certified *(3)*
certify *(2)*
CFO *(9)*
chance *(1)*
CHANGE *(9)*
changes *(4)*
Chapter *(1)*
charitable *(9)*
charities *(2)*
charts *(1)*
claim *(4)*
Claimant *(16)*
claims *(4)*
CLARITY *(2)*
clawback *(2)*
clawing *(2)*
clear *(1)*
clearly *(2)*
colleague *(1)*
combination *(1)*
Come *(1)*

comfort *(1)*
comfortable *(1)*
commenced *(3)*
comment *(1)*
communicate *(2)*
communicated *(2)*
communication *(3)*
communications *(2)*
community *(3)*
company *(3)*
compensate *(1)*
compensates *(1)*
complicated *(1)*
complies *(1)*
computer *(1)*
concern *(3)*
concerned *(2)*
concerns *(3)*
concluded *(1)*
conference *(1)*
confirm *(1)*
confused *(1)*
connection *(1)*
consent *(10)*
consequential *(1)*
consider *(2)*
consideration *(1)*
considering *(2)*
constituted *(1)*
consummation *(2)*
Cont'd *(2)*
contemplating *(1)*
contends *(2)*
context *(1)*
contract *(4)*
contracts *(4)*
contractual *(2)*
contribution *(1)*
contributions *(1)*
control *(6)*
controlled *(3)*
conversation *(7)*
conversations *(5)*
conversion *(1)*
convert *(1)*
converted *(6)*
convoluted *(1)*
copies *(1)*
copy *(1)*

correct *(36)*
corrections *(2)*
correctly *(1)*
corresponding *(1)*
counsel *(3)*
counterparty *(1)*
couple *(3)*
course *(2)*
COURT *(13)*
Court-appointed *(1)*
CRAWFORD *(1)*
create *(1)*
created *(3)*
cross-talk *(1)*
Crown *(45)*
CRR *(2)*
cumbersome *(1)*
current *(1)*
Currently *(1)*
CURRY *(1)*

< D >
DAF *(2)*
DALLAS *(116)*
D'AMBRA *(1)*
data *(1)*
DAVID *(1)*
day *(2)*
dcurry@okinadams.co
m *(1)*
deal *(1)*
debate *(1)*
Debtor *(3)*
decided *(1)*
decision *(3)*
decision-making *(1)*
decisions *(7)*
Defendant *(2)*
Delaware *(1)*
delivered *(1)*
DEMO *(1)*
depends *(1)*
DEPONENT *(1)*
deposed *(1)*
DEPOSITION *(6)*
depositions *(1)*
describe *(1)*
described *(2)*
describing *(1)*

detail *(1)*
details *(1)*
determine *(1)*
device *(1)*
DIAZ *(4)*
difference *(1)*
different *(4)*
Diplomate *(2)*
DIRECT *(7)*
direction *(1)*
directly *(12)*
director *(2)*
directs *(1)*
disapprove *(1)*
discovery *(2)*
discussion *(2)*
disposition *(2)*
distribute *(1)*
distributions *(5)*
DISTRICT *(1)*
diverting *(1)*
dividends *(1)*
DIVISION *(1)*
document *(3)*
documentation *(2)*
DOCUMENTS *(6)*
doing *(5)*
dollar *(1)*
dollars *(7)*
Dondero *(6)*
Dondero's *(1)*
donor-advised *(2)*
dressing *(1)*
due *(1)*
Dugaboy *(3)*
duly *(1)*
duration *(1)*
duties *(7)*
duty *(13)*

< E >
earlier *(3)*
easier *(1)*
economic *(12)*
elaborate *(1)*
emails *(1)*
EMANUEL *(1)*
employed *(1)*
employment *(1)*

Empower  *(33)*
enabled  *(1)*
engaged  *(2)*
enraptured  *(1)*
ensure  *(1)*
enter  *(3)*
entered  *(3)*
entering  *(10)*
entire  *(1)*
entities  *(48)*
entity  *(6)*
entry  *(1)*
Errata  *(1)*
ESQ  *(10)*
established  *(1)*
event  *(1)*
evidence  *(1)*
exact  *(1)*
EXAMINATION  *(2)*
examined  *(1)*
example  *(1)*
exchange  *(1)*
excuse  *(1)*
execution  *(2)*
exercise  *(3)*
exercised  *(5)*
exercising  *(2)*
Exhibit  *(2)*
EXHIBITS  *(1)*
expect  *(2)*
expectation  *(3)*
expense  *(2)*
expenses  *(1)*
expert  *(1)*
expired  *(1)*
explain  *(1)*
explained  *(1)*
exposure  *(1)*
extend  *(1)*
extent  *(2)*

< F >
fact-finding  *(1)*
facts  *(28)*
fail  *(1)*
fair  *(42)*
faith  *(1)*
familiar  *(10)*
Family  *(8)*

fan  *(2)*
February  *(2)*
fee  *(1)*
feed  *(1)*
feedback  *(1)*
feeds  *(1)*
feel  *(2)*
felt  *(1)*
fiduciary  *(16)*
file  *(5)*
filed  *(12)*
filing  *(7)*
finance  *(2)*
financial  *(5)*
financially  *(1)*
finish  *(3)*
firm  *(1)*
first  *(5)*
five-minute  *(1)*
fixed  *(8)*
Floor  *(2)*
flow  *(7)*
flows  *(2)*
fluctuations  *(1)*
focus  *(2)*
focused  *(1)*
Focusing  *(2)*
following  *(2)*
follows  *(1)*
foregoing  *(3)*
form  *(53)*
formal  *(2)*
formed  *(1)*
forth  *(1)*
Foundation  *(101)*
foundations  *(3)*
Foundation's  *(20)*
full  *(1)*
Fund  *(18)*
funded  *(2)*
funding  *(2)*
funds  *(4)*
fund's  *(1)*
Further  *(2)*
future  *(6)*

< G >
Gail  *(7)*
gdemo@pszjlaw.com

*(1)*
generally  *(2)*
gentleman  *(1)*
getting  *(2)*
give  *(10)*
given  *(4)*
gives  *(2)*
glance  *(1)*
Global  *(44)*
go  *(10)*
goal  *(1)*
going  *(23)*
Good  *(4)*
good-faith  *(6)*
governing  *(5)*
granting  *(2)*
grant-making  *(1)*
grants  *(1)*
GREGORY  *(1)*
grow  *(1)*
guaranteed  *(1)*
guy  *(1)*

< H >
half  *(1)*
HALL  *(1)*
HALLMAN  *(1)*
happen  *(1)*
happened  *(4)*
hard  *(1)*
harm  *(1)*
HART  *(1)*
hat  *(1)*
hats  *(1)*
HAYLEY  *(1)*
head  *(2)*
hear  *(3)*
heard  *(3)*
held  *(5)*
helped  *(1)*
Hey  *(1)*
high  *(2)*
HIGHLAND  *(59)*
Highland's  *(2)*
high-level  *(2)*
historical  *(1)*
HMIT  *(65)*
hold  *(7)*
Holdco  *(2)*

holdings  *(2)*
holds  *(1)*
honest  *(1)*
Hospitality  *(1)*
Houston  *(1)*
Hunter  *(18)*
HURT  *(1)*
hwinograd@pszjlaw.c
om  *(1)*

< I >
idea  *(5)*
identify  *(2)*
IDF  *(8)*
imagine  *(3)*
impact  *(29)*
impacted  *(5)*
impactful  *(1)*
impacts  *(3)*
implicated  *(1)*
important  *(3)*
including  *(1)*
income  *(10)*
increased  *(1)*
independent  *(1)*
INDEX  *(1)*
indicate  *(1)*
indirect  *(7)*
indirectly  *(4)*
Indiscernible  *(1)*
individual  *(11)*
individuals  *(1)*
infirmity  *(1)*
inform  *(5)*
information  *(12)*
informed  *(6)*
informing  *(1)*
Inghram  *(4)*
inquired  *(1)*
inquiry  *(2)*
insertion  *(1)*
insight  *(1)*
instruct  *(1)*
INSTRUCTION  *(1)*
INSTRUCTIONS  *(1)*
Insurance  *(12)*
interest  *(34)*
interested  *(3)*
interests  *(3)*

internal *(1)*
introduced *(1)*
inured *(1)*
invest *(1)*
invested *(1)*
Investment *(18)*
investments *(7)*
involved *(1)*
Islands *(3)*
issuer *(1)*
its *(5)*

**< J >**
JAMES *(1)*
January *(1)*
JEFFREY *(1)*
Jim *(2)*
jmorris@pszjlaw.com
 *(1)*
JOHN *(4)*
joint *(12)*
JONES *(2)*
jpomerantz@pszjlaw.c
om *(1)*
JULIE *(4)*
June *(2)*
jurisdiction *(1)*

**< K >**
KELLY *(1)*
key *(1)*
kind *(13)*
know *(76)*
knowing *(2)*
knowledge *(4)*

**< L >**
L.P *(1)*
LANG *(3)*
language *(1)*
large *(1)*
late *(1)*
law *(2)*
lawsuit *(5)*
lawyer *(4)*
lay *(1)*
lead *(1)*
lean *(1)*
leaned *(1)*

learn *(1)*
leave *(2)*
led *(1)*
left *(2)*
legal *(14)*
legally *(2)*
level *(2)*
liability *(2)*
Life *(4)*
likelihood *(1)*
Limited *(3)*
LINE *(6)*
liquidation *(1)*
liquidators *(12)*
liquidity *(1)*
listen *(1)*
lists *(1)*
Litigation *(5)*
little *(7)*
LITTLETON *(12)*
LLP *(3)*
LOIGMAN *(1)*
long *(4)*
longer *(1)*
look *(1)*
looked *(1)*
looking *(3)*
loss *(1)*
lost *(3)*
lot *(2)*
LOUIS *(1)*
Louisiana *(1)*
LP *(7)*
lphillips@kellyhart.co
m *(1)*

**< M >**
M&E *(3)*
Madden *(2)*
Madison *(1)*
Main *(2)*
making *(3)*
MANAGEMENT
*(15)*
Mark *(9)*
MARKED *(3)*
market *(11)*
MARKS *(2)*
material *(2)*

Matt *(5)*
matter *(1)*
matters *(1)*
MATTTHEW *(1)*
mean *(1)*
means *(1)*
meet *(1)*
member *(1)*
met *(2)*
MICHAEL *(1)*
million *(18)*
mine *(1)*
minutes *(2)*
missed *(1)*
mlang@cwl.law.com
 *(1)*
MNPI *(1)*
mokin@okinadams.co
m *(1)*
moment *(1)*
money *(3)*
MORRIS *(79)*
motion *(9)*
Mountain *(19)*
move *(2)*
moved *(1)*
moving *(4)*
multiple *(1)*

**< N >**
name *(2)*
named *(1)*
NATHAN *(1)*
NECESSARILY *(2)*
need *(7)*
needed *(2)*
negatively *(3)*
negotiate *(1)*
negotiating *(1)*
negotiation *(4)*
negotiations *(4)*
neither *(1)*
never *(7)*
New *(4)*
newly *(1)*
news *(1)*
NexPoint *(1)*
nice *(1)*
nonpublic *(2)*

normal *(1)*
NORTHERN *(1)*
Notary *(1)*
notations *(1)*
NOTE *(1)*
notes *(4)*
notice *(1)*
notified *(1)*
November *(1)*
NUMBER *(2)*

**< O >**
object *(53)*
objecting *(1)*
objection *(22)*
objections *(1)*
obligation *(10)*
obligations *(6)*
obtain *(6)*
obtained *(2)*
occasions *(1)*
officer *(1)*
official *(12)*
officially *(1)*
Oh *(2)*
Okada *(33)*
okay *(51)*
OKIN *(71)*
once *(1)*
opine *(8)*
opined *(1)*
opinion *(3)*
opportunity *(4)*
option *(11)*
order *(3)*
org *(1)*
organization *(8)*
organizational *(1)*
organizations *(27)*
orgs *(1)*
originally *(1)*
originated *(1)*
outcome *(1)*
outlined *(1)*
outside *(3)*
overall *(2)*
overseeing *(1)*
oversight *(4)*
owes *(6)*

owned  *(5)*
ownership  *(9)*
owns  *(2)*

**< P >**
p.m  *(5)*
PACHULSKI  *(2)*
Pacific  *(1)*
PAGE  *(7)*
paid  *(3)*
paragraph  *(7)*
part  *(13)*
participate  *(2)*
particular  *(2)*
parties  *(11)*
partnership  *(1)*
party  *(3)*
patience  *(1)*
Patrick  *(27)*
Patrick's  *(2)*
PAUL  *(1)*
pay  *(5)*
payments  *(3)*
payout  *(2)*
payouts  *(2)*
PE  *(2)*
peace  *(2)*
pending  *(2)*
percentage  *(1)*
period  *(2)*
permission  *(2)*
person  *(6)*
personally  *(2)*
persons  *(1)*
pertaining  *(2)*
pertinent  *(1)*
PHILLIPS  *(3)*
piece  *(1)*
place  *(2)*
plan  *(1)*
planned  *(1)*
platform  *(2)*
play  *(3)*
played  *(1)*
plays  *(1)*
please  *(3)*
PLLC  *(1)*
point  *(1)*
policies  *(4)*

policy  *(4)*
POMERANTZ  *(1)*
portfolio  *(1)*
portfolios  *(1)*
portion  *(3)*
positive  *(1)*
possibility  *(2)*
potential  *(2)*
potentially  *(3)*
preparation  *(1)*
present  *(3)*
preserve  *(1)*
President  *(2)*
prevent  *(2)*
PREVIOUSLY  *(2)*
primarily  *(1)*
prior  *(1)*
privilege  *(1)*
privileged  *(1)*
privy  *(1)*
probably  *(2)*
problematic  *(2)*
proceeding  *(1)*
proceedings  *(5)*
process  *(4)*
produce  *(1)*
produced  *(1)*
product  *(4)*
PRODUCTION  *(1)*
projected  *(1)*
proper  *(1)*
proposed  *(13)*
proposing  *(1)*
propounded  *(1)*
protect  *(1)*
provide  *(1)*
provided  *(2)*
providing  *(1)*
Public  *(1)*
pull  *(1)*
pulling  *(1)*
purpose  *(2)*
pursued  *(1)*
pushed  *(1)*
put  *(20)*
putting  *(1)*

**< Q >**
quarter  *(1)*

quarterly  *(2)*
question  *(13)*
questionable  *(2)*
QUESTIONS  *(11)*
quicker  *(1)*
QUINN  *(1)*
QUOTATION  *(1)*
quotations  *(1)*
QUOTE  *(2)*

**< R >**
Rand  *(8)*
Rand's  *(1)*
range  *(1)*
RAVER  *(1)*
RDR  *(2)*
reach  *(1)*
read  *(6)*
reading  *(2)*
really  *(2)*
Realtime  *(3)*
reason  *(39)*
reasonable  *(1)*
reasons  *(3)*
recall  *(1)*
receive  *(10)*
received  *(4)*
receives  *(1)*
Recess  *(1)*
recollection  *(1)*
recommendation  *(3)*
recommendations  *(2)*
record  *(1)*
recorded  *(1)*
recovered  *(1)*
reduced  *(1)*
refer  *(2)*
REFERENCED  *(1)*
referred  *(2)*
referring  *(1)*
refers  *(3)*
REFLECT  *(1)*
refresh  *(1)*
regardless  *(2)*
Registered  *(2)*
reiterated  *(1)*
related  *(4)*
relates  *(4)*
relationship  *(9)*

relax  *(1)*
release  *(1)*
releases  *(4)*
releasing  *(1)*
rely  *(2)*
remind  *(1)*
REMOTE  *(3)*
reorganization  *(1)*
repeat  *(2)*
rephrase  *(2)*
Reported  *(1)*
Reporter  *(10)*
REPORTER'S  *(1)*
reporting  *(1)*
represent  *(1)*
representative  *(2)*
representing  *(1)*
represents  *(1)*
REQUEST  *(1)*
required  *(6)*
research  *(1)*
respect  *(7)*
respectfully  *(1)*
respectively  *(1)*
responsibilities  *(2)*
responsibility  *(3)*
responsible  *(1)*
restate  *(3)*
restructuring  *(6)*
result  *(4)*
review  *(2)*
reviewed  *(2)*
Right  *(38)*
rise  *(3)*
risk  *(7)*
ROBERT  *(1)*
robertloigman@quinn
emanuel.com  *(1)*
role  *(6)*
roll  *(5)*
rolled  *(1)*
rolls  *(3)*
roll-up  *(1)*
room  *(1)*
Rouge  *(1)*
roughly  *(1)*
Royal  *(1)*
RSA  *(2)*

**< S >**
sale  *(4)*
saw  *(1)*
says  *(2)*
scheduled  *(1)*
scope  *(3)*
screen  *(3)*
scroll  *(1)*
scrutiny  *(1)*
see  *(8)*
seek  *(3)*
seeking  *(1)*
seeks  *(2)*
seen  *(4)*
SEERY  *(1)*
segregated  *(6)*
sell  *(2)*
selling  *(1)*
sent  *(1)*
sentence  *(3)*
series  *(1)*
serve  *(1)*
served  *(1)*
set  *(4)*
settle  *(1)*
settled  *(1)*
settlement  *(68)*
settlements  *(3)*
settling  *(1)*
share  *(2)*
shares  *(5)*
sharing  *(1)*
SHAWN  *(1)*
sheet  *(6)*
shifting  *(1)*
short  *(2)*
Shorthand  *(3)*
sign  *(2)*
signed  *(3)*
significant  *(5)*
similar  *(1)*
sir  *(87)*
sit  *(1)*
situation  *(1)*
six  *(1)*
Skyview  *(1)*
sleep  *(1)*
smoothly  *(1)*
sold  *(5)*

sole  *(2)*
solely  *(2)*
somewhat  *(1)*
Sorry  *(9)*
sought  *(1)*
Sounds  *(2)*
source  *(2)*
speak  *(4)*
speculate  *(2)*
speculation  *(2)*
speed  *(1)*
spoke  *(1)*
spoken  *(1)*
standpoint  *(2)*
STANG  *(2)*
start  *(1)*
starting  *(1)*
state  *(4)*
stated  *(2)*
statement  *(3)*
statements  *(3)*
STATES  *(2)*
Stenographically  *(3)*
stewardship  *(1)*
STIPULATIONS  *(1)*
stream  *(3)*
streams  *(1)*
Street  *(2)*
strike  *(1)*
structure  *(13)*
structures  *(1)*
stuff  *(2)*
sub  *(1)*
subject  *(4)*
Subtrust  *(1)*
succeed  *(3)*
succeeding  *(1)*
successful  *(1)*
sue  *(1)*
suggest  *(2)*
Suite  *(3)*
SULLIVAN  *(1)*
sum  *(1)*
summary  *(1)*
Sunday  *(4)*
supervision  *(1)*
supplied  *(1)*
SUPPORT  *(1)*
supporting  *(30)*

supposed  *(1)*
Sure  *(6)*
surprised  *(1)*
sworn  *(1)*
Systems  *(1)*

**< T >**
take  *(9)*
taken  *(5)*
takes  *(2)*
talked  *(2)*
talking  *(2)*
team  *(7)*
tell  *(5)*
telling  *(1)*
tenure  *(4)*
terms  *(3)*
testified  *(1)*
testify  *(1)*
testimony  *(3)*
TEXAS  *(3)*
Thank  *(4)*
Thanks  *(1)*
therefor  *(1)*
thing  *(2)*
things  *(8)*
think  *(50)*
thinking  *(2)*
Third  *(2)*
thoroughly  *(1)*
thought  *(1)*
three  *(2)*
tied  *(2)*
time  *(31)*
times  *(1)*
timing  *(1)*
today  *(12)*
told  *(5)*
TORREY  *(5)*
total  *(1)*
track  *(1)*
transaction  *(1)*
transactions  *(1)*
transcribed  *(2)*
transcript  *(3)*
transcripts  *(1)*
transfer  *(1)*
transferred  *(1)*
transpired  *(1)*

tribunal  *(1)*
tried  *(1)*
true  *(10)*
Trust  *(24)*
Trustee  *(3)*
trustees  *(1)*
truth  *(3)*
try  *(3)*
trying  *(2)*
two  *(10)*
types  *(1)*
typewriting  *(1)*
typically  *(1)*

**< U >**
ultimately  *(10)*
uncertainty  *(1)*
underlying  *(4)*
understand  *(17)*
understanding  *(13)*
unfair  *(5)*
Unfortunately  *(1)*
UNITED  *(1)*
unpack  *(1)*
unsuccessfully  *(1)*
URQUHART  *(1)*
use  *(2)*

**< V >**
valuations  *(1)*
value  *(21)*
values  *(1)*
various  *(1)*
vehicle  *(8)*
vehicles  *(1)*
verbatim  *(4)*
veto  *(1)*
videoconferencing  *(1)*
video-conferencing
  *(1)*
VIDEOGRAPHER
  *(1)*
VIDEO-RECORDED
  *(2)*
view  *(2)*
Vine  *(1)*
volume  *(2)*

**< W >**

walk  *(1)*
want  *(6)*
wanted  *(4)*
watching  *(1)*
way  *(2)*
wearing  *(1)*
Wednesday  *(2)*
week  *(1)*
Well  *(10)*
we're  *(10)*
we've  *(6)*
WINOGRAD  *(1)*
wish  *(1)*
WISHNEW  *(1)*
withdraw  *(1)*
withdrawn  *(7)*
witness  *(5)*
wondering  *(1)*
words  *(1)*
wore  *(1)*
working  *(2)*
world  *(1)*
worries  *(1)*
worth  *(3)*
wrapped  *(1)*
written  *(1)*
wrong  *(7)*
wrongdoing  *(1)*

**< Y >**
Yeah  *(41)*
year  *(2)*
years  *(6)*
York  *(4)*

**< Z >**
ZIEHL  *(2)*
Zoom  *(1)*

**STINSON LLP**
Deborah Deitsch-Perez
Michael P. Aigen
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for The Dugaboy Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| *In re* | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**THE DUGABOY INVESTMENT TRUST'S WITNESS AND EXHIBIT LIST**
**FOR THE JUNE 25, 2025 HEARING**

COMES NOW, The Dugaboy Investment Trust ("Dugaboy") and files this Witness and Exhibit List with respect to the *Motion for an Order Further Extending Duration of Trust*s [Docket No. 4213], which the Court has set for hearing at 9:30 a.m. (Central Time) on June 25, 2025 (the "Hearing") in the Bankruptcy Case.

**WITNESSES**

Dugaboy designate the following individual who may be called as witness(es) at the June 25, 2025 Hearing. Dugaboy reserves the right to call or cross-examine any witness called by any

020230

other party, to supplement and/or amend this Witness List, and to call additional witnesses as necessary to rebut testimony or evidence introduced at the hearing.

| | Witness |
|---|---|
| 1 | James P. Seery, Jr.<br>c/o John A. Morris<br>Pachulski Stang Ziehl & Jones LLP<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>jmorris@pszjlaw.com<br>(212) 561-7760 |

## **EXHIBITS**

Dugaboy designates the following exhibit that may be used at the June 25, 2025 Hearing. Dugaboy reserves the right to introduce any exhibit designated by any other party, to supplement and/or amend its Exhibit List, to introduce any rebuttal exhibits, and to not use any such exhibits during the evidentiary hearing in response to the circumstances of the hearing.

| Dugaboy Exhibit No. | Description | Bates or Dkt. No. |
|---|---|---|
| 1 | 2025.04.08 Email from John Morris to Louis Phillips | HCMLPHMIT00000656 – HCMLPHMIT00000661 |

020231

Date:  June 24, 2025

Respectfully submitted,

**STINSON LLP**

*/s/ Deborah Deitsch-Perez*
Deborah Deitsch-Perez
Texas Bar No. 24036072
Michael P. Aigen
Texas Bar No. 24012196
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email:  deborah.deitschperez@stinson.com
Email:  michael.aigen@stinson.com
*Counsel for The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 24, 2025, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez

020232

# EXHIBIT 1

020233

Exhibit 45   Page 3 of 8

**EXHIBIT 45**

S. Davis
JAMES SEERY
6/23/2025
**1**

020234

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com"
<Amelia.Hurt@kellyhart.com>
**Subject:** Highland: Privileged and confidential settlement communication and materials
**Date:** Tue, 8 Apr 2025 20:22:22 +0000
**Importance:** Normal
**Attachments:** Privileged_and_confidential_-_DRAFT_4.8.25_discussion_materials.pdf;
PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_4.8.25.p
df; HFP_-_Entity_Chart_-_2011.pdf
**Inline-Images:** image001.jpg

---

E-MAIL AND ATTACHMENTS DELIVERED PURSUANT TO FED. R. EVID. 408
AND APPLICABLE CONFIDENTIALITY AGREEMENT

Louis,

Thank you and your team for your time today.

As a follow up, attached are the following:

1. Discussion materials from today (draft numbers)
2. Discussion materials from today (draft structure)
3. HFP entity chart from 2011

On your end, please send us the following at your earliest convenience:

1. Copy of settlement agreement circa 2022 between HMIT and Dugaboy/Okada entities
2. Copy of operative document relating to the [redemption] of the Dolomiti/Hakusan entities limited
partnership interest in Rand PE Fund I
3. Copy of operative document providing for the [extinguishment] of participating shares of the supporting
organizations of Charitable DAF Holdco, Ltd.

Let's confer as soon as you've had a chance to consider these matters with your team.

Please let us know if you have any questions in the interim.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

020235

HCMLPHMIT00000656



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000657

Case 19-34054-sgj11    Doc 4279-1    Filed 06/24/25    Entered 06/24/25 15:38:17    Desc
Exhibit Exhibit 1    Page 5 of 8

Case 19-34054-sgj11    Doc 4255-45    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 45    Page 4 of 7

Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties

**Current Snapshot - remaining assets [1]**
*in USD millions, except percentages*

| Asset description | Ref | Claimant Trust [2] | Indemnity Trust [3] | Combined |
|---|---|---|---|---|
| Cash/treasuries | [4] | $    20.3 | $    67.9 | $    88.1 |
| Disputed Claims Reserve | [5] | 2.7 | - | 2.7 |
| Dugaboy Note receivable | [6] | - | 17.6 | 17.6 |
| HCM Korea (note and equity) | [7] | 3.0 | - | 3.0 |
| HCLOF shares | [8] | 2.5 | - | 2.5 |
| HCRE bad faith sanction | [9] | 0.9 | - | 0.9 |
| Kirschner Litigation (main adversary) | [10] | *See footnote* | - | - |
| HMIT note | [11] | *See footnote* | - | - |
| **Total assets** | | **$    29.4** | **$    85.5** | **$    114.8** |

[1] As of April 3, 2025. This disclosure is NOT a balance sheet prepared in accordance with US GAAP. In some instances, values are estimated and actual amounts retained may ultimately differ materially. No liabilities are included herein, including contingent liabilities, indemnification obligations, or considerations for future expenses, including costs of liquidation that have not yet been, but will be incurred.

[2] Claimant Trust, including consolidation of the various "Plan" entities other than the Indemnity Trust (HCMLP GP, LLC, Highland Capital Management, LP, Litigation Sub-Trust), each on a standalone basis, with intercompany balances eliminated.

[3] Stand-alone assets retained by the Indemnity Trust. Other than less than <$1M retained in cash, remainder of cash is invested in US treasuries with maturities less than 1 year. Excludes <$1M of cash/treasuries on account of the Okada settlement. Pursuant to the Okada settlement, these funds are segregated and are to be repaid to Okada as first-out funds to the extent that any excess exists in the Indemnity Trust. Accordingly, in a settlement scenario, these funds would not be available to Class 10 interest holders.

[4] Cash and treasuries includes full face amount of treasuries maturing within 6 months and has also been adjusted up to assume the near-term receipt of approximately $5 million from Highland CLO Funding, Ltd.

[5] Segregated funds invested in US treasuries with near-term maturities. Funds are reserved for the Daugherty tax proof of claim, which remains pending. If Highland successfully objects to the proof of claim, funds would be released from the Disputed Claims Reserve. If the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim and any excess remaining would be released from the Disputed Claims Reserve.

[6] Note receivable from The Dugaboy Investment Trust ("Dugaboy"). ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day. Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046. Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024. Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines. The next interest payment due December 31, 2025 is $566,677. No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[7] 100% equity interest in Highland Capital Management Korea Limited ("HCM Korea"), plus $2.5 million note from HCM Korea. Ultimate value dependent on the monetization of the Caris Life Sciences investment through an expected 2025 IPO, which is expected to be in the range of $2 million to $5 million, but could also exceed or fall short of this range.

[8] Shares of Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey company. Value has been adjusted down to assume a near-term cash dividend of approximately $5 million. Remaining value is primarily tied up in the "Acis 6" asset, for which a NexPoint entity has recently initiated an appeal in the 2nd Circuit Court of Appeals. Ultimate value dependent on the Acis 6 litigation and costs of winding down HCLOF and expected to be in the range of $2 million to $4 million, but could also exceed or fall short of this range.

[9] Bad faith sanction against HCRE of $825,940.55, currently on appeal in the District Court. Fully briefed since November 2024. Award was posted in the court registry and is accruing post-judgment interest at a rate of $118.80/day. Approximately $870k is outstanding, including post-judgment interest currently. No assurance that the appeal will resolve favorably and as a result, there is no assurance that any amounts will ultimately be collected.

[10] Litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust. Adversary proceeding is currently stayed. The value of the claims, their collectibility, and the costs of their continued pursuit is ultimately unknown. For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

[11] Within the litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust were claims against HMIT relating to the "HMIT note" receivable, which had originally been a portion of the consideration HMIT paid for acquiring limited partnership interests in Highland in 2015. These claims are also stayed as part of the overall stay in the case. The value of the note, its collectibility, and the costs of their continued pursuit is ultimately unknown. For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

1

Case 19-34054-sgj11     Doc 4279-1     Filed 06/24/25     Entered 06/24/25 15:38:17     Desc
Exhibit Exhibit 1     Page 6 of 8

Case 19-34054-sgj11     Doc 4255-45     Filed 06/20/25     Entered 06/20/25 21:39:29     Desc
Exhibit 45     Page 5 of 7

Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties

**Uses: how much could be left after satisfying Class 9 claims?**
*in USD millions*

| | | | |
|---|---|---|---|
| Total combined assets | $ | 114.8 | *see "current snapshot"* |
| Less: | | | |
| Oustanding Class 9, including interest | | (21.0) | |
| Existing Incentive Compensation triggered through full payment of Class 9 | | (2.5) | |
| Long-dated assets - Dugaboy Note receivable | | (17.6) | [1] |
| Wind down expenses and accrued liabilities | | (20.0) | [2] |
| Pending Class 8 claims (Daugherty tax) | | *See footnote* | [3] |
| Indemnification obligations | | *See footnote* | [4] |
| **Net expected cash prior to any indemnification considerations and necessary reserves** | $ | **53.7** | [5] |
| **Plus: Non-cash assets - Dugaboy Note receivable** | $ | **17.6** | |

[1] Note receivable from The Dugaboy Investment Trust ("Dugaboy"). ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day.  Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046.  Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024.  Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines.  The next interest payment due December 31, 2025 is $566,677.  No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[2] Amount is ultimately TBD and will ultimately depend on litigation, timing of monetization of remaining assets, and operational needs.  For example, if additional litigation is brought forth, outside counsel will incur additional time and expense and certain employees may need to be retained for a longer period of time.  If actual expenses exceed $20 million, less cash would be potentially available after Class 9; if actual expenses fall short of $20 million, more cash would be potentially available after Class 9.

[3] For illustrative purposes of this presentation, $0 is assumed.  However, if the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim, which would reduce cash potentially available after Class 9.  No assurances can be provided that the claim will be completely disallowed.

[4] For illustrative purposes of this presentation, $0 is assumed.  Thus, all funds utilized for purposes of satisfying indemnification obligations are reduced on a dollar for dollar basis.  Under current conditions, it is believed that at least $100 million may be needed for indemnification obligations and as a result, there is not sufficient liquidity at this time to even make any further payments to Class 9 interest holders.  Assuming a final/non-appealable order, providing for among other things, a complete cessation of litigation and comprehensive releases from the HMIT/DAF parties, the need for indemnification reserves could be greatly reduced.

[5] Assumes HCM Korea, HCLOF, and HCRE bad faith sanctions are monetized for the amounts described for the amounts described in the "current snapshot" ($6.4 million in aggregate).  Monetization in excess of these amounts would result in more cash remaining; monetization below those amounts would result in less cash remaining.

2

HCMLPHMIT00000659

020238

Case 19-34054-sgj11    Doc 4279-1    Filed 06/24/25    Entered 06/24/25 15:38:17    Desc
Exhibit Exhibit 1    Page 7 of 8

Case 19-34054-sgj11    Doc 4255-45    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 45    Page 6 of 7

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Information request made April 7, 2025**

**(i) Accrued liabilities**

| | Entity | | Amount | |
|---|---|---|---|---|
| End of case/severance bonuses - remaining employees | HCMLP | $ | 1,230,000 | |
| Accounts payable book balance (as of March 31, 2025) | HCMLP | | 576,207 | |
| Estimate of other incurred, but not invoiced for work performed | HCMLP | | 500,000 | *general estimate* |
| **Sub-total (i)** | | $ | **2,306,207** | A |

| *Other liabilities not included in section totals above* | Entity | | Amount | |
|---|---|---|---|---|
| Distribution payable | HCT | $ | 2,656,732 | *previously authorized distributions related to pending Daugherty claim (has offsetting cash reserve; see current snapshot); to be released following resolution of the pending claim* |
| Okada settlement payable | Indemnity Trust | $ | 870,000 | *first-out dollars in treasuries (amount is face of such treasuries) - for purposes of settlement discussions, the cash reserved related to the Okada settlement and the potential first-out dollars are excluded as irrelevant* |

**(ii) Anticipated success or severance (or completion) payments or bonuses**

| | Entity | | Amount | |
|---|---|---|---|---|
| Incentive Compensation Plan | HCMLP/HCT | $ | 2,480,088 | *assuming full payment of the Class 9's; calc'd as 14.71516% on remaining distributions to Class 9 with a time discount applied to the gross dollars distributed* |
| Retention Date payments - employees | HCMLP | | 925,000 | *Retention Date is 9/30/2025* |
| Nate Burns (employee) incentive comp | HCMLP | | - | *Nate receives a portion of the performance fees earned related to HCM Korea; assuming zero for present purposes as amounts would be a percentage of incremental value received from HCM Korea* |
| **Sub-total (ii)** | | $ | **3,405,088** | B |

**(iii) Continuing admin budget for the Claimant Trust, Indemnification sub trust and/or litigation sub trust**

| | | | |
|---|---|---|---|
| See subsequent page; Sub-total (iii) | $ | **16,768,874** | C - *additional detail contained on separate page* |

| **Sum of A, B, and C** | $ | **22,480,169** | |
|---|---|---|---|

**(iv) Identity and amount and basis for any holdback(s)**

| Identity: | | Amount | Basis for amount |
|---|---|---|---|
| Sum of A, B, and C from above | $ | 22,480,169 | *from above; See notes and assumptions related to items A, B, and C* |
| Incremental operational reserve | | 5,000,000 | *Excess cash to retain to cover potential cost overages - largest risk is incremental litigation and resulting time and expense of PSZJ plus longer retention of employees/CEO to assist with litigation, if applicable* |
| Indemnification reserves | | 35,000,000 | *Assumes comprehensive releases and settlement amongst the HMIT/DAF Parties; at least $100 million if no settlement* |
| Sum of items above | $ | 62,480,169 | *to below* |

| Calc of estimated cash available for a prelim distribution to Class 10, assuming settlement | | $ millions | |
|---|---|---|---|
| Current cash/treasuries (see previous page) | $ | 88.1 | *Cash and treasuries (including all Plan entities)* |
| Assets expected to monetize in next 12 months | | 6.4 | *HCM Korea, remainder of HCLOF, bad faith sanction (but excluding near-term Dugaboy Note P&I amortization due December 2025)* |
| **Sub-total** | $ | **94.5** | |
| less: outstanding Class 9, including interest | | (21.0) | *current outstanding Class 9 with interest* |
| less: holdbacks (from above) | | (62.5) | *from above* |
| Remaining cash available for initial distribution to Class 10 | $ | 11.1 | *[1]* |
| **Round to nearest million** | $ | **11.0** | |

*[1] Possibility of incremental amount of up to $2.7 million in the event of a successful opposition to the pending Daugherty tax POC, along with incremental interim cash received from Dugaboy Note P&I amortization.  Amount also does not include non-cash assets (litigation, outstanding Dugaboy Note, etc).*

3

HCMLPHMIT00000660

020239

Case 19-34054-sgj11   Doc 4279-1   Filed 06/24/25   Entered 06/24/25 15:38:17   Desc
Exhibit Exhibit 1   Page 8 of 8

Case 19-34054-sgj11   Doc 4255-45   Filed 06/20/25   Entered 06/20/25 21:39:29   Desc
Exhibit 45   Page 7 of 7

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*

**Projected Budget Build-Up**

Remaining expected budget assuming a comprehensive settlement with HMIT/DAF Parties (excluding accrued liabilities and contingencies separately discussed)

| Description | Total for budget | Notes and assumptions |
|---|---|---|
| Pachulski Stang and other litigation or BK-related | $ 5,000,000 | Primary issues: expected new litigation to defend (actual causes of action unknown) from Dondero parties, incorporation of HMIT/DAF settlement and approval/appeals of same, appeals of "valuation complaint" and "HCRE bad faith", extension of the Trust for 1 yr. and dissolution issues. Ultimate amount required could vary materially higher or lower. |
| HCMLP employees salary and benefits (other than CEO) | 4,084,354 | Assumes declining headcount from 6 to 3, ending August 2026 (monthly trending from approx. $300k/month currently to approx. $200k/month at end) |
| Claimant Trustee/CEO salary | 2,700,000 | Assumes 18 months at $150k/month |
| Litigation Trustee | 360,000 | Assumes 18 months at $20k/month |
| Independent Member | 225,000 | Assumes 18 months at $12.5k/month |
| Litigation trust (other than Trustee) | 250,000 | Assuming minimal time and expense other than in conjunction with transfer of main case |
| Incentive Compensation on distributions to Cl. 10 | TBD | Provide for alignment in regards to quantum and timing of distributions and management of costs |
| *Overhead related* | | |
| Facilities/offsite storage and related | 1,079,121 | Office space through end of 2026 and offsite document retention through 2028 |
| External tax | 1,000,000 | Declining each year with final year for tax year 2027 |
| IT costs | 701,760 | Cloud storage, network infrastructure through 2027, email storage through 2030 |
| Accounting systems and information | 331,045 | General retention and maintenance through 2028 (primarily Oracle maintenance) |
| Other professionals | 200,000 | Misc reserve for other professionals |
| Other misc overhead | 200,000 | Misc reserve for other overhead, T&E, entity wind-up costs, etc |
| Indemnification expenses | 200,000 | Assuming misc. expenses from misc. matters |
| US Trustee | 437,594 | Assuming 0.8% of budget + accruals + distributions (assuming $30M total) |
| **Grand total** | $ **16,768,874** | *to previous page* |

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

HCMLPHMIT00000661

020240

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Highland Capital Management,
L.P. and the Highland Claimant Trust*

*Co-Counsel for Marc S. Kirschner, as
Litigation Trustee of The Highland
Litigation Sub-Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |

## HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND LITIGATION SUB-TRUST SECOND AMENDED WITNESS AND EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON JUNE 25, 2025

Highland Capital Management, L.P., the reorganized debtor (the "Debtor" or "Highland,"

as applicable) in the above-captioned chapter 11 case (the "Bankruptcy Case"), the Highland

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 1 OF 15**

020241

Claimant Trust (the "<u>Claimant Trust</u>"), and the Highland Litigation Sub-Trust (the "<u>Litigation

Sub-Trust,</u>" and together with Highland and the Claimant Trust, the "<u>Movants</u>"), by and through

their undersigned counsel, submit the following second amended witness and exhibit list with

respect to the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. §

363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith*

[Docket No. 4216], which the Court has set for hearing at 9:30 a.m. (Central Time) on June 25,

2025 (the "<u>Hearing</u>") in the Bankruptcy Case.

A.   <u>**Witnesses**</u>:

1.   James P. Seery, Jr.;

2.   James Dondero;

3.   Deborah Deitsch-Perez, Esq;

4.   Julie Diaz (by deposition transcript);

5.   Any witness identified by or called by any other party; and

6.   Any witness necessary for rebuttal.

B.   <u>**Amended Exhibits**</u>:[2]

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| A. | <u>**Settlement Agreement**</u> | | |
| 1. | *Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to a Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Agreement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4217] [HCMLPHMIT00002688-HCMLPHMIT00002715] | | |
| B. | <u>**Negotiation Documents**</u> | | |

---

[2] The amendments to the original exhibit list, filed at Docket Nos. 4255 & 4277, include the addition of one exhibit: Exhibit No. 126 in bold font below.

AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025          PAGE 2 OF 15
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

020242

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 2. | Email from L. Phillips to J. Morris dated March 5, 2025 [HCMLPHMIT00000015-HCMLPHMIT00000017] | | |
| 3. | Email from L. Phillips to J. Morris dated March 13, 2025 [HCMLPHMIT00000022-00000026] | | |
| 4. | Email from L. Phillips to J. Morris dated March 18, 2025 [HCMLPHMIT00000028-HCMLPHMIT00000029] | | |
| 5. | Email from L. Phillips to J. Morris dated March 19, 2025 [HCMLPHMIT00000030-HCMLPHMIT00000031] | | |
| 6. | Confidentiality Agreement-M Patrick and Related Entities [HCMLPHMIT00000032-HCMLPHMIT00000045] | | |
| 7. | Email from L. Phillips to J. Morris and A. Hurt dated March 22, 2025 [HCMLPHMIT00000046-HCMLPHMIT00000048] | | |
| 8. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000052-HCMLPHMIT00000054] | | |
| 9. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000055-HCMLPHMIT00000056] | | |
| 10. | Email from L. Phillips to J. Morris dated March 28, 2025 [HCMLPHMIT00000057] | | |
| 11. | Email from L. Phillips to J. Morris dated March 30, 2025 [HCMLPHMIT00000058] | | |
| 12. | Email from L. Phillips to J. Morris dated March 31, 2025 [HCMLPHMIT00000059] | | |
| 13. | HCLOM Intercreditor and Participation Agreement [HCMLPHMIT00000060-HCMLPHMIT00000063] | | |
| 14. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000075-HCMLPHMIT00000078] | | |
| 15. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000079-HCMLPHMIT00000080] | | |
| 16. | Email from L. Phillips to J. Morris dated April 3, 2025 with attachment - Paul Murphy Joinder to Confidentiality Agreement [HCMLPHMIT00000081-HCMLPHMIT00000083] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 3 OF 15**

020243

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 17. | Email from L. Phillips to J. Morris dated April 4, 2025 [HCMLPHMIT00000089] | | |
| 18. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000090-HCMLPHMIT00000092] | | |
| 19. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachment – Shawn Raver Joinder to Confidentiality Agreement [HCMLPHMIT00000093-HCMLPHMIT00000096] | | |
| 20. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000099-HCMLPHMIT00000102] | | |
| 21. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachments- Phillips Joinder to Confidentiality Agreement (signed by Phillips) and A. Hurt Joinder to Confidentiality Agreement (signed by Hurt) [HCMLPHMIT00000103-HCMLPHMIT00000107] | | |
| 22. | Email from L. Phillips to J. Morris dated April 8, 2025 with fully executed HCLOM Remittance Agreement [HCMLPHMIT00000108-HCMLPHMIT00000112] | | |
| 23. | Email from L. Phillips to J. Morris dated April 10, 2025 with HMIT 2022 Settlement Agreement [HCMLPHMIT00000118-HCMLPHMIT00000130] | | |
| 24. | Email from L. Phillips to J. Morris dated April 17, 2025 with attachment James Shields Joinder to Confidentiality Agreement [HCMLPHMIT00000135-HCMLPHMIT00000150] | | |
| 25. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000157-HCMLPHMIT00000158] | | |
| 26. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000159-HCMLPHMIT00000161] | | |
| 27. | Email from L. Phillips to J. Morris dated May 13, 2025 [HCMLPHMIT00000162-HCMLPHMIT00000163] | | |
| 28. | Email from L. Phillips to J. Morris dated May 14, 2025 [HCMLPHMIT00000164-HCMLPHMIT00000166] | | |
| 29. | Email from L. Phillips to J. Morris dated May 14, 2025 with Redlines of Settlement Agreement [HCMLPHMIT00000167-HCMLPHMIT00000218] | | |

**Amended Witness and Exhibit List for Hearing on June 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**Page 4 of 15**

020244

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 30. | Email from L. Phillips to J. Morris dated May 15, 2025 [HCMLPHMIT00000226-HCMLPHMIT00000234] | | |
| 31. | Email from L. Phillips to J. Morris dated May 16, 2025 with Clean and Redline of Rand Settlement Agreement [HCMLPHMIT00000235-HCMLPHMIT00000283] | | |
| 32. | Email from L. Phillips to T. Cournoyer dated May 16, 2025 [HCMLPHMIT00000287-HCMLPHMIT00000289] | | |
| 33. | Email from L. Phillips to J. Seery, M. Patrick, S. Raver, J. Shields, A. Hurt dated May 17, 2025 [HCMLPHMIT00000290] | | |
| 34. | Email from L. Phillips to J. Morris dated May 17, 2025 [HCMLPHMIT00000291-HCMLPHMIT00000292] | | |
| 35. | Email from L. Phillips to J. Morris, J. Pomerantz dated May 19, 2025 with attachment HMIT Redlined Pages only to Settlement Agreement [HCMLPHMIT00000295-HCMLPHMIT00000297] | | |
| 36. | Email from L. Phillips to G. Demo, A. Hurt, J. Shields dated May 19, 2025 [HCMLPHMIT00000342-HCMLPHMIT00000344] | | |
| 37. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 with attachment - M. Patrick signature of HMIT Rand Settlement Agreement [HCMLPHMIT00000345; HCMLPHMIT00000347-HCHMLPHMIT00000370] | | |
| 38. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz date May 19, 2025 [HCMLPHMIT00000371-HCMLPHMIT00000372] | | |
| 39. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000373-HCMLPHMIT00000374] | | |
| 40. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000423-HCMLPHMIT00000428] | | |
| 41. | Email from J. Morris to L. Phillips dated March 22, 2025 [HCMLPHMIT00000562-HCMLPHMIT00000563] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 5 OF 15**

020245

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 42. | Email from J. Morris to L. Phillips, A. Hurt dated March 22, 2025 with attachment – fully executed Confidentiality Agreement [HCMLPHMIT00000564-HCMLPHMIT00000580] | | |
| 43. | Email from J. Morris to L. Phillips dated April 4, 2025 with attachment Litigation Protections M. Patrick [HCMLPHMIT00000621-HCMLPHMIT00000631] | | |
| 44. | Email from J. Morris to L. Phillips dated April 7, 2025 [HCMLPHMIT00000642-HCMLPHMIT00000644] | | |
| 45. | Email from J. Morris to L. Phillips dated April 8, 2025 with attachment – current snapshot of remaining assets [HCMLPHMIT00000656--HCMLPHMIT00000661] | | |
| 46. | Email from J. Morris to L. Phillips dated April 16, 2025 with attachment – Second Amended and Restated Indemnity Trust Agreement [HCMLPHMIT00000672-HCMLPHMIT00000727] | | |
| 47. | April 15, 2025 Draft Illustrative Highland Indemnity Trust Payout Schedule [HCMLPHMIT00000724-HCMLPHMIT00000727] | | |
| 48. | Email from J. Morris to L. Phillips dated May 15, 2025 with attachment – Draft Rand Settlement Agreement and Redline [HCMLPHMIT00000766-HCMLPHMIT00000820] | | |
| 49. | Email from J. Morris to L. Phillips dated May 15, 2025 with Clean and Redline Settlement Agreement [HCMLPHMIT00000829-HCMLPHMIT00000877] | | |
| 50. | Email from L. Phillips to D. Klos dated April 17, 2025 [HCMLPHMIT00000947] | | |
| 51. | Email re: Microsoft Teams call from D. Klos to J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt dated April 7, 2025 [HCMLPHMIT00000949] | | |
| 52. | Microsoft Teams Appointment for J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt scheduled for April 8, 2025 [HCMLPHMIT00000950] | | |

AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002
PAGE 6 OF 15

020246

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 53. | Email from D. Klos to J. Shields dated April 22, 2025 with attachment – Potential Settlement Structure with DAF and HMIT<br>[HCMLPHMIT00000987-HCMLPHMIT00001000] | | |
| 54. | Email from J. Seery to M. Patrick, S. Raver, L. Phillips, A. Hurt, J. Shields dated April 28, 2025 with attachment – Draft Rand Settlement Agreement<br>[HCMLPHMIT00001001-HCMLPHMIT00001025] | | |
| 55. | Email Microsoft Teams appointment from D. Klos to J. Seery, K. Hendrix, M. Patrick, S. Raver, Paul dated April 3, 2025<br>[HCMLPHMIT00001037] | | |
| 56. | Email from D. Klos to M. Patrick dated April 2, 2025<br>[HCMLPHMIT00001042] | | |
| 57. | Email from J. Seery to J. Morris, T. Cournoyer, D. Klos, M. Gray dated June 11, 2025 with attachment – Class 9 Consent to Rand Settlement and Release<br>[HCMLPHMIT00001220-HCMLPHMIT00001245] | | |
| **C.** | **Class 9 Documents** | | |
| 58. | Letter to P. Daugherty from J. Seery re: Eighth Distribution re: Highland Claimant Trust dated May 20, 2025<br>[HCMLPHMIT00002329] | | |
| 59. | Written Consent of Holders of Class 9 Subordinated Claim Trust Interests in the Highland Claimant Trust dated May 16, 2025<br>[HCMLPHMIT00002677-HCMLPHMIT00002682] | | |
| 60. | Tolling Agreement Extending Claim Objection Deadline dated July 27, 2022 | | |
| 61. | Amendment No. 1 to Tolling Agreement Extending the Claim Objection Deadline dated December 21, 2022 | | |
| 62. | Amendment No. 2 to Tolling Agreement Extending Claim Objection Deadline dated November 6, 2023 | | |
| 63. | Amendment No. 3 to Tolling Agreement Extending Claim Objection Deadline dated November 20, 2024 | | |
| **D.** | **HCLOM/HMIT** | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 7 OF 15**

020247

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 64. | Email from L. Phillips to J. Morris dated January 6, 2025 [HCMLPHMIT00000008-HCMLPHMIT00000009] | | |
| 65. | Email from L. Phillips to J. Morris, A. Hurt dated January 11, 2025 [HCMLPHMIT00000010-HCMLPHMIT00000012] | | |
| 66. | *Highland Capital Management, L.P.'s Motion for (A) a Bad Faith Finding and (B) and Award of Attorney's Fees Against Highland CLO Management, Ltd. and James Dondero in Connection with HCLOM Claims 3.65 and 3.66* [Docket No. 4176] [HCMLPHMIT00000441-HCMLPHMIT00000500] | | |
| 67. | Hearing Transcript dated December 18, 2024 [Docket No. 4197] [HCMLPHMIT00003829-HCMLPHMIT00003859] | | |
| 68. | *Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award for Attorney's Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith [Docket Nos. 3657, 4716]* [Docket No. 4199] [HCMLPHMIT00003860-HCMLPHMIT00003866] | | |
| 69. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025 [HCMLPHMIT00003868-HCMLPHMIT00003871] | | |
| **E.** | **Patrick Authority** | | |
| 70. | Trust Agreement of Hunter Mountain dated December 17, 2015 [HCMLPHMIT00004103-HCMLPHMIT00004114] | | |
| 71. | Show Cause Hearing Transcript June 8, 2021 [HCMLPHMIT00002716-HCMLPHMIT00003013] | | |
| 72. | HMIT Hearing Transcript June 8, 2023 [HCMLPHMIT00003014-HCMLPHMIT00003402] | | |
| 73. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015 [HCMLPHMIT00003511-HCMLPHMIT00003517] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 8 OF 15**

020248

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 74. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547] HCMLPHMIT00003523-HCMLPHMIT00003828] | | |
| 75. | HMIT Appointment of Successor Administrator dated 8/12/2022 [HCMLPHMIT00003872] | | |
| 76. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015 [HCMLPHMIT00003873-HCMLPHMIT00003879] | | |
| 77. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013 [HCMLPHMIT00003880-HCMLPHMIT00003886] | | |
| 78. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015 [HCMLPHMIT00003887-HCMLPHMIT00003893] | | |
| 79. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015 [HCMLPHMIT00003894-HCMLPHMIT00003928] | | |
| 80. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00003929-HCMLPHMIT00004023] | | |
| 81. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015 [HCMLPHMIT00004024-HCMLPHMIT00004095] | | |
| 82. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022 [HCMLPHMIT00004124-HCMLPHMIT00004126] | | |
| 83. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022 [HCMLPHMIT00004127-HCMLPHMIT00004151] | | |
| 84. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022 [HCMLPHMIT00004152-HCMLPHMIT00004176] | | |
| 85. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022 [HCMLPHMIT00004177-HCMLPHMIT00004201] | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 9 OF 15**

020249

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 86. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022 [HCMLPHMIT00004202-HCMLPHMIT00004215] | | |
| 87. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022 [HCMLPHMIT00004216-HCMLPHMIT00004218] | | |
| 88. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022 [HCMLPHMIT00004219-HCMLPHMIT00004221] | | |
| 89. | 3/17/2025 Rand Advisors Form ADV [HCMLPHMIT00003465-HCMLPHMIT00003493] | | |
| 90. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | | |
| 91. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | | |
| 92. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] | | |
| 93. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] | | |
| 94. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] | | |
| 95. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | | |
| 96. | Bylaws of The Okada Family Foundation, Inc. (final version) | | |
| 97. | Bylaws of Empower Dallas Foundation, Inc. | | |
| 98. | Crown Global DVA Policy 30218 (signed) | | |
| 99. | Crown Global DVA Termsheet 30218 | | |
| 100. | Crown Global DVA Policy 30219 (signed) | | |

AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025          PAGE 10 OF 15
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

020250

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 101. | Crown Global DVA Termsheet 30219 | | |
| 102. | Crown Global Rand Participation Agreement (Executed) | | |
| 103. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | | |
| 104. | S&G HMIT Opinion dated January 29, 2016 | | |
| **F.** | **Dugaboy Note** | | |
| 105. | Promissory Note $24,268,621.69 dated May 31, 2017 [HCMLPHMIT00001327-HCMLPHMIT00001328] | | |
| 106. | The Dugaboy Investment Trust Offering of $1817M Promissory Note Owed to HCMLP February 2024 [HCMLPHMIT00002323-HCMLPHMIT00002327] | | |
| 107. | Participation Agreement for Par/Near Par Trades dated July 18, 2024 [HCMLPHMIT00002594-HCMLPHMIT00002600] | | |
| 108. | $18.5mm Dugaboy Note Attempted Sale – Process Update [HCMLPHMIT00002601] | | |
| 109. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024 [HCMLPHMIT00002602-HCMLPHMIT00002607] | | |
| 110. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024 [HCMLPHMIT00002608-HCMLPHMIT00002630] | | |
| 111. | Highland Claimant Trust Recommended Dugaboy Note Contribution dated June 7, 2024 [HCMLPHMIT00002631-HCMLPHMIT00002636] | | |
| 112. | Email from D. Klos to DC Sauter dated May 23, 2024 [HCMLPHMIT00002637-HCMLPHMIT00002639] | | |
| **G.** | **Capital Account Amounts** | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 11 OF 15**

020251

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 113. | Highland Capital Management, L.P. Consolidated Financial Statement and Supplemental Information dated December 31, 2018<br>[HCMLPHMIT00002548-HCMLPHMIT00002593] | | |
| 114. | Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. dated December 24, 2015<br>[HCMLPHMIT00002641-HCMLPHMIT00002676] | | |
| 115. | 2018 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT)<br>[HCMLPHMIT00001332; HCMLPHMIT00001336; HCMLPHMIT00001414; HCMLPHMIT00001419; HCMLPHMIT00001424; HCMLPHMIT00001429; HCMLPHMIT00001434; HCMLPHMIT00001439] | | |
| 116. | 2019 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT)<br>[HCMLPHMIT00001762; HCMLPHMIT00001766; HCMLPHMIT00001865; HCMLPHMIT00001870;<br>HCMLPHMIT00001875; HCMLPHMIT00001880; HCMLPHMIT00001885; HCMLPHMIT00001890] | | |
| 117. | Monthly Operating Report – FINAL November 2019<br>[HCMLPHMIT00001329] | | |
| 118. | Hunter Mountain Note Receivable October 15, 2019<br>[HCMLPHMIT00001330] | | |
| **H.** | **Dallas Foundation Issues** | | |
| 119. | Affidavit of James Dondero in the Grand Court of Cayman Islands FSD2025-0099 dated April 16, 2025<br>[HCMLPHMIT00003429-HCMLPHMIT00003438] | | |
| 120. | Email from J. Pomerantz to D. Curry, M. Okin dated June 19, 2025 | | |
| **I.** | **Plan, CTA, and Litigation Trust Agreement** | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**    **PAGE 12 OF 15**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

020252

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 121. | *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Pages 26-29, (entire document can be found at Docket No. 1808)<br>Excerpts:<br>Article IV. B.1-5 (pages 26-28)<br>Article IV. B.5 (pages 28-29)<br>Article IV. B.7 (page 30)<br>Article IV. B.10 (page 31)<br>Article IV. D. (pages 34-35)<br>Article VII. D.1-2 (pages 44-45)<br>Article XI (pages 53-55) | | |
| 122. | *Claimant Trust Agreement*, (entire document can be found at Docket No. 1811-2, as modified by Docket No. 1875-4)<br>Excerpts:<br>Fourth "Whereas" clause (page 1)<br>Section 2.2(a)-(b) (page 8)<br>Section 3.2(a)-(b) (pages 11-12)<br>Section 3.2(c)(iv) (page 12)<br>Section 2.3(b)(ix) (page 9) | | |
| 123. | *Litigation Sub-Trust Agreement*, (entire document can be found at Docket No. 1811-4)<br>Excerpts:<br>Fourth "Whereas" clause (page 1)<br>Section 2.2 (page 5)<br>Section 3.2(a) (page 7)<br>Section 3.2(b) (page 7)<br>Section 3.2(c)(v) (page 7)<br>Section 3.3 (b)(iii) (page 9) | | |
| **J.** | **Deposition Transcripts** | | |
| 124. | Deposition Transcript of Julie Diaz dated June 22, 2025 | | |
| 125. | Deposition Transcript of Torrey Littleton dated June 22, 2025 | | |
| **K.** | **Other Docs** | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**       **PAGE 13 OF 15**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

020253

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 126. | ***Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Article III, (entire document can be found at Docket No. 1808)** | | |
| 127. | Any document entered or filed in the Debtor's chapter 11 bankruptcy case, including any exhibits thereto | | |
| 128. | All exhibits necessary for impeachment and/or rebuttal purposes | | |
| 129. | All exhibits identified by or offered by any other party at the Hearing | | |

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

**PAGE 14 OF 15**

020254

Dated:  June 24, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com
hwinograd@pszjlaw.com


 - and -

**HAYWARD PLLC**

/s/  *Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.
and the Highland Claimant Trust*

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**

Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

-and-

**SIDLEY AUSTIN LLP**

Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Co-Counsel for Marc S. Kirschner, as
Litigation Trustee of the Highland Litigation
Sub-Trust*

**AMENDED WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**                    **PAGE 15 OF 15**
SF 4930-7823-1120.1 36027.002 DOCS_NY:42648.1 36027/002

020255

**EXHIBIT 126**

020256

Case 19-34054-sgj11 Doc 1808 Filed 01/22/21 Entered 01/22/21 16:35:25 Page 1 of 66
Case 3:25-cv-02072-S   Document 125   Filed 10/06/25   Page 262 of 271   PageID 21375
Docket #1808  Date Filed: 01/22/2021

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

---

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1934054210122000000000000013

Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

**C.    Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) payment of such Allowed Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by the Debtor and such Holder. Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.
CLASSIFICATION AND TREATMENT OF
CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.    Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

020258

**B.**     <u>Summary of Classification and Treatment of Classified Claims and Equity Interests</u>

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

**C.**     <u>Elimination of Vacant Classes</u>

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.**     <u>Impaired/Voting Classes</u>

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

**E.**     <u>Unimpaired/Non-Voting Classes</u>

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

**F.**     <u>Impaired/Non-Voting Classes</u>

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

**G.**     <u>Cramdown</u>

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the

020259

Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.**    **Classification and Treatment of Claims and Equity Interests**

    *1.*    *Class 1 – Jefferies Secured Claim*

- *Classification*:  Class 1 consists of the Jefferies Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor: (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until full and final payment of such Allowed Class 1 Claim is made as provided herein.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

    *2.*    *Class 2 – Frontier Secured Claim*

- *Classification*:  Class 2 consists of the Frontier Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim:  (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note.  The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*:  Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

020260

3.   *Class 3 – Other Secured Claims*

- *Classification*:  Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

4.   *Class 4 – Priority Non-Tax Claims*

- *Classification*:  Class 4 consists of the Priority Non-Tax Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5.   *Class 5 – Retained Employee Claims*

- *Classification*:  Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

020261

- *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6.  *Class 6 – PTO Claims*

- *Classification*:  Class 6 consists of the PTO Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- *Impairment and Voting*:  Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

7.  *Class 7 – Convenience Claims*

- *Classification*:  Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*:  Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8.  *Class 8 – General Unsecured Claims*

- *Classification*:  Class 8 consists of the General Unsecured Claims.

22

020262

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

9.   *Class 9 – Subordinated Claims*

- *Classification*:  Class 9 consists of the Subordinated Claims.

  *Treatment*:  On the Effective Date, Holders of Subordinated Claims  shall receive either (i) their Pro Rata share of the Subordinated Claimant Trust Interests or, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee may agree upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10.   *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*:  Class 10 consists of the Class B/C Limited Partnership Interests.

020263

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

11.    *Class 11 – Class A Limited Partnership Interests*

- *Classification*:  Class 11 consists of the Class A Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

## I.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

020264

### J.    Subordinated Claims

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Under section 510 of the Bankruptcy Code, upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

### ARTICLE IV.
### MEANS FOR IMPLEMENTATION OF THIS PLAN

### A.    Summary

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement.  Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC.  The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan.  The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities. The Debtor believes that the continued provision of the services under such contracts will not be

020265

BTXN 208 (rev. 07/09)

| | | |
|---|---|---|
| IN RE: Highland Capital Management, L.P. | Motion for Approval of Settlement with the HMIT Entities Rule 9019 doc. #4216 | Case # 19−34054−sgj11 |
| DEBTOR | | |

## TYPE OF HEARING

| | | |
|---|---|---|
| Highland Capital Management, L.P. | *VS* | James Dondero/Patrick Daugherty |
| **PLAINTIFF / MOVANT** | | **DEFENDANT / RESPONDENT** |

| | | |
|---|---|---|
| John Morris/Louis M. Phillips | | Michael Justin Lang/Andrew K. York |
| **ATTORNEY** | | **ATTORNEY** |

## <u>EXHIBITS</u>

SEE EXHIBIT & WITNES LIST AT DOC. #4253, #4255, & #4271
_____

Court Admitted Exhibits #1 through #9; #11 through #56; #58 through #123 & #126
_____

_____
_____
_____
_____
_____
_____
_____

SEE EXHIBIT & WITNESS LIST AT DOC. #4266
_____

Court Admitted All Exhibits; #1 through #42
_____

Dugaboy Exhibit #3 Letter dated June 24 2025: Admitted by Michael Lang
_____

_____
_____
_____
_____
_____
_____

| | | |
|---|---|---|
| Michael Edmond | June 25, 2025 | Stacey G Jernigan |
| REPORTED BY | HEARING DATE | JUDGE PRESIDING |

020266